# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

     **Plaintiff,**

  **v.**                              **Case No.  10-CR-2734 JCH**

**JOHN CHARLES McCLUSKEY,**

     **Defendant.**

### DEFENDANT'S MOTION FOR DISCOVERY TO SUPPORT MOTION TO STRIKE DEATH PENALTY BASED UPON INFLUENCE OF ARBITRARY FACTOR OF RACE AND GENDER OF VICTIM.

COMES NOW the Defendant, JOHN CHARLES MCCLUSKEY, by and through undersigned counsel, pursuant to Fed. R. Crim. P. 12(b), Fed. R. Crim. P. 16, the Fifth, Sixth, Eighth, Tenth and Fourteenth Amendments to the U.S. Constitution, and pursuant to other applicable rules and law, and hereby files his *Motion to Support Motion To Strike Death Penalty Based Upon Influence of Arbitrary Factor of Race and Gender of Victim.* As reasons thereof, the Defendant STATES and PRAYS as follows:

## I. INTRODUCTION

Mr. McCluskey is a Caucasian-American man, born in Yuma, Arizona, facing capital prosecution in the District of New Mexico. The Department of Justice, by and through the Attorney General, has authorized this federal death penalty case and has refused to accept a

1

negotiated disposition. Mr. McCluskey is the first capitally charged Caucasian- American defendant in the District of New Mexico who has not been offered a negotiated plea in a capital case. He is the only capital defendant in the modern history of the federal death penalty in New Mexico, to whom a plea of life (or less) has not been made available. Concurrent with this motion for discovery, the Defendant has filed his <u>Defendant's Omnibus Motion to Dismiss the "Special Findings" from the Third Superseding Indictment, and to Strike the Notice of Intent to Seek the Death Penalty</u> [Doc.387] , which is incorporated herein. In said motion, the Defendant John McCluskey presented very specific evidence of similarly situated  federal death penalty eligible defendants, charged with the same or similar offenses, whose cases were not authorized for death by the Attorney General, or whose cases were de-authorized, or who were permitted to plead guilty and receive a sentence of less than death. Counsel notes that Mr. McCluskey – an American born, Caucasian defendant – would be the first and only person in the history of the federal death penalty in New Mexico to be denied an opportunity to plead guilty to a less-than-death sentence prior to trial. Undersigned counsel seek to establish that the Department of Justice has overridden local determinations concerning death prosecutions at a significantly higher rate where the defendant was non-Caucasian and/or the victim was white and/or female.

## II. RELIEF SOUGHT

In order to further prove these narrow and specific allegations, undersigned counsel specifically seek the following information from the Department of Justice, the United States Attorney and the government concerning all cases arising out of the District of New Mexico, including the case of John Charles McCluskey, in which correspondence was sent pursuant to

United States Attorney Manual, 9-10.050 ("In all cases, the United States Attorney must immediately notify the Capital Case Unit when a capital offense is charged and provide the Unit with a copy of the indictment and case number."), 9-10.080 (submissions from the United States Attorney), 9-10.110 (Plea Agreements), 9-10.150 (withdrawal of the Notice of Intention to Seek the Death Penalty), or any other provision of the D.O.J. death penalty protocol. Concerning these cases, counsel seek:

A. A copy of that portion of the Prosecution Memorandum identified in 9.10.080 (A) (11)(" Recommendation of the United States Attorney on whether the death penalty should be sought.");

B. A copy of that portion of the Prosecution Memorandum identified in 9.10.080 (B) ("Death-penalty evaluation form. The Department will specify a standardized death-penalty evaluation form, which should be completed by the United States Attorney for each capital-eligible offense charged against each defendant.");

C. A copy of that portion of the Prosecution Memorandum identified in 9.10.080 (C) ("Non-decisional information form. This form should be submitted in a sealed envelope clearly labeled as containing the non-decisional information.").

D. A copy of that portion of the Prosecution Memorandum which recommended that the government enter into a plea agreement to life in prison, or a term of years, or to not enter into such an agreement, or seek death, and all correspondence relating thereto.

E. A copy of that portion of any submission by the United States Attorney pertaining to 9-10.080, 9-10.110, 9-10.150, which recommended that a plea agreement be entered into, or not entered into, in the case of John Charles McCluskey.

F. All emails and other correspondence by and between the local U.S. Attorney's Office in the District of New Mexico and the Department of Justice including correspondence by and between any member of the United States Attorney's Office for the District of New Mexico, and the DOJ Capital Case Unit, Death Penalty Review Committee, or any other DOJ unit or personnel, including capital case unit attorneys regarding the Defendant McCluskey's offer to plead guilty and the government's ultimate rejection of that offer.

G. Further, counsel seek discovery of all inter-office memorandum, emails, notes and otherwise recorded information concerning Mr. McCluskey's case that references the race, ethnicity, national origin or gender of the defendant, Mr. McCluskey, or the race, ethnicity, national origin or gender of similarly situated defendants, or the racial demographics and racial or death penalty attitudes in New Mexico.

H. Finally, with respect to all cases prosecuted federally, counsel seek the name, case number, and race and gender of the defendant and victim in each case since 1994 in which the Department of Justice has over-ridden a local recommendation to de-authorize a capital prosecution or enter into a plea agreement.

I. All documents and information regarding the local U.S. Attorneys Office recommendation of whether a plea should be entered into with Defendant McCluskey and all documents and information relating to the consideration and ultimate rejection of that plea.


In U.S.A.M. § 9-10.030, it is stated that racial considerations will not interfere in the decision-making process on the death penalty. However, the Defendant submits that it appears that such racial considerations have entered into the decision making process in this case and have skewed the process to death and against acceptance of a plea agreement in this case, based upon the race and national origin of Mr. McCluskey, and/or the race or gender of his victims.

Much of the information requested herein was collected by the Department of Justice for the very purpose that counsel requests it. In 2002, the Department of Justice, in response to statistics suggesting that African-American defendants were disproportionately subject to the federal death penalty and disproportionately forced to proceed to trial on capital charges, decided to collect information described herein. The Department of Justice decided to collect and track this information exactly to provide reassurance to the public and the courts that race played no role in the administration of the federal death penalty:

4

[I]t has suggested that changes could be made to promote public confidence in the process's fairness and to improve its efficiency. For example, as noted above, consideration of the broader universe of potential capital cases reinforced the findings of the Sept. 12 study which tended to refute any assumption of bias against racial or ethnic minorities. However, obtaining information about this broader class of cases required an extraordinary effort because the existing review procedure does not regularly obtain information about cases in which a capital charge is factually supportable, but the U.S. Attorney office decides to charge (or accept a plea to) a noncapital crime. Hence, in the future, U.S. Attorneys will be required to submit information, including racial and ethnic data, about potential capital cases, as well as those in which a capital offense is actually being charged. This should help to maintain public confidence in the fairness of the process by making more complete racial and ethnic data available for both actual and potential federal capital cases on a continuing basis.

The Department of Justice, *The Federal Death Penalty System: Supplementary Data, Analysis and Revised Protocols for Capital Case Review*, U.S. Department of Justice, Washington D.C., June 6, 2002, at pg 2.[1] Because the purpose of the Department of Justice's decision to collect the data was to make "more complete racial and ethnic data available for both actual and potential federal capital cases on a continuing basis", the Government should not be able to shield from review evidence that reflects gender discrimination or bias against racial or ethnic minorities.

### III. LEGAL BASIS AND ARGUMENT

The critical determination in assessing whether a defendant can receive discovery under *Armstrong*[2] and *Bass*[3] concerning a race-based claim involves whether the defendant has mustered

---

[1]Available at http://www.justice.gov/dag/pubdoc/deathpenaltystudy.htm.

[2]*United States v. Armstrong,* 517 U.S. 456 (1996).

[3]*United States v. Bass,* 536 U.S. 862 (2002).

5

some evidence that the government had eschewed prosecution of similarly situated offenders. *See
e.g. United States v. Lewis,* 517 F.3d 20, 22 (1st Cir. Mass. 2008) ("The issue on appeal boils
down to whether discovery should have been permitted -- an issue that hinges largely on whether
the defendant mustered some evidence that the government had eschewed prosecution of
similarly situated offenders."). *See also United States v. Thorpe,* 471 F. 3d 652 (6th Cir. 2006)
(where defendant concedes in brief that he has not submitted evidence concerning "similarly
situated" individuals, discovery is not appropriate)(citing *United States v. Bass,* 536 U.S. at 863)
(concluding that "nationwide statistics demonstrating that the United States charges blacks with a
death-eligible offense more than twice as often as it charges whites" were insufficient for the
purpose of satisfying the *Armstrong* standard.); *Belmontes v. Brown,* 414 F.3d 1094, 1127 (9th
Cir. 2005) ("We conclude that statistics relating to the charging entity, such as those presented by
Belmontes, are materially more probative of discrimination in capital charging than those
considered by the Supreme Court in  *McCleskey* [*v. Kemp, 481 US 279 (1987)*]. *See United
States v. Bass,* 536 U.S. 862 (2002) (approving of "a showing regarding the record of the
decision-makers in respondent's case.")."), *judgement reversed by Ayers v. Belmontes*, 549 U.S. 7
(2006). In *Belmontes,* the Federal Court of Appeals found that the defendant's statistical evidence
of charging practices provided a prima facie case of discrimination – establishing both
discriminatory effect and intent: "[b]ecause Belmontes' statistics revealed that individuals whose
victims were white were far more likely to be charged with a capital offense than similarly
situated individuals whose victims were non-white, we conclude that Belmontes established the
requisite discriminatory effect." *Id.* (citing *Armstrong*). The Court observed that the question of
whether a capital charging practice was racially motivated was essentially resolvable by reference

to objective analysis,[4] ultimately deciding that the Government provided a race neutral

explanation at the second stage of the discrimination analysis, and that this reason was persuasive

at the third stage of the analysis.

The United States Supreme Court decision in *Bass,* 536 U.S. at 3, is both informative and

directly on point. In *Bass,* the Court overturned the order for discovery because the defendant had

failed to make "a 'credible showing' that 'similarly situated individuals of a different race were

not prosecuted'." While the defense had presented evidence that "the United States enters into

plea bargains more frequently with whites than it does with blacks," *Id.* at 2-3 (citing *Bass v.*

*United States*, 266 F. 3d 532, at 538-539 (citing U. S. Dept. of Justice, The Federal Death Penalty

System: A Statistical Survey (1988-2000), p. 2 (Sept. 12, 2000))), the Court found "the statistics

regarding plea bargains are even less relevant, since respondent was offered a plea bargain but

declined it." *Id.* at 3. In *Bass*, the Court rejected the discovery claim because the defendant had

refused a plea bargain to a life sentence and thus, "under *Armstrong*, therefore, because

respondent failed to submit relevant evidence that similarly situated persons were treated

differently, he was not entitled to discovery." *Id.*

Here, unlike the defendant in *Bass,* counsel has identified similarly situated non-

---

[4] *See Id.* at 1128, n. 13: "We note that a decision to charge a capital rather than a non-
capital offense is far more significant and important than a decision to challenge a particular
juror. A charging decision is made with great deliberation over a period of
time and is generally the product of a deliberative process involving more than one
person. Moreover, unlike the case of a juror challenge, there is a full record of the
relevant events that ordinarily contains all of the objective factors upon which the
decision-making would have been based."

Caucasian defendants and females – some charged with far worse offenses – who were permitted to plead guilty and receive a life sentence or a sentence of a term of years. Unlike the defendant in *Bass*, Mr. McCluskey has made the requisite offer.

The only thing that differentiates him is race, ethnicity national origin, and gender.

Finally, it is significant to note that unlike the district court in *Bass,* counsel is not asking this Court to order the Government to create information that otherwise does not exist. Rather, at least with respect to information from 2002 forward, the Department of Justice's own protocols required the collection of this information for the very purpose that undersigned counsel requests it: to "**help to maintain public confidence in the fairness of the process by making more complete racial and ethnic data available for both actual and potential federal capital cases on a continuing basis**." *See The Federal Death Penalty System: Supplementary Data, Analysis and Revised Protocols for Capital Case Review, supra.*

WHEREFORE, the Defendant respectfully requests an Order requiring the Government to provide the separately requested discovery.

Dated: March 30, 2012                                    Respectfully submitted,

                                                         /s/ Michael N. Burt

                                                         Michael N. Burt

                                                         1000 Brannan Street, Suite 400

                                                         San Francisco, CA 94103-4888

                                                         415/522-1508

/s/ Theresa M. Duncan

Theresa M. Duncan

Freedman Boyd Hollander Goldberg Ives & Duncan P.A.

20 First Plaza, Suite 700

Albuquerque, NM 87102

505/842-9960

Attorneys for John McCluskey

9

## CERTIFICATE OF CONFERENCE

I hereby certify that on March 30, 2012, my co-counsel Theresa Duncan contacted Assistant United States Attorney Michael Warbel to determine the government's position on this motion.  Mr. Warbel advised that the government is opposed to the motion.

/s/ Michael N. Burt

Michael N. Burt

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2012,  a true and accurate copy of the foregoing pleading was emailed to counsel of record by CM/ECF.

/s/ Michael N. Burt

Michael N. Burt