**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                         Case No. 10-CR-2734 JCH

JOHN CHARLES McCLUSKEY,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on the following motions, each filed by Defendant John Charles McCluskey on January 30, 2012:  (i) *Motion for Disclosure of Exculpatory Information* **[Doc. 287]**; (ii) *Motion for Exculpatory Evidence in Law Enforcement Personnel Files* **[Doc. 289]**; (iii) *Motion to Compel Production of Expert Disclosures in Compliance with Rules 16(a)(1)(G) and this Court's Scheduling Order, for Depositions of Government Experts Pursuant to Rules 2, 16(a)(2), and 57, and for Adjustment of Scheduling Order* **[Doc. 292]**; (iv) *Motion for Discovery and Inspection of Matters Pursuant to Rule 16* **[Doc. 286]**; (v) *Motion for Disclosure of Prior Acts Evidence* **[Doc. 281]**; (vi) *Motion for Order Requiring the Government to Comply with Federal Rules of Evidence Rules 807 and 1006* **[Doc. 284]**; (vii) *Motion for Order Requiring the Government to Comply with Rule 12(b)(4)(B)* **[Doc. 285]**; and (viii) *Motion for Early Disclosure of Material Covered by the Jencks Act or Rule 26.2 of the Federal Rules of Criminal Procedure* **[Doc. 282]**.  On February 29, 2012, The United States filed the *United States' Omnibus Response to Defendant's Discovery Motions* **[Doc. 332]**, and on March 14, 2012, Defendant McCluskey filed his Omnibus Reply **[Doc. 352]**.  On April 3, 2012, the Court heard oral arguments on Documents 287 and 292.

The Court has reviewed each of the motions, the Omnibus Response, the Omnibus Reply, the governing law, and has considered the arguments put forth in the hearing. Defendant McCluskey's various motions will be granted in part and denied in part as set forth herein.

## I.    BACKGROUND

On January 24, 2012, the grand jury returned a Third Superceding Indictment [Doc. 273] charging Defendant John Charles McCluskey with Conspiracy to Commit Carjacking, in violation of 18 U.S.C. § 371 (Count 1); Carjacking Resulting in Death, in violation of 18 U.S.C. § 2119(3) and 18 U.S.C. § 2, Aiding and Abetting (Counts 2-3); Tampering With a Witness, in violation of 18 U.S.C. § 1512(a)(1)(C) and 18 U.S.C. § 2, Aiding and Abetting (Counts 4-5); Conspiracy to Interfere with Commerce, in violation of 18 U.S.C. § 1951 (Count 6); Interference with Commerce, in violation of 18 U.S.C. § 1951 and 18 U.S.C. § 2, Aiding and Abetting (Counts 7-8); Using and Carrying Firearm During and in Relation to Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1) and (j) and 18 U.S.C. § 2, Aiding and Abetting (Counts 9-18); Felon in Possession of Firearms and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 19); and Fugitive in Possession of Firearms and Ammunition, in violation of 18 U.S.C. §§ 922(g)(2) and 924(a)(2) (Count 20). The Third Superceding Indictment also contains a Notice of Special Findings against Defendant McCluskey and on January 26, 2012, the United States filed its Notice of Intent to Seek the Death Penalty [Doc. 275] as to Defendant McCluskey.

On June 3, 2011, the Court entered a standing Discovery Order. Doc. 203. On September 9, 2011, the Court entered a Scheduling Order setting deadlines for motions and discovery through June 8, 2012, with a trial setting of March 11, 2013. *See* Doc. 220. On January 20, 2012, the Government filed its Notice of Intention to Offer Expert Testimony. Doc. 261. Also on January 20, 2012, Co-Defendants Province and Welch entered into plea agreements to the charges in the Second

Superceding Indictment.  *See* Docs. 257, 259.

## II.    LAW GOVERNING DISCOVERY

The present motions invoke a variety of legal principles and, at times, overlap one another in their requests for discovery and pre-trial disclosure.  Before considering each motion in turn, the Court will set forth the case law, rules, and statutes that comprise the framework for discovery in federal criminal cases.

### A.    *Brady*

In the capital case of *Brady v. Maryland*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. 83, 87 (1963).  *Brady* requires the prosecution to produce to the defendant, in advance of trial, material exculpatory evidence that is in its possession.  373 U.S. at 87; *United States v. Agurs*, 427 U.S. 97, 110-111 (1976); *United States v. Huddleston*, 194 F.3d 214, 222 (1st Cir. 1999). As the law has developed, even where a defendant fails to request *Brady* information, the prosecution is obligated to volunteer exculpatory information.  *See Kyles v. Whitley*, 514 U.S. 419, 433 (1995).  *Brady* disclosure obligations are quite broad, encompassing a government duty to "*learn* of any favorable evidence known to others acting on the government's behalf in the case, including the police." *United States v. Combs*, 267 F.3d 1167, 1174-75 (10th Cir. 2001) (quoting *Kyles v. Whitley*, 514 U.S. at 433) (emphasis in original).

To establish a *Brady* violation, an accused must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the defense.  *United States v. Velarde*, 485 F.3d 553, 558 (10th Cir. 2007); *Trammell v. McKune*, 485 F.3d 546, 551 (10th Cir. 2007).  There is no *Brady* violation where the defendant knew or should

have known of the material, exculpatory information or where the information was available to him from another source. *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007). Nor does the Constitution demand an open file policy. *See id.* at 437. *See also Smith v. Secretary Dep't of Corrections*, 50 F.3d 801, 823 (10th Cir. 1995) (noting that *Brady* does not require prosecution to divulge every shred of evidence that could conceivably benefit defendant). "[T]he government typically is the sole judge of what evidence in its possession is subject to disclosure" and it acts at its own peril by failing to comply adequately with an order requiring disclosure of *Brady* material. *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988).

The "touchstone of materiality is a 'reasonable probability' of a different result," which is present "when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434 (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). Thus, to establish *Brady* materiality, a defendant need not show that the evidence, if disclosed, would have resulted in his acquittal. Instead, the necessary showing is that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 434-35. In evaluating a *Brady* claim, a court must consider the cumulative effect of all material withheld by the government. *See id.* at 436-37. The onus is on the prosecution to "gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached. This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Id.* at 437.

Certainly *Brady* has its limits, however, and the Constitution "does not grant criminal defendants the right to embark on a 'broad or blind fishing expedition among documents possessed by the Government.'" *United States v. Mayes*, 917 F.2d 457, 461 (10th Cir. 1990) (quoting *Jencks*

4

*v. United States*, 353 U.S. 657, 667 (1957)).  A defendant's mere allegation that the requested information might be material does not entitle him to an unsupervised search of the government's files.  *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987).  The *Brady* rule is not an evidentiary rule that grants broad discovery powers to a defendant, because there "is no general constitutional right to discovery in a criminal case."  *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  *See also United States v. Agurs*, 427 U.S. at 109-10 ("[T]here is no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case. The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.") (internal quotations and citations omitted), *reversed on other grounds by Bagley*, 473 U.S. 667; *Downs v. Hoyt*, 232 F.3d 1031, 1037 (9th Cir. 2000) ("*Brady* does not require a prosecutor to turn over files reflecting leads and ongoing investigations where no exonerating or impeaching evidence has turned up.").

Brady's disclosure requirements are limited to information in the government's possession or knowledge, whether actual or constructive.  *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999); *Smith*, 50 F.3d at 825 n.36 (noting that where district attorney's office had actual knowledge of a separate investigation by authorities in separate county, it was reasonable to impute knowledge possessed by separate county to prosecution).  A prosecutor may not avert *Brady* obligations by keeping himself ignorant or compartmentalizing information, *see Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984), though the government has no affirmative duty under *Brady* to seek out information that is not in its or its agents' possession.  *See Graham*, 484 F.3d at 415-18 (stating there is no affirmative duty to discover information in possession of independent, cooperating witness and not in government's possession); *United States v. Moore*, 25 F.3d 563, 569

(7th Cir. 1994) (concluding *Brady* was not violated where both parties learned after trial that government witness had previous conviction for obstruction of justice and government did not possess knowledge of this information until after trial); *United States v. Baker*, 1 F.3d 596, 598 (7th Cir. 1995) ("Certainly, *Brady* does not require the government to conduct discovery on behalf of the defendant."); *Flores*, 540 F.2d at 437 (noting that government has no duty to fish through public records equally accessible to defense to collate information).

　　*Brady* is, nonetheless, read broadly to encourage prosecutors to carry out their "duty to *learn* of any favorable evidence known to the others acting on the government's behalf in the case, including the police."　*United States v. Combs*, 267 F.3d 1167, 1174-75 (10th Cir. 2001) (quoting *Kyles*, 514 U.S. at 437-38) (emphasis added by Tenth Circuit).　"Information possessed by other branches of the *federal* government, including investigating officers, is typically imputed to the prosecutors of the case."　*Beers*, 189 F.3d at 1304 (emphasis added).　Yet the Tenth Circuit in *Beers* held that the *state's* knowledge and possession of potential impeachment evidence would not be imputed to a federal prosecutor for purposes of *Brady,* at least absent a "joint investigation" by federal and state officials.　*See id.* (emphasis added).　*See also United States v. Romo*, 914 F.2d 889, 899 (7th Cir. 1990) (finding no error in denial of defendant's motion to compel prosecutors to make various inquires of local police in absence of showing by defendant that specific material, exculpatory information existed of which government knew).

　　At least one court has held that a duty to search files maintained by governmental agencies closely aligned with the prosecution may be triggered when there is a reasonable prospect or notice of finding exculpatory evidence.　*See United States v. Brooks*, 966 F.2d 1500, 1502-04 (D.C. Cir. 1992).　The Tenth Circuit quoted this *Brooks* holding with approval, but declined to definitively resolve the issue, leaving undetermined the extent of the government's duty to investigate files of

state agencies participating in a joint investigation with federal officials in the Tenth Circuit.  *See Combs*, 267 F.3d at 1175.

**B.**     *Giglio*

Impeachment evidence falls within the scope of *Brady* when the reliability of a given witness may be determinative of a defendant's guilt or innocence.  *Giglio v. United States*, 405 U.S. 150, 154 (1972).  *Brady* obligates the prosecution to disclose "evidence affecting credibility."  *Id.*

**C.**     **The Jencks Act**

The Jencks Act requires the government to disclose to criminal defendants any statement made by a government witness that is "in the possession of the United States" once that witness has testified.  18 U.S.C. § 3500(a) & (b).  The Act "manifests the general statutory aim to restrict the use of such statements to impeachment."  *Palermo v. United States*, 360 U.S. 343, 349 (1959).  The Act serves the dual purposes of protecting the government's files from unwarranted disclosure and allowing defendants access to materials usable for impeachment purposes.  *See United States v. Smaldone*, 544 F.2d 456, 460 (10th Cir. 1976).

The Jencks Act provides in pertinent part:

> (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena [sic], discovery, or inspection until said witness has testified on direct examination in the trial of the case.

> (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. § 3500.

The Act defines a witness "statement" as (1) a written statement made by the witness and signed or otherwise adopted or approved by him; (2) a stenographic, mechanical, electrical, or other recording or transcription thereof, that is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or (3) a statement or transcription made by the witness to a grand jury. *Id.* § 3500(e). The defendant bears the burden of showing that particular materials qualify as "statements," and that the purported statements relate to the subject matter of the witness's testimony. *Smaldone*, 544 F.2d at 460.

Jencks Act "statements" are narrowly construed. *Id.* at 461; *Hanks v. United States*, 388 F.2d 171 (10th Cir. 1968). The Act does not require the government to produce an agent's informal description of witness testimony. *See Palermo*, 360 U.S. at 355 & n.12 (holding that agent's brief summary of witness's statements prepared after interview were not Jencks act "statements"); *Smaldone*, 544 F.2d at 461. Statements made by a witness and summarized by a third person, however, can be Jencks material, provided the witness has signed or otherwise adopted or approved them. *See Campbell v. United States*, 365 U.S. 85, 93-94 (1961); *United States v. Jordan*, 316 F.3d 1215, 1252 (11th Cir. 2003) (explaining that interviewer's raw notes, and anything prepared from notes (such as FBI 302) are not Jencks Act statements of witness unless they are substantially verbatim and contemporaneously recorded, or were signed or otherwise ratified by witness); *United States v. Gates*, 557 F.2d 1086, 1089 (5th Cir. 1977) (stating that notes are not Jencks Act statements until shown to and affirmed by witness).[1] A witness adopts a statement if it is read back to and verified, approved, or acknowledged as true by the witness. *See United States v. Jackson*, 850

---

[1] That said, if the agent who made the notes is called as a witness, the statements may constitute Jencks material, depending on the scope of the agent's testimony on direct examination. *See Jordan*, 316 F.3d at 1252.

F.Supp. 1481, 1508 (D. Kan. 1994).  Substantially verbatim transcriptions made contemporaneously with a witness's oral statements, of course, need not be adopted or approved to be Jenks material. *See* 18 U.S.C. § 3500(e)(2).

Rule 26.2 contains the substance of the Jencks Act.  *See* Fed. R. Crim. P. 26.2, advisory committee notes.  Rule 26.2 also requires production of defense witness statements at trial in essentially the same manner as statements of government witnesses.  *See id.*

### D.    Rule 16

Rule 16 sets forth the types of information the government must disclose to the defendant upon his request:

> books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).

A defendant must make a prima facie showing of materiality before he is entitled to obtain requested discovery.  *See United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990).  "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the government is in possession of information helpful to the defense."  *Id.*  The term "defense" means an argument in response to the prosecution's case-in-chief, *i.e.*, an argument that refutes the government's claims that the defendant committed the crime charged.  *See United States v. Armstrong*, 517 U.S. 456, 462 (1996).  To be material, the evidence must bear some abstract, logical relationship to the issues in the case such that pretrial disclosure would enable the defendant to significantly alter the quantum of proof in his

favor.  *United States v. Lloyd*, 992 F.2d 348, 350-51 (D.C. Cir. 1993).  Establishing prima facie materiality is not a heavy burden; evidence is material when there is a strong indication that it "will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal."  *Id.* at 351 (internal quotations omitted). Nonetheless, the threshold showing of materiality is essential because ordering the government to produce discovery absent such a showing is inconsistent with Rule 16.  *Mandel*, 914 F.2d at 1219; *Jordan*, 316 F.3d at 1250 (noting that defendant must make specific request for item, together with explanation as to how it will be helpful to defense).

Rule 16(a)(1)(E) applies only where the documents are in the federal government's actual possession, custody, or control.  *See United States v. Dominguez-Villa*, 954 F.2d 562, 566 (9th Cir. 1992).  A document is within the possession of the government if the prosecutor has knowledge of and access to it, and a "prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant."  *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989).  State-gathered evidence becomes subject to Rule 16(a)(1)(E) disclosure "when it passes into federal possession." *United States v. Fort*, 472 F.3d 1106, 1118 (9th Cir. 2007).

The scope of discoverable materials is limited by Rule 16(a)(2), which states in pertinent part, "this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case."  Fed. R. Crim. P. 16(a)(2).  Rule 16(a)(2) also clarifies that Rule 16 does not authorize disclosure of witness statements beyond the provisions of 18 U.S.C. § 3500.  The term "government agent" has been construed to include non-federal personnel whose work contributes to a federal criminal case, such as local law enforcement officers.

*See Fort*, 472 F.3d at 1113, 1119-20.  Accordingly, police reports fall within the scope of Rule 16(a)(2)'s discovery exemption when they are turned over to the federal prosecutor for use in a federal investigation.  *See id*. at 1109, 1119-20.  FBI reports are also exempt under Rule 16(a)(2). *See id*. at 1119 (citing *Jordon*, 316 F.3d at 1227 n.17).

## III.   ANALYSIS

### A.   Defendant's Motion for Disclosure of Exculpatory Information [Doc. 287]

#### 1.   Scope of the Government's Disclosure Obligations

The primary issues before the Court on this motion are:  (1) whether certain state, local and other federal agencies acted in a joint effort with the Government, such that information in their possession might be deemed "in the possession of" the Government for disclosure purposes; and (2) whether the circumstances of this case warrant early disclosure of exculpatory material and, if so, how far in advance of trial is sufficient.

Defendant McCluskey asks the Court to order "the government to produce all material exculpatory, favorable, helpful or impeachment evidence that is in the possession of the prosecution, or any other federal, state or local agency that has assisted or allied itself with the prosecution in any way that might be exculpatory, tend to impeach any Government witness, or mitigate Defendant's conduct for sentencing purposes."  Doc. 287 at 12.  Defendant's otherwise standard *Brady* request is remarkable in its breadth, seeking to impute to the Government constructive knowledge of all information in the possession of a host of federal, state, and local agencies.[2]  Defendant identifies

---

[2]Defendant enumerates the following non-exhaustive list of agencies that he includes in the term "government" for purposes of his discovery requests:  United States Attorney's Office for the District of New Mexico; United States Department of Justice; Federal Bureau of Investigations; United States Marshals Service; Bureau of Alcohol, Tobacco, Firearms, and Explosives; United States Forest Service; United States Department of Agriculture; Federal

little factual basis to support the existence of a joint investigation between the Government and many of the agencies enumerated.

At the hearing on this motion, the Government acknowledged its collaborative investigative work with the Federal Bureau of Investigation ("FBI"), the New Mexico State Police ("NMSP"), and the United States Marshals Service ("USMS").  *See* Transcript of April 3, 2012 hearing at 32:3-33:18.[3]  Indeed, case-related knowledge possessed by other federal agencies will usually be imputed to the federal prosecutor, and this case presents no exception.  Here, it is unnecessary for the Court to order the government to disclose *Brady* material in the possession of the FBI, NMSP, or the USMS where the government has acknowledged its duty to do so, and has stated that it has disclosed information in the possession of these agencies and will continue to do so.  Accordingly, this portion of the motion will be denied as moot.

The Government did not concede any joint investigation with the plethora of remaining named agencies, however, and expressly disavowed any such relationship with agencies located in Arizona.  At the hearing, the Government referenced "a very large public argument [it had] with

_____

Bureau of Prisons; New Mexico State Police; the New Mexico Department of Public Safety; the New Mexico State Fire Marshal; the Albuquerque Police Department; the Moriarty Police Department; the Bernalillo County Sheriff's Office; the Guadelupe County Sheriff; the New Mexico Department of Corrections; the Arizona Department of Public Safety; the Arizona Department of Corrections; the Apache County Sheriff; the Mojave County Sheriff, the Mojave County Attorney's Office; the Gila County Sheriff's Office; the Maricopa County Sheriff's Department; the Kingman Police Department; the Flagstaff Police Department; the Lake Havasu City Police Department; the Mesa Police Department; the Payson Police Department; the Mohave County Jail; the Apache County Jail; the Rifle Police Department; the Benton County Sheriff's Department; the Delaware State Police; the Gentry Police Department; the Glendale Police Department; the New Castle County Police Department; the Oklahoma State Police; the Pennsylvania Board of Probation and Parole; the Pennsylvania Department of Corrections; the Pennsylvania State Police; the Texas Department of Public Safety, and the Texas Rangers.

[3]The references to the Transcript herein are to the court reporters original, unedited version.  The page and line numbers may differ slightly in a final version.

Arizona" when attempting to obtain information and custody of Defendant McCluskey. *Id.* at 33:19-25. The reasonable inference to be drawn is that the Government's dispute with "Arizona" signifies an uncooperative relationship between it and the Arizona agencies in this matter– the antithesis of a collaborative investigation for purposes of imputing knowledge by any standard. The Government again stated that it has provided to the defense all information it has received so far and will continue to do so in furtherance of the liberal discovery policy it has adopted in this case.

The precise contours of the Government's duty to investigate files of state agencies participating in a joint investigation with federal officials is an open question in the Tenth Circuit. In *United States v. Beers*, the Tenth Circuit held that *Brady's* disclosure requirements pertain only to information in the government's actual or constructive possession. 189 F.3d at 1297. In *Beers*, the defendant claimed that the federal prosecutor had violated *Brady* by failing to disclose evidence that would have impeached one of the government's witnesses at trial. Defendant Beers moved for a new trial upon learning of the alleged impeachment evidence, and the district court denied the motion. On *de novo* review, the Tenth Circuit held that where the Albuquerque Police Department ("APD") possessed the evidence in question, and there was no indication that the investigation was a joint effort between the state and federal government – or that the federal prosecutor possessed the complete investigation materials – there was no violation. The *Beers* court recognized that "information possessed by other branches of *the federal government*, including investigating officers, is typically imputed to prosecutors of the case," but determined that the *state's* knowledge and possession of potential impeachment evidence would not be imputed to a federal prosecutor for purposes of *Brady*, at least in the absence of a "joint investigation." *Id.* at 1304 ("However, we decline to extend this principle [of imputation] for federal prosecutors to exculpatory materials in the possession of the state government. It is unrealistic to expect federal prosecutors to know all

13

information possessed by state officials affecting a federal case, especially when the information results from an unrelated state investigation. We thus hold that the state's knowledge and possession of potential impeachment evidence cannot be imputed to a federal prosecutor for purposes of establishing a Brady violation.") (emphasis added).  Accordingly, the *Beers* court "left open the question of whether knowledge possessed by state officials would be imputed to the federal prosecutor where the federal government [did participate] in a joint investigation with state officials." *United States v. Lujan*, 530 F.Supp. 2d 1224, 1232 (D.N.M. 2008) (citing *Beers*, 189 F.3d at 1304 n.2 ("...we do not decide whether we would impute [to prosecutor] knowledge possessed by state law enforcement officials in [the presence of evidence indicating a joint investigation].")).

Other circuits have determined that a federal prosecutor's obligations under *Brady* may, under certain circumstances, extend to evidence possessed by another state's agents.  *See, e.g., United States v Risha*, 445 F.3d 298, 303-306 (3rd Cir. 2006) (recognizing "cross-jurisdictional constructive knowledge" in the presence of a "close working relationship" between state agents and federal prosecution, but remanding for factual determination by district court on constructive possession, which required "factual and credibility determinations" that had not been made); *United States v Antone*, 603 F.2d 566, 569-570 (5th Cir. 1979) ("Imposing a rigid distinction between federal and state agencies which have cooperated intimately from the outset of an investigation would artificially contort the determination of what is mandated by due process.  Rather than endorse a Per se [sic] rule, we prefer a case-by-case analysis of the extent of the interaction and cooperation between the two governments.").

Presently, this Court cannot find a relationship sufficient to consider imputing knowledge to the Government as to *all* information in the possession of *all* agencies Defendant McCluskey lists, based on the limited factual information before it.  Whatever the proper scope of *Brady's* imputed

14

knowledge doctrine in the Tenth Circuit, it cannot be this broad.  For this reason, Defendant McCluskey's motion will be denied at this time as to his relatively unsupported, sweeping requests pertaining to state and local agencies, but granted as to his disclosure of information in the possession of other federal agencies involved in the investigation.  If, however, Defendant identifies with particularity any information he believes he is lawfully entitled to and has not received, he should bring the matter to the Court's attention at that time.  As to Defendant McCluskey's remaining requests for disclosure in this motion, the Government represents that it remains mindful of its disclosure obligations and will continue to pursue its liberal discovery policy.  In light of the uncertainty in this Circuit as expressed in *Beers*, the Government should broadly construe its duty to learn of favorable evidence in the possession of any other agencies with which it may have cooperated, cognizant that "a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence."  *Kyles v. Whitley*, 514 U.S. at 439.

### 2.  Timing of *Brady/Giglio* Disclosures

Defendant McCluskey requests that all *Brady/Giglio* information be disclosed immediately, whether or not it also falls within the scope of Rule 16.  Doc. 287 at 15-17.  Defendant McCluskey's request for exculpatory and material information focuses on obtaining information about his former Co-Defendants, though his moving papers also request such information pertaining to "any potential witness" for the Government.  *See* Doc. 287 at 5.  Defendant requests numerous items, with several of his requests overlapping those made in other motions, such as requests for criminal records and post-arrest statements of witnesses to law enforcement.

In responding to this motion, the Government states its intent to produce to Defendant items that bear on the credibility of all of its witnesses, but not until closer to the date of trial.  Doc. 332 at 38.  Specifically, the Government will produce any cooperating witnesses' plea agreements,

evidence of any misconduct by informant witnesses during their cooperation, criminal records in accordance with Fed. R. Evid. 609, a list of any financial or other benefits that have been extended to informant witnesses, and other impeaching information in the Government's possession. The Government also states that it already provided criminal records and post-arrest statements of witnesses made to law enforcement in December 2010, and notes that Defendant has already filed a motion to suppress the statements of his Co-Defendants (Doc. 295), rendering his requests in this regard moot.

The Supreme Court has never articulated a specific time requirement for *Brady* disclosures. Instead, the yardstick is whether the material was disclosed in time for a defendant to make meaningful use of it. *See United States v. Warhop*, 732 F.2d 775, 777 (10th Cir. 1984) (due process is satisfied if *Brady* material is disclosed before it is too late for the defendant to make use of the benefits of it). *See also United States v. Woodley*, 9 F.3d 774, 777 (9th Cir. 1993) (disclosure of *Brady* material "must be made when it is still of substantial value to the accused").

In *United States v. Burke*, the Tenth Circuit joined the majority of circuits in recognizing that the untimely disclosure of *Brady* material [*i.e.*, too late for meaningful use by defense] does not alone create a constitutional violation, but it may well violate due process if the defendant can show he was prejudiced by the delay. 571 F.3d 1048, 1055 (10th Cir. 2009); *see Powell v. Quarterman*, 536 F.3d 325, 335 (5th Cir. 2008) ("when the claim is untimely disclosure of Brady material, we have looked "to whether the defendant was prejudiced by the tardy disclosure'") (quoting *United States v. Williams*, 132 F.3d 1055, 1060 (5th Cir. 1998)); *United States v. Patrick*, 965 F.2d 1390, 1400 (6th Cir. 1992) ("Delay [in disclosure] only violates Brady when the delay itself causes prejudice."); *United States v. Fallon*, 348 F.3d 248, 252 (7th Cir. 2003); *Leka v. Portuondo*, 257 F.3d 89, 101-04 (2d Cir. 2001); *United States v. Devin*, 918 F.2d 280, 290 (1st Cir. 1990). *See also*

*United States v. Tyndall*, 521 F.3d 877, 882 (8th Cir. 2008) ("A mid-trial disclosure violates Brady only if it comes too late for the defense to make use of it."); *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983) ("No denial of due process occurs if Brady material is disclosed to appellees in time for its effective use at trial.").

To the extent that the Discovery Order, Scheduling Order, and *Brady* requirements regulate the Government's *Brady* disclosure obligations, the Court will enter no further order in this regard. It is worth noting, however, that the government's duty to disclose material evidence favorable to the accused is rooted in the premise that the sovereign's ultimate interest in criminal prosecution is not to maximize convictions for their own sake, but to ensure that "justice shall be done." *United States v. Agurs*, 427 U.S. at 111.

### B. Defendant's Motion for Exculpatory Evidence in Law Enforcement Personnel Files [Doc. 289]

Defendant McCluskey's requests in this motion are distinguishable from those in Section A(1), *supra*, only insofar as this motion focuses strictly on disclosure of information contained in law enforcement witness' personnel files.[4] The governing law is substantially the same, and the analysis differs but slightly. Defendant McCluskey asks the Court to order the Government to seek out and disclose, or alternatively provide to the Court for *in camera* review, all exculpatory evidence in the personnel and internal affairs files of Government witnesses employed or previously employed by law enforcement agencies including but not limited to the United States Department

---

[4]In his motion, Defendant appeared to be making an unexpectedly broad request for *all* information, which led the Government to spend effort dispelling any misapprehension that it was obligated to scour the personnel files of non-testifying law enforcement officers from all federal, state, and local agencies Defendant references, in an attempt to uncover evidence favorable to the defense. In his reply, however, Defendant McCluskey for the first time made clear that his request pertains only to those officers who will testify.

of Justice, the Federal Bureau of Investigations, the Bureau of Alcohol, Tobacco, and Firearms, the United States Marshals Service, the New Mexico Department of Public Safety, the New Mexico Department of Corrections, the Albuquerque Police Department, and many other state and local agencies as identified elsewhere in his motions.  The Government, again, objects primarily to the overarching nature of the request.

The Government undeniably has a duty to disclose impeachment evidence of its witnesses from files in its possession or control, and the Government affirms its awareness of this continuing duty.  The law does not, however, support Defendant McCluskey's broad request that the Court order the Government to affirmatively search and disclose information in state agency personnel records.  Defendant relies heavily on *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991), in which the Ninth Circuit held that it was error for the government not to have examined the personnel files of testifying officers from federal agencies for impeachment material.  The *Henthorn* court stated that the defendant was not required to make a preliminary showing of materiality but, instead, needed only to demand production to trigger a government duty to search and disclose the files.  *See id.*  Notably, however, the Ninth Circuit has refused to extend *Henthorn* to personnel files beyond those pertaining to testifying federal officers.  *See United States v. Santiago*, 46 F.3d 885, 895 (9th Cir. 1995) (requiring materiality showing as to prison inmate files before government obligated to disclose).

As discussed *supra* in sections II(A) and III(A)(1), the Tenth Circuit has held that, at least where there is no showing of joint agency, the state's knowledge and possession of potential impeachment evidence cannot be imputed to a federal prosecutor for *Brady* purposes.  *Beers*, 189 F.3d at 1304; *Combs*, 267 F.3d at 1175.  Therefore, the Court will not order the Government to

examine federal or state personnel files in the absence of a particular showing of materiality.[5]

Accordingly, the motion will be denied at this time without prejudice as to Defendant's right to

bring the matter before the Court upon providing the necessary showing.  As the Lujan Court

cautioned, however, "[i]n light of the uncertainty in this circuit, it would behoove the Government

to broadly construe its duty to learn of favorable evidence in personnel files of any state officials

participating in a joint investigation."  *United States v. Lujan*, 530 F. Supp. at 1249.

### C.   Defendant's Motion to Compel Expert Disclosures in Compliance with Rules 16(a)(1)(G) and this Court's Scheduling Order, for Depositions of Government Experts Pursuant to Rules 2, 16(a)(2), and 57, and for Adjustment of Scheduling Order (Doc. 292)

#### 1.   Expert Disclosures

Defendant McCluskey filed this motion challenging the sufficiency of the Government's

expert disclosures, requesting supplements thereto so he would not have to "figure out" which topics

would be the subject of the testimony at trial, or "guess which of thousands of pages of discovery

serves as the bases of the expert's testimony."  Doc. 292 ¶ 9.  Defendant McCluskey also asserted

that the Government violated the Court's Scheduling Order in regard to expert disclosure deadlines,

and requested an order requiring the Government to make its expert witnesses available for

deposition testimony as a sanction for the perceived violation.  Finally, Defendant McClusky

requested modification to the existing Scheduling Order to remedy what he deems late disclosure

---

[5]The Tenth Circuit has noted that under the *Kyles* "sliding scale approach to materiality vel non of the evidence in question, the specificity of the request is inversely related to the prosecution's disclosure obligation.  As the specificity of the defendant's request increases, a lesser showing of materiality will suffice to establish a violation.  Conversely, as the defendant's request becomes more general or even nonexistent, a greater showing of materiality is required to establish a Brady violation."  *Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d at 830 (internal quotations omitted).

of foundational data which prevented him from timely filing his future challenges pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

The Government responded that as of January 20, 2010, it had provided "a list of expert witnesses it intends to call in its case-in-chief, . . . possible penalty phase experts, with a summary of their expected testimony; all reports of the experts it intends to call at trial, with all but one report disclosed in 2011 (the final report disclosed January 20, 2012); all CV's or resumes of each expert listed in the United States' intent to call expert witness filing; and, all foundational data including testing analysis and underlying bases for conclusions. Additionally, all reports regarding the collection of evidence, chains of custody, and testing requests have been provided to Defendant." Doc. 332 at 50.  The Government also agreed to provide further summaries under Rules 702, 703, or 705 of the Federal Rules of Evidence and pursuant to Rule 16(a)(1)(G).  *Id.*

It was unclear to the Court from the pleadings precisely what foundational data had been provided when Defendant McCluskey filed this motion on January 30, 2012. In the hearing, however, the parties agreed that *Daubert* challenges would provide the proper vehicle for the Defendant's challenges to the Government's experts, including timeliness and sufficiency of the disclosures.  *See* Tr. at 42:1-7.

Though the Scheduling Order initially set a deadline of March 20, 2012 for filing defense motions pursuant to *Daubert*, upon unopposed motion by the Defendant, the Court extended that deadline to April 20, 2012.  *See* Doc. 385.  On April 19, 2012, the Court again extended the deadline for defense *Daubert* motions, this time to April 22, 2012, because the Court's CM/ECF filing system was unavailable for several days due to system maintenance.  *See* Doc. 416. Defendant then timely filed multiple *Daubert* motions on April 22, 2012.  In those motions,

20

Defendant McCluskey indeed mounts his challenges to the sufficiency of the Government's disclosures under Rule 16 and the Court's Scheduling Order.  *See* Docs. 418-421, 424, 425. Accordingly, the Court will rule on the expert disclosure issues in connection with the pending *Daubert* motions and the request in the present motion is, therefore, moot.

### 2.    Depositions

Defendant McCluskey also initially sought an order requiring the Government to make its experts available for depositions as a sanction for what McCluskey evidently perceived as the Government's violations of the Court's Scheduling Order and the Federal Rules of Evidence. Defendant McCluskey abandoned this request in the hearing, in favor of resolving his concerns through *Daubert* motions, and this request is also moot.  *See* Tr. at 39:6-10 ("And my [defense counsel Burt's] suggestion would be that the Court hold this motion in abeyance, and we will address in our Daubert motions any insufficiency we we feel exists on the expert witness summaries in the Daubert motion itself").

### 3.    Scheduling Order

The scheduling modifications Defendant requested in this motion pertain to the deadline for him to file his *Daubert* challenges.  Because the requested modifications were granted per the Court's Orders of March 20, 2012 and April 19, 2012 this request will be denied as moot.  *See* Docs. 385, 416.

### D.    Defendant's Motion for Discovery and Inspection of Matters Pursuant to Rule 16 [Doc. 286]

Defendant McCluskey moves pursuant to Rule 16 of the Federal Rules of Criminal Procedure for "complete disclosure" of a host of information, some of which he is entitled to under Rule 16, some of which has already been disclosed, and some of which exceeds his entitlement.  For

example, Defendant requests his own oral, written and recorded statements, to include all recorded telephone calls involving him, including those made while he was incarcerated at the Arizona Prison, the Apache County Jail, the Mohave County Jail, the New Mexico State penitentiary, or "any other local, state or federal detention facility."   Doc. 286 at 4.   Moreover, he requests this information from all of the sources identified *supra,* n.2.   While  Defendant concedes that the Government has disclosed several calls from the Arizona Prison, he "has reason to believe that substantially more were recorded and produced to the government." Doc. 286 at n.3.  Further, Defendant McCluskey notes that the Government's Notice of Intent to Seek Death Penalty references a call between McCluskey and an alleged witness on January 9, 2012, yet no call made during his time of incarceration in New Mexico [which evidently encompasses January 9, 2012 ] has been disclosed.   Defendant proceeds to request legitimately discoverable categories of information, though in such an inflated fashion as to render them too numerous to efficiently list here and too broad to grant wholesale.  In so doing, Defendant McCluskey relies primarily on the generalized virtues of broad discovery and the fact that the Government seeks imposition of the death penalty in this case.   Ultimately, however, Defendant states, "[a]t the very least, the government should be compelled to follow its most basic obligations under Rule 16 of the Federal Rules of Criminal Procedure and the requirements long established in *Brady v. Maryland*, 373 U.S. 83 (1963)."  The Court agrees with Defendant's assessment, noting that the Discovery Order in place already orders compliance with *Brady* and Rule 16.  Accordingly, Defendant's motion will be granted in part, to the extent that if he has not received information that he has identified with particularity, and is entitled to under Rule 16, the Government must so disclose without delay.

**E.     Defendant's Motion for Disclosure of Prior Acts Evidence [Doc. 281]**

Defendant McCluskey seeks an order requiring the Government to disclose evidence of other crimes, wrongs, or acts that it intends to introduce at trial, pursuant to Fed. R. Evid. 404(b), within 120 days of trial.  Defendant also requests that such disclosures identify in detail each other crime, wrong, or act it intends to introduce in its case-in-chief, as well as "the nature of the incident; the date, time and place of the incident; all persons who may testify regarding such incident including their name, address, and phone number; and all persons having knowledge of such incident including their names, addresses and phone numbers."  Doc. 281 at 1-2.

The Government responds that it already provided Defendant's prior criminal record, as well as those of his Co-Defendants, in April, 2011.  Also, as mentioned in the Third Superseding Indictment, Notice of Special Findings, where Defendant McCluskey has been identified as a perpetrator of an armed robbery of an Arkansas beauty salon, the Government disclosed the related police report in December, 2010.  Ultimately, the Government requests that this motion be denied as moot in view of its present agreement to provide Rule 404(b) notice no later than 30 days before trial.

Federal Rule of Evidence 404(b) prohibits the use of evidence of a defendant's other crimes or wrongs "to prove the character of a person in order to show that person acted in conformity therewith." Fed. R. Evid. 404(b)(2).  The notice requirement of 404(b) "'is not a tool for open ended discovery.'" *United States v. Jackson*, 850 F.Supp. 1481, 1493-94 (D.Kan.1994) (quoting *United States v. Sims*, 808 F.Supp. 607, 610 (N.D.Ill.1992), *aff'd* 76 F.3d 1145 (10th Cir. 1996)).  Instead, the timing and sufficiency of the notice reflects a desire "to reduce surprise [at trial] and promote early resolution on the issue of admissibility." Fed. R. Evid. 404(b) advisory committee note.

In view of the complexity and circumstances of this case, early disclosure and resolution of these admissibility issues is particularly important to assure that the parties have sufficient time to prepare their challenges, that the Court has time to thoroughly consider them, and to reduce the potential for trial disruptions.  Rule 404(b) requires reasonable notice in advance of trial and the Court finds that ninety (90) days in advance of trial is reasonable in this case.  Therefore, the Court will order the Government to provide to the defense notice of any 404(b) evidence it intends to introduce at trial at least ninety (90) days prior to commencement of trial.

### F.   Defendant's Motion for Order Requiring the Government to Comply with Federal Rules of Evidence Rules 807 and 1006 [Doc. 284]

#### 1.   Rule 807

Defendant McCluskey requests notice of any Rule 807 evidence the Government will introduce ninety (90) days before start of trial.  The Government acknowledges its obligation to provide notice of any potential Rule 807 evidence as set forth in Mr. McCluskey's motion, but objects to Mr. McCluskey's request that he be given such notice ninety (90) days before trial. Federal Rule of Evidence 807 states:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

24

Accordingly, Rule 807 requires notice to be given when the Government intends to use the rule and this requirement is a *precondition* to admissibility.  *See United States v. Vosburgh*, — F.3d —, 2010 WL 1542340 (3d Cir. April 20, 2010) (emphasis added).  The Tenth Circuit construes this notice quite strictly.  In *Sours v. Glanz*, a case in which an inmate sued several sheriff's deputies alleging they used excessive force against him, the Tenth Circuit reviewed the district court's ruling that Sours had not complied with the notice requirements of the rule.  *Sours v. Glanz*, 24 Fed.Appx. 912 (10th Cir. 2001).  Sours had sought to admit under Rule 807 an affidavit from a cell mate regarding the incident in question.  The cell mate had witnessed the altercation, but his whereabouts at the time of trial were unknown.  Thus, the notice failed to provide an address for the affiant. The Tenth Circuit upheld the exclusion of the affidavit.   The Court has consistently held that caution should be used when admitting evidence under Rule 807, as this rule "should only be used in extraordinary circumstances where the court is satisfied that the evidence offers guarantees of trustworthiness and is material, probative and necessary in the interest of justice." *United States v. Harrison*, 296 F.3d 994 (10th Cir. 2002) (quoting *United States v. Tome*, 61 F.3d 1446, 1452 (10th Cir. 1995)).

The Government responds that it "knows of no evidence that it will offer under Rule 807 at this time."  Doc 332 at 28.  The Government also states that if this changes, it will provide notice to Defendant two weeks before trial, such notice to include its intent to offer the statement as well as the particulars of it, including the name and address of the declarant, which the Government believes will provide Defendant McCluskey sufficient notice in advance of trial to allow him to prepare to meet it.  The Court disagrees with the Government's assessment of adequate time given the complex nature of this case and the multitude of pretrial matters that will surround the trial.

25

Accordingly, the Court will order notice of any Rule 807 evidence to be provided within thirty (30) days of the start of trial.

### 2.      Rule 1006

Rule 1006 permits a party to introduce a summary of voluminous documents or recordings as substantive evidence under certain circumstances.  Fed. R. Evid. 1006.  The rule provides: "The contents of voluminous writings, recordings, or photographs which cannot be conveniently examined in court may be presented in the form of a chart, summary or calculation.  The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place."  *Id.*  Where  Rule 1006 governs the presentation of evidence at trial, it is not a discovery rule.

It is settled Tenth Circuit law that only the documents underlying Rule 1006 summaries need to be disclosed – neither the government's databases used to analyze the documents nor the government's worksheets must be turned over.  *United States v. Lewis*, 594 F.3d 1270, 1282 (10th Cir. 2010) (finding that Rule 1006 does not require disclosure of the government's database). "[A]s long as the opposing party is given sufficient time to inspect the underlying documents, there is no reason to give the opposing party the benefit of the offering party's labor in preparing such worksheets or database."  *Id.*  The *Lewis* court stated that the most important aspect of trial preparation is access to the documents themselves.  *Id*.

Here, the Government represents that documents, reports, and other discovery have been furnished to Defendant continuously since the pendency of the case, providing Defendant sufficient time to review them prior to trial.  The Government asserts that expert-related foundational data intended to be used at trial was provided to the defense no later than February 17, 2012, more than

a year before the scheduled trial.  The Court has no information before it presently from which it could conclude the Government's representation is inaccurate.  Therefore, Defendant McCluskey's motion will be denied.[6]

### G. Defendant's Motion for Order Requiring the Government to Comply with Rule 12(b)(4)(B) [Doc. 285]

Defendant McCluskey moves for disclosure of all evidence the Government intends to use in its case-in-chief, at guilt or penalty trial, pursuant to Rules 12(b)(4)(B) and Rule 16, which evidence "may be the subject of a motion for suppression."  Doc. 285 at 1.

The Government responds that its full compliance with Rule 16 is sufficient to satisfy the notice requirements of Rule 12(b)(4)(B), and urges the Court to follow certain district courts having so determined.  *See* Doc. 285 at 31.  Alternatively, should the Court find that Rule 12(b)(4)(B) requires additional notice, the Government advocates the approach Judge Brack of this district court took in *United States v. Lujan*, requiring the Government to identify evidence it will not introduce in its case-in-chief, rather than pinpoint each piece from the large volume of evidence it will introduce.

The Government also objects to Defendant McCluskey's attempt to "expand" the notice requirements of Rule 12(b)(4)(B) to include identification of evidence the Government may introduce in the penalty phase of the proceedings, should there be such a phase.  In this vein, the Government asserts that the Rule does not contemplate a penalty phase trial as within the term "case-in-chief" for purposes of the Rule 12 notice provision, but offers little support for this

---

[6]The sufficiency of the foundational data disclosed on February 17, 2012 is challenged in Defendant McCluskey's pending *Daubert* motions and his position will be duly considered in that context.

conclusion.  The notice requirement of Rule 12(b)(4)(B) reads:

> At the arraignment or as soon afterward as practicable, the
> defendant may, in order to have opportunity to move to suppress
> evidence under Rule 12(b)(3)(C), request notice of the government's
> intent to use (in its evidence-in-chief at trial) any evidence that the
> defendant may be entitled to discover under Rule 16.

Fed. R. Crim. Pro. 12(b)(4)(B).  "The Rule provides a mechanism to insure that the defendant knows

of the government's intention to use evidence to which the defendant may want to object." *United*

*States v. Lujan*, 530 F.Supp.2d 1224, 1244 (D.N.M. 2008).  Though a defendant is already entitled

to discovery of the same evidence under Rule 16, Rule 12 provides an otherwise unavailable means

by which he can distill that evidence down when determining what he will move to suppress, sparing

him the futile exercise of moving to suppress evidence the government will not introduce.  *See* Fed.

R. Crim. P. 12, advisory committee notes, 1974 amendment.

Of the few circuit court decisions passing on the notice requirement of Rule 12, an opinion

from the First Circuit provides the most guidance.  In *Cruz-Paulino*, the government designated

certain evidence for introduction at trial, and stated that it would provide any additional evidence

it intended to use prior to trial. *United States v. Cruz-Paulino*, 61 F.3d 986 (1st Cir. 1995).  Then,

in its opening statement, the government referenced two pieces of physical evidence that it had not

designated.  *Id.* at 992.  The district court admitted the evidence over objection where the defense

had received the evidence under Rule 16.  The First Circuit found a violation of Rule 12(d)(2),

determining that an open file policy was insufficient to satisfy Rule12(d)(2).[7]  In a well-reasoned

opinion, the First Circuit determined that Rule 12(b)(4)(B) is a matter of procedure, not a rule

---

[7]The substance of Rule 12(b)(4)(B) was contained in Rule 12(d)(2) prior to the 2002
amendments.

"designed to aid the defendant in ascertaining the government's trial strategy, but only in effectively bringing suppression motions before trial, as required by Rule 12(b)(3)." *Id.* at 994.  Accordingly, the *Cruz-Paulino* court held that reversal was proper only upon a showing of prejudice, which had not been made.  *See id.* at 993.

District courts construing the government's notice obligations under Rule 12(b)(4)(B) are divided.  *Compare United States v. Cushmeer*, 2007 WL 1858269, *2 (N.D. Ohio June 26, 2007) (unpublished opinion) (denying request for notice as moot where Rule 16 obligations were met); *United States v. Jordan*, 2007 WL 1849985, *3 (E.D. Tenn. June 25, 2007) (unpublished decision) (denying defendant's motion to require government to provide exhibit list in satisfaction of Rule 12(b)(4)(B) and concluding that government's representation that all physical and documentary evidence had been forwarded to defense was sufficient) *with United States v. Cheatham*, 500 F.Supp.2d 528, 534-35 (W.D. Pa. 2007) (open file policy insufficient); *United States v. Anderson*, 416 F.Supp.2d 110, 112 n.1 (D.D.C. 2006) (open file policy combined with notice of intent to use all evidence insufficient, and stating that notice must consist of all evidence that will appear on government's exhibit list).

The *Lujan* court in this district confronted the same arguments and authority presently before this Court.  The *Lujan* court chose a moderate approach to implementing the Rule, rejecting both the narrow and expansive interpretations, and this Court is persuaded to follow suit.  The clear purpose of the Rule is to provide Defendant McCluskey with sufficient information to enable Defendant to file only germane motions to suppress, but is not intended to provide him access to the Government's trial strategy.  *See Cruz-Paulino*, 61 F.3d at 994.  To best effectuate the spirit and purpose of Rule 12(b)(4)(B) in this complex case, the Court will grant Defendant McCluskey's

request in part, such that the Government will immediately notify Defendant of any Rule 16 evidence it *does not* intend to introduce, including any information from a warrantless search or seizure; search or seizure based on a warrant; surveillance; interview; tracking device; mail cover; display of any photograph, likeness, image, or voice recording.

Defendant McCluskey also requests a determination that Rule 12(b)(4)(B)'s notice requirement includes evidence the Government intends to introduce solely in a penalty phase should there be one.  The Government objects to such an "expansion" of the Rule, though neither party has provided authority upon which the Court can make a thoroughly informed determination.  The Court notes that Federal Rule of Criminal Procedure 1 extends the application of all the Federal Rules of Criminal Procedure to all criminal proceedings in the courts of the United States, without distinguishing the selection/penalty phase in a death penalty trial.  Indeed, though Rule 1(a)(5) does specifically make the Rules inapplicable to certain proceedings, nowhere in the Rules does it state that they are inapplicable to the penalty phase in a Federal Death Penalty case.  Moreover, unlike 18 U.S.C. § 3593(c) of the FDPA, which abrogates the Federal Rules of Evidence, no provision in the FDPA abrogates the Federal Rules of Criminal Procedure.

Where the notice provision of Rule 12(b)(4)(B) pertains to that evidence which the Government intends to use "in its evidence-in-chief at trial," the Court will order short, expedited supplemental briefing limited to whether the Rule applies in a penalty phase under the Federal Death Penalty Act (FDPA), due to the Court no later than May 22, 2012.  To the extent the parties may find it useful, the Court directs them to *United States v. Webster*, 162 F.3d 308, 339 (5th Cir. 1999).

### H.    Defendant's Motion for Early Discovery of Jencks Act or Rule 26.2 of the Federal Rules of Criminal Procedure [Doc. 282]

Defendant McCluskey requests disclosure of "all Jencks Act material to the defense no less

than 90 days before the date set for the start of the trial [and for the Court] to examine all such material *in camera* no later than 150 days before trial." Doc. 282 at 1. The Jencks Act requires the government, upon a defendant's request, to disclose to the defendant any statement made by a government witness that is "in the possession of the United States," once the witness has testified at trial. 18 U.S.C. § 3500(a) & (b). The Jencks Act does not authorize the Court to order disclosure of prospective government witness' statements prior to trial. *United States v. Smaldone*, 544 F.2d at 461. Here, however, the Government has agreed to disclose Jencks Act material to the Defendant thirty (30) days prior to trial, and to provide materials to the Court for *in camera* inspection ninety (90) days prior to trial. Accordingly, reciprocal Jencks Act/Rule 26.2 disclosures will take place on this time line.[8] *See* Fed. R. Crim. P. 26.2(a), advisory committee notes, 1979 Addition.

Finally, the Court finds that the Government's *Brady* obligations and due process concerns outweigh the limitations on early disclosure of witness statements set forth in the Jencks Act. Accordingly, information falling in both categories must be disclosed in compliance with *Brady*.

**IT IS THEREFORE ORDERED** that:

I.      Defendant's *Motion for Disclosure of Exculpatory Information* **[Doc. 287]** is **DENIED** in part as to Defendant's broad, unsupported requests for *Brady/Giglio* information, and **DENIED** as moot as to the requested information falling under *Brady/Giglio* that the Court's Discovery Order and Scheduling Order already provide for and that the Government has and will continue to freely disclose;

II.      Defendant's  *Motion for Exculpatory Evidence in Law Enforcement Personnel Files* **[Doc. 289]** is **DENIED**;

III.      Defendant's *Motion to Compel Production of Expert Disclosures in Compliance with Rules*

---

[8]This includes statements in satisfaction of Defendant McCluskey's request pertaining to his Co-Defendants in ¶ 5 of his motion, though only if the information he seeks meets the restrictive definition of Jenks Act "statements." *See Palermo v. United States*, 360 U.S. at 349; *United States v. Smaldone*, 544 F.2d at 461.

*16(a)(1)(G) and this Court's Scheduling Order, for Depositions of Government Experts Pursuant to Rules 2, 16(a)(2), and 57, and for Adjustment of Scheduling Order* **[Doc. 292]** is **DENIED** as moot;

IV.     *Defendant's Motion for Discovery and Inspection of Matters Pursuant to Rule 16* **[Doc. 286]** is **GRANTED** in part as discussed herein;

V.      *Defendant's Motion for Disclosure of Prior Acts Evidence* **[Doc. 281]** is **GRANTED** and the Government will provide notice of all remaining 404(b) evidence no fewer than ninety (90) days prior to trial;

VI.     *Defendant's Motion for Order Requiring the Government to Comply with Federal Rules of Evidence Rules 807 and 1006* **[Doc. 284]** is **GRANTED** in part such that notice of Rule 807 evidence shall be provided at least thirty (30) days prior to trial and **DENIED** as to the remaining requests;

VII.    The Court will reserve ruling on *Defendant's Motion for Order Requiring the Government to Comply with Rule 12(b)(4)(B)* **[Doc. 285]**, and order the parties to brief the question herein as discussed in Section III(G) *supra*, the briefs not to exceed eight (8) pages in length and to be filed no later than May 22, 2012;

VIII.   Defendant's *Motion for Early Disclosure of Material Covered by the Jenks Act or Rule 26.2 of the Federal Rules of Criminal Procedure* **[Doc. 282]** is **GRANTED** insofar as the Government has agreed to disclose Jencks Act material at least thirty (30) days before trial and to the Court for *in camera* review at least ninety (90) days prior to trial;

and

IX.     Where Jencks Act statements and *Brady/Giglio* materials overlap, such statements shall be disclosed in accordance with *Brady* requirements.


_____
The Honorable Judith C. Herrera
United States District Judge

32