IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL NO. CR 10-2734 |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| JOHN CHARLES MCCLUSKEY ) | |
| Defendant ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE
PRISON GANG AND BOP EXPERT TESTIMONY (Dkt. 421)**

Now comes the United States of America, by and through the undersigned counsel, and responds to the Defendant's Motion to Exclude Prison Gang and BOP Expert Testimony. (Dkt. 421). The Government respectfully requests that this Honorable Court deny Defendant's motion. Evidence of the Defendant's gang membership may be relevant to guilt-phase contextual issues and to certain witnesses' state of mind. Further, testimony is expected to be offered in the penalty-phase as rebuttal and to address the significance of Defendant's allegiance to a gang as it applies to the future dangerousness factor. BOP testimony will be offered in the penalty-phase as rebuttal as it applies to the future dangerousness factor. The broad relief requested by Defendant is not warranted and the claim would be better addressed by timely objection or limiting instruction at trial.

**Credentials and background of the Government's proffered experts**

Defendant challenges the Government's proffered expert witnesses as to gang evidence as unreliable. To the contrary, the Government's witnesses have impressive resumes. Chief Leslie S. Smith began his career with the Bureau of Prisons in 1989 as a correctional officer in El Reno, Oklahoma. In 1993 he transferred to the United States Penitentiary in Florence, Colorado, where

in 1995 he was promoted to Lieutenant. While serving at the Administrative Maximum Penitentiary (ADX), Florence, he was promoted to GS-11 Lieutenant. Chief Smith was promoted once again in 2002 to Special Investigative Agent at ADX, Florence. His responsibilities include managing the institution's investigative and inmate intelligence operations. As such he has an intimate knowledge into the behavior of inmates, allegiances made while in prison, and specific security threats. Significantly, he has testified as an expert witness in several criminal proceedings in federal court related to prison gang activity, specifically those inmates affiliated with the Aryan Brotherhood (AB). He received the Attorney General's Award for Excellence in Furthering the Interests of U.S. National Security in 2003, and is currently assigned to the CTU (Counter Terrorism Unit), as the leader of this new unit within the BOP. The unit identifies and validates the international and domestic terrorist offenders in custody, provides relevant counter terrorism training, and produces intelligence products enabling staff to make informed decisions regarding these inmates. His proposed testimony would include his experience with the AB within BOP, and the future dangerousness of Defendant in regard to his affiliation with that group.

     Special Investigator Keland Boggs is currently assigned to the Security Threat Group (STG) Unit within the Arizona Department of Corrections (ADC), where he has worked since 1999. As a certified police officer he has received hundreds of hours in gang and investigator training. Currently responsible for identifying members of security threat groups within ADC, including street gangs, he also conducts certifications of security threat groups and debriefs of their members. Assigned to the Federal Bureau of Investigation's (FBI) Hybrid Prison Task Force and Arizona Department of Public Safety's Gang Intelligence & Immigration Team Enforcement Mission (GIITEM) in 2009, he conducted and assisted local law enforcement agencies throughout the state

of Arizona in investigating gang activity. During that time he also continued to work inside the ADC investigating prison gangs. He has worked within ADC at its Eyman/Browning Unit where he was assigned to the Special Security Unit (SSU) responsible for monitoring gang activity. This facility houses all of the ADC validated prison members. Officer Boggs has experience in both medium and maximum custody facilities and has presented gang training on behalf of the Arizona Gang Investigators Association, East Valley Gang Investigators Association, GIITEM and ADC. He has testified as a gang expert numerous times on the Arizona Mexican Mafia and Aryan Brotherhood. His testimony would include the nature of the AB within ADC, its activities as a security threat group, and any possible future dangerousness of Defendant due to his affiliation with this STG.

Defendant also challenges Mr. D. Scott Dodrill's testimony as a BOP expert. Mr. Dodrill has 32 years of prison management experience with the BOP. He recently retired as the Assistant Director of the Correctional Programs Division, which is a Senior Executive Staff member position. During his tenure with BOP he served at nine correctional institutions, two Regional Offices, and the Central Office of BOP on two separate occasions. Responsible for direct supervision to over 500 employees in numerous states including Texas, West Virginia, California, and Pennsylvania, he provided policy direction to 116 correctional institutions, six regional offices and approximately 300 residential re-entry centers. He wrote and developed policies and directed efforts for training in all departments covered under the Correctional Programs Division. Additionally, he was the Regional Director at the Northeast Regional Office in Philadelphia, Penn., which consisted of ten states. He managed the NERO, 18 correctional institutions and five community corrections offices which provide oversight to 42 residential re-entry centers. While in that position he provided direct supervision of 18 wardens and 13 regional administrators, as well as being responsible for 6,200

staff, 36, 000 inmates and a $650 million budget. His resume includes a position as Warden of the United States Penitentiary in Lewisburg, Pennsylvania, which consisted of overseeing the operations the Federal Prison Industries employing approximately 350 inmates in a metal factor, numerous leadership duties, and the living quarters for vocational, industrial, administrative, religious and food service programs. Prior to his position at Lewisburg, Mr. Dodrill was Warden at the Federal Correctional Complex in Butner, N.C. He is eminently qualified to discuss the inner workings of BOP, and has testified numerous times regarding these issues, including in *Lujan*. His testimony will include discussion regarding inmate designation, the procedures within BOP, including work rotations and educational opportunities for inmates, as well as how inmates earn placement in less restrictive facilities.

## Argument and Law

### A.   Gang evidence is admissible

Defendant argues that any evidence of his allegiance to the Aryan Brotherhood is not relevant to the elements of the charged crime and would be unduly prejudicial. The Government recognizes that the affirmative use of gang-participation evidence to show the Defendant's bad character or propensity to commit crimes is impermissible under Fed. R. Evid. 404 and, possibly, 403. However, the Government does not plan to offer gang-participation evidence for such purposes. Rather, it is possible that the Government will elicit testimony from witnesses regarding their knowledge of the Defendant's gang activity only to place respective witnesses' testimony in context and show the witnesses' states of mind at the time the Defendant made certain incriminating statements.

The Supreme Court has held that gang evidence is admissible when relevant to a material issue in a case, such as a witness's bias. *Untied States v. Abel*, 469 U.S. 45, 49 (1984) (holding

4

district court did not err in permitting government rebuttal testimony regarding gang membership of defendant and defense witness where the evidence was relevant to show the witness's bias in favor of the defendant). In describing the relevance of the gang evidence at issue in *Abel*, the Court explained that "[a] successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony." *Id*. at 51. The *Abel* Court concluded that the district court did not err in permitting the government's rebuttal witness to fully describe the defendant's prison gang and its tenets because the attributes of the gang bore directly on the fact of witness bias, as well as the source and strength of the witness's bias. *Id*. at 54-55 (holding defendant not unduly prejudiced under Fed. R. Evid. 403).

In accordance with *Abel*, courts have found that gang evidence is admissible to show motive and credibility of witnesses. *See United States v. Keys*, 899 F.2d 983, 987 (10th Cir. 1990) (holding witnesses' testimony might have been influenced by their fear of defendant and his gang); *United States v. Santiago*, 46 F.3d 885, 889-90 (9th Cir.) *cert. denied*, 515 U.S. 1162 (1995) (same). *See also Guillen v. Scribner*, 2010 WL 2509416, *18 (C.D. Cal. Mar. 23, 2010) (holding on habeas review of murder case that there was no due process violation where gang evidence and witnesses' knowledge that defendant was a gang member was relevant to such witnesses' state of mind and credibility)*; Vargas v. Gunn*, 67 F.3d 310, unpublished, 1995 WL 563435, *2 (9th Cir. 1995) (holding that counsel was not ineffective for failing to object to evidence that the victim had received threatening phone calls prior to testifying because evidence showed witness's state of mind and was relevant to an evaluation of the witness's credibility).

Evidence of the Defendant's gang membership may be elicited to show the state of mind of

certain witnesses and may be relevant to the evaluation of these witnesses' credibility. Thus, the witnesses' statements regarding the Defendant's gang membership may have a tendency to make the facts to which those witnesses testify more probable than would be without the gang-membership testimony. *See Abel*, *supra*.

Unless the argument sought to be excluded pursuant to a motion in limine is clearly inadmissible for any purpose, evidentiary ruling should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context. *United States v. Caputo*, 313 F. Supp.2d 764, 767-68 (N.D. Ill. 2004); *United States v. Ozsusamlar*, 428 F. Supp.2d 161, 164-65 (S.D.N.Y. 2006). Accordingly, a blanket exclusionary order is not appropriate at this stage of this litigation. Rather, the Defendant should make timely objections to testimony he believes is impermissible at trial and the Court should rule on the objections in the full-context of the trial. Additionally, if necessary, the Court may read a limiting instruction to the jury indicating to the jury for what purposes they may consider any gang-membership evidence. *See Keys*, 899 F.2d at 988 (approving of limiting instruction that the jury should only consider gang evidence for the purpose of evaluating the credibility of witnesses).

### B.   Expert witness law

The United States has fully outlined the law on expert witnesses and *Daubert* in several other responses to Defendant's motions, and as such they are incorporated here. In *United States v. Locascio*, 6 F.3d 924 (2d Cir. 1993), *cert. denied*, 511 U.S. 1070 (1994) (internal quotes omitted)(citations omitted), which has been followed by the Tenth Circuit in *United States v. Garcia*, 994 F.2d 1499, 1506 (10th Cir. 1993), stated that "opinion testimony is not limited to experts." *Id.* Looking at Rule 702, and that an expert is permitted to testify in the form of an opinion or otherwise

6

when that testimony would "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. In *Locascio*, the Second Circuit upheld the admission of testimony by an FBI agent who testified at "great length on the nature and function of organized crime families and disclosing the 'rules' of the La Cosa Nostra." 6 F.3d at 936. The court in *Locascio* noted it had previously upheld the use of similar expert testimony to help explain the 'operation, structure, membership, and terminology of organized crime families." *Id*. (*citing United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir.), cert. denied, 488 U.S. 821 (1988)). Other circuits have done the same. The Seventh Circuit has consistently upheld the admissibility of gang evidence to establish, among other things, the intent or agreement to conspire, and the relationship among alleged coconspirators. *United States v. Lewis*, 910 F.2d 1367 (7th Cir. 1990) (recognizing that gang membership has probative value under appropriate circumstances).

Defendant challenges the Government's proposed experts as relying upon "nameless informants" and the need to voir dire extensively to learn of these unnamed people. This claim was also raised in *Locascio*, where defendants claimed the testimony violated FedR.Evid. 703 and the Confrontation Clause of the Sixth Amendment. The court countered by noting that, according to Rule 703, "the facts that form the basis for an expert's opinion or inferences need not be admissible in evidence '[i]f of a type *reasonably relied* upon by experts in the particular field.'" *Locascio*, 6 F3d at 938 (quoting Fed.R.Evid. 702)(emphasis in original). "Thus, expert witnesses can testify to opinions based on hearsay or other inadmissible evidence if experts in the field reasonably rely on such evidence in forming their opinions." *Id*. The gang expert in Locascio was "entitled to rely upon hearsay as to such matters as the structure and operating rules of organized crime families and the identification of specific voices heard on tape in forming his opinion since there is little question

7

that law enforcement agents routinely and reasonably rely upon such hearsay in the course of their duties." *Id.* The fact that an expert witness relies upon inadmissible evidence is less an issue of admissibility for the court than an issue of credibility for the jury, since an expert who meets the test of Rule 702 is assumed to "have the skill to properly evaluate the hearsay, giving it probative force appropriate to the circumstances." *Locascio*, 6 F.3d at 938. (quoting *In re "Agent Orange" Product Liability Litigation*, 611 F.Supp. 1223, 1245 (E.D.N.Y. 1985), *aff'd,* 818 F.2d 187 (2d Cir. 1987), *cert. denied*, 487 U.S. 1234 (1988)).

Finally, the court in *Locascio* held that even though an "accomplice witness was available to provide similar testimony concerning the operations of organized crime families," the prosecution was not prohibited from putting on its evidence through its gang expert. *Locascio*, 6 F.3d at 939. Rule 702 "requires only that an expert have some 'specialized knowledge that will assist the trier of fact.' There is no requirement that prohibits a government agent from testifying as an expert merely because an accomplice witness is also available." *Id*. It is the district judge who has the ideal vantage point to evaluate an expert's testimony during trial, and who already has the authority under Fed.R.Evid. 403 to conduct an explicit trustworthiness analysis should one be deemed necessary. *Id*. At 938-99 (citing *Shatkin v. McDonnell Douglas Corp*, 727 F.2d 202, 208 (2d Cir. 1984) (noting that the district court has the "discretionary right under Rule 703 to determine whether the expert acted reasonably in making assumptions of fact upon which he wold base his testimony."))

  **C.**  **The testimony is relevant, reliable and will aid the trier of fact**

In *United States v. Tocco*, 200 F.3d 401, 418 (6th Cir. 2000), *cert. denied*, 539 U.S. 926 (2003), an FBI Agent's testimony was considered relevant and reliable under the principles of *Daubert*. The testimony offered by the Agent "regarding the inner-workings of organized crime has

8

been held to be a proper subject of expert opinion because such matters are 'generally beyond the understanding of the average layman.'" *Id.* At 419 (*quoting United States v. Thomas*, 74 F.3d 676, 682 (6th Cir. 1996), and citing *United States v. Amuso*, 21 F.3d 1251, 1264 (2d Cir. 1994); *Locascio*, 6 F.3d at 936-37. The Sixth Circuit rejected the defense argument that such testimony was unduly prejudicial and noted it had rejected a similar argument in *Thomas*, where the defendant argued that a police officer should not be able to testify in a single case as both a fact witness and an expert witness). *Tocco*, 200 F.3d at 418. Such testimony is permissible if "the district court and the prosecutor take care to assure that the jury is informed of the dual roles of a law enforcement officer as a fact witness and an expert witness." *Id*.

    The anticipated testimony of Mr. Dodrill, Smith, and Boggs falls well within the line of permissible testimony presented as rebuttal witnesses in cases of this nature, where there is an established allegiance to a gang that is also a well-known prison gang within ADC and BOP. This type of testimony goes to the heart of the Defendant's future dangerousness within BOP. Defendant claims to not have information regarding gang affiliation, however the Government has provided his full criminal history, including regarding his time spent in the Pennsylvania prison system. This, along with coconspirator statements, and acknowledged affiliation by Defendant including his tattoos, are such evidence. Clearly, the proffered testimony is not scientific in nature, consequently the Court does not need to determine whether such testimony can be empirically tested and refuted. Nor, under these circumstances does the Court need to determine whether the three proposed expert's work has been subjected to peer review and publication, or decide that it has a known or potential rate of error. Instead, the Court can use the tools provided by *Daubert* and *Kumho Tire*. *See Kumho Tire*, 526 U.S. at 141-42 (The "trial court *may* consider one of more of the more specific

factors that *Daubert* mentioned when doing so will help determine that testimony's reliability.") But, as the Court stated in *Daubert,* the test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination. Thus, such factors should be considered only "to the extent that they are relevant," and a court "must customize its inquiry to fit the facts of each particular case." *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1083 (8th Cir. 1999) (citations omitted). The bottom line is that Rule 702 adequately covers the expected testimony of the three proffered experts of the Government. The Defendant's ability to test or refute this evidence will come through cross-examination.

### D.   A *Daubert* hearing is unnecessary

Defendant stresses this Court must have a *Daubert* hearing regarding the proposed testimony. The Tenth Circuit, however, has held that although *Daubert* hearings are the most common way to fulfill the gatekeeper function, such a process is not specifically mandated. *United States v. Nacchio*, 2009 WL 455666, at *13 (D.N.M. Feb. 25, 2009). Consequently, the Court is not required to hold a hearing prior to permitting the introduction of testimony regarding gangs within ADC and BOP, or the functions and inmate classifications of BOP as a whole. The testimony of Dodrill, Smith and Boggs will not be scientific in nature, so there should be no concern about implications of scientific certainty or expertise.

### Conclusion

For the reasons set forth above, the Government respectfully requests that this Honorable Court deny the Defendant's motion without holding an evidentiary hearing.

Respectfully submitted:
KENNETH J. GONZALES
United States Attorney

*Filed Electronically*
LINDA MOTT
GREGORY J. FOURATT
Assistant U.S. Attorneys
201 Third St., NW, Suite 900
Albuquerque, New Mexico 87102
(505) 346-7274

MICHAEL S. WARBEL
Trial Attorney
United States Department of Justice
Capital Case Unit
1331 F. St. NW, Rm. 346
Washington, DC 20004
(202) 514-5605

I HEREBY CERTIFY that I electronically
filed the foregoing with the Clerk of the
Court using the CM/ECF
system which will send notification to
Michael Burt and Theresa Duncan, Esqs.

 /s/
LINDA MOTT
Assistant U.S. Attorney