## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**vs.**             **CR. No.  10-2734 JCH**

**JOHN CHARLES McCLUSKEY,**

    **Defendant.**

### <u>MEMORANDUM OPINION AND ORDER</u>

The subject of this Memorandum Opinion and Order is Defendant's *Motion to Suppress Medical, Mental Health, and Educational Records* [Doc. No. 294], filed January 30, 2012.  In the motion, McCluskey seeks to suppress medical and mental health records that the Government obtained without a warrant from the Pennsylvania Department of Corrections ("PDC").  As the Court understands it, these records relate to McCluskey's period of incarceration with the PDC at some point prior to the time period at issue in the Third Superceding Indictment.  In addition, McCluskey seeks to suppress his educational records that the Government obtained without a warrant from the Duncan Unified School District.  As grounds for the motion, McCluskey contends that the seizure of these records violated his Fourth Amendment rights.  McCluskey did not request a hearing on this motion, and it appears that there are no disputed issues of fact to be resolved.  Accordingly, the Court will resolve the motion on the briefs filed by the parties.  After reviewing those briefs, the Court concludes that the motion should be granted as to the medical and mental health records, but denied as to the educational records.

## DISCUSSION

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV; *see O'Connor v. Ortega*, 480 U.S. 709, 715 (1987). The protections of the Fourth Amendment are triggered when an individual seeking refuge under the Fourth Amendment "has a legitimate expectation of privacy in the invaded place" or the item seized. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *see United States v. Rusher*, 966 F.2d 868, 873–74 (4th Cir.1992). Thus, searches and seizures conducted in the absence of probable cause and a warrant are impermissible only if the officer encroaches upon a legitimate expectation of privacy. *See California v. Greenwood*, 486 U.S. 35, 39 (1988). A legitimate expectation of privacy exists when the individual seeking Fourth Amendment protection maintains a "subjective expectation of privacy" in the area searched that "society [is] willing to recognize . . . as reasonable." *California v. Ciraolo*, 476 U.S. 207, 211 (1986); *see Oliver v. United States*, 466 U.S. 170, 177–78 (1984) (explaining that the legitimacy of a reasonable expectation of privacy under the Fourth Amendment is determined by "our societal understanding").

In this Court's view, the foregoing framework remains unchanged by the Supreme Court's recent decision in *United States v. Jones*, 132 S. Ct. 945 (2012), a case relied on by both McCluskey and the Government. In *Jones*, the defendant sought suppression of data obtained from a GPS tracking device placed on his vehicle without a valid warrant. In its majority opinion authored by Justice Scalia, the Court held that the installation of a GPS device on a suspect's vehicle and its use of the device to track his movements constitutes a search for Fourth Amendment purposes. *Id*. at 949. In reaching its conclusion, the Court reviewed the history and rationale of its Fourth Amendment jurisprudence, pointing out that the text of the amendment "reflects its close connection

2

to property" and its ties to common-law trespass. *Id*. Thus, the Court observed that in *Jones*, the "Government physically occupied private property for the purpose of obtaining information" which would have been considered a search at the time the Fourth Amendment was adopted. *Id*. As a result, it remained a search to this day. *Id*. In this regard, the Court did rely upon the property/trespass theory of Fourth Amendment jurisprudence. However, the Supreme Court was also careful to explain that this "exclusively property-based approach" has been supplemented over the years to include intrusions on Fourth Amendment rights when government officials violate a person's reasonable expectation of privacy. *Id*. at 950 (citing *Katz v. United States*, 389 U.S. 347, 351 (1967)). The Court explained that while *Katz* added to the common-law trespassory test, it did not replace it altogether. *Id.* at 952. Instead, *Katz* "established that property rights are not the sole measure of Fourth Amendment violations, but did not snuff out the previously recognized protection for property." *Id*. at 951 (citation and quotation omitted). Thus, the rationale of *Jones* did not effect a revolution in Fourth Amendment jurisprudence. Instead, the Supreme Court merely clarified that placement of the GPS device on Jones' vehicle was a trespass upon his personal property in violation of longstanding Fourth Amendment principles. In this Court's view, nothing in *Jones* undermines the continuing vitality of *Katz* and the principle that government violates the Fourth Amendment when it violates a person's reasonable expectation of privacy, even in the absence of a trespass to property.

## I.    <u>Prison Medical Records</u>

McCluskey asks the Court to suppress his medical and mental health records from the PDC, which apparently relate to a period of time that predates the crimes alleged in the Third Superceding Indictment and which the Government obtained without a warrant. McCluskey argues that he has

a reasonable expectation of privacy in his medical records such that their seizure violated his Fourth Amendment rights.

As the Government correctly points out, there was no trespass upon McCluskey's property when it obtained his medical and mental health records. McCluskey did not create the records, nor were they in his possession. McCluskey exerted no ownership or control over the records. In short, the records at issue were not McCluskey 's property such that the Government's seizure of those records was akin to a common-law trespass. Thus, the next question is whether McCluskey has a reasonable expectation of privacy in the records he seeks to suppress. There is no talismanic test to determine whether an expectation of privacy is one that society is prepared to accept as reasonable. *See O'Connor v. Ortega*, 480 U.S. at 715 (plurality) ("We have no talisman that determines in all cases those privacy expectations that society is prepared to accept as reasonable."). According to the Tenth Circuit, "scholars have emphasized that the ultimate question of whether a privacy expectation is reasonable is a value judgment. It is whether, if the particular form of surveillance practiced by the police is permitted to go unregulated by constitutional restraints, the amount of privacy and freedom remaining to citizens would be diminished to a compass inconsistent with the aims of a free and open society." *United States v. Johnson*, 584 F.3d 995, 1000 (10th Cir. 2009) (internal citations and quotations omitted).

Generally speaking, as a society we accept as reasonable an expectation of privacy in our medical records. The reason for this is apparent: medical treatment records contain intimate and private details that people do not wish to have disclosed, expect will remain private, and, as a result, believe are entitled to some measure of protection from unfettered access by government officials. In support of his contention that he has a reasonable expectation of privacy in his medical records from the PDC, McCluskey cites several cases that express this societal norm in the context of

4

medical treatment of individuals outside the prison system.  *See, e.g., Ferguson v. City of Charleston*, 532 U.S. 67, 78 (2001) ("The reasonable expectation of privacy enjoyed by the typical patient undergoing diagnostic tests in a hospital is that the results of those tests will not be shared with nonmedical personnel without her consent."); *Herring v. Keenan*, 218 F.3d 1171, 1173 (10th Cir. 2000) (finding that parolee's constitutional right to privacy was violated when parole officer informed parolee's sister and employer regarding parolee's HIV status); *A.L.A. v. West Valley City*, 26 F.3d 989, 990 (10th Cir. 1994) (recognizing that there is a constitutional right to privacy regarding disclosure by a police officer of the results of an arrestee's HIV test); *Lankford v. City of Hobart*, 27 F.3d 477 (10th Cir. 1994) (concluding that sheriff was not entitled to qualified immunity for his seizure of an employee's medical records because "there is no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection.") (citations and quotation omitted).  Similarly, as McCluskey correctly points out, the Health Insurance Portability and Accountability Act ("HIPAA"), Pub.L. 104–191, 110 Stat.1936 (1996), expresses Congress' recognition that, in this society, we uphold one's right to privacy in one's medical and mental health treatment records.  *See generally* 45 C.F.R. Part 164 (2011).  Thus, the right to privacy in one's medical records is well established.

The question, then, is whether the Government is correct in its position that a prisoner loses <u>all</u> rights to privacy in records of medical treatment he receives while in prison for every purpose, even after he has been released from that prison.  Relying on *Hudson v. Palmer*, 468 U.S. 517, 524 (1984), the Government points out that "imprisonment carries with it the circumscription or loss of many significant rights."   That is certainly true of inmates confined within prison walls.  Loss of privacy is an "inherent incident [ ] of confinement." *Bell v. Wolfish*, 441 U.S. 520, 537 (1979).  "A

5

right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in *institutional security*." *Hudson*, 468 U.S. at 527-28 (emphasis added). Thus, in *Hudson* the Supreme Court concluded that prisoners have no reasonable expectation of privacy—and therefore no Fourth Amendment right to be free of unreasonable searches—in their prison cells. The Court reasoned that for the safety and security of both inmates and prison staff, prison officials must be free to conduct unfettered searches of inmates' cells. *Id.* at 526-28.

Similarly, many Circuit Courts of Appeals have concluded that prisoners do not have a constitutionally protected expectation of privacy in prison medical treatment records when the state has a legitimate penological interest in access, such as protecting the health and safety of other prisoners and guards. In many of these cases, the courts have reasoned that prisons need access to prisoners' medical records to protect prison staff and other prisoners from communicable diseases and violence, and to manage rehabilitative efforts. *See, e.g., Seaton v. Mayberg*, 610 F.3d 530, 534 (9th Cir. 2010); *Doe v. Delie*, 257 F.3d 309, 311 (3d Cir. 2001) ("We hold that the Fourteenth Amendment protects an inmate's right to medical privacy, *subject to legitimate penological interests*.") (emphasis added); *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999) ("[T]his Court already has accorded constitutional stature to the right to maintain the confidentiality of previously undisclosed medical information. It follows that prison officials can impinge on that right only to the extent that their actions are 'reasonably related to legitimate penological interests.'"); *Tokar v. Armontrout*, 97 F.3d 1078, 1084 (8th Cir. 1996) (relying on cases cited below, including *Anderson, Moore,* and *Harris*, to conclude that an inmate "had no clearly established constitutional right to

6

non-disclosure of HIV status"); *Anderson v. Romero*, 72 F.3d 518, 524 (7th Cir. 1995) ( "Neither in 1992 nor today was (is) the law clearly established that a prison cannot without violating the constitutional rights of its HIV-positive inmates reveal their condition to other inmates and to guards in order to enable those other inmates and those guards to protect themselves from infection."); *Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir. 1994) (applying previous Sixth Circuit precedent to preclude any constitutional right to informational privacy); *Moore v. Mabus*, 976 F.2d 268, 271 (5th Cir. 1992) ("[T]he identification and segregation of HIV-positive prisoners obviously serves a legitimate penological interest."); *Harris v. Thigpen*, 941 F.2d 1495, 1513, 1521 (11th Cir. 1991) (assuming, *arguendo*, that prisoners have a right to privacy in medical records, including HIV status, but holding that disclosure "is a reasonable infringement in light of the inmate interests at stake (both seropositive and general population), and the difficult decisions that the Department Of Corrections must make in determining how best to treat and control within Alabama correctional facilities the spread of a communicable, incurable, always fatal disease.").  The common thread in all of the foregoing cases is the conclusion that the government's need for the information in order to protect inmates and prison staff—concerns which amount to a legitimate penological interest— outweighs the privacy interest of the individual prisoner whose medical records are at issue.  Thus, these cases are distinguishable from the present case in one fundamental and determinative respect—the Government has no legitimate *penological* interest in the records from Defendant's prior incarceration.  Specifically, the Government has not expressed a need for the records in order to protect the security, health or welfare of the Defendant, his fellow inmates, or of the prison staff.

Neither party has come forward with authority that discusses whether a *former* inmate has a reasonable expectation of privacy in his medical records from the time of his prior incarceration. In the absence of such authority and in the absence of any demonstrated legitimate penological

interest in the records by the Government, this Court concludes that a defendant does have a reasonable expectation of privacy in those records after he leaves the institution at which the records were generated.   The cases discussed above strongly suggest that a privacy interest exists and continues, subject to the penological interest exception discussed above.  The Government contends, without support, that to hold that such an expectation exists "would greatly hinder law enforcement's ability to obtain any person's medical records in criminal cases, which are routinely obtained by a subpoena or a simple request."  Doc. No. 330 at 5.[1]  Of course, the fact that law enforcement has "routinely" used an investigative technique does not necessarily make that technique constitutional in the absence of a warrant.[2]  For example, law enforcement officials have

---

[1] The Government has indicated that it obtained McCluskey's medical records through a simple request to Pennsylvania prison officials.

[2] The regulations implementing HIPAA, none of which are discussed by the parties, provide that under certain circumstances entities required to comply with HIPAA may disclose protected health information to a law enforcement officer for law enforcement purposes.  The regulations state that covered entities may disclose information:

> In compliance with and as limited by the relevant requirements of:
> (A) A court order or court-ordered warrant, or a subpoena or summons issued by a judicial officer;
> (B) A grand jury subpoena; or
> (C) An administrative request, including an administrative subpoena or summons, a civil or an authorized investigative demand, or similar process authorized under law, provided that:
>> (1) The information sought is relevant and material to a legitimate law enforcement inquiry;
>> (2) The request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and
>> (3) De-identified information could not reasonably be used.

45 C.F.R. § 164.512(f)(1)(ii).  Though a violation of HIPAA certainly is not dispositive of a reasonable expectation of privacy, it is relevant to the question of "our societal understanding" of what privacy interests should be protected.

used GPS devices on suspects' automobiles for quite some time, and yet in *Jones* the Supreme Court recently clarified that such monitoring constitutes a search under the Fourth Amendment.  Nor does the Government explain why obtaining a warrant in order to gain access to a defendant's prior medical records—a requirement already in place with regard to many other searches—would hinder investigations by law enforcement.

Accordingly, the Court concludes that McCluskey presently has a reasonable expectation of privacy in his medical records from his incarceration in Pennsylvania years before the events charged in the Third Superseding Indictment.  Though the Government has a prosecutorial interest in obtaining the records, it has demonstrated no legitimate *penological* interest in obtaining them without a warrant.  Thus, when it obtained the records through a simple request to prison officials, the Government conducted a warrantless search and seizure that violated McCluskey's Fourth Amendment rights.

## II.   <u>Educational Records</u>

Defendant also moves to suppress his public education records on the ground that their disclosure without a warrant violates his Fourth Amendment rights.  Again, Defendant does not argue that he created, owned, or maintained the records such that their seizure constituted a trespass on his property.  Instead, he contends the he had reasonable expectation of privacy in the records.  In support of that proposition, Defendant relies upon the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g.  However, FERPA does not prohibit law enforcement officers from obtaining a former student's education records from an education institution without a warrant. "Congress enacted FERPA under its spending power to condition the receipt of federal funds on certain requirements relating to the access and disclosure of student educational records."

*Gonzaga University v. Doe*, 536 U.S. 273, 278 (2002).  In addition, in *Gonzaga*, the Supreme Court held that FERPA does not create an individual privacy right enforceable under § 1983.  *Id*. at 290. FERPA's sole enforcement mechanism is the Department of Education's power to withhold federal funds from education institutions that disclose education records to unauthorized third parties. *Gonzaga*, 536 U.S. at 279; 20 U.S.C. § 1232g(b)(1).

The Court concludes that education records are fundamentally different than medical and mental health records.  Education records generally do not contain the same degree of private, sensitive, and highly personal information that medical and mental health records do.  As such, one's expectation of privacy in such records is significantly less than in medical and mental health records. Furthermore, FERPA does not appear to manifest an expectation of privacy in one's educational records that society would uphold as reasonable, such that law enforcement may not obtain the records without a warrant.  At least one district court has reached a similar conclusion.  *See United States v. Haffner*, 2010 WL 5296920 (M.D. Fla. Aug. 31, 2010) (magistrate judge's report and recommendation), adopted by district judge in 2010 WL 5296847 (M.D. Fla. Dec. 20, 2010) (unpublished).

Accordingly, Defendant's motion to suppress his education records will be denied.

**IT IS THEREFORE ORDERED** that Defendant's *Motion to Suppress Medical, Mental Health, and Educational Records* [Doc. No. 294] will be **GRANTED IN PART** as to his medical and mental health records from the Pennsylvania Department of Corrections and **DENIED IN PART** as to his educational records.

_____
**UNITED STATES DISTRICT JUDGE**