IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                  CR. No.  10-2734 JCH

JOHN CHARLES McCLUSKEY,

        Defendant.

### MEMORANDUM OPINION AND ORDER

        Currently before the Court are two discovery motions: (1) *Defendant's Motion for Discovery to Support Motion to Strike Death Penalty Based Upon Influence of Arbitrary Factor of Race and Gender of Victim* [Doc. No. 390], and (2) *Defendant's Motion for Production of Legal Instructions Provided to the Grand Jury* [Doc. No. 395]. Counsel for the parties have fully briefed the motions. Counsel have not requested a hearing on either motion, nor does the Court conclude that oral argument is necessary. After considering the motion, briefs, and relevant law, the Court concludes that the first motion should be denied, and the second should be denied in part as further explained herein.

### DISCUSSION

**I.**        **Discovery Regarding Race and Gender Bias In Application of the Death Penalty**

        Decisions to seek the death penalty within the federal system are made pursuant to the so-called "Death Penalty Protocol," which was promulgated by the Department of Justice ("DOJ") shortly after enactment of the Federal Death Penalty Act ("FDPA") and now appears in Title 9, Section 10, of the U.S. Attorneys' Manual ("USAM"). The USAM outlines the internal policies and

procedures for prosecution of all federal capital cases. *See United States v. Fernandez*, 231 F.3d 1240, 1243 (9th Cir. 2000) (citing USAM § 9-10.000 et seq. (1997)). The USAM requires the United States Attorney to submit a death penalty evaluation form and a prosecution memorandum to the Attorney General's Death Penalty Committee. *See id.* (citing USAM §§ 9-0.040, 9-10.050, 9-10.070).

In order to support his omnibus motion to dismiss the special findings from the Third Superceding Indictment and to strike the Notice of Intent to Seek the Death Penalty (Doc. 387, amended by Doc. 397), McCluskey makes a broad and far-reaching request for memoranda and supporting documentation from the USAM for this case and other cases which have been considered for death penalty certification in the District of New Mexico. The basis for McCluskey's motion is his assertion that "racial considerations have entered into the decision making process in this case . . . based upon the race and national origin of Mr. McCluskey, and/or the race or gender of his victims." Doc. 390 at 4. McCluskey argues that as an "American born," Caucasian male, he would be the first and only person in the District of New Mexico prosecuted under the Federal Death Penalty Act to be denied an opportunity to plead guilty to a sentence less than death.[1] Doc. 390 at 2. He "seek[s] to establish that the Department of Justice has overridden local determinations concerning death prosecutions at a significantly higher rate where the defendant was non-Caucasian and/or the victim was white and/or female."[2] *Id*. Accordingly, he asks that the Court order the

---

[1] In its response, the Government states that this is not true, pointing out that the defendant in *United States v. Lujan*, which went to trial in this district in 2011, was not offered the opportunity to enter a guilty plea prior to trial.

[2] The Court shares the Government's confusion over the nature of McCluskey's discrimination claim. On one hand, he argues that as a white man, he has been discriminated against because "similarly situated non-Caucasian defendants and females—some charged with far worse offenses—[] were permitted to plead guilty and receive a life sentence or a sentence of

2

Government to produce various documents relating to all cases arising from the District of New Mexico, including his own case, in which "correspondence was sent pursuant to United States Attorney Manual . . ." regarding certain provisions of the Department of Justice's death penalty protocol. The requested information, itemized at Doc. 390 at 3, includes:

> A. A copy of that portion of the Prosecution Memorandum identified in 9.10.080 (A)(11)("Recommendation of the United States Attorney on whether the death penalty should be sought.");
>
> B. A copy of that portion of the Prosecution Memorandum identified in 9.10.080(B) ("Death-penalty evaluation form. The Department will specify a standardized death-penalty evaluation form, which should be completed by the United States Attorney for each capital-eligible offense charged against each defendant.");
>
> C. A copy of that portion of the Prosecution Memorandum identified in 9.10.080(C) ("Non-decisional information form. This form should be submitted in a sealed envelope clearly labeled as containing the non-decisional information.");
>
> D. A copy of that portion of the Prosecution Memorandum which recommended that the government enter into a plea agreement to life in prison, or a term of years, or to not enter into such an agreement, or seek death, and all correspondence relating thereto.
>
> E. A copy of that portion of any submission by the United States Attorney pertaining to 9-10.080, 9-10.110, 9-10.150, which recommended that a plea agreement be entered into, or not entered into, in the case of John Charles McCluskey.
>
> F. All emails and other correspondence by and between the local U.S. Attorney's Office in the District of New Mexico and the Department of Justice including correspondence by and between any member of the United States Attorney's Office for the District of New Mexico, and the DOJ Capital Case Unit, Death Penalty Review Committee, or any other DOJ unit or personnel, including capital case unit attorneys regarding the Defendant McCluskey's offer to plead guilty and the government's ultimate rejection of that offer.

---

a term of years." Doc. 390 at 7-8. On the other, McCluskey devotes a significant amount of space in his omnibus motion to the argument that the Government has discriminated against minority defendants in its application of the FDPA. Doc. 397 at 53-60. In the end, the Court need not resolve this disparity, as McCluskey has not met his burden to make a threshold showing of discrimination in any form.

> G. Further, counsel seek discovery of all inter-office memorandum, emails, notes and otherwise recorded information concerning Mr. McCluskey's case that references the race, ethnicity, national origin or gender of the defendant, Mr. McCluskey, or the race, ethnicity, national origin or gender of similarly situated defendants, or the racial demographics and racial or death penalty attitudes in New Mexico.
>
> H. Finally, with respect to all cases prosecuted federally, counsel seek the name, case number, and race and gender of the defendant and victim in each case since 1994 in which the Department of Justice has over-ridden a local recommendation to de-authorize a capital prosecution or enter into a plea agreement.
>
> I. All documents and information regarding the local U.S. Attorneys Office recommendation of whether a plea should be entered into with Defendant McCluskey and all documents and information relating to the consideration and ultimate rejection of that plea.

As grounds for his motion, McCluskey argues that considerations of race and gender have skewed the Government's decision-making process in his case toward pursuit of the death penalty and away from acceptance of a plea agreement. He contends that much of the information he requests has already been collected by the Department of Justice for the very purpose that he requests it—to assess the degree to which race and gender bias affects the application of the Federal Death Penalty Act—and therefore the Government should not be able to shield it from discovery.

The Government opposes the motion on the grounds that McCluskey has not met the rigorous burden required of those seeking to obtain discovery in support of his claim that he has been subject to selective prosecution. It also contends that the requested materials are privileged and therefore not subject to discovery.

### A. **Selective Prosecution**

In his omnibus motion challenging the Death Penalty Act ("DPA"), McCluskey argues that the DPA "operates in an arbitrary, capricious, irrational and discriminatory manner." Doc. 397 at 29-67. However, his motion for discovery appears to be targeted toward obtaining evidence of race

and gender discrimination in the Government's conduct of his case specifically and as well as its decisions regarding whether to seek the death penalty generally. Indeed, the title of his motion makes clear that he is seeking discovery with regard to the influence of race and gender on the decision to seek the death penalty, and in the body of his motion he alleges that "racial considerations have entered into the decision making process in this case . . . based upon the race and national origin of Mr. McCluskey, and/or the race or gender of his victims." Doc. 390 at 4. Thus, he asserts in his motion that "the Government should not be able to shield from review evidence that reflects gender discrimination or bias against racial or ethnic minorities." *Id*. at 5.[3]

### *1.     Legal Standard*

A defendant bears a "demanding" burden in proving that he was selected for prosecution based on an unjustifiable standard. *See United States v. Armstrong*, 517 U.S. 456, 463 (1996). "In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present 'clear evidence to the contrary.' " *Id*. at 465, 116 S.Ct. 1480. The defendant must demonstrate that the prosecutorial policy (1) had a discriminatory effect and (2) was motivated by a discriminatory purpose. *Id*. (quoting *Wayte v. U.S.*, 470 U.S. 598, 608 (1985)). To establish a discriminatory effect, the defendant must show that similarly situated individuals outside of the

---

[3] Confusingly, in his reply brief (Doc. 459) McCluskey appears to have attempted to change the nature of his motion. To wit, McCluskey states that in addition to seeking evidence to support his claim of race and gender discrimination in the application of the FDPA, he also seeks discovery to demonstrate that the federal death penalty operates in an arbitrary, capricious, and irrational manner. Doc. 459 at 2. As everything in McCluskey's original motion, including the title, indicated that he sought only evidence of race and gender discrimination, this broadening of the motion comes as something of a surprise. Ordinarily, the Court would reject such a late-stage fundamental change in the nature of a motion as unfair to the opposing party. However, the Court need not reach that question in this instance, as it concludes that McCluskey has failed to meet his burden under *Armstrong* and *Bass* as to either discrimination or arbitrary, capricious, and irrational application of the law.

constitutionally protected class were not prosecuted. *See id.*; *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997).

The same justifications supporting the "rigorous standard" to prove a selective prosecution claim also require a correspondingly "rigorous standard" to obtain discovery in aid of such a claim. *Armstrong*, 517 U.S. at 468. The threshold showing for discovery is intended to be "a significant barrier to the litigation of insubstantial claims." *Id.* at 463-64. A defendant must demonstrate "some evidence" tending to show both discriminatory effect and discriminatory intent. *Id.* at 468-69, 116 S.Ct. 1480; *United States v. James*, 257 F.3d 1173, 1178 (10th Cir. 2001). To show discriminatory effect, the defendant must make a "credible showing" that similarly situated defendants of other classes could have been prosecuted but were not. *See Armstrong*, 517 U.S. at 469-70. Defendants are similarly situated "when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997) (quoting *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996)). Stated another way, a "similarly situated" person for selective prosecution purposes is

> one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant.

*United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000). Thus, a court must examine all factors relevant to the government's decision to prosecute in determining whether persons are similarly situated. *Id*. A defendant may meet the "credible showing" requirement "by identifying a similarly-situated individual or through the use of statistical evidence." *James*, 257 F.3d at 1179.

Discriminatory intent can be established by either direct or circumstantial evidence. *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006).

However, "a defendant cannot satisfy the discriminatory effect prong by providing statistical evidence which simply shows that the challenged government action tends to affect one particular group. Rather, the proffered statistics must address the critical issue of whether that particular group was treated differently than a similarly-situated group." *James*, 257 F.3d at 1179. To satisfy the prong, the study needs to identify similarly situated persons who could have been prosecuted for the same offenses, but were not. *Id*. Again, defendants are similarly situated when their circumstances present "no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions." These rigorous standards have equal application in cases where the Government seeks to impose the death penalty. *United States v. Bass*, 536 U.S. 862 (2002).

### 2. *Analysis*

The question before the Court is whether McCluskey has met his burden to come forward with "some evidence" tending to show both discriminatory effect and discriminatory intent in the Government's decision to charge him with the death penalty. The Court concludes that he has not.

To show discriminatory effect, the defendant must make a "credible showing" that similarly situated defendants of other classes could have been prosecuted under the FDPA but were not. In his motion, McCluskey claims that he "has identified similarly situated non-Caucasian defendants and females—some charged with far worse offenses—who were permitted to plead guilty and receive a life sentence or a sentence of a term of years. Doc. 390 at 7-8. Unfortunately, McCluskey fails to inform the Court where he has identified such similarly situated individuals, leaving the Court in the unenviable position of having to comb through the record and then hazard a guess as to which individuals McCluskey might be referring. McCluskey has submitted the March 28, 2012

Declaration of Kevin McNally, the Director of the Federal Death Penalty Resource Counsel Project, which he attached to his omnibus motion challenging the constitutionality of the death penalty. (Doc. 397). McNally sets forth certain data that the Project has collected regarding all federal potential and actual federal death penalty prosecutions initiated since 1988. McNally attaches his Declaration dated September 17, 2008, in which he authenticated a chart listing the name, sex, and race of defendants charged with the death penalty, the sex and race of their victim(s), and the sentence the defendant received. As it contains only strictly statistical and biographical data, the chart contains no information that would enable one to determine which defendants, if any, are "similarly situated," either to McCluskey or to each other. There are no details about the criminal histories of the defendants, for example, or the manner in which they committed their crimes. McNally also relies upon the September 16, 2008 Declaration of Lauren Cohen Bell, Ph.D, Associate Professor of Political Science and Associate Dean of the College at Randolph-Macon College in Ashland, Virginia. She conducted a statistical analysis on the data contained in the chart described above and concluded that "defendants who kill white female victims receive the death penalty at a substantially higher rate than defendants whose victims are not white women and that this correlation between white female victims and death sentencing is highly statistically significant, systematic, and not the result of chance." Bell Decl. at ¶ 8. However, Bell does not discuss any specific cases or defendants who may be similarly situated to McCluskey. McCluskey catalogues dozens of death penalty cases in his brief in support of his omnibus motion (see Doc. 397 at 36-42), but it is not clear if he is contending that each of these defendants is similarly situated to him; if indeed that it is his contention, he does not support it with any explanation or discussion. Finally, McCluskey has filed a CD containing a large amount of data (including individual verdict sheets as well as tables of summaries of cases) regarding various defendants who have been prosecuted under

the FDPA. But once again, McCluskey does not explain how or why any of these individuals are similarly situated to him in the manner required of him under *Armstrong* and *Bass*. Accordingly, the Court concludes that he has failed to meet his burden to demonstrate discriminatory effect in the application of the FDPA.

Furthermore, McCluskey has not even attempted to come forward with evidence of discriminatory intent by the Government. As the Tenth Circuit has stated, discriminatory intent can be established by either direct or circumstantial evidence. *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006). McCluskey points to none. Because he has failed to demonstrate both discriminatory effect and intent, his motion for discovery will be denied.

**B.     Attorney Work Product and the Deliberative Process Privilege**

The Government argues, in the alternative, that it should not be required to disclose correspondence regarding whether to seek the death penalty because such materials constitute attorney work product and are protected by the deliberative process privilege. The Court agrees on both counts.

*1.     Work Product*

The work product privilege protects the attorney's mental processes, including materials prepared by an attorney in anticipation of litigation. *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *Hickman v. Taylor*, 329 U.S. 495, 508 (1947). The Supreme Court has held that this doctrine applies to criminal, as well as civil, litigation. *United States v. Nobles*, 422 U.S. 225, 236-38 (1975). As the Supreme Court explained, "The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case." *Id.* at 238. The attorney work product privilege "clearly applies to memoranda prepared

by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975). Federal Rule of Criminal Procedure 16(a)(2) recognizes the work product privilege, exempting from disclosure "reports, memoranda, or other internal government documents made by an attorney for the government . . . in connection with investigating or prosecuting the case." *See* Fed. R. Crim. P. 16(a)(2); *Fernandez*, 231 F.3d at 1247; *United States v. Edelin*, 128 F.Supp.2d 23, 39 (D.D.C.2001). Decisions from the federal appellate courts have confirmed that internal government documents are shielded from discovery in criminal cases. *See United States v. Maranzino*, 860 F.2d 981, 985–86 (10th Cir. 1988) ("[I]nternal government documents made in connection with a prosecution are exempt from discovery."); *United States v. Robinson*, 439 F.3d 777, 779–80 (8th Cir. 2006) (defendant in tax-evasion prosecution could not discover "internal documents used by the government to calculate gross receipts, business expenses and taxes owed," even though the defendant's lack of those documents may have "made trial preparation extremely difficult." (internal quotation marks omitted)). This protection has been extended to the Government's death penalty recommendation memorandum as well. *See, e.g., United States v. Taylor*, 608 F. Supp. 2d 1263, 1268-69 (D.N.M. 2009) (citing cases); *United States v. Nguyen*, 928 F. Supp. 1525, 1552 (D. Kan. 1996). Similarly, the Court concludes that the work product privilege extends to the materials that McCluskey is requesting in this case.

McCluskey's arguments to the contrary are unconvincing. His argument that under *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953) that either the Attorney General or the United States Attorney personally must make and assert the privilege is without merit. *Reynolds* does not apply here because the privilege asserted in that case was one protecting military and state secrets. Second, McCluskey contends—much to the Court's surprise—that most of the information he seeks

"is not decisional information but is simply statistical data" and that he does not seek to review *why* the Government made certain prosecutorial decisions. Doc. 459 at 4. A review of McCluskey's request reveals that this is not the case. He expressly requests documents containing recommendations. *See* paragraphs A, D, E, H, and I. Further, every paragraph of his requests asks for memoranda, emails, notes, and other correspondence among government lawyers discussing prosecutorial decisions. None of his requests is limited to statistical and empirical information. Instead, it is clear that McCluskey is seeking the prosecution's work product, documents that reveal the inner workings of the government's decision making process. This is confirmed on the next page of McCluskey's reply brief, where he argues that he is entitled to the Government's interoffice memoranda, emails, and notes that merely "reference[] the race, ethnicity, national origin or gender of the defendant" because such documents would tend to show why the government made certain prosecutorial decisions. The thought processes of lawyers and their discussions regarding decisions made in the course of their representation of their client—in this case, the Governmment—are protected by the work product doctrine. Thus, the Court concludes that the requested documents are protected attorney work product.

### 2. *Deliberative Process*

The deliberative process privilege "covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.' " *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). The purpose of the deliberative process privilege is to encourage frank discussion of legal or policy matters in writing, thereby improving agency decision-making processes. *See Sears, Roebuck & Co.*, 421 U.S. at 150-51. For the deliberative process privilege to apply, the document must be both

"predecisional" and "deliberative." *See Casad v. U.S. Dep't of Health and Human Services*, 301 F.3d 1247, 1252 (10th Cir. 2002); *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000). Moreover, purely factual material that does not reflect the agency's deliberative process generally is not protected. *Local 3, International Brotherhood of Electrical Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir. 1988).

Here, McCluskey seeks the Government's internal correspondence and memoranda regarding whether to seek the death penalty in both his case and other cases in the District of New Mexico. There can be no doubt that he seeks in paragraphs A through G, as well as paragraph I (Doc. 390 at 3-4) documents that outline the opinions, recommendations, and deliberative processes of the Government attorneys working on those cases. They are predecisional, as the requested documents reflect the thought processes of government attorneys leading up to the decision whether to seek the death penalty, and they are deliberative in that they contain recommendations and express opinions on legal matters relating to the cases at issue. Thus, these documents are protected by the deliberative process privilege. *See United States v. Frank*, 8 F. Supp. 2d 253, 284 (S.D.N.Y. 1998) (refusing to compel the Government to produce, concluding that "[t]here are strong policy reasons in favor of keeping confidential the internal deliberative process through which the Government decides whether to use its prosecutorial power to seek the most severe punishment possible."). Many other courts, including U.S. District Judge William Johnson of this judicial district, have reached the same conclusion. *See, e.g., United States v. Fernandez*, 231 F.3d 1240, 1246-47 (9th Cir. 2000); *United States v. Taylor*, 608 F. Supp. 2d 1263, 1268-69 (D.N.M. 2009) (Johnson, J.); *United States v. Hargrove*, 2005 WL 2122310, \*6 (D.Kan. Aug. 25, 2005) (unpublished) (denying request for discovery of prosecution's capital charging practices); *Edelin*, 128 F. Supp. 2d at 39-41 (denying similar request based on deliberative process, attorney-client, and

work product privileges); *United States v. Furrow*, 100 F. Supp. 2d 1170, 1174-75 (C.D. Cal. 2000) (explaining that death penalty evaluation form and prosecution memorandum fall within deliberative process and work product privileges); *United States v. Frank*, 8 F. Supp. 2d 253, 284 (S.D.N.Y. 1998) (denying motion to disclose materials prepared in making decision to seek death penalty based on deliberative process privilege). For the same reasons, the Court concludes that the materials McCluskey seeks are protected by the deliberative process privilege and for this additional reason the Government need not produce them.

## II.    Discovery of Legal Instructions Provided to the Grand Jury

McCluskey moves for disclosure of "all legal instructions, legal advice, and legal opinions given by the District Court or the prosecutors to the Grand Jury which returned the Third Superseding Indictment in this case." Doc. 395 at 7. McCluskey's stated basis for the request is his allegation that "[t]he grand jury was not given the choice of holding Mr. McCluskey to answer for a capital crime because it was unaware of the consequences of its 'Special Findings.'" *Id*. at 2 (quoting Doc. 387, Defendant's omnibus motion to dismiss the special findings from the Third Superceding Indictment). Thus, it appears that McCluskey seeks production of the instructions to the grand jury in order to prove that its members were not aware that by reaching their special findings, McCluskey would be subject to the death penalty.

### A.    Legal Standard

Generally, matters occurring before a grand jury are to be kept secret, subject to narrow exceptions. The secrecy of grand jury proceedings is codified in Rule 6(e) of the Federal Rules of Criminal Procedure. One of the enumerated exceptions authorizes a court to disclose grand jury material if a defendant "shows that a ground may exist to dismiss the indictment because of a matter

that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). Nonetheless, a "grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process." *United States v. R. Enters., Inc.*, 498 U.S. 292, 301 (1991) (internal quotation omitted). To overcome that presumption, a defendant must show a "particularized need" for the documents or transcripts that outweighs the public policy of grand jury secrecy. *See, e.g., In re Lynde*, 922 F.2d 1448, 1452 (10th Cir. 1991); *United States v. Warren*, 747 F.2d 1339, 1347 (10th Cir. 1984). A defendant does not satisfy the "particularized need" requirement by attempting to engage in a fishing expedition for what he hopes may be useful to him. *See United States v. Kim*, 577 F.2d 473, 478 (9th Cir. 1978).

Alternatively, the court can allow the disclosure of ministerial records of the grand jury. *In re Cudahy*, 294 F.3d 947, 951 (7th Cir. 2002); *In re Grand Jury Investigation*, 903 F.2d 180, 182 (3rd Cir.1990); *In re Special Grand Jury*, 674 F.2d 778, 779 (9th Cir. 1982). "A ministerial record is one that generally relates to the procedural aspects of the empaneling and operation of the grand jury. The standard is whether disclosed information would reveal the substance or essence of the grand jury's investigation or deliberations. The disclosure of these materials is discretionary with the court." *United States v. Burgoin*, 2011 WL 6372877 at *6 (D. Kan. Dec. 20, 2011) (unpublished) (internal citations and quotations omitted).

    **B.**    <u>**Analysis**</u>

First, with regard to the general charge that the grand jury may have received from the district judge when it was first empaneled, such a charge is generally ministerial in nature. It involves informing the members of the grand jury of their obligations and duties, and usually does not contain information specific to any one case. The Government suggests that the Court review *in camera* the charge given to the grand jury that returned the Third Superceding Indictment in this

14

case to ensure that it is, in fact, ministerial before the Court orders the charge to be produced. The Court agrees with this suggestion. Accordingly, the Court orders the Government to submit a transcript of the district judge's initial charge to the grand jury to the undersigned for *in camera* review no later than August 6, 2012.

Next, with regard to any case-specific legal instructions given to the grand jury by either the Court or the Assistant United States Attorney, the Court concludes that such instructions are not ministerial in nature. Unlike ministerial matters, case-specific instructions do not relate to the procedural aspects of empaneling the grand jury and its general operation. Thus, in order to obtain this information, McCluskey must demonstrate a particularized need for the documents or transcripts that outweighs the public policy of grand jury secrecy. McCluskey has failed to meet this burden. His stated need for the legal instructions is to demonstrate that the grand jury was not informed of the consequences of its special findings, such that it did not know that as a result of those findings McCluskey would be charged with a capital crime. In his omnibus motion challenging the Federal Death Penalty Act (Doc. 387, amended by Doc. 397), McCluskey argues that under the history of the Fifth Amendment, only the grand jury has the power to choose which defendants should receive a sentence of death upon conviction. McCluskey contends that, when the Bill of Rights was drafted, grand juries knew which crimes carried a mandatory death sentence and which did not and therefore that, in deciding which crimes to include in indictments, they served as a powerful check on the government's use of capital punishment. McCluskey argues that, because the grand jury in his case was not informed of the consequences of the special findings, it was unable to perform this gate-keeping function adequately.

In fact, the Fifth Amendment's Indictment Clause serves two critical functions. First, it acts as a check on prosecutorial power. *Branzburg v. Hayes*, 408 U.S. 665, 686-87 (1972) (explaining

15

that "the ancient role of the grand jury . . . [is a] dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions"). Second, it provides notice to the defendant of the charges against which he/she must defend. *See Hamling v. United States*, 418 U.S. 87, 117 (1974). An indictment need only charge the elements necessary to constitute the offense, and need not charge the ultimate punishment sought for the offense committed. *See id.*, 418 U.S. at 117. As a result, the Court agrees with the conclusion reached by Judge William Johnson in another death penalty case in this district, *United States v. Taylor*, where he stated that "[k]nowledge of the sentence that a particular defendant might receive if he is convicted of the charges is not necessary for the grand jury to satisfy its role as a check on prosecutorial power." *Taylor*, Cr. No. 07-1244 WJ, Memorandum Opinion and Order, Doc. 492 (D.N.M. September 4, 2009) (unpublished). Stated another way, because there is no requirement that an indictment charge the punishment sought there is no requirement that the grand jury be informed as to the ultimate punishment. Various other district courts have agreed with this conclusion, as Judge Johnson duly noted. *See, e.g., United States v. Natson*, 444 F. Supp. 2d 1296, 1305 (M.D. Ga. 2006) (holding in a death penalty case that "since neither the Fifth or Sixth Amendments required the Indictment to include the ultimate punishment sought for the offenses, no reason existed for the grand jury to even know what that punishment may be"); *United States v. Duncan*, No. CR 07-23, 2008 WL 544845, at *3 (D. Idaho Feb. 26, 2008) (holding that the government need not inform grand jury of potential capital consequences of its special findings); *United States v. Troya*, No. 06-80171-CR, 2008 WL 4327004, at *7 (S.D. Fla. Sept. 22, 2008) (same); *United States v. Talik*, No. 5:06CR51, 2007 WL 4570704, at *7 (N.D. W.Va. Dec. 26, 2007) (same); *United States v. Williams*, CR. No. 06-79, 2007 WL 2916123, at *4 (D. Haw. Oct. 2, 2007) (same); *United States v. Diaz*, No. CR 05-167, 2007 WL 656831, at *6 (N.D. Cal. Feb. 28, 2007)

(same); *United States v. Haynes*, 269 F. Supp. 2d 970, 981-82 (W.D. Tenn. 2003) (same).

Because the purpose for which McCluskey seeks discovery of the legal instructions given to the grand jury—to prove that the indictment is not valid because the prosecutor did not inform the grand jurors that by making certain special findings, their indictment could subject McCluskey to trial on capital charges—has no legal merit, McCluskey has not met his burden to show a particularized need for the instructions under Rule 6(e). Accordingly, this portion of the motion will be denied as well.

**IT IS THEREFORE ORDERED** that:

(1) *Defendant's Motion for Discovery to Support Motion to Strike Death Penalty Based Upon Influence of Arbitrary Factor of Race and Gender of Victim* [Doc. No. 390] is **DENIED**, and

(2) *Defendant's Motion for Production of Legal Instructions Provided to the Grand Jury* [Doc. No. 395] is **GRANTED IN PART** and **DENIED IN PART** as explained herein.

_____
**UNITED STATES DISTRICT JUDGE**