## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**vs.**               **CR. No.  10-2734 JCH**

**JOHN CHARLES McCLUSKEY,**

    **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on two related motions filed by Defendant John Charles McCluskey (hereafter, "McCluskey").  They are: (1) *Defendant's Motion to Preclude the Use of the Non-Statutory Aggravating Factor of Future Dangerousness . . . And Request for a Hearing* [Doc. 393]; and (2) (Corrected) *Defendant's Motion to Dismiss Particular Aggravating Factors From the Third Superseding Indictment, and to Strike Particular Aggravating Factors from the Notice of Intent to Seek the Death Penalty, And for Other Relief* [Doc. 396].

In the first motion, Doc. 393, McCluskey asks the Court to declare the nonstatutory aggravating factor of "future dangerousness" to be unconstitutional both on its face and as applied to McCluskey.  He contends that it is so unreliable, speculative, arbitrary and inaccurate that it violates both the Fifth and Eighth Amendments, and he requests an evidentiary hearing on this motion.  Because the Court concludes that the Supreme Court has already decided the issue that McCluskey raises, and has considered evidence similar to that which McCluskey seeks to present, the Court concludes that an evidentiary hearing is not necessary and that the motion should be denied.

As to the second motion, counsel for the parties have fully briefed the motions but do not request a hearing, and the Court concludes that oral argument is not necessary.  In Doc. 396, McCluskey first asks the Court to strike the nonstatutory factors set forth in the Government's *Notice of Intent to Seek the Death Penalty*, Doc. 275, filed January 26, 2012.  This portion of the motion will be denied.  Second, he moves the Court for an order striking or modifying certain statutory and nonstatutory aggravating factors set forth in the *Third Superceding Indictment*, Doc. 274, and/or the *Notice of Intent to Seek the Death Penalty*, or in the alternative, directing the Government to provide further information regarding the factual basis for the aggravating factors. After reviewing the briefs submitted by counsel and the relevant legal authorities and precedents, the Court concludes that this portion of the motion should be granted in part, and the Court will order the Government to provide McCluskey with an informative outline regarding some of the threshold factors and aggravating factors it seeks to prove.

## DISCUSSION

Under the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591 et seq., if the Government wishes to seek the death penalty in a case, the Government must, at a reasonable time before trial, serve on the defendant a notice stating that death will be sought and "setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death." 18 U.S.C. § 3593.  Under the FDPA, once the jury finds the defendant guilty of one of the offenses listed in 18 U.S.C. § 3591, the trial proceeds to a separate phase—the sentencing or penalty phase.  In order to impose a death sentence under the FDPA, the jury must first find beyond a reasonable doubt that a defendant convicted of a crime punishable by death acted with the requisite intent. *See* 18 U.S.C. § 3591.  The jury must then find beyond a reasonable doubt that at least one enumerated statutory aggravating factor exists. *See* 18 U.S.C. § 3592(c).  Only if these

2

two preconditions are satisfied is a defendant eligible to receive a death sentence. In order to decide whether to impose a capital sentence, the jury must balance the statutory and non-statutory aggravating factors it finds the Government has proved beyond a reasonable doubt against the mitigating factors it finds the defendant has proved by a preponderance of the evidence at the sentencing hearing. The jury imposes a capital sentence only if it finds by unanimous vote that the aggravating factors outweigh the mitigating factors sufficiently to warrant the death penalty. *See* 18 U.S.C. § 3593(e).

I.    **MOTION TO PRECLUDE THE USE OF THE NONSTATUTORY AGGRAVATING FACTOR OF FUTURE DANGEROUSNESS . . . AND REQUEST FOR A HEARING [Doc. 393]**

In this motion, McCluskey seeks to strike future dangerousness as a nonstatutory aggravating factor on the grounds that neither psychological experts nor jurors are capable of reliably predicting it, thereby rendering it speculative, arbitrary and inaccurate as to render this factor unconstitutional. McCluskey cites studies showing that one cannot reliably predict a convicted murderer's future dangerousness during his incarceration. Further, he argues that the seminal case on this issue, *Barefoot v. Estelle*, 463 U.S. 880 (1983), should be reconsidered. The Supreme Court in *Barefoot* signaled that the evolution of events might cause it to revisit the issue of the reliability of expert testimony on future dangerousness, and McCluskey argues that this is the time to do so. The Government opposes the motion on the grounds that the Supreme Court has settled the issue.

It has long been established that a sentencing court may evaluate and consider a defendant's propensity to commit acts of violence in the future as an aggravating factor weighing in favor of the death penalty. *See Jurek v. Texas*, 428 U.S. 262, 274-76 (1976). In *Jurek*, the petitioner argued that "it is impossible to predict future behavior and that the question is so vague as to be meaningless." *Jurek*, 428 U.S. at 274. In rendering its opinion, the Supreme Court was well aware of the reliability

argument that McCluskey now raises, noting that:

> It is, of course, not easy to predict future behavior. The fact that such a determination is difficult, however, does not mean that it cannot be made. Indeed, prediction of future criminal conduct is an essential element in many of the decisions rendered throughout our criminal justice system. The decision whether to admit a defendant to bail, for instance, must often turn on a judge's prediction of the defendant's future conduct. And any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose. For those sentenced to prison, these same predictions must be made by parole authorities. The task that a [capital sentencing jury] jury must perform in answering the . . . question [of future dangerousness] is thus basically no different from the task performed countless times each day throughout the American system of criminal justice. What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine.

*Id.* at 274-75. *See also Simmons v. South Carolina*, 512 U.S. 154, 162 (1994) (reaffirming the central holding of *Jurek*). *Jurek* thus rejected a constitutional challenge to the Texas system which required the jury to determine whether there was " 'a probability that the defendant would commit criminal acts of violence that would constitute a threat to society' if he were not sentenced to death." *Id.* at 272, 276, 96 S.Ct. 2950 (quotation omitted).

A few years later, the Supreme Court turned to the issue again in *Barefoot v. Estelle*, 463 U.S. 880, 897-99 (1983), *superseded in part by statute*, Pub.L. No. 104-132, § 102 (1996) (28 U.S.C. § 2253(c)), *as recognized in Slack v. McDaniel*, 529 U.S. 473, 480-81 (2000). In *Barefoot*, the petitioner argued that scientific experts were categorically unable to render predictions about a defendant's future dangerousness with any degree of reliability. 463 U.S. at 896. Although the Supreme Court recognized a disagreement among penological experts about the accuracy of these predictions, it was "not persuaded that such testimony is almost entirely unreliable and that the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Id.* at 899.

4

In citing to studies that suggest predictions of future dangerousness are often wrong, or that subsequent advancements in federal corrections facilities have reduced prisoner violence, McCluskey argues that the Court should conclude that *Jurek* and *Barefoot* are no longer controlling law. In this Court's view, these are not legitimate grounds for a district court to question the continuing validity of otherwise mandatory Supreme Court precedent.   Moreover, few of the reliability concerns that McCluskey raises in his motion are new considerations.  The Supreme Court in *Barefoot* also considered the same type of evidence presented by McCluskey in this case as to the unreliability of psychiatric testimony about future dangerousness. More specifically, it considered an amicus brief of the American Psychiatric Association indicating that psychiatrists are wrong most of the time and testimony that psychiatric predictions of future dangerousness were wrong two of three times. *Id.* at 901 and n. 7, 103 S.Ct. 3383.   In addition, in *Barefoot* the Supreme Court explicitly recognized that some studies indicated that predictions of future dangerousness were often wrong. 463 U.S. at 899 n. 7.   However, this did not render consideration of future dangerousness unconstitutional, because "[a]ll of these professional doubts about the usefulness of psychiatric predictions can be called to the attention of the jury." *Id.*   "We are unconvinced, however, at least as of now, that the adversary process cannot be trusted to sort out the reliable from the unreliable evidence and opinion about future dangerousness, particularly when the convicted felon has the opportunity to present his own side of the case." *Id.*  McCluskey has not cited any evidence that is materially different than that considered in *Barefoot*.

Thus, the Court will deny McCluskey's motion to preclude the use of the non-aggravating factor of future dangerousness on the ground that it is unreliable within the meaning of the Eighth Amendment.

II.    (CORRECTED) DEFENDANT'S MOTION TO DISMISS PARTICULAR
       AGGRAVATING FACTORS FROM THE THIRD SUPERSEDING INDICTMENT,
       AND TO STRIKE PARTICULAR AGGRAVATING FACTORS FROM THE
       NOTICE OF INTENT TO SEEK THE DEATH PENALTY, AND FOR OTHER
       RELIEF [DOC. 396]

   A.    **Request to Strike the Nonstatutory Aggravating Factors**

      1.    **The FDPA Does Not Contradict Itself**

   In accordance with Section 3591(a) of the FDPA, a person may be sentenced to death if he

meets certain enumerated criteria and "if, after consideration of the factors set forth in section 3592

. . . it is determined that imposition of a sentence of death is justified . . ."  Under § 3592(c) of the

FDPA, in a homicide case the jury may consider sixteen enumerated statutory aggravating factors

as well as "whether any other aggravating factor for which notice has been given exists."   In this

case, the Government's *Notice of Intent to Seek the Death Penalty*, Doc. 275, lists both statutory and

nonstatutory aggravating factors in support of its pursuit of the death penalty against McCluskey.

The five listed nonstatutory aggravating factors include victim impact, contemporaneous serious

criminal acts, obstruction of justice, armed fugitive from justice, and future dangerousness.

McCluskey argues that the FDPA does not authorize the Government to pursue nonstatutory factors

beyond victim impact.  As grounds for his argument, McCluskey argues that § 3591(a) contradicts,

and implicitly invalidates, § 3592(c) merely because § 3591(a) refers to consideration of the factors

"set forth" in § 3592(c).  According to McCluskey, § 3592(c)'s provision that the jury "may consider

whether any other aggravating factor for which notice has been given exists" is in conflict with §

3591(a)'s provision that a jury may sentence a defendant to death only "after consideration of the

factors set forth in section 3592."

   The Court concludes that this argument is without merit, and that the FDPA does not

contradict itself.  "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.' "  *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)) (internal quotations omitted).  When the statute is read as a coherent whole, the two provisions are not in tension because § 3592 adequately "sets forth" the non-statutory aggravating factors by providing that the jury may consider them.  In reaching this decision, this Court is in agreement with several other federal courts that have considered the issue.  *See, e.g., United States v. Robinson*, 367 F.3d 278, 293 (5th Cir. 2004); *United States v. Barnes*, 532 F. Supp. 2d 625, 643 (S.D.N.Y. 2008); *United States v. Nguyen*, 928 F. Supp. 1525, 1536 (D. Kan. 1996).

### 2.     The Nonstatutory Factors Provide Proper Limitations and Guidance to the Jury

McCluskey argues that an interpretation of § 3592(c) that permits the Government to expand the list of aggravating factors on a case-by-case basis injects "uncertainty and disparate case results" into capital proceedings.  He contends that the FDPA provides no guidance to prosecutors in how to determine how to define or select nonstatutory aggravating factors, leading to an improper risk that the death penalty will be imposed arbitrarily and capriciously, in violation of the Eighth Amendment.

The Court agrees with McCluskey that when discretion is given to a sentencing body "on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action."  *Gregg v. Georgia*. 428 U.S. 153, 189 (1976).  As the Supreme Court has explained, in order to properly guide the discretion of the jury, a capital sentencing system must: (1)

rationally narrow the class of death-eligible defendants, and (2) permit a jury to render a reasoned, individualized sentencing determination based on a death eligible defendant's record, personal characteristics, and the circumstances of the crime. *Kansas v. Marsh*, 548 U.S. 163, 173–74 (2006); *Gregg*, 428 U.S. at 189 ("We have long recognized that 'for the determination of sentences, justice generally requires ... that there be taken into account the circumstances of the offense together with the character and propensities of the offender.' ") (citing *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937)).

The manner in which the FDPA employs nonstatutory aggravating factors does not violate these principles. First, consideration of non-statutory aggravating factors becomes relevant only after the jury finds the requisite intent and at least one statutory aggravating factor, a process which narrows the class of defendants eligible to receive the death penalty. *United States v. Solomon*, 513 F. Supp. 2d 520, 534 (W.D. Pa.2007). Once a defendant has been rendered eligible for the death penalty by the jury's finding of a statutory aggravating factor, the use of nonstatutory aggravating factors serves only to individualize the sentencing determination. *See Zant v. Stephens*, 462 U.S. 862, 878–79 (1983) (holding that the use of nonstatutory aggravating factors is appropriate after the jury finds the existence of at least one statutory aggravating factor that narrows the class of defendants eligible for the death penalty); *United States v. McCullah*, 76 F.3d 1087, 1106–07 (10th Cir. 1996) ("The Supreme Court has dealt with the issue of nonstatutory aggravating factors in state capital punishment statutes and has held the use of non-statutory aggravating factors permissible."). Therefore, the statute properly guides the discretion of the jury and avoids the arbitrary and capricious imposition of death sentences. *United States v. Fields*, 516 F.3d 923, 944 (10th Cir. 2008) (citing *Buchanan v. Angelone*, 522 U.S. 269, 275-76 (1998) (contrasting eligibility and selection stages of sentencing)); *Tuilaepa v. California*, 512 U.S. 967, 971-75 (1994) (same)).

Non-statutory aggravating factors have no place in the eligibility determination and "are relevant only in the weighing process at the ensuing sentence-selection stage." *Fields*, 516 F.3d at 944.

Second, permitting the jury to consider statutory as well as non-statutory aggravating factors allows them to render a reasoned, individualized sentencing determination based on a death eligible defendant's record, personal characteristics and the circumstances of the crime. *United States v. Glover*, 43 F. Supp. 2d 1217, 1228–29 (D. Kan. 1999); *United States v. Kaczynski*, No. 96–259, 1997 WL 34626785, at *4 (E.D. Cal. Nov.7, 1997).  This approach is consistent with the Supreme Court's direction that the sentencing decision should be an "individualized determination on the basis of the character of the individual and the circumstances of the crime." *Zant*, 462 U.S. at 879. *See also McCullah*, 76 F.3d at 1106 (10th Cir. 1996) ("To achieve the goal of individualized sentencing, Congress has properly delegated some degree of discretion to the Executive Branch, limited by the directive that the factors must be 'aggravating' and further constrained by the requirement of notice.").

Third, contrary to McCluskey's argument, the Government's discretion to argue non-statutory aggravating factors is limited.  The statute requires that the Government give a defendant notice of any nonstatutory aggravating factors that will be argued at the sentencing proceeding. *See* 18 U.S.C. § 3593(a) (requiring the government to provide the defendant with notice "setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.").  Moreover, the government cannot rely solely on nonstatutory aggravating factors in arguing for the imposition of the death penalty. *Kaczynski*, 1997 WL 34626785, at *4.  The information presented to establish such factors must be relevant and may be excluded if its probative value is outweighed by prejudice.  18 U.S.C. § 3593(c).  Judicial review of all proposed aggravating factors ensures compliance with the mandates of the statute and

the Constitution. *United States v. Solomon*, 513 F. Supp. 2d 520, 533–34 (W.D. Pa.2007).

Finally, McCluskey's position that non-statutory factors should not be admissible under the FDPA has been rejected by a number of courts. *See United States v. Hammer*, 2011 SL 6027771 (M.D. Pa. Dec. 1, 2011) (unpublished); *United States v. Gooch*, No. 04–128–23, 2006 WL 3780781, at *11 (D.D.C. Dec.20, 2006); *United States v. Cooper*, 91 F. Supp. 2d 90, 100 (D.D.C. 2000); *United States v. Glover,* 43 F. Supp. 2d 1217, 1228–29 (D. Kan. 1999); *United States v. Kaczynski*, No. 96–259, 1997 WL 34626785, at *4 (E.D. Cal. Nov.7, 1997). This Court is in agreement with the reasoning in these cases.

### 3.       <u>Nonstatutory Factors Do Not Violate the Ex Post Facto Clause</u>

Finally, McCluskey contends that the use of nonstatutory aggravating factors violates the United States Constitution's Ex Post Facto Clause by permitting the Government to manufacture aggravating factors after a crime was committed and apply them retroactively. The Ex Post Facto Clause, U.S. Const., Article I, section 9, cl. 3, protects against laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990). However, the Court concludes that the use of nonstatutory aggravating factors neither alters the definition of the death eligible crimes nor increases the punishment for those crimes because the jury does not consider any nonstatutory aggravators until the defendant has already been found eligible to receive the death penalty. Numerous other federal courts concur. *See, e.g., United Sates v. Higgs*, 353 F.3d 281, 322 (4th Cir. 2003) ("nonstatutory aggravating factors and mitigating factors are weighed by the jury to make the individualized determination to impose the death sentence upon a defendant who has already been found eligible. They do not increase the possible punishment or alter the elements of the offense."); *United States v. O'Reilly*, 2007 U.S. Dist. LEXIS 62122 (E.D. Mich. Aug. 23, 2007); *United States v. Cheever*, 423 F. Supp. 2d 1181, 1207-08 (D.

Kan. 2006); *United States v. Regan*, 228 F. Supp. 2d 742, 748 (E.D. Va. 2002); *United States v. Llera Plaza*, 179 F. Supp. 2d 444 (E.D. Pa. 2001); *United States v. McVeigh*, 944 F. Supp. 1478, 1485 (D. Colo. 1996); *see also United States v. Purkey*, 428 F.3d 738, 749 (8th Cir. 2005) ("Non-statutory aggravating factors do not increase the maximum punishment to which a defendant is subject. They are neither sufficient nor necessary under the FDPA for a sentence of death. Their purpose is merely to aid the sentencer in selecting the appropriate sentence from the available options, on the basis of the character of the [defendant] and the circumstances of the crime." (internal citations omitted)).

Therefore, because non-statutory aggravating factors do not expose McCluskey to any increased punishment and do not help define the crime, their inclusion does not violate the Ex Post Facto Clause.

> **B.     Request for Order Striking or Modifying Certain Statutory and Nonstatutory Aggravating Factors, or for a Detailed Offer of Proof, or for an Evidentiary Hearing**

McCluskey argues that certain of the statutory and nonstatutory aggravating factors listed in the Third Superceding Indictment and the Notice of Intent should be dismissed either as vague, duplicative, unascertainable, lacking factual support or irrelevant, or in the alternative dismissed as unfairly prejudicial.  As possible alternatives to dismissal, McCluskey asks the Court either to conduct a pretrial evidentiary hearing to determine whether the Government's evidence in support of the aggravating factors meets a heightened degree of reliability required in capital cases, or to require the Government to provide him with "an informative outline of the government's factual basis for various of the statutory and nonstatutory aggravating factors set out in the indictment and notice."  Doc. 396 at 14-15.

In response, the Government argues that none of the aggravating factors is vague,

duplicative, unreliable, irrelevant, or unfairly prejudicial.  Further, the Government contends that

while the FDPA requires adequate notice of aggravating factors (which the Government argues it

has provided to McCluskey), it does not require the disclosure of all evidence in support of those

factors. Instead, the United States contends that McCluskey's discovery rights as to evidence in

support of aggravating factors are limited to what Rule 16 and  *Brady* require, and the Government

states that it has not only met, but exceeded. its discovery obligations.

> 1. <u>**The Law**</u>

The FDPA requires the government to sign and file with the court, and serve upon the

defendant, within a reasonable time before trial, a notice

> (1) stating that the government believes that the circumstances of the offense are
> such that, if the defendant is convicted, a sentence of death is justified under this
> chapter and that the government will seek the sentence of death; and
>
> (2) setting forth the aggravating factor or factors that the government, if the
> defendant is convicted, proposes to prove as justifying a sentence of death.

18 U.S.C. § 3593(a).  Factors in the notice may include victim impact evidence and "any other

relevant information."   *Id*. At the penalty phase, the "government may present any information

relevant to an aggravating factor for which notice has been provided under subsection (a)."  *Id*. §

3593(c).

As the Government points out, although 18 U.S.C. § 3593(a) requires adequate notice, it

is silent as to the government's discovery obligations for the penalty phase.  *See* 18 U.S.C. § 3591, et

seq. ; *United States v. Nguyen*, 928 F. Supp. 1525,1548 n. 26 (D. Kan. 1996) (noting that 18 U.S.C.

§ 3593(c) provides no standards for discovery).  As a result, various federal courts have held that

adequate notice under the FDPA is satisfied where the Government sets forth the aggravating factors

that it intends to prove and that § 3593 does not convey additional discovery rights. *See, e.g., United*

*States v. Battle*, 173 F.3d 1343, 1347 (11th Cir.1999) (noting that notice of aggravating factors under FDPA "is different from notice of specific evidence"); *United States v. Taylor*, 316 F. Supp. 2d 730, 741 (N.D. Ind.2004) (noting that § 3593(a) requires no more than filing notice stating that government intends to seek death penalty and setting forth aggravating factors that government intends to prove); *United States v. Edelin*, 128 F.Supp.2d 23, 42 (D.D.C. 2001) (same); *Nguyen*, 928 F.Supp. at 1550 (same). Similarly, the Constitution does not require that a capital defendant receive details regarding the evidence that the government intends to present during the sentencing phase. As the Fourth Circuit stated: "The FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor . . . not notice of the specific evidence that will be used to support it." *United States v. Higgs*, 353 F.3d 281, 325 (4th Cir. 2003). Notice is not so extensive "as to mandate that the government go beyond the limitations established by Congress in the Federal Rules of Criminal Procedure." *Edelin*, 128 F. Supp. 2d at 42. *See also Gray v. Netherland*, 518 U.S. 152, 167-69 (1996) (noting that there is no constitutional right to general discovery in criminal cases and indicating that there is no due process right to advance notice of government's evidence in aggravation at capital sentencing hearing).

Nonetheless, many federal courts have granted a capital defendant broader discovery of the Government's evidence regarding aggravating factors. These courts generally used their inherent powers to order the government to provide additional information on certain aggravating factors in order to ensure a meaningful opportunity to prepare a defense, reasoning that the constitutional rights to due process and confrontation weigh in favor of supplemental notice in connection with aggravating factors. *See, e.g., United States v. Solomon*, 513 F. Supp. 2d 520, 535 (W.D. Pa. 2007) (using inherent authority to order government to provide informative outline, without revealing evidentiary detail, of type and scope of victim impact evidence, including personal characteristics

13

of victim); *United States v. Wilson*, 493 F. Supp. 2d 364, 378 (E.D.N.Y. 2006) (same); *United States v. Gooch*, 2006 WL 3780781, *23 (D.D.C. Dec.20, 2006) (unpublished opinion) (same); *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 492 (E.D. Pa. 2001) (ordering government to provide to defendants outline summarizing information it intended to introduce to establish aggravating factors); *United States v. Glover*, 43 F. Supp. 2d 1217, 1236 (D. Kan. 1999) (using inherent authority to require government to give greater factual specificity regarding each aggravating factor).

Two judges in the District of New Mexico, Judge Robert Brack and Judge William Johnson, have also taken this approach.  In *United States v. Lujan*, Cr. No. 05-924 RB, Doc. 228 (Mem. Op. Jan. 14, 2008), Judge Brack ordered the Government to provide the defendant with an informative outline regarding several of the aggravating factors listed in the Notice of Intent.  Judge Johnson issued a similar order in *United States v. Taylor*, Cr. No. 07-1244 WJ, Doc. 236 (Mem. Op. April 20, 2009), adopting the reasoning employed by Judge Brack in *Lujan*.  On the same grounds set forth in Judge Brack's well-reasoned opinion, which are incorporated herein by reference, this Court will also require the Government to provide McCluskey with an informative outline of the way it plans to prove certain of the statutory and nonstatutory aggravating factors set forth in the Notice of Intent to Seek the Death Penalty.  Like Judge Brack, this Court emphasizes that the outline need not reveal evidentiary detail, but it should address the general nature of the Government will offer to prove its statutory threshold findings and aggravating factors, as discussed below.  *See United States v. Bin Laden*, 126 F. Supp. 2d 290, 304-05 (S.D.N.Y.2001) (ordering the government to provide additional information regarding aggravating factors but noting that it "envisions a document that is akin to an informative outline, but not a revelation of evidentiary detail or the Government's theory of its case.").

## 2.     Discussion of Threshold Findings and Aggravating Factors

### (a)     *Statutory Threshold Findings*

The first two threshold factors alleged in the Notice of Intent are that the defendant was 18 years of age or older at the time of the offenses, and that the defendant intentionally killed Gary Haas and Linda Haas.  In the Court's view, these two factors are relatively straightforward and it appears that McCluskey already has received adequate notice of how the Government intends to prove them.  The third statutory threshold factor is that McCluskey "intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Gary Haas and Linda Haas died as a direct result of the act."  The fourth is that McCluskey "intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Gary Haas and Linda Haas died as a direct result of the act." These factors are significantly more ambiguous than the first two, and therefore the Court concludes that McCluskey is entitled to additional information in order to adequately prepare his defense. Accordingly, the Government is ordered to provide McCluskey with a written informative outline of the general nature of the evidence it will offer to prove the third and fourth statutory threshold findings.

### (b)     *Statutory Aggravating Factors*

The Notice of Intent lists four statutory aggravating factors.  The first two relate to McCluskey's criminal history.  The first alleges that McCluskey "has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than one year, involving the use or attempted or threatened use of a firearm against another person . . ." and then lists three

15

sets of previous convictions.  The second statutory aggravating factor is that McCluskey "has previously been convicted of two or more Federal or State offenses, each punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury or death upon another person . . ." and then lists two sets of previous convictions.  These statutory factors are relatively straightforward, and as McCluskey presumably is well aware of his own criminal history, it appears unnecessary for the Government to provide him with further information regarding these convictions.  However, in the event the Government intends to offer evidence of any conviction not set forth on pages 2 or 3 of the Notice of Intent, it must notify McCluskey in writing as soon as possible.

The fourth statutory aggravating factor is that McCluskey "intentionally killed more than one person in a single criminal episode."  Given the discovery and information that the Government has already provided to McCluskey regarding how it intends to prove the circumstances surrounding the murders of both Gary and Linda Haas, it does not appear that McCluskey requires further notice in connection with this factor.

Finally, the third statutory aggravating factor is that McCluskey "committed the offense in an especially heinous, cruel, and depraved manner in that it involved serious physical abuse to the victims."   Under the FDPA, this statutory aggravator applies where the offense "involved torture or serious physical abuse to the victim."  18 U.S.C. § 3592(c)(6).  The Tenth Circuit has held that "[s]erious physical abuse—unlike torture—may be inflicted either before or after death and does not require that [the victim] be conscious of the abuse at the time it was inflicted."  *United States v. Chanthadara*, 230 F.3d 1237, 1261-62 (10th Cir. 2000).  This factor is considerably less clear than the other three statutory aggravating factors, and it is broad enough that McCluskey is entitled to additional information in order to allow him to prepare his defense.  Accordingly, the Court orders

16

the Government to provide McCluskey with a written informative outline describing how it intends to prove the third statutory aggravating factor.

(c)      *Nonstatutory Aggravating Factors*

(i)      *Victim Impact Evidence*

The Notice of Intent lists five nonstatutory aggravating factors.  The first, victim impact evidence, states as follows: "As demonstrated by the victims' personal characteristics as an individual human being and the impact of the death upon the victim and the victims' family and friends, the defendant caused injury, harm, and loss to the victim and the victims' family and friends . . ."  This factor is particularly nebulous, and the Notice of Intent give McCluskey little information as to the nature of the evidence the Government intends to offer to prove it.  Thus, the Court orders the Government to provide McCluskey with a written informative outline describing how it intends to prove victim impact.  *See, e.g., United States v. Diaz*, No. CR 05-167, 2007 WL 196752, at *5 (N.D. Cal. 2007) (noting that "[t]he notices here provide defendants with no notice of the type of 'injury, harm, and loss' to the victims' families and what 'personal characteristics' the victims possessed to support this aggravating factor," and ordering the government to "supplement its notice to provide an informative outline of the factual basis on which it intends to establish this nonstatutory aggravating factor"); *United States v. Rodriguez*, 380 F. Supp. 2d 1041, 1057-58 (D.N.D. 2005) (ordering the Government to provide an outline of proposed victim impact evidence in an amended notice of intent to seek the death penalty); *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 470-75 (E.D. Pa. 2001) (ordering the Government to provide an informative outline as to certain aggravating factors only, including victim impact); *United States v. Copper*, 91 F. Supp. 2d 90, 111 (D.D.C. 2000) (ordering the government to include "more specific information concerning the extent and scope of the injuries and loss suffered by each victim, his or her family members, and

other relevant individuals, and as to each victim's personal characteristics that the government intends to prove").

### (ii)      Contemporaneous Serious Criminal Acts

With regard to this nonstatutory aggravating factor, the Notice of Intent states: "The defendant killed Gary Haas and Linda Haas during a contemporaneous and continuing episode of serious criminal activity that included, but is not limited to the July 30, 2010, escape from Arizona State Prison - Kingman; the July 31, 2010, robbery and kidnapping of Prahbjeet Bains and Gurdop Singh; the purchase of illegal drugs in Albuquerque, New Mexico, on or about August 2, 2010; and the August 11, 2010, armed robbery of the Kut and Kurl hair salon in Gentry, Arkansas." It is not clear to the Court whether any of the above enumerated acts that encompass the "continuing episode of serious criminal activity" constitute unadjudicated criminal conduct. To the extent that the Government intends to prove unadjudicated criminal conduct in support of this aggravating factor, then it must provide McCluskey with an informative outline of how it will prove that conduct. Further, the Court notes that the Government has employed the phrase "included, but not limited to" in its description of the contemporaneous serious criminal acts. The Government must inform McCluskey as soon as possible if it intends to offer evidence of any contemporaneous criminal acts, whether previously adjudicated or not, that are not listed in the Notice of Intent.

### (iii)      Obstruction of Justice

The Notice of Intent alleges that McCluskey "killed Gary Haas and Linda Haas with the intent to prevent the victims from providing information and assistance to law enforcement authorities in regard to the investigation or prosecution of another offense or offenses, including but not limited to escape, kidnapping, carjacking, and robbery." The Court concludes that, in order for McCluskey to prepare an adequate defense during the penalty phase, he is entitled to additional

18

information regarding how the Government intends to prove that he acted with the specific intent described in the foregoing paragraph. Therefore, the Court orders the Government to provide McCluskey with an informative outline regarding how it intends to prove this nonstatutory aggravating factor.

#### (iv)     *Armed Fugitive From Justice*

The Notice of Intent states that McCluskey "was an armed fugitive from justice wanted by Federal, State, and local law enforcement agencies who traveled across several states from July 30, 2010 through August 19, 2010." This aggravating factor encompasses a great deal of information, none of which is spelled out in the Notice of Intent. In order to adequately prepare his defense, McCluskey is entitled to additional information from the Government. Therefore, the Court orders the Government to provide McCluskey with an informative outline regarding how it intends to prove this nonstatutory aggravating factor.

#### (v)     *Future Dangerousness*

The Notice of Intent states that "[t]he defendant is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others, as evidenced by at least one or more of the following," at which point it lists six subfactors. By using the phrase "at least," this factor creates ambiguity as to whether the Government will present evidence of additional subfactors. Accordingly, the Government must provide Defendant with an informative outline of the general nature of the evidence it plans to offer to prove McCluskey's future dangerousness. Additionally, each of the subfactors also warrants disclosure of additional information.

#### (A) Continuing Pattern of Violence

The Notice of Intent alleges that McCluskey "has engaged in a continuing pattern of

violence, attempted violence, and threatened violence, including but not limited to the crimes alleged against the defendant in the Indictment and the following . . ." at which point it enumerates certain crimes.  This is similar to the "contemporaneous serious criminal acts" nonstatutory aggravating factor discussed above.  It is not entirely clear to the Court whether any of the enumerated acts that encompass the "continuing pattern of violence" constitute unadjudicated criminal conduct.  To the extent that the Government intends to prove unadjudicated criminal conduct in support of this subfactor, then it must provide McCluskey with an informative outline of how it will prove that conduct.  Further, the Court notes that the Government has employed the phrase "including but not limited to" in its description of the acts that constitute a continuing pattern of violence.  The Government must inform McCluskey as soon as possible if it intends to offer evidence of any other acts, whether previously adjudicated or not, that are not listed in the Notice of Intent.

*(B)  Low Rehabilitative Potential*

In the Notice of Intent, the Government alleges that:

Defendant has demonstrated a low potential for rehabilitation as demonstrated by, but not limited to, the following:
(i) criminal acts committed after prior incarceration;
(ii) July 30, 2010 escape from Arizona State Prison - Kingman;
(iii) possession of a contraband cell phone at Arizona State Prison - Kingman;
(iv) possession and distribution of illegal drugs in Arizona State Prison system;
(v) possession of contraband weapons while incarcerated, including at least:
    (1) a razor blade at the Mohave County Jail on or about August 24, 2010;
    (2) a club-like weapon at the Mohave County Jail on or about June 15, 2011; and
    (3) a razor blade at the Mohave County jail in or about June 2011; and
    (4) a shank at the New Mexico Department of Corrections - Santa Fe in January 2012; and
(vi) illegal contact with a witness via telephone from the New Mexico Department of Corrections - Santa Fe on or about January 9, 2012.

Again, the Government has used the open-ended phrase "as demonstrated by, but not limited

to," which creates ambiguity as to whether the it intends to offer evidence of incidents other than those listed here.  Further, it appears that several of the enumerated incidents may constitute unadjudicated criminal conduct or violations of prison procedures.  In order to allow McCluskey to prepare his defense, the Government must provide McCluskey with an informative outline of the evidence it intends to offer in support of this subfactor.

### *(C)  Lack of Remorse*

The Notice of Intent states, "Defendant has not expressed genuine remorse for killing Gary Haas and Linda Haas as indicated by his actions following the killings, and his statements to his accomplices and law enforcement agents during the course of and following the offenses alleged in the Indictment."  The Notice of Intent does not specify the actions and statements that the Government intends to offer into evidence to support this subfactor.  The Court assumes that the Government has produced to McCluskey all of his statements which the Government intends to offer into evidence; however, if any such statements have not yet been produced, the Government must do so as soon as possible.  Further, the Government must provide McCluskey with an informative outline of the evidence it intends to offer in support of this subfactor

### *(D)  Callous Disregard for Human Life*

With regard to this subfactor, the Notice of Intent states as follows:

Defendant has demonstrated a callous disregard for human life as demonstrated by, but not limited to, the following:

(i)  the execution-style killings of Gary Haas and Linda Haas and the postmortem mutilation of their bodies;

(ii)  attempts to kill or seriously injure victims of previous criminal acts in Pennsylvania and Arizona;

(iii)  statements made to law enforcement officers following his August 19, 2010, arrest indicating that he would have done the same thing to other persons that he did to Gary and Linda Haas;

(iv)  statements made to law enforcement officers following his August 19, 2010, arrest indicating that he would have shot the arresting officers if he would have

21

had his gun;

(v) statements made to law enforcement officers following his August 19, 2010, arrest indicating that he should have killed a park employee;

(vi) statements made to an accomplice indicating that he intended to fight and kill any law enforcement officers if confronted while on the run; and

(vii) statements made to Arizona law enforcement officers in 2009 regarding his desire to inflict serious bodily injury to others.

By this point, it should be fairly clear to McCluskey what evidence the Government intends to offer to prove that he killed Gary and Linda Haas and burned their bodies. Thus, there is no need for the Government to clarify subpart (i). With regard to subpart (ii), as before, if the Government intends to offer evidence of unadjudicated crimes, it must provide McCluskey with an informative outline. Finally, with regard to subparts (iii) through (vii), the Court is under the impression that the Government has already provided McCluskey with all of his statements. To then extent it has not done so, the Government must produce those statements to McCluskey as soon as possible.

### (E) Gang Membership

The Notice of Intent states that McCluskey "has demonstrated an allegiance to and membership in the Aryan Brotherhood, a violent criminal enterprise." It is far from clear how the Government intends to prove this subfactor, and notice to McCluskey is necessary in order to provide him a reasonable opportunity to prepare his defense. Thus, the Government must provide McCluskey with an informative outline of the evidence it intends to offer regarding this subfactor.

### (F) Escape Risk

The Government alleges in the Notice of Intent that "Defendant represents an escape risk as demonstrated by his July 30, 2010, escape from the Arizona State Prison - Kingman and his possession of contraband weapons while incarcerated." In order to provide McCluskey a reasonable opportunity to prepare his defense, the Government must provide him with an informative outline of the evidence it intends to offer regarding this subfactor.

**IT IS THEREFORE ORDERED** that:

(1)     *Defendant's Motion to Preclude the Use of the Non-Statutory Aggravating Factor of Future Dangerousness . . . And Request for a Hearing* [Doc. 393] is **DENIED**; and

(2)     *(Corrected) Defendant's Motion to Dismiss Particular Aggravating Factors From the Third Superseding Indictment, and to Strike Particular Aggravating Factors from the Notice of Intent to Seek the Death Penalty, And for Other Relief* [Doc. No. 396] is **DENIED IN PART** and **GRANTED IN PART** as described herein; and

(3)     No later than September 14, 2012, the Government must provide the Defendant and the Court with an informative outline as described herein; further, if the Government needs additional time to prepare the outline, it may move the Court for an extension of the deadline.


_____
**UNITED STATES DISTRICT JUDGE**