IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                                                                                            Case No. CR 10-2734 JH

JOHN CHARLES McCLUSKEY,

       Defendant.


**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Defendant McCluskey's document styled *Motion to Compel Election Between Counts 6-8, 10, and 15-18 Because These Counts are Multiplicitous and Violate the Fifth Amendment Prohibition Against Double Jeopardy* [Doc. 311]. After considering the arguments of counsel and the governing legal authorities, the Court concludes that the motion should be denied.

**BACKGROUND**

The Defendant is charged in a twenty-count Third Superceding Indictment ("Indictment") with various crimes arising out of the alleged carjacking and murder of victims Gary and Linda Haas on August 2, 2010. *See* Doc. 274. Within the body of his motion, Defendant McCluskey asserts that the charges in Counts 1-3 of the Indictment are multiplicitous of those in 6-8; the charges in Counts 9-12 are multiplicitous of those in Counts 15-18; the charge in Count 9 is multiplicitous of that in Count 10; and the charge in Count 15 is multiplicitous of that in Count 16. To remedy these perceived violations of the Fifth Amendment's Double Jeopardy Clause, the Defendant asks the

Court to compel the Government to elect pre-trial from among the multiplicitous counts and to dismiss the non-elected charges. The Government responds that none of the counts at issue are multiplicitous of one another and, even if the Court were to find any multiplicity, the appropriate remedy is to merge counts for sentencing, or to impose concurrent sentences, rather than force it to elect pre-trial from among counts.

For clarification and reference, the counts relevant to this motion are:

| | |
|---|---|
| Count 1: | Conspiracy to commit carjacking |
| Count 2: | Carjacking resulting in the death of Gary Haas |
| Count 3: | Carjacking resulting in the death of Linda Haas |
| | |
| Count 6: | Conspiracy to commit Hobbs Act robbery |
| Count 7: | Hobbs Act robbery of Gary Haas |
| Count 8: | Hobbs Act robbery of Linda Haas |
| | |
| Count 9: | Firearms murder of Gary Haas (predicate crime of violence: carjacking conspiracy) |
| Count 10: | Firearms murder of Linda Haas (predicate crime of violence: carjacking conspiracy) |
| | |
| Count 11: | Firearms murder of Gary Haas (predicate crime of violence: carjacking) |
| Count 12: | Firearms murder of Linda Haas (predicate crime of violence: carjacking) |
| | |
| Count 15: | Firearms murder of Gary Haas (predicate crime of violence: Hobbs Act robbery conspiracy) |
| Count 16: | Firearms murder of Linda Haas (predicate crime of violence: Hobbs Act robbery conspiracy) |
| | |
| Count 17: | Firearms murder of Gary Haas (predicate crime of violence: Hobbs Act robbery) |
| Count 18: | Firearms murder of Linda Haas (predicate crime of violence: Hobbs act robbery) |

## **DISCUSSION**

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. This fundamental principle creates protections "against successive prosecutions for the same offense

after acquittal or conviction . . . and against multiple criminal punishments for the same offense." *Monge v. California*, 524 U.S. 721, 727-28 (1998).[1]

"Multiplicity" refers to multiple counts in an indictment that cover the same criminal behavior. *United States v. Greene*, 239 Fed. Appx. 431, 436 (10th Cir. 2007). Although the primary harm to be prevented in addressing multiplicitous charging is the threat of multiple criminal punishments for a single offense, the Tenth Circuit and others have recognized the subordinate issue of potential prejudice to the defendant in the eyes of the jury upon presentment of multiplicitous charges. *E.g., United States v. Moorhead* 959 F.2d 1489, 1505 (10th Cir. 1992); *United States v. Williams*, 527 F.3d 1235, 1241 (11th Cir. 2008) ("A multiplicitous indictment not only subjects the defendant to numerous sentences for one offense, but also 'prejudice[s] the defendant and confuse[s] the jury by suggesting that not one but several crimes have been committed.'" (quoting *United States v. Hearod*, 499 F.2d 1003, 1005 (5th Cir. 1974) (per curium)). "Although multiplicity is not fatal to an indictment, multiplicitous counts which may result in multiplicitous convictions are considered improper because they allow multiple punishments for a single criminal offense." *United States v. McCullough*, 457 F.3d 1150, 1162 (10th Cir. 2006) (internal quotation marks omitted).

To determine whether prosecution for multiple offenses is permissible, courts should look for clear Congressional intent to impose cumulative punishment for the same conduct under the two statutory provisions. *See Garrett v. United States*, 471 U.S. 773, 778-79 (1985) (where multiple counts cover same criminal behavior, courts must first determine whether Congress intended multiple convictions and sentences under the statutes). If congressional intent is not apparent, courts

---

[1]While seemingly straightforward on its face, this constitutional provision has resulted in a body of case law that (later, Chief) Justice William H. Rehnquist once described as "a veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator." *Albernaz v. United States*, 450 U.S. 333, 343 (1981).

apply the test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932), asking "whether each provision requires proof of a fact which the other does not." *Id.* at 304. "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." *Id.* at 304 (internal quotation marks omitted). The Supreme Court has explained that this typ of "same elements" test is "certain and predictable . . . [b]ecause the elements approach involves a textual comparison of criminal statutes and does not depend on inferences that may be drawn from evidence introduced at trial . . . ." *Schmuck v. United States*, 489 U.S. 705, 720 (1989) (employing an elements test in determining when a jury instruction for a lesser-included offense may be given). *See United States v. Greene*, 239 Fed.Appx. at 436 (discussing the *Schmuck v. United States* analysis in the context of the *Blockburger* test).

  **A.** **The Hobbs Act charges in Counts 1-3 are not Multiplicitous of the Carjacking Charges in Counts 6-8**

Counts 1-3 charge the Defendant with two substantive counts of carjacking and one count of conspiracy to commit carjacking. Counts 1-3 allege that the Defendant "with the intent to cause death and serious bodily harm, did take a motor vehicle, a 2006 Chevrolet Pick-Up Truck, . . . which had been transported, shipped and received in interstate commerce, from the person and presence of Gary [and Linda] Haas by force and violence, and by intimidation, resulting in the death of Gary [and Linda] Haas," and conspiring to do the same. Doc. 274 at 2-3. Counts 6-8 charge the Defendant with two substantive counts of Hobbs Act robbery and conspiring to commit Hobbs Act robbery. These counts allege in pertinent part that the Defendant "did unlawfully obstruct, delay and affect commerce . . . , and the movement of articles and commodities in such commerce, by robbery as that term is defined in Section 1951, in that the defendant did unlawfully take and obtain

4

personal property including but not limited to a 2006 Chevrolet Pick-Up Truck [] , a camper trailer . . . , a sum of U.S. currency, a Glock, Model 36, .45 caliber semi-automatic handgun, . . . , a Glock, Model 17, 9mm semi-automatic handgun, . . . , and a Rossi, .38 caliber handgun . . . ." *Id.* at 4-5.

The Defendant contends that "in the present case, all operative facts underlying these two sets of Counts are identical and, as charged in the [I]ndictment, the two sets are multiplicitous of one another." Mot. at 4, Reply at 3. More particularly, the Defendant asserts: "[g]iven that the taking of the truck is the basis for both sets of counts, proof of the carjacking allegations necessarily proves the Hobbs Act charges." *Id*. at 6. The Government responds that settled Tenth Circuit precedent, (discussed in detail *infra),* establishes that the carjacking statute and the Hobbs Act robbery provision set forth two distinct crimes, even when accomplished as a single course of conduct. *See* Resp. at 3-4 (citing *United States v. Malone*, 222 F.3d 1286 (10th Cir. 2000), *United States v. Rushing*, 210 Fed. Appx. 767 (10th Cir. 2006) (unpublished)). Moreover, the Government points out that in addition to relying on the taking of a vehicle to support the Hobbs Act charges, the Indictment relies on other items of personal property that could not form the basis of a carjacking charge. The Government also suggests that if the Court finds a "Fifth Amendment problem" with the Hobbs Act counts as charged in conjunction with the carjacking, it ought to "require the Government to abandon the specific language of the Hobbs Act charges relating to the stolen vehicle and rely solely on the Defendant's alleged theft of the victims' other personal property." Resp. at 5, fn.1.

Nothing in the text of 18 U.S.C. § 1951 (Hobbs Act) or 18 U.S.C. § 2119 (carjacking) directly indicates whether Congress intended cumulative punishment for conduct violating both statutes. Accordingly, the Court will turn to the Supreme Court's *Blockburger* test for double jeopardy sameness, asking whether each offense requires proof of a fact the other does not.

To prove the elements of the Hobbs Act counts, the Government must prove that: (1) the Defendant took property described in the indictment from the victims; (2) that the Defendant did so by use of actual or threatened force, violence, or fear; and (3) that as a result of the Defendant's actions, interstate commerce, or an item moving in interstate commerce, was actually or potentially delayed, obstructed, or affected in any way or degree.[2] Tenth Circuit Criminal Pattern Jury Instructions 2.70. The Hobbs Act prohibits "commit[ing] or threaten[ing] physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section," 18 U.S.C. § 1951(a), though this phrase does not create a separate violation of the Act. The Supreme Court has determined that "physical violence unrelated to robbery or extortion falls outside the scope of the Hobbs Act." *Scheidler v. National Org. for Women, Inc.*, 547 U.S. 9, 16 (2006) (stating: "Congress did not intend to create a freestanding physical violence offense in the Hobbs Act. It did intend to forbid acts or threats of physical violence in furtherance of a plan or purpose to engage in what the statute refers to as robbery or extortion (and related attempts or conspiracies))." *Id.* at 23 (parenthetical in original).

To prove the substantive carjacking counts, the Government must establish that: (1) the defendant intentionally took the pickup truck described in the Indictment from the person or presence of the victims; (2) that the Defendant did so by means of force, violence or intimidation; (3) that the pickup truck had been transported, shipped or received in interstate commerce; (4) that the Defendant intended to cause death or serious bodily injury; and (5) that the victims died as a

---

[2]Though the vast majority of Hobbs Act robbery cases are charged in crimes against businesses, the Act has, in certain circumstances, been applied to robberies of individuals. *See, e.g.*, *United States v. Lynch*, 437 F.3d 902, 916 (9th Cir. 2006) (en banc) (per curiam) (affirming a Hobbs Act conviction where the defendant lured an individual victim across state lines and then used the victim's debit card).

result of the crime. *Id*. at 2.79.

Thus, to prove the carjacking allegations, the Government must show essentially the same things as for the Hobbs Act charges, but in addition must establish that the Defendant had the specific intent to cause death or serious bodily injury if necessary to accomplish the vehicle theft (and, in this case, that the victims in fact died). Further differentiating the two crimes, while Hobbs Act robbery requires proof of the unlawful taking of personal property from the person or presence of another, it does not require the Government to prove theft of a vehicle. *See* 18 U.S.C. § 1951(b)(1). Also notable, the jurisdictional elements of the two crimes are somewhat distinct.[3] Carjacking requires the Government to show that the vehicle taken was transported, shipped or received in interstate commerce, while the Hobbs Act charges require more general proof that interstate commerce, or an item moving in interstate commerce, was actually or potentially delayed, obstructed, or affected in any way or degree.

In summary, then, the carjacking charges require specific intent to harm and theft of a vehicle – two elements not required to establish a Hobbs Act violation – as well as a jurisdictional showing different and more particular than that required by the Hobbs Act. The Court notes that whether the Hobbs Act actually requires an additional element not required to prove the carjacking is a point of contention between the parties. However, the Tenth Circuit has already spoken on whether *Blockburger's* requirement that *each offense contain an element that the other does not* is met in this charging scenario and it has answered in the affirmative.

The Tenth Circuit has twice held that Hobbs Act violations and carjacking violations are

---

[3] A jurisdictional element is a provision that requires a factual finding justifying the exercise of federal jurisdiction in connection with any individual application of the statute. *See United States v. Harrington*, 108 F.3d 1460, 1465 (D.C. Cir. 1997).

7

separate crimes for purposes of sentencing. *United States v. Malone*, 222 F.3d 1286 (10th Cir. 2000); *United States v. Rushing*, 210 Fed. Appx. 767 (10th Cir. 2006) (unpublished). The Defendant acknowledges that the Tenth Circuit has rejected the argument he presently puts forth but asserts that *Malone* and *Rushing* are distinguishable from the present case on their facts. Motion at 7.

The Defendant in *Malone* carjacked a federal employee at her home and forced her to drive to her place of employment, U.S. Express. The victim was then forced inside the U.S. Express building, ordered to open the safe, and Malone and others took the money. The three men involved were charged with carjacking the woman at her home and Hobbs Act robbery arising from unlawfully obtaining the money at her place of employment. Malone was convicted of Hobbs Act robbery and Carjacking (crimes of violence) along with two corresponding § 924(c) counts. *Id.* at 1292-94. On appeal. Malone asserted that he should have been convicted and sentenced on just one § 924(c) count because the two predicate crimes of violence, Hobbs Act and carjacking, were based on one continuous course of conduct and could not constitute separate crimes of violence for purposes of § 924(c). *Id.* Applying *Blockburger*, the Tenth Circuit disagreed, stating that "[i]t is undisputed that [robbery] and [carjacking] are directed at different types of conduct and require proof of different elements." *Id.* at 1294. Accordingly, the Tenth Circuit affirmed the district court's determination that two § 924(c) convictions were authorized for carjacking and robbery convictions that arose out of a single course of criminal conduct.

In *Rushing*, defendant Rushing and another man, both armed, entered a convenience store and Rushing pointed a gun at the clerk's head, demanding the keys to the clerk's personal vehicle parked outside the store. The clerk gave Rushing the keys. While holding the clerk at gunpoint, Rushing also demanded the money from the cash register and, for fear of being shot, the clerk complied. The two men then left the store, though Rushing returned soon after and demanded that

the clerk accompany him outside to unlock the vehicle. The clerk momentarily took the keys back from Rushing and unlocked the vehicle via the remote key. Rushing drove away in the clerk's vehicle and was arrested shortly thereafter. Rushing was convicted of Hobbs Act robbery by obtaining the money from the business's cash register and carjacking by taking the vehicle from the clerk himself. The court looked only to the charging statutes, relied on the holding in *Malone*, and rejected the defendant's argument that carjacking and Hobbs Act robbery were not separate offenses because they were part of a continuous act involving one victim and one weapon.

The Defendant contends that *Malone* is distinguishable from the present case primarily because the acts giving rise to the two sets of charges in *Malone* were separate in time and location, while the *Rushing* facts distinguish it from this case not only because the two types of stolen property were of a different nature, but also in that the victim of the robbery was a business (money taken from the convenience store's purse) and the victim of the carjacking was the clerk (vehicle taken from an individual as contemplated by carjacking statute). Here, the Defendant contends, because the Indictment relies on the theft of the victims' vehicle and its appurtenant property as the object of both the robbery and the carjacking, the Indictment does not sufficiently delineate separate offenses.

In holding that carjacking and Hobbs Act robbery are similar but separate offenses even when committed as part of "one continuous course of conduct," the Tenth Circuit announced a broad rule that the two offenses "are *directed at different types of conduct* and require proof of different elements." *United States v. Malone*, 222 F.3d at 1294. Upon a careful reading of *Malone*, the Court finds its ruling does not leave room for the factual distinctions the Defendant urges this Court to make here. It is worth noting the likelihood that some items of personal property will be present within any carjacked vehicle, and it is dubious whether Congress envisioned that the mere presence

9

of personal property within, or attached to, a carjacked vehicle would create both Hobbs Act robbery and carjacking offenses for the same act. For this reason, the charging scheme at issue here raises some concern, but this Court will respectfully follow binding Tenth Circuit authority on the particular multiplicity question presented. Accordingly, the Court concludes that Counts 1-3 and 6-8 are not multiplicitous and the Government may present both sets of counts to the jury.

### B.   Counts 9-12 are not Multiplicitous of Counts 15-18

The Defendant also asserts that the Government must elect to move forward on either Counts 9-12 or Counts 15-18, but should not be permitted to proceed to trial on both sets of counts because they, too, are multiplicitous. Counts 9-12 and 15-18 each allege the use of a firearm during and in relation to a crime of violence resulting in death, charging multiple violations of 18 U.S.C. § 924(c)(1) and (j)(1). 18 U.S.C. § 924(c) requires an additional penalty when a defendant "during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm . . . ." 18 U.S.C. § 924(j) prescribes sentences for conduct that violates section 924(c) and leads to death as follows:

> A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall—
>   (1) if the killing is a murder (as defined in section 1111) be punished by death or by imprisonment     for any term of years or for life; and
>   (2) if the killing is manslaughter (as defined in section 1112), be punished as provided in that section.

18 U.S.C. § 924(j).

In Counts 9-12, the predicate crimes of violence are carjacking of, and conspiracy to carjack, each of the two victims as charged in Counts 1-3. The predicate crimes of violence underlying Counts 15-18 are Hobbs Act robbery and conspiracy to commit Hobbs Act robbery as to each of the two victims, charged in Counts 6-8. The Defendant contends that "[b]ecause each carjacking

10

offense and its Hobbs counterpart constitute a single offense for double jeopardy purposes, these counts also constitute a single 'crime of violence' within the meaning of § 924." Mot. at 9 (citing *United States v. Chalan*, 812 F.2d 1302 (10th Cir. 1987)).

The question of whether the firearms murder counts predicated upon the Hobbs Act robbery charges (Counts 15-18) are multiplicitous of the firearms murder counts predicated upon the carjacking charges (Counts 9-12) turns entirely on the determination in Subsection A, *supra*. In short, because the Court has concluded that the underlying carjacking and Hobbs Act charges are not multiplicitous of one another under *Malone*, it is abundantly clear that they are both available to serve as predicate offenses to support the 924(c) violations as charged. This was the precise question before the Tenth Circuit in *Malone*. The Court stated:

> In order to determine in the present case whether the predicate offenses of robbery and carjacking are one crime of violence or two under section 924(c) we look to the test developed in *Blockburger*, even though the offenses occurred during a continuous course of conduct. Here, Malone was convicted of two violations of section 924(c) based on the separate underlying offenses of robbery in violation of 18 U.S.C. § 1951, and carjacking in violation of 18 U.S.C. § 2119. It is undisputed that section 1951 and 2119 are directed at different types of conduct and require proof of different elements. Thus, the district court did not commit plain error in determining that two convictions were authorized under the language of section 924(c).

*Malone* at 1294. Accordingly, the Defendant's Motion will be denied as to his multiplicity challenge on Counts 9-12 and 15-18.

### C.    Neither Counts 9-10 Nor Counts 15-16 are Multiplicitous

Finally, the Defendant challenges the constitutionality of the manner in which the Government has charged Counts 9-10 and 15-16. The question presented is whether a single act of conspiring to carjack and a single act of conspiring to commit Hobbs Act robbery can each serve as a predicate offense for two separate violations of § 924(c) – which in turn each form the basis for

11

two applications of § 924 (j) – in order to account for two separate deaths.  This presents an issue of first impression in the Tenth Circuit.

For clarification, Counts 9-10 and 15-16 are §§ 924(c) and (j) Counts charging separate firearms murder to account for the two separate victims, Gary and Linda Haas.  Counts 9 (Gary) and 10 (Linda) are predicated on the same crime of violence, conspiracy to commit carjacking.  Counts 15 (Gary) and 16 (Linda) are also predicated on the same crime of violence, conspiracy to commit Hobbs Act robbery.

Of the few courts confronting similar (though in no case identical) issues, the Court of Appeals for the Seventh Circuit provides guidance this Court finds persuasive.  *United States v. Curtis*, 324 F.3d 501, 508-09 (7th Cir. 2003) (affirming defendants' convictions for separate firearms murders, in violation of section 924(j), predicated upon a single drug conspiracy charge).  The *Curtis* court acknowledged that Congress *may* have generally intended § 924(j) to be an enhancement provision for a violation of § 924(c), as it has indeed been construed in the Tenth Circuit in *United States v. Battle*, but that Congress also intended for each murder to be punished separately.  To conclude otherwise, said the *Curtis* court, would mean that all but the first killing committed in the course of a long-running drug trafficking conspiracy would not be covered by the statute.  The court stated, "[w]e will not presume that Congress intended such an outcome without far more explicit statutory language." *Curtis*, 324 F.3d at 509.  Similarly, this Court will not presume that Congress intended that all but the first murder committed in the course of a carjacking conspiracy or Hobbs Act robbery conspiracy would not be covered by the statute.

The Defendant attempts to distinguish *Curtis* and predict a different outcome in the Tenth Circuit based, in significant part, on the ruling in *United States v. Battle*, wherein the Tenth Circuit joined those circuits having concluded that 924(j) does not create a substantive offense separate from

924(c), but instead constitutes an aggravating sentencing provision. The Defendant asserts that the *Curtis* holding was "based on the [Seventh Circuit's] construction of § 924(j) as creating an offense separate from § 924(c), a construction explicitly rejected by the Tenth Circuit in *Battle*." Motion at 14, fn.3; *see also* Reply at 4-5. Mindful of the Tenth Circuit's ruling in *Battle*, the Court simply does not agree with the Defendant's expansion of its logic to reach the result he seeks here. Instead, the Court finds that the Government has properly charged Counts 9-10 and 15-16 to account for the separate deaths of Gary and Linda Haas during the commission of the alleged conspiracies. Accordingly, Defendant McCluskey's multiplicity challenge as to the manner in which the Government has charged counts 9-10 and 15-16 will be denied.

## CONCLUSION

Applying Tenth Circuit precedent and the test set forth by the Supreme Court in *Blockburger,* the Court first finds that carjcaking and Hobbs Act robbery delineate separate substantive offenses. Accordingly, the Court finds that Counts 1-3 are not multiplicitous of Counts 6-8, and the Government may present both sets of charges to the jury. Further, where the predicate crimes of violence underlying Counts 9-12 and 15-18 delineate separate substantive offenses, they also constitute proper separate predicate crimes of violence for purposes of § 924(c) and the Government may proceed to trial on each of these counts. Finally, the Defendant's assertion that Counts 9-10 and 15-16 are multiplicitous of one another must fail, based on well-settled principles allowing for separate charges to account for the deaths of separate victims and this Court's prediction that the Tenth Circuit would so conclude. Finally, the Court notes that if Fifth Amendment challenges exist after the trial in this matter, the Defendant should bring them before the Court for consideration prior to sentencing.

**IT IS THEREFORE ORDERED** that Defendant McCluskey's *Motion to Compel Election*

*Between Counts 6-8, 10, and 15-18 Because These Counts are Multiplicitous and Violate the Fifth Amendment Prohibition Against Double Jeopardy* [Doc.311] is **DENIED** in its entirety without prejudice.

_____
UNITED STATES DISTRICT JUDGE