# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     **Plaintiff,**

vs.              CR. No.  10-2734 JCH

JOHN CHARLES McCLUSKEY,

     **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendant's Motion to Prohibit Death Penalty, Exclude Informant and Cooperator Testimony and Request Reliability Hearing* [Doc. 392].  In the motion, Defendant John McCluskey moves to prohibit the imposition of the death penalty and the admission of testimony by any informant or other cooperating witness, including co-conspirators, on the grounds that such testimony (1) violates the Due Process, Equal Protection, and Cruel and Unusual Punishment clauses of the United States Constitution; (2) is unreliable; and (3) has probative value that is substantially outweighed by the danger of unfair prejudice.  McCluskey asks the Court to either exclude the testimony or to hold a hearing to determine the reliability of those witnesses. After considering the briefs submitted by the parties and the applicable legal authorities, the Court will deny the motion.

## DISCUSSION

According to McCluskey, the Government's case against him "is rife with cooperator and informant testimony."  McCluskey refers to his co-defendants, who have cooperated with the Government in order to avoid the death penalty, as well as other informants who have provided

information to the Government to assist in the prosecution.[1]  Although the Court is unaware of the specifics surrounding most of these cooperators and informants or the details of their anticipated testimony, it appears that some of these individuals are incarcerated or on parole.  McCluskey portrays their testimony as "most if not all the evidence that the Government has that forms the basis of the Third Superseding Indictment," as well as its support for the aggravating factors alleged in the *Notice of Intent to Seek the Death Penalty* [Doc. 275].  Citing various studies and law review articles, McCluskey argues that the testimony of these witnesses, obtained by the Government in exchange for a reduction in their own culpability or sentences, is inherently unreliable.[2]  He also contends that "[c]ross examination may be an insufficient tool to establish the veracity of these unverifiable statements."  Thus, he asks the Court to hold that the testimony of cooperating witnesses cannot be the basis of a death sentence under the Eighth Amendment or the Federal Death Penalty Act ("FDPA").  McCluskey also contends that all such testimony should be excluded when it is not corroborated by admissible evidence other than the testimony of other informants.

The Government disagrees, pointing out that cooperator testimony will be corroborated by scientific evidence, McCluskey's own statements[3], independent witness testimony and video evidence placing McCluskey at or near locations relating to the crime.  The Government points out

---

[1] McCluskey has filed a motion to suppress the statements of his alleged co-conspirators. By agreement of the parties and in light of the co-conspirators' invocation of their Fifth Amendment rights to remain silent, the Court has postponed ruling on the motion to suppress until the time of trial.

[2] Counsel for the Government have represented to the Court that none of the Government's witnesses have been or will be paid for their testimony.

[3] Although the Court has suppressed statements that McCluskey made to FBI Agents Rominger and McCaskill on August 20 and August 24, 2010, the Court understands that the Government has other statements by McCluskey that it intends to offer into evidence.

2

that McCluskey has cited no binding authority for his assertion that, under the Eighth Amendment and the FDPA, the testimony of cooperating witnesses cannot be used in a case in which the Government is seeking a death sentence. Furthermore, the Government points out that the need for heightened reliability in capital cases is not inconsistent with the use of informant testimony.

After reviewing the briefs and the cited authorities, the Court agrees with the Government. It has long been recognized that grants of immunity, plea agreements, and sentencing leniency are appropriate tools for use in the criminal justice system. Indeed, the Rules of Criminal Procedure explicitly authorize these devices, and the Court can find no authority that provides that they may not be employed in a capital case. McCluskey points to the unequal balance of power between a defendant and the Government, which has the power to offer incentives such as plea deals and shorter sentences to witnesses who might otherwise be reluctant to testify. However, the reverse is also true. The task of obtaining truthful testimony to prosecute criminal matters often presents a difficult challenge to the Government. Witnesses are routinely either in conspiracy with the defendant or at risk of harm because they bore witness to criminal conduct. In either case, the Government frequently faces barriers to obtaining relevant, truthful testimony.

Rather, in the Court's view, the jury is capable of competently deciding whether any cooperator, co-conspirator, or informant who has been promised a reward for his or her testimony is testifying truthfully while considering the incentives received in exchange for that testimony. McCluskey has highly competent counsel, who no doubt will employ effective cross examination techniques in order to point out to the jury that a cooperator may have an incentive to distort the truth. In addition, the Court intends to give the jury a standard instruction directing them to consider the motivations and biases of witnesses. This approach has a long and well-established history in the American judicial system. In *Hoffa v. United States*, 385 U.S. 293, 311 (1966), the Supreme

Court upheld the admission of a compensated informant's testimony.  The Court concluded that the testimony did not violate due process even though the witness had a high motivation to lie because "it does not follow that his testimony was untrue, nor does it follow that his testimony was constitutionally inadmissible. The established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross examination, and the credibility of his testimony to be determined by a properly instructed jury."  *Id*. at 311.  More recently, in *United States v. Fria Vazquez Del Mercado*, 223 F.3d 1213, 1215 (10th Cir. 2000), the Tenth Circuit relied on *Hoffa* and concluded that due process did not require the exclusion of co-conspirator's testimony.  The Tenth Circuit rejected the defendant's argument that, "by offering lenient treatment in exchange for that testimony, the government created an impermissible danger that their testimony would be perjurious." *Id*.  The court further noted that vigorous cross-examination concerning the informants' agreements with the Government and proper instructions from the court regarding the "need to carefully assess the credibility of these witnesses" provide a sufficient opportunity for the jury to properly consider their credibility.  *Id*.

McCluskey spends a great deal of time in his brief discussing the inherent unreliability of informant testimony.  He argues that this lack of reliability makes informant testimony *per se* "intolerable in a capital case."  However, he cites no court which has agreed with this proposition and ordered a blanket exclusion of such testimony on that basis.  In this Court's view, the jury's ability to consider a witness' incentive to prevaricate, to assess that witness' credibility, and to then give his testimony the weight it deserves is the proper counterbalance to the lack of reliability in the testimony of a cooperator or informant.

The cases cited by McCluskey do not alter the Court's view.  In *United States v. Levenite*, 277 F.3d 454 (4th Cir. 2002), the cooperating informant at issue was paid a substantial monetary

4

sum for his testimony, and that payment was contingent on the Government obtaining a conviction. Despite its concerns that compensated testimony could result in "truth-bending or even perjury," *id.* at 462, the court allowed the testimony because it was corroborated and there was no evidence of perjury by the witness.  Here, not only is there no issue of paid testimony, but as discussed below, it appears that there is likely to be corroboration for much of the informant testimony.  Two Ninth Circuit cases cited by McCluskey are similarly inapposite.  *Horton v. Mayle*, 408 F.3d 570, 581 (9th Cir. 2005) and *Silva v. Brown*, 416 F.3d 980, 991 (9th Cir. 2005) involved the Government's failure to disclose impeachment evidence to the defense, such as the existence of a lenience deal or promise that would be valuable in impeaching a witness whose testimony is central to the prosecution's case. Conversely, McCluskey does not suggest that the Government has failed to make such disclosures in this case, and in any event, the Court now reminds the Government of its continuing duty to disclose such information.  Finally, in *United States v. Cammisano*, 917 F.2d 1057 (8th Cir. 1990), the  Eighth Circuit rejected testimony by multiple informants that had been considered by the trial court during sentencing, despite the fact that the witnesses' testimony corroborated each other.  The court reasoned that the testimony was not reliable because it was "merely hearsay upon hearsay upon hearsay."  *Id.* at 1062.  That does not appear to be the case here; indeed, McCluskey admits that many of the cooperating witnesses will testify as to statements made by McCluskey, which under Federal Rule of Evidence 801(d)(2)(A) are admissions by a party opponent and therefore are expressly defined as *not* hearsay.

In addition, the Court notes that it does not appear that the Government's case rests entirely on the testimony of co-conspirators and cooperating informants.  The Court is aware that the Government intends to offer physical evidence, such as fingerprints, DNA, blood analysis, and firearm identification, to support its case.  It also intends to offer the testimony of law enforcement

officers, who will describe statements made by McCluskey after he was apprehended in August of 2010.  Thus, it appears that the testimony of at least some of the cooperating witnesses will not be uncorroborated.

Finally, the Court concludes that McCluskey is not entitled to a separate and advance reliability hearing as to the cooperating witnesses, co-conspirators, and informants. Although the defense may lack pretrial access to many of the informants, under the Jencks Act, as well as *Brady* and *Giglio*, the Government is under a continuing duty to provide McCluskey with certain information necessary to prepare for cross examination of these witnesses.  Again, the Court admonishes the Government to strictly adhere to its duties in that regard.

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that *Defendant's Motion to Prohibit Death Penalty, Exclude Informant and Cooperator Testimony and Request Reliability Hearing* [Doc. 392] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**