# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     **Plaintiff,**

vs.             CR. No.  10-2734 JCH

JOHN CHARLES McCLUSKEY,

     **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendant John Charles McCluskey's *(Corrected) Defendant's Omnibus Motion to Dismiss the "Special Findings" From the Third Superceding Indictment, and to Strike the Notice of Intent to Seek the Death Penalty* [Doc. No. 397].  In that motion, which is 135 pages in length (not counting the Table of Contents and Table of Authorities), McCluskey offers seven main arguments in support of his request that the Court dismiss the special findings from the Third Superceding Indictment and striking the Notice of Intent to Seek the Death Penalty on the grounds that the Federal Death Penalty Act is unconstitutional either on its face or as applied to him.  The motion will be denied in its entirety.[1]

---

[1] In addition to McCluskey's motion and brief, the Court has, of course, also considered the voluminous exhibits McCluskey submitted with his motion, along with the Government's 64-page response brief and McCluskey's reply brief.

## DISCUSSION

I.   **WHETHER THE FDPA OPERATES IN AN ARBITRARY, CAPRICIOUS, IRRATIONAL, OR DISCRIMINATORY MANNER**

A.   **Infrequency of Application**

McCluskey argues that because the federal death penalty is infrequently sought and even more infrequently carried out, its imposition is arbitrary, capricious, and therefore unconstitutional. In support of his argument, McCluskey relies upon *Furman v. Georgia*, 408 U.S. 238 (1972), in which the Supreme Court struck down as unconstitutional the Georgia capital punishment statute then in effect.  In a concurring opinion, Justice Stewart stated that the death sentences at issue were

> cruel and unusual in the same way that being struck by lightning is cruel and unusual. For, of all the people convicted of rapes and murders in 1967 and 1968, many just as reprehensible as [those committed by petitioners], the petitioners are among a capriciously selected random handful upon whom the sentence of death has in fact been imposed.  My concurring Brothers have demonstrated that, if any basis can be discerned for the selection of these few to be sentenced to die, it is the constitutionality impermissible basis of race . . . I simply conclude that the Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be so wantonly and so freakishly imposed.

*Id.* at 309-10 (Stewart, J., concurring) (citations and footnote omitted).  McCluskey argues that Justice Stewart's statement constitutes the "essence" of *Furman*. Doc. 397 at 29, 31 (characterizing *Furman* as viewing "arbitrariness and caprice ... as the inevitable side-effects of a rarely-imposed punishment of death").  Given this reading, he argues that because the federal death penalty is rarely sought or imposed, the FDPA is no different from the Georgia statute invalidated in *Furman*.

In his well-reasoned opinion in *United States v. Taylor*, 648 F. Supp. 2d 1237, 1239-41 (D.N.M. 2008), Judge William Johnson rejected the argument that McCluskey advances here.  Other

2

federal courts have considered and rejected the argument as well; none has concluded that the FDPA is unconstitutional. *See, e.g. United States v. Sampson*, 486 F.3d 13, 23-24 (1st Cir. 2007); *United States v. Mitchell*, 502 F.3d 931, 983 (9th Cir. 2007); *United States v. Jacques*, 2011 WL 1675417 at*2-3 (D. Vt. May 4, 2011); *United States v. Barnes*, 532 F. Supp. 2d 625, 631-33 (S.D.N.Y. 2008); *United States v. Hammer*, 25 F. Supp. 2d 518, 546-47 (M.D. Pa. 1998); *United States v. O'Driscoll*, 203 F. Supp. 2d 334, 341 (M.D. Pa. 2002). Many of these courts have pointed out that, in its post-*Furman* decisions, the Supreme Court has indicated that the problem of arbitrariness may be addressed by a capital punishment scheme that guides the discretion of the decision-makers responsible for imposing the death penalty. In particular, the Supreme Court has indicated that, "[t]ogether . . . *Furman* . . . and *Gregg* ... establish that a[ ]capital sentencing system must: (1) rationally narrow the class of death-eligible defendants; and (2) permit a jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime." *Kansas v. Marsh*, 548 U.S. 163, 173-74 (2006) (citations omitted).

This Court joins these other federal courts in disagreeing with McCluskey's argument. The *Furman* Court did not hold that the infliction of the death penalty *per se* violated the Constitution, but instead that "where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia*, 428 U.S. 153, 189 (1976) (discussing Supreme Court's holding in *Furman*). The FDPA accomplishes this through the strict procedural requirements that enable the Court and the jury to direct and limit the application of the death penalty in a way that is not arbitrary or capricious. As discussed here and elsewhere (*see* Docs. 590 and 645), the FDPA first narrows the class of

3

death-eligible defendants by using statutory and non-statutory aggravating factors and then permitting the jury to make an individualized sentencing determination. More specifically, the statute first requires that the jury unanimously find the existence of an intent factor and at least one statutory aggravating factor beyond a reasonable doubt before a defendant is considered eligible for the death penalty. 18 U.S.C. §§ 3591–3593; *see Zant v. Stephens*, 462 U.S. 862, 878-79 (1983) ("statutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty. . . . What is important at the selection stage is an individualized determination on the basis of the character of the individual and the circumstances of the crime."); *United States v. Cooper*, 91 F. Supp. 2d 90, 96–97 (D.D.C. 2000). Then, at the selection phase, jurors must make an individualized determination regarding whether the defendant should be selected for the death penalty. The jurors must balance the statutory and non-statutory aggravating factors that it finds the Government has proved beyond a reasonable doubt against the mitigating factors it finds the defendant proved by a preponderance of the evidence. 18 U.S.C. § 3593(c), (e); *see United States v. Sablan*, No. 00–00531–WYD, 2006 WL 1028780, at *1 (D. Colo. Apr. 18, 2006). The aggravating factors must sufficiently outweigh the mitigating factors. 18 U.S.C. § 3593(e). This detailed process, which includes consideration of evidence and factors specific to the defendant, minimizes the risk of wholly arbitrary and capricious action. Accordingly, for these reasons and for the reasons set forth in the other district court opinions cited above, this portion of McCluskey's motion will be denied.

**B.     Principled Basis for Distinguishing Between Cases**

McCluskey next argues that the absence of a principled basis for distinguishing between cases where the federal death penalty is imposed from cases where it is not imposed renders the federal death penalty unconstitutional. In support of this argument, McCluskey has provided the

Court with case summaries of every completed authorized federal death penalty case since 1988 as well as 193 verdict sheets reflecting findings with regard to aggravating and mitigating factors for cases that reached the penalty phase.  All describe terrible crimes, though in only some of these cases were the defendants sentenced to death.  McCluskey asserts that this data illustrates that "[t]here is no rhyme, reason, or predictability to who is sentenced to death and who is not" and that the verdict sheets and compilations therefore "provide valuable insight into the hopelessly irremediable problem of arbitrariness and caprice that marks the administration of the federal death penalty system."  Doc. 397 at 36.

Again, the Court finds itself in agreement with Judge Johnson in *Taylor*, 648 F. Supp. 2d at 1241-42, as well as the other courts that have considered this argument. As Judge Johnson stated:

> These case summaries certainly paint a vivid picture, however, they are ultimately not persuasive.  The summaries are very short—almost all of them are between one and three sentences long.  In many cases they do not provide enough detail to allow the reader to determine whether or not the crimes they describe are comparable to each other. Moreover, they do not provide any information about the various aggravating or mitigating factors that existed in those cases and that the juries would have considered under the FDPA when deciding whether or not to impose the death penalty. This was exactly the concern expressed by the First Circuit in *United States v. Sampson*, 486 F.3d 13 (1st Cir. 2007), a case in which the defendant apparently provided similar summaries in support of a similar argument. The *Sampson* court stated, "The summaries on which *Sampson* relies to demonstrate inconsistency are devoid of details and fail to account for the objective circumstances of the underlying crimes. . . . [W]e decline Sampson's invitation to ignore individual differences across offenders and offenses." *Id*. at 25. While the case summaries are compelling, they simply do not constitute evidence of the arbitrary imposition of the death penalty.

*Id*. at 1242.  *See also United States v. Hammer,* 2011 WL 6020577 at *4-5 (M.D. Pa. Dec. 1, 2011) (unpublished); *United States v. Johnson,* 2009 WL 1856240 at*3-5 (E.D. Mich. June 29, 2009)

(unpublished); *United States v. Barnes*, 532 F. Supp. 2d 625, 633-34 (S.D.N.Y. 2008); *United States v. Le*, 327 F. Supp. 2d 601, 608–09 (E.D. Va. 2004) (finding that the FDPA aggravating factors "apply to a narrow range of homicides and provide a principled basis for distinguishing between those homicides that warrant imposition of the death penalty from those that do not."). This Court adopts the reasoning in *Taylor* and the foregoing cases, and will deny McCluskey's motion.

The Court also denies McCluskey's request for a proportionality review in the event he receives a sentence of death in this case. Proportionality review refers to the notion that imposition of the death penalty would be "unacceptable in a particular case because [it is] disproportionate to the punishment imposed on others convicted of the same crime." *Pulley v. Harris*, 465 U.S. 37, 43 (1984). In *Pulley*, the Supreme Court squarely rejected the claim that the Constitution requires proportionality review in death sentences. *Id.* at 43-45. "There is no basis in our cases for holding that comparative proportionality review by an appellate court is required in every case in which the death penalty is imposed and the defendant requests it." *Id. at* 50-51. All that the Fifth and Eighth Amendments require are the safeguards of reliability that are discussed elsewhere in this opinion. *See McCleskey v. Kemp*, 481 U.S. 279, 306 (1987) ("Where the statutory procedures adequately channel the sentencer's discretion, such proportionality review is not constitutionally required.").

### C.    Role of Race, Gender, and Region

McCluskey points to numerous studies that show that the Government seeks the death penalty more often when the defendant is black or Hispanic, when the victim is white or a white female, and when the prosecution takes place in the southeastern region of the United States. He also points out that in this case, both victims were white and one was female. Based upon this data, he argues that

> [t]he Cruel and Unusual Punishments Clause of the Eighth

> Amendment imposes a constitutional prohibition against racial discrimination in the use of the death penalty that is at least as strict as the general proscription of racial discrimination in the (implicit) equal protection clause of the Fifth Amendment.  Where a death penalty appears to operate so as to institutionalize racism, it offense the same constitutional values that yielded *Furman* and this nation's short-lived abandonment of capital punishment.

Doc. 397 at 60.  He thus urges the Court to conclude that "the existence of a 'white female victim' effect renders any death sentence in this case presumptively unconstitutional and/or in violation of 18 U.S.C. § 3593(f)."  *Id*. at 66.  His claims implicate the Fifth and Eighth Amendments.

Without a doubt, the statistical evidence that McCluskey presents is troubling.  However, the Supreme Court's decision in *United States v. McCleskey* precludes him from prevailing on either his Fifth or Eighth Amendment claims.  In *McCleskey*, the Supreme Court began its analysis "with the basic principle that a defendant who alleges an equal protection violation has the burden of proving 'the existence of purposeful discrimination.' " *McCleskey*, 481 U.S. 279, 292 (1987) (quoting *Whitus v. Georgia*, 385 U.S. 545, 550 (1967)).  The Court next observed that a "corollary to this principle is that a criminal defendant must prove that the purposeful discrimination 'had a discriminatory effect' on him."  *Id*. (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)).  Thus, the Court concluded, to prevail on a claim under the Equal Protection Clause, a defendant "must prove that the decisionmakers in his case acted with discriminatory purpose."  *Id*. (emphasis in original).  The defendant in *McCleskey* argued that a study, which showed that the death penalty in Georgia was imposed more often on black defendants and killers of white victim, showed that the decision-makers in his case acted with discriminatory purpose. The Supreme Court held, however, that statistical studies, such as the ones in this case, were "clearly insufficient to support an inference that any of the decision makers in McCleskey's case acted with discriminatory purpose."  *Id*. at 297,

107 S.Ct. 1756; *see also United States v. Bin Laden*, 126 F. Supp. 2d 256, 260 (S.D.N.Y. 2000) ("At its core, therefore, *McCleskey* stands for the notion that, by themselves, systemic statistics cannot prove racially discriminatory intent in support of an equal protection claim by a particular capital defendant").  Under *McCleskey*, McCluskey cannot establish that the Government violated his right to  equal protection using the statistics from the DOJ Reports and other studies and articles that he cites. *See United States v. Williams*, 2004 WL 2980027, at *7-9 (S.D.N.Y. Dec. 22, 2004) (unpublished); *Sampson*, 275 F. Supp. 2d at 89-93; *see also Bin Laden*, 126 F. Supp. 2d at 260-62. Instead, he must come forward with more direct evidence of discrimination, which he has failed to do.

Indeed, the argument that McCluskey raises here has been rejected by many lower federal courts. *Sampson*, 486 F.3d at 26 (relying on *McCleskey* to conclude that "because Sampson has presented no specific evidence of purposeful discrimination either against himself or against those southern and minority defendants upon whom he purports to base his claim, his Fifth Amendment challenge fails. . . . By like token, Sampson's Eighth Amendment claims cannot succeed."); *Barnes*, 532 F. Supp. 2d at 635-36 (same); *Jacques*, 2011 WL 1675417 at *5; *United States v. Aquart*, 2010 WL 4363414 at *4-5 (D. Conn. Oct. 26, 2010) (unpublished); *Johnson*, 2009 WL 1856240 at *5-6; *United States v. Taylor*, 2008 WL 217115 at *5-6 (E.D. Tenn. Jan. 24, 2008); *Sablan*, 2006 WL 1028780 at *12 (D. Colo. Apr. 18, 2006) (unpublished);*United States v. Edelin*, 134 F. Supp. 2d 59, 89 (D.D.C. 2001); *United States v. Bin Laden*, 126 F. Supp. 2d 256, 263 (S.D.N.Y. 2000) (rejecting defendant's argument that the FDPA is imposed on the "arbitrary and capricious basis of geography").  Further, McCluskey provides the Court with no opinions in which courts have declared the FDPA unconstitutional for the reasons he suggests.  Accordingly, for the reasons set forth above, as well as the reasons set forth in the lower federal court opinions cited herein,

McCluskey's motion will be denied.

## II.        WHETHER *RING V. ARIZONA* HAS RENDERED THE FDPA INOPERATIVE

In *Ring v. Arizona*, 536 U.S. 584, 585 (2002), the Supreme Court held that the Arizona death penalty statute's enumerated statutory aggravating factors "operate as 'the functional equivalent of an element of a greater offense'. . . ." (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 494 n.19 (2000)).  In addition, in *Jones v. Untied States*, 526 U.S. 227, 251-52 (1999), the Supreme Court held that all elements of a federal offense "must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt."  After *Ring*, various lower federal courts have held that prerequisites for the death penalty, including the requisite state of mind factors and at least one statutory aggravating factor, must be presented to a grand jury and charged in an indictment pursuant to the Fifth Amendment.  *See, e.g., United States v. Fell*, 531 F.3d 197, 237 (2d Cir. 2008); *United States v. Brown*, 441 F.3d 1330, 1367 (11th Cir. 2006); *United States v. Allen*, 406 F.3d 940, 942-43 (8th Cir. 2005); *United States v. Robinson*, 367 F.3d 278, 284 (5th Cir. 2004) *United States v. Higgs*, 353 F.3d 281, 298 (4th Cir. 2003).  As a result of *Ring*, the Government makes a practice of charging statutory threshold factors and statutory aggravating factors in the indictment, and it did so in the Third Superceding Indictment in this case.

McCluskey contends that together *Ring* and *Jones* render the FDPA unconstitutional because it does not require all elements of the greater capital offense, specifically the mental state and statutory aggravating factors, to be charged in the indictment and proved to a jury beyond a reasonable doubt.  In other words, although McCluskey does not dispute that all of the relevant statutory aggravating factors actually were alleged in the indictment in accordance with *Ring*, he argues that the FDPA is facially unconstitutional anyway because it does not require those factors

9

to be alleged in the indictment.  McCluskey contends that the grand jury cannot "fix" the defect in the statute by simply alleging the aggravating factors in the indictment.  Relying heavily on *United States v. Jackson*, 390 U.S. 570 (1968), he argues that neither the Government nor the federal courts can graft onto the FDPA a new process of submitting these elements to a grand jury because creating the process is reserved exclusively to Congress under the Constitution.  Thus, he argues, "the FDPA must be declared unconstitutional pending further congressional action," Doc. 397 at 70, by which presumably he means an amendment of the statute to require or authorize a federal grand jury to find any statutory threshold and aggravating factors.  Finally, McCluskey argues that decisions on this issue from various Courts of Appeals, all of which have rejected his position, have been wrongly decided.

The Court is not persuaded by McCluskey's arguments and concludes that the FDPA remains constitutionally viable after *Ring*.  The FDPA's requirement that the mental state requirements and aggravating factors be filed in a notice (here, the *Notice of Intent to Seek the Death Penalty*, Doc.275) does not preclude the Government from also submitting those mental states and aggravating factors to the grand jury for inclusion in the indictment.  The Honorable William P. Johnson of this district agreed in *United States v. Taylor*, Cr. No. 07-1244, Mem. Op. and Order, Doc. 492 at 14-15 (D.N.M. Sept. 4, 2009), as did the Honorable Robert Brack of this district in *United States v. Lujan*, Cr. No. 05-924, Mem Op. and Order, Doc. 772 at 2-3 (D.N.M. April 15, 2011).  In *United States v. Sampson*, the First Circuit cogently explained why the *Jackson* case on which McCluskey relies does not require congressional action before submitting mental state and statutory aggravating factors to the grand jury:

> In *Jackson*, the Supreme Court invalidated the death penalty provision of the Federal Kidnaping Act, which permitted only a jury to impose a death sentence. The objection was that it infringed on the right to a jury trial by encouraging a defendant

to plead guilty or to waive that right in order to avoid the possibility of a death sentence. The government encouraged the Supreme Court to save the statute by reading it to allow a judge--in the event of a guilty plea or bench trial--to convene a "special jury" to determine whether the death penalty was warranted. The Court rejected this suggestion, stating that it could not "create from whole cloth a complex and completely novel procedure and ... thrust it upon unwilling defendants for the sole purpose of rescuing a statute from a charge of unconstitutionality." This case, however, does not require us to "create from whole cloth a complex and completely novel procedure." As the district court perspicaciously noted, the role of the grand jury in charging the elements of an offense has long been established.

*United States v. Sampson*, 486 F.3d 13, 22 (1st Cir. 2007) (internal citations omitted). Thus *Jackson* presents an entirely different scenario, and its reasoning is inapplicable to this case. To the Court's knowledge, the Tenth Circuit has not reached this specific issue. However, several other Circuits have rejected the arguments that McCluskey is advancing here. *See, e.g., United States Brown*, 441 F.3d 1330, 1367 (11th Cir. 2006) ("The FDPA is not facially unconstitutional. Nothing prohibits the government from presenting aggravating factors to a grand jury and then, if appropriate, charging those aggravating factors in the indictment."); *United States v. Allen*, 406 F.3d 940, 949 (8th Cir. 2005) ("While it is true that the FDPA directs the government to charge these factors in a notice of intent to seek the death penalty, nothing in the Act precludes the government from also submitting them to the grand jury for inclusion in the indictment."); *United States v. Barnette*, 390 F.3d 775, 789 (4th Cir. 2004), *vacated on other grounds*, 546 U.S. 803 (2005) ("A review of the statute itself reveals no language that restricts the government from submitting aggravating factors to the grand jury."); *United States v. Robinson*, 367 F.3d 278, 290 (5th Cir. 2004) ("The government can easily comply with both its constitutional obligations (by first going to the grand jury) and its statutory obligations (by later filing a § 3593(a) notice of intention to seek the death penalty). As a result, the statute is not facially unconstitutional."). Similarly district courts, in addition to this one, have also declined to find the FDPA unconstitutional under *Ring*. *See, e.g., United States v.*

*Cruz-Ramirez*, 2010 WL 1459446 at *5 (N.D. Cal. April 9, 2010); *United States v. Diaz*, 2007 WL 656831 at *5 (N.D. Cal. Feb. 28, 2007); *United States v. Cheever*, 423 F. Supp. 2d 1181, 1193 (D. Kan. 2006).

The Court adopts the reasoning of the federal courts that have uniformly rejected the argument advanced by McCluskey. The Court concludes that the FDPA is not unconstitutional after *Ring* and that the Government's submission of the special findings to the grand jury in this case did not usurp Congress' legislative role. This portion of McCluskey's motion will be denied.

## III.   WHETHER THE INDICTMENT IS CONSISTENT WITH THE REQUIREMENTS OF THE FIFTH AMENDMENT

The Third Superceding Indictment does not allege any nonstatutory aggravating factors, nor does it state that the "special findings" would subject McCluskey to a possible death sentence, and as a result there is nothing in the indictment that indicates that the grand jury knew and intended to charge McCluskey with a capital offense.   In addition, the Third Superceding Indictment does not allege that the aggravating factors in this case outweigh the mitigating factors sufficiently to justify imposition of the death penalty. For these reasons, McCluskey argues that the indictment does not comport with the Grand Jury Clause of the Fifth Amendment.

The Court has already considered and rejected McCluskey's first argument with regard to the grand jury's lack of knowledge of the fact that he could be subject to the death penalty. In its Memorandum Opinion and Order entered July 26, 2012 [Doc. 590], the Court held that "because there is no requirement that an indictment charge the punishment sought there is no requirement that the grand jury be informed as to the ultimate punishment." *Id*. at 16. The Court reiterates that holding for all the reasons stated in its previous opinion.

Next, McCluskey argues that the Third Superceding Indictment did not allege all the elements of the capital crimes with which he is charged—to wit, whether the aggravating factors outweigh the mitigating factors and, if so, whether they outweigh the mitigating factors sufficiently to justify a sentence of death.  According to McCluskey, the grand jury's failure to consider these questions conflicts with his Fifth and Sixth Amendment rights to have all elements of the crime submitted to the grand jury for its consideration.  He further contends that these "weighing findings" must also be submitted to a jury and proven by the Government beyond a reasonable doubt. McCluskey cites no federal court decisions that directly support his position.   On the other hand, both the Tenth Circuit and several other courts have rejected the argument that McCluskey espouses. For example, in *United States v. Fields*, 483 F.3d 313, 346 (5th Cir. 2007), the Fifth Circuit rejected the same argument made by a federal capital defendant against the FDPA.  The court reasoned, in pertinent part:

> The *Apprendi/Ring* rule does not extend to the ultimate decision whether to impose the death penalty.  Capital defendants have no constitutional right to a jury at sentencing.  Indeed, the Supreme Court has explicitly held that judges may do the weighing of aggravating and mitigating circumstances consistent with the Constitution.  The Court's *Apprendi* line of cases reveals that the reasonable doubt standard is appurtenant to the right to jury trial.  Since the Constitution does not require a jury to do the weighing, we cannot conclude that the showing required must be proof beyond a reasonable doubt.  Moreover, the *Apprendi/Ring* rule should not apply here because the jury's decision that the aggravating factors outweigh the mitigating factors is not a finding of fact. Instead, it is a highly subjective, largely moral judgment regarding the punishment that a particular person deserves.  In death cases, the sentence imposed at the penalty stage reflects a reasoned moral response to the defendant's background, character, and crime.  The *Apprendi/Ring* rule applies by its terms only to findings of fact, not to moral judgments.

*Fields*, 483 F.3d at 346 (internal citations and quotations omitted).  In *United States v. Barrett*, 496 F.3d 1079 (10th Cir. 2007), the defendant raised the same arguments raised by the defendant in *Fields* and by McCluskey in this case.  The Tenth Circuit, persuaded by the rationale of *Fields*,

13

adopted the reasoning of the Fifth Circuit. *Id*. at 1108 ("Although not binding on us, we find this decision highly persuasive. Accordingly, we reject Barrett's argument for the same reasons stated by the Fifth Circuit in *Fields*."). Other courts have followed suit. *See, e.g*, *United States v. Purkey*, 428 F.3d 738, 750 (8th Cir. 2006) ("[I]t makes no sense to speak of the weighing process mandated by 18 U.S.C. § 3593(e) as an elemental fact for which a grand jury must find probable cause. In the words of the statute, it is a 'consideration,' 18 U.S.C. § 3593(e), – that is, the lens through which the jury must focus the facts that it has found to produce an individualized determination regarding 'whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence.'"); *United States v. Taylor*, Cr. No. 07-1244 WJ, Mem. Op. and Order, Doc. 492 at 8-9 (D.N.M. Sept. 4, 2009) (unpublished) (Johnson, J.); *United States v. Troya*, 2008 WL 4327004, at *8 (S.D. Fla. Sept. 22, 2008) (unpublished); *United States v. Diaz*, 2007 WL 656831 (N.D. Cal.2007); *United States v. Talik*, 2007 WL 4570704 (N.D.W. Va. 2007); *United States v. Gooch*, 2006 WL 3780781 (D.D.C. 2006); *United States v. Natson*, 444 F. Supp. 2d 1296, 1304 (M.D. Ga. 2006). As it must, this Court follows the lead of the Tenth Circuit and in accordance with *Barrett* will deny McCluskey's motion.

McCluskey's final argument in this section of the motion is that the nonstatutory aggravating factors alleged in the Notice of Intent should be dismissed because the Third Superceding Indictment does not enumerate them and the grand jury did not consider them. Although one district court has accepted this argument, *United States v. Green*, 372 F. Supp. 2d 168 (D. Mass. 2005), various federal courts of appeals have considered and rejected it. *See, e.g., United States v. Fell*, 531 F.3d 197, 236-38 (2d Cir. 2008) (concluding that "only those factors which comprise death eligibility—intent and statutory aggravation—must be included in the indictment because those factors must be found before imposition of the maximum authorized penalty."); *United States v.*

14

*Mitchell*, 502 F.3d 931, 979 (9th Cir. 2007) ("The rationale underlying the requirement that statutory aggravating factors be charged is that the existence of at least one is a prerequisite to increasing a defendant's sentence from life imprisonment. A non-statutory aggravating factor by itself cannot trigger death eligibility."); *United States v. Brown*, 441 F.3d 1330, 1368 (11th Cir. 2006) ("The non-statutory aggravating factors, although relevant to determining whether a jury decides to impose the death penalty, do not make a defendant statutorily eligible for any sentence that could not be otherwise imposed in their absence."); *United States v. Purkey*, 428 F.3d 738, 749-50 (8th Cir. 2005); *United States v. Bourgeois*, 423 F.3d 501, 507-08 (5th Cir. 2005); *United States v. Higgs*, 353 F.3d 281, 298-99 (4th Cir. 2003).  In the absence of an opinion from the Tenth Circuit on this issue, the Court is persuaded by the heavy weight of circuit court authority and concludes that McCluskey's motion on this issue should be denied.

IV.     **WHETHER THE FDPA PROVIDES A STRUCTURE FOR JURORS TO MAKE A REASONED CHOICE IN THE PENALTY PHASE**

        McCluskey argues that the FDPA is unconstitutional because its provisions are so incomprehensible to jurors as to prevent or substantially impair their performance in the task of deciding between a death sentence and a sentence of life imprisonment.[2]  Specifically, McCluskey

---

        [2] Although McCluskey expressly states that the FDPA is unconstitutional *as applied to him*, such a claim is premature because at this point—more than six months prior to trial—there are no jury instructions to review to determine if they are improperly vague or confusing.  *See United States v. Jacques*, 2011 WL 1675417 at *12-13 (D. Vt. May 4, 2011) (concluding that identical claim was premature) (unpublished), *vacated in part on other grounds*, 684 F.3d 324 (2d Cir. 2012); *United States v. Mikos*, No. 02–137, 2003 WL 22110948, at *18 (N.D.Ill. Sept. 11, 2003) ("[A]rguments [that the FDPA sentencing scheme is incomprehensible to juries] are not ripe for adjudication and will only be ripe if and when it can be alleged that the instructions given to the sentencing jury were reasonably likely to mislead the jurors into sentencing [the defendant] to death."); *United States v. Llera Plaza*, 179 F. Supp.2d 444, 449–50 (E.D. Pa.2001) ("If the case at bar proceeds to a sentencing phase, counsel for the defendants and counsel for the

argues that it is unreasonable to expect jurors to understand and differentiate between two burdens of proof at trial, "beyond a reasonable doubt," which applies to the question of guilt as well as to aggravating factors, and "preponderance of the evidence," which applies to mitigating factors. He contends that jurors cannot be expected

> to segregate the mental state threshold factors from aggravating and mitigating factors, and from the weighing process, by not considering them, in determining the appropriateness of a death sentence. In the final analysis, jurors are asked, under the FDPA, to determine at what point aggravating factors outweigh mitigating factors "sufficiently" to justify a sentence of death. It is unreasonable to expect even the most conscientious and reasonably intelligent jurors to parse this melange of concepts and come out the an understanding of the process or a principled verdict.

Doc. 387 at 109. In support of his motion, McCluskey cites numerous studies and law review articles which he contends demonstrate that the Supreme Court's decisions upholding the death penalty are based on its assumption that juries are able to understand and apply the court's legal instructions, assumptions which are belied by the empirical evidence. He requests an evidentiary hearing so that he may present expert testimony and empirical evidence in support of his argument that jurors are incapable of comprehending the FDPA, thus rendering the statute unconstitutional.

In response, the Government points out this argument must fail because it violates a "crucial assumption" at the foundation of the American jury system: "that juries will follow the instructions given them by the trial judge." *Marshall v. Lonberger*, 459 U.S. 422, 438, n. 6 (1983). The Government cites the Supreme Court's opinion in *Boyde v. California* for the proposition that jury instructions are constitutionally defective only if there is a "reasonable likelihood" that they misled the jury into sentencing the defendant to death and argues that instructions that are only arguably

---

government will have the opportunity to participate fully in the process of formulating the instructions which will frame the jury's deliberations."). Thus, the Court interprets Part IV of McCluskey's motion as a challenge to the constitutionality of the statute on its face.

ambiguous or create "only a possibility of ... [jury] inhibition" are not unconstitutional. Doc. 437 at 47 (quoting 494 U.S. 370, 380 (1990)).  And finally, the Government points out that various federal courts confronted with the same arguments and the same studies have declined to find the FDPA unconstitutional.

The Court agrees with the Government and concludes that a hearing on this portion of the motion is unnecessary.  McCluskey's arguments are not new and have been repeatedly rejected by other courts, including two other federal judges in the District of New Mexico.[3]  In a thorough and well-reasoned opinion, Judge William Johnson rejected the same arguments that McCluskey espouses in this case, *see United States v. Taylor*, 635 F. Supp.2d 1243, 1247 (D.N.M. 2009), and shortly thereafter Judge Robert Brack also denied a similar motion by the defendant in *United States v. Lujan*, Cr. No. 05-924 RB, Mem. Op. & Order, Doc. 728 at 3-4 (D.N.M. Mar. 14, 2011) (unpublished).  Like the defendants in those cases, McCluskey has failed to meet his weighty burden to show that the FDPA is unconstitutional by demonstrating that there are no circumstances under which the statute would be valid.  Furthermore, the Court is not persuaded by the studies cited by McCluskey for the same reasons set forth in the *Taylor* and *Lujan* opinions as well as the decisions in *United States v. Sablan*, 2006 WL 1028780 at *7-8 (D. Colo. Apr. 18, 2006) (unpublished) (finding "no support" for the assertion that the FDPA's penalty scheme is so confusing that a jury will never be able to comprehend the concepts of aggravating and mitigating factors, regardless of the instructions given); *United States v. Llera Plaza*, 179 F. Supp. 2d 444, 450 n.5 (E.D. Pa. 2001) ("[T]he studies do not establish that the concepts of aggravating and mitigating factors as used in

---

[3] Most of the articles and studies that McCluskey cites are more than a decade old, and thus have been cited repeatedly by those challenging the constitutionality and reviewed by Courts hearing those challenges.

the FDPA bear such a degree of intrinsic "incomprehensibility" as to render them incapable of clarification through adequate jury instructions such as those to be crafted in the instant case, if a sentencing hearing is required. The studies are thus insufficient to support the defendants' argument."), *United States v. Green*, 2008 WL 4000901 (W.D. Ky. Aug. 26, 2008) (unpublished), and *United States v. Regan*, 228 F. Supp. 2d 742, 746-47 (E.D. Va. 2002).  Accordingly, the Court will deny McCluskey's motion.

## V.     WHETHER THE FDPA IS UNCONSTITUTIONAL BECAUSE IT LEADS TO THE EXECUTION OF INNOCENT PEOPLE

McCluskey argues that the American judicial system, like any complex human endeavor, is not free from factual or legal errors that can lead to a wrongful convictions, and that our Constitution cannot tolerate the high price of the death penalty—that inevitably innocent people have been and will be executed.  McCluskey does not specify the exact constitutional claim that he is making, though the Government construes it as one brought under the Fifth Amendment's due process clause.

The Court agrees that the prospect of the execution of an innocent person is horrific. Unfortunately for McCluskey, his legal argument has been considered by higher courts and has been rejected.  The primary legal authority on which McCluskey relies is *United States v. Quinones*, 205 F. Supp. 2d 256 (S.D.N.Y. 2002), a district court opinion.  The Second Circuit has overruled this decision, observing that three separate provisions in the Fifth Amendment—including the Due Process Clause itself—expressly contemplate the existence of capital punishment.  *United States v. Quinones*, 313 F.3d 49, 61 (2nd Cir. 2002).  Next, the Second Circuit concluded that the district court erred in looking to "evolving standards" in conducting its due process analysis because it is

18

the Eighth Amendment, not the Fifth Amendment's due process clause, that requires consideration of "evolving standards" in determining whether a particular punishment conforms to principles of decency that mark the progress of a maturing society. *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) and *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).  After performing a survey of the history of death penalty jurisprudence in the United States, the Second Circuit concluded that "the continued opportunity to exonerate oneself throughout the natural course of one's life is not a right 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Id.* at 62 (quoting *Rochin v. California*, 342 U.S. 165, 171-72 (1952)).  Finally, the court stated that "the Supreme Court has upheld state and federal statutes providing for capital punishment for over two hundred years, and it has done so despite a clear recognition of the possibility that, because our judicial system-indeed, any judicial system-is fallible, innocent people might be executed and, therefore, lose any opportunity for exoneration." *Id.* at 65.  Indeed, the Second Circuit's analysis and reasoning are extremely thorough and persuasive.

Moreover, at least three times over the past thirty years the United States Supreme Court has considered and rejected the argument that capital punishment is unconstitutional because it denies a defendant the continued opportunity to prove his innocence. First, in *Furman v. Georgia*, 408 U.S. 238 (1972), the Court acknowledged the risk of capital punishment depriving innocent persons of the ability to exonerate themselves, but declined the opportunity to declare it unconstitutional based on this mere possibility.  *Id.* at 247, 290 (Douglas, Brennan, JJ., concurring).  Despite this, only Justices Marshall and Brennan were willing to declare the death penalty a *per se* violation of the Constitution.  *Id.* at 305.  Further, only Justice Thurgood Marshall believed that the possibility of executing an innocent person was sufficient on its own to render the death penalty unconstitutional. *Id.*

19

Finally, in *Herrera v. Collins*, 506 U.S. 390 (1993), the Supreme Court affirmed the denial of a petition for a writ of habeas corpus in which the petitioner claimed that his execution would violate both the due process clause and the Eighth Amendment because new evidence could prove his "actual innocence." The Supreme Court specifically held that the death penalty is not *per se* unconstitutional while again recognizing the fact that innocent individuals might be executed under the inherent fallibility of any system of justice. *Id*. at 416–20. Indeed, *Herrera* supports the constitutionality of the FDPA. Despite recognizing the "unalterable fact that our judicial system, like the human beings who administer it, is fallible," *id*. at 415, the *Herrera* Court could not say that the "refusal to entertain petitioner's newly discovered evidence eight years after his conviction" transgressed his due process rights. *Id*. at 411. This is entirely consistent with the Supreme Court's opinion in *Chapman v. United States*, 500 U.S. 453 (1991), which prevents inferior federal courts from holding capital punishment *per se* violative of due process. *See id*. at 465. The *Chapman* Court held that under the Due Process Clause,

> [e]very person has a fundamental right to liberty in the sense that the Government may not punish him unless and until it proves his guilt beyond a reasonable doubt at a criminal trial conducted in accordance with the relevant constitutional guarantees. But a person who has been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment.

*Id*. (citations omitted)

The foregoing Supreme Court decisions constrain this Court from finding capital punishment unconstitutional based solely on a statistical or theoretical possibility that an innocent defendant might be executed. Accordingly, McCluskey's motion will be denied.

**VI.     WHETHER THE STATE OF NEW MEXICO'S BAN ON CAPITAL PUNISHMENT**

**SHOULD PROHIBIT THE FEDERAL GOVERNMENT FROM SEEKING THE DEATH PENALTY IN THIS STATE**

Relying primarily on a law review article by Michael Mannheimer, "When the Federal Death Penalty is 'Cruel and Unusual,'" 74 U. Cin. L. Rev. 8198 (2006), McCluskey argues that this Court should strike both the special findings in the Third Superceding Indictment and the Notice of Intent to Seek the Death Penalty in this case.  He contends that the death penalty is cruel and unusual punishment within the meaning of the Eighth Amendment insofar as it is not available in New Mexico, and that the "recent federalization of essentially state-law offenses and the corresponding increase in the penalty beyond what is possible for a traditionally state-law offense raises profound federalism concerns and violates the Ninth and Tenth Amendments."  Doc. 397 at 122.

While McCluskey's argument is both fascinating and creative, ultimately it is unpersuasive. To the extent that McCluskey argues that Congress' "federalization" of the offense of kidnaping violates the Tenth Amendment, that argument fails.  Under the Tenth Amendment, "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  The federal carjacking statute, 18 U.S.C. § 2119, is an unremarkable and valid exercise of Congress's long-established power to regulate the channels and instrumentalities of interstate commerce under the Commerce Clause, regardless of whether the underlying criminal conduct is subject to regulation under a state's police power.  *See*, *e.g., United States v. Jimenez*, 323 F.3d 320, 322 (5th Cir.2003) (" 'In enacting § 2119, Congress could thus rationally believe that carjacking had a substantial effect on interstate commerce and that this national problem required action by the federal government.' "); *United States v. Romero*, 122 F.3d 1334, 1339 (10th Cir. 1997); *United States v. McHenry*, 97 F.3d 125, 129 (6th Cir.1996) (holding the carjacking statute constitutional); *United States v. Rivera–Figueroa*, 149 F.3d 1, 3–4 (1st Cir.

1998) (joining "the unanimous opinion of the other circuits" that the carjacking statute is constitutional exercise of Congress' power under the Commerce Clause). Here, because the federal government is acting within its constitutionally delegated power under the Commerce Clause, there is no violation of the Tenth Amendment.

This Court agrees with the court's conclusion in *United States v. Jacques*, 2011 WL 3881033 (D. Vt. Sept. 2, 2011) (unpublished), when faced with a similar motion:

> [C]onsistent with the Tenth Amendment and the doctrine of dual sovereignty, "[t]he federal government may, independent of the State of [Vermont], determine the appropriate punishment for a crime against the United States." *Tuck Chong*, 123 F. Supp. 2d at 567; *see also United States v. O'Reilly*, No. 05–80025, 2007 U.S. Dist. LEXIS 62056, 2007 WL 2420830 (E.D. Mich., Aug. 23, 2007) (Rejecting similar Tenth Amendment claim and commenting "[w]hile Michigan is free to prohibit the death penalty for state-charged crimes, this federal Court cannot prohibit imposition of the death penalty when authorized by federal law for federally-charged crimes[.]"). That the Tenth Amendment does not prohibit the United States from prosecuting defendants in federal court for crimes punishable by death under federal statutes, even within states that do not authorize capital punishment as a matter of state law, undercuts Jacques' assertion that such prosecutions are "illegal" and therefore "unusual" for Eighth Amendment purposes.

Further, the fact that the death penalty is not available under New Mexico state law does not make it "unusual" in a constitutional sense. Indeed, McCluskey points to no case in which a federal court has applied a state-by-state analysis to determine whether a punishment is "cruel and unusual" under the Eighth Amendment. Such a conclusion would lead to disparate application of federal law depending on the state in which the law was violated. Similar arguments have been rejected by courts in other contexts. For example, in *United States v. Fell*, 571 F.3d 265 (2d Cir. 2009) (en banc), the Second Circuit denied a request to rehear Fell's appeal of his conviction for carjacking and kidnaping resulting in death. Among the issues to be heard was whether the Sixth Amendment required juries not only to be drawn from the relevant state and district, but also to represent local values such as the state government's opposition to the death penalty. In a concurring opinion by

six of the court's nine judges refusing the request for *en banc* review, Judge Raggi rejected this

contention.  She wrote:

> The dissent's effort to import a federalism concern based on vicinage into the Eighth Amendment analysis of federal sentences is misguided.  Although the Supreme Court has construed the Eighth Amendment to prohibit cruel and unusual punishment in accordance with "evolving standards of decency,"  and considered "state practices" in identifying these standards, it has done so only because in the aggregate such practices serve as a proxy for the "national consensus."  The Eighth Amendment, no less than other provisions of the Constitution, must apply equally throughout the states. Nothing in the Court's jurisprudence has ever suggested that federalism warrants re-tailoring the Eighth Amendment in each state-or each vicinage-to test federal death sentences by reference to local practices. In the absence of any supporting authority, it is no mere "formalism[ ]" for this court to decline to convene en banc to explore the dissent's novel theory of federalism.

*Id*. at 274 (internal citations omitted).  Though the above reasoning from *Fell* is neither dispositive

of the issue nor binding upon this Court, it is nevertheless persuasive.  There is simply no authority

for concluding that one must construe the Eighth Amendment on a state by state basis.

Furthermore, the Court agrees with the Government that the approach that McCluskey

advocates poses serious problems under the Supremacy Clause.  The Supremacy Clause provides

that "the Laws of the United States ... shall be the supreme Law of the Land[,] ... any Thing in the

Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.

McCluskey's approach would require federal law to defer to a conflicting state law regarding

sentencing, an argument the Tenth Circuit has rejected in other contexts.  For example, in *United*

*States v. Carney*, 106 F.3d 315 (10th Cir. 1997), the defendant argued that, in accordance with

Oklahoma law, the sentencing court could not consider his sealed juvenile criminal history records.

The Tenth Circuit disagreed with his interpretation of Oklahoma law and found that, consistent with

federal law, the court could consider those records.  *Id*. at 317.  The court then went a step further and, relying upon the Supremacy Clause, stated that "[e]ven if the two were not consistent, it is clear that Oklahoma law could not bar consideration of defendant's state juvenile court records 'by a federal court in determining a sentence, when federal law provides otherwise.'"  *Id*. (quoting *United States v. Daniels*, 929 F.2d 128, 130 (4th Cir. 1991).  The same is true here—New Mexico law may not preclude the imposition of a sentence authorized under federal law.


**VII.    WHETHER THE DEATH PENALTY IS *PER SE* "CRUEL AND UNUSUAL"**

Although he acknowledges that controlling opinions from the Supreme Court uphold the constitutionality of the death penalty, McCluskey nevertheless argues that the death penalty is unconstitutional in all cases and as applied to him.  He cites no binding authority in support of his argument, which is better suited for the Supreme Court.  For all the reasons previously discussed in this Memorandum Opinion, the Court declines McCluskey's invitation to find the FDPA unconstitutional.

For all the foregoing reasons,

**IT IS THEREFORE ORDERED** that Defendant John Charles McCluskey's *(Corrected) Defendant's Omnibus Motion to Dismiss the "Special Findings" From the Third Superceding Indictment, and to Strike the Notice of Intent to Seek the Death Penalty* [Doc. No. 397] is **DENIED**.


_____

**UNITED STATES DISTRICT JUDGE**

24