IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                                      Case No. 10-CR-2734 JCH

JOHN CHARLES McCLUSKEY,

       Defendant.


**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Defendant McCluskey's *Motion to Preclude Death Qualification of Jury* [Doc. 394]. The primary issue is whether the Government will be permitted to identify and challenge for cause prospective jurors who in no case would impose the death penalty if asked to determine punishment, or whether this Court should instead "reconsider" governing Supreme Court authority and prohibit such death-qualification of the jury in this case. Motion at 7. McCluskey's challenges to death qualification take three forms. First, McCluskey contends that there is no basis in federal law for permitting the process; second, he asserts that death qualification violates his Sixth Amendment right to an impartial jury; and finally, McCluskey purports to state a claim under the First Amendment Free Exercise clause on behalf of those jurors who may be eliminated for cause based on views grounded in religious beliefs. As discussed throughout this Memorandum Opinion and Order, such pre-qualification of capital juries for service in a death penalty case is unequivocally consistent with existing Supreme Court precedent and each of McCluskey's arguments are unsupported by law. Accordingly, after considering the parties' briefs

and reviewing the governing legal authorities, the Court concludes that the motion should be denied.

## I.  Introduction

"Death-qualification" is a term used to describe the process by which jurors in a capital case are pre-screened to ensure that no member of the seated jury has a personal opposition to the death penalty so strong that it would prevent, or substantially impair, that individual's performance as a juror. *Wainwright v. Witt*, 469 U.S. 412, 424 (1985); *Trujillo v. Sullivan*, 815 F.2d 597, 607 (10th Cir. 1987). A death-qualified jury, in turn, is one from which prospective jurors have been excluded for cause based on their inability to set aside their views about the death penalty where such inability would prevent, or substantially impair, their performance of duties in accordance with their instructions and oath. *Buchanan v. Kentucky*, 483 U.S. 402, 407 n.6 (1987). A juror who could never vote for the death penalty, regardless of the court's instructions, or a juror who would automatically vote for death in every case similar to the one on trial, should be removed for cause. *Morgan v. Illinois*, 504 U.S. 719, 728-29 (1992).

## II.  Legal Precedent

The premier decisions addressing qualification of potential jurors for capital sentencing are *Witherspoon v. Illinois*, 391 U.S. 510 (1968), and *Wainwright v. Witt*, 469 U.S. 412. In *Witherspoon,* the Supreme Court held that the Sixth Amendment protects a defendant from a predetermined "hanging jury." *Id.* at 523. Specifically, the Court determined that a state infringes upon a capital defendant's right to trial by an impartial jury under the Sixth and Fourteenth Amendments when it excuses, for cause, all members of the venire panel who merely voice general objections to the death penalty or express *any* conscientious or religious objections to its imposition. *Id.* at 510 (emphasis added). In *Witherspoon*, the prosecution had, pursuant to an Illinois statute,

eliminated approximately half of the venire panel by challenging virtually any prospective juror who expressed reservations about capital punishment. In fact, only five of the nearly fifty prospective jurors who were eliminated had explicitly stated that under no circumstances would they vote to impose capital punishment. The defendant was convicted of murder and sentenced to death. The Supreme Court reversed the death sentence, finding that the jury's composition violated the defendant's rights under the Sixth and Fourteenth Amendments. In essence, the jury's impartiality with respect to sentencing was held inadequate where every panel member who expressed any reservations about the death penalty was excused. The *Witherspoon* jury was exceptionally predisposed to impose death and to execute the defendant under such circumstances would have deprived him of his life without due process of law. *Id*. Notably, *Witherspoon's* Footnote 21 stated that jurors may be excluded for cause if they make unmistakably clear that: (1) they would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's guilt.[1]

Nearly two decades after its *Witherspoon* decision, the Supreme Court in *Wainwright v. Witt*, 469 U.S. 412, expanded upon the relevant inquiry a bit, and in the process explicitly recognized the government's important interest in administering its capital punishment scheme. The *Witt* Court explained that "the proper standard for determining when a prospective juror *may* be excluded for cause because of his or her views on capital punishment . . . is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his

---

[1] The Supreme Court later clarified that "*Witherspoon* is not a ground for challenging any prospective juror. It is rather a limitation on the State's power to exclude." *Adams v. Texas*, 448 U.S. 38, 47-48 (1980).

instructions and his oath." *Witt*, 469 U.S. at 424 (emphasis added). While the language of *Witt* is permissive, *i.e.*, "may be excluded," the Court later explained that "[u]nder this [*Witt*] standard, it is clear . . . that a juror who in no case would vote for capital punishment, regardless of his or her instructions, is not an impartial juror and *must* be removed for cause." *Morgan v. Illinois*, 504 U.S. at 728 (emphasis added).

### III.  Discussion

#### A. The Governing Law Provides for the Death-Qualification Process

McCluskey claims that the jury in this case cannot be death qualified because removal of potential jurors on this basis was not recognized at early common law and Congress has not enacted legislation expressly authorizing such removals. The Court first notes that voir dire plays a key role in guaranteeing a criminal defendant's Sixth Amendment right to an impartial jury. *See Rosalez-Lopez v. United States*, 451 U.S. 182, 188 (1981) (plurality opinion). Further, it is a well-settled general proposition that voir dire is a process left primarily to the sound discretion of the trial court to ensure a criminal defendant's right to an impartial jury. *See, e.g., Morgan v. Illinois*, 504 U.S. at 729; *Ristaino v. Ross*, 424 U.S. 589, 594-95 (1976). Although the Supreme Court has been reluctant to dictate the form of voir dire questions, *see Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991), it has held that death-qualification is constitutionally permissible. *See Morgan*, 504 U.S. at 730-31; *Lockhart v. McCree*, 476 U.S. 162, 182-84 (1986). Against this backdrop, the arguments Defendant McCluskey asserts in his attempt to limit this Court's ability to conduct punishment-related voir dire in this case are unavailing.

Notwithstanding the well-settled Supreme Court authority already discussed, McCluskey asserts that there is "no basis in *federal law* for permitting or requiring removal of jurors who *oppose*

4

the death penalty."[2]  Motion at 3 (emphases added).  Relying on principles derived from *Blackstone's England*, McCluskey suggests that because there were but four challenges for cause at early common law – death-qualification not among them – challenges should remain so limited today.  McCluskey also attempts to distinguish this Federal Death Penalty Act ("FDPA") case from existing precedent, noting that the Supreme Court authorities in *Witherspoon, Adams,* and *Wainwright* involved state court prosecutions and, accordingly, they merely recognize that a state may, under its traditional powers to regulate challenges for cause, enact legislation providing for death-qualification procedures that fit within a constitutional framework.  The key difference, in McCluskey's view, is that in enacting the FDPA, Congress "has not seen fit to remove from the process those jurors who oppose the death penalty."  Mot. at 7.

McCluskey is correct that death-qualification did not exist at early common law, and the procedure is evidently not discussed in Blackstone's Treatise.[3]  These truths are of limited value to the Court in considering the issue at hand, however, for it remains "axiomatic that the common law is not immutable but flexible, and by its own principles adapts itself to varying conditions."  *United States v. Woods*, 299 U.S. 123, 144 (1936).  The *Woods* Court also made clear that the courts may

---

[2]Presently, McCluskey objects to the Government's removal for cause of jurors whose bias against the death penalty render them unable to apply the law.  In a separate pending motion, McCluskey makes clear his own desire to remove for cause those potential jurors who exhibit bias in favor of capital punishment. *See Defendant's Motion to Preclude Punishment-Related Questions or, in the Alternative, Requests Appropriate Punishment Related Voir Dire as Set Forth in his Proposed Questionnaire, Attorney Questioning, Use of a Jury Questionnaire and Individual, Sequestered Voir Dire on Certain Topics* [Doc. 607] (advancing the "fundamental constitutional principle that any juror who would 1) automatically vote for the death penalty if the defendant is found guilty of intentional, aggravated murder, or who is 2) so supportive of capital punishment as to be 'substantially impaired' in considering any alternative, or 3) who cannot consider and give effect to mitigating circumstances relating to the defendant or this case, must be disqualified for cause.").

[3]The Court has not reviewed the Treatise in its entirety.

take measures "to assure the appropriate growth and adaptation of the law." *Id.* As the Government aptly states, "if the Court somehow limited challenges for cause to those set forth in Blackstone's treatise, neither party in this case could request the removal of any biased person, regardless of the grounds for that bias – including race, ethnicity, pretrial publicity, or views regarding the death penalty. That is surely not a tolerable result for an American courtroom in 2012." Resp. at 4.

What is more, as the Government points out at page 3 of its Response, a careful reading of *Woods* – the very case McCluskey cites in support of his argument that the Court lacks authority to conduct the death-qualification process – reveals that the analysis leading to that decision serves to defeat his claim. The *Woods* Court upheld a statute allowing government employees to serve on criminal juries. In reaching its conclusion, the Court explained that the legislature has the power to enact procedures for criminal trials that are consistent with the rights established in the Sixth Amendment's guarantee of trial by an impartial jury. *Id.* at 144. Notably, in so concluding, the Court explained that the legislature enjoys at least as much power as the federal courts to establish trial procedures. *Id.* In this way, the *Woods* Court recognized the federal courts' power to establish criminal trial procedures without the aid of legislative enactments. *See id.* at 143 (citing *Patton v. United States*, 281 U.S. 276 (1930)) (criminal defendant may waive his right to jury of twelve where one juror became ill). As the Government correctly asserts, "[t]he only limitation upon the courts in establishing such procedures is that any 'readjustments of procedure' must be 'consistent with the spirit and purpose' of the constitutional requirement (of) trial by an impartial jury." Response at 3 (quoting *Woods* at 145). For these reasons, McCluskey's assertion that the federal courts lack authority to conduct death-qualification are without legal support.

### B. Death Qualification Does Not Violate the Defendant's Sixth Amendment Rights

Defendant McCluskey also challenges the death-qualification process as violative of his

Sixth Amendment right to trial by an impartial jury, relying on "a number of historians and legal scholars [who] have suggested that it is now time to reconsider *Wainwright* and *Adams* in light of the original conception of a jury." Motion at 7. McCluskey asserts that the Government enjoys no constitutional right to identify and request exclusion of jurors who oppose the death penalty, and he also notes that his own Sixth Amendment right to an impartial jury does not require inclusion of persons "who would vote to kill him." Reply at 4.

Indeed, the constitutional right to an impartial jury inures to defendants. U.S. Const. amend. VI ("In all prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed. . . ."). Yet the Supreme Court has also expressly identified a legitimate governmental interest in implementing the laws. In *Lockhart v. McCree*, 476 U.S. 162 (1986), the Supreme Court held that the Constitution does not prohibit removal for cause – prior to the guilt phase of a bifurcated capital trial – of prospective jurors whose opposition to the death penalty is so strong that it would prevent or substantially impair the performance of their duties as jurors at the sentencing phase of trial. *See also Buchanan v. Kentucky*, 483 U.S. 402 (1987) (holding that death qualification did not violate Sixth Amendment right to impartial jury even in a joint trial where one defendant was not death-eligible). In fact, the *Lockhart* Court specifically addressed the Sixth Amendment question and held that, even assuming that death-qualified juries are more conviction-prone, death qualification does not violate Sixth Amendment impartiality principles. *See* 476 U.S. at 173, 177-78. An impartial jury consists of nothing more than jurors who will conscientiously apply the law and find the facts. *Id*. at 178. Accordingly, based on existing Supreme Court authority directly on point, McCluskey's Sixth Amendment claim is without merit.

### C. Removal of Jurors with Religious Scruples Preventing Them From Applying the Law as Instructed Does Not Violate the First Amendment's Free Exercise Clause

Finally, the Defendant contends that death-qualification violates the First Amendment rights of any prospective jurors whose religious beliefs would prevent them from following the law. The Government responds that Defendant McCluskey lacks standing[4] to assert this claim and, even if he enjoyed standing, his Free Exercise claim fails in the presence of a legitimate secular purpose for identifying prospective jurors who are biased for or against the death penalty in a capital case and his claim is foreclosed by Supreme Court precedent.

### i. Standing

According to the Government, McCluskey argues that the prospective jurors' First Amendment rights would be violated by death-qualification questions inquiring into their religious beliefs. *See* Resp. at 9. The Government then asserts that McCluskey has not established a "spiritual stake in First Amendment values sufficient to give standing to raise issues concerning ... the Free Exercise Clause" because his religious practice is not "directly affected." *Association of Data Processing Srv. Orgs., Inc. V. Camp*, 397 U.S. 150, 154 (1970), *interpreting School District of Abington v. Schempp*, 374 U.S. 203 (1963).

McCluskey relies on *Powers v. Ohio*, 499 U.S. 400 (1991), to establish standing to bring this claim. In that case, the defendant claimed that *racial* discrimination was at work in the government's use of its *peremptory* challenges. Invoking the Equal Protection Clause, federal statutory law and well-established principles of standing, the *Powers* court held, for the first time, that a criminal defendant may object to race-based *peremptory* challenges *whether or not the*

---

[4] Although the parties have not addressed the question of whether the issue presents an actual case or controversy, the Court notes that no juror has yet been removed from a venire panel for any reason.

8

*defendant and the excluded jurors share the same race*.  Accordingly, the facts and law at play in *Powers* render it distinguishable on the substantive questions, but the Court finds *Powers* instructive on the question of third-party standing, where there is no governing case law on point.  The *Powers* Court stated:

> We must consider whether a criminal defendant has standing to raise the equal protection rights of a juror excluded from service in violation of these principles. In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties. *Department of Labor v. Triplett*, 494 U.S. 715, 720 (1990); *Singleton v. Wulff*, 428 U.S. 106 (1976). This fundamental restriction on our authority admits of certain, limited exceptions. We have recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied:  The litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute, *id.* at 112; the litigant must have a close relation to the third party, id., at 113-114; and there must exist some hindrance to the third party's ability to protect his or her own interests.  *Id.*, at 115-116. *See also Craig v. Boren*, 429 U.S. 190 (1976). These criteria have been satisfied in cases where we have permitted criminal defendants to challenge their convictions by raising the rights of third parties. *See, e. g., Eisenstadt v. Baird*, 405 U.S. 438 (1972); Griswold v. Connecticut, 381 U.S. 479 (1965); *see also McGowan v. Maryland*, 366 U.S. 420 (1961). By similar reasoning, we have permitted litigants to raise third-party rights in order to prevent possible future prosecution. *See, e. g., Doe v. Bolton*, 410 U.S. 179 (1973).
>    The discriminatory use of peremptory challenges by the prosecution causes a criminal defendant cognizable injury, and the defendant has a concrete interest in challenging the practice. *See Allen v. Hardy*, 478 U.S., at 259 (recognizing a defendant's interest in "neutral jury selection procedures"). This is not because the individual jurors dismissed by the prosecution may have been predisposed to favor the defendant; if that were true, the jurors might have been excused for cause. Rather, it is because racial discrimination in the selection of jurors 'casts doubt on the integrity of the judicial process,' *Rose v. Mitchell*, 443 U.S. 545, 556 (1979), and places the fairness of a criminal proceeding in doubt.

Id. at 426.  Here, drawing by analogy from the reasoning in *Powers*, this Court determines that the injury McCluskey may suffer should death-qualification result in a violation of the Free Exercise clause, and the concrete interest he has in the outcome, is sufficient to confer third-party standing upon him to raise the First Amendment challenge.

9

**ii.      Free Excercise**

Turning to the merits of McCluskey's Free Exercise challenge to the death-qualification process, McCluskey's arguments involve only challenges for cause. Given a legitimate, secular governmental interest in enforcement of the laws of the United States by identifying jurors who would show bias for or against imposition of the death penalty, it appears beyond refute that the Court may excuse for cause jurors whose views on the death penalty would prevent them from following the law and remaining true to their oath. This is so regardless of whether the individual's inability to follow the law flows from a religious belief, because the religious belief is not the reason for the exclusion. The death-qualification process simply results in exclusion of jurors who are not qualified to serve because they are unable to apply the law to the facts of the case as instructed. Further, jurors excluded from capital cases for this reason are not deprived of any constitutional right because they can serve on non-capital cases. *See Buchanan v. Kennedy*, 483 U.S. 402, 407 (1987) (jurors excludable for cause based on their views on the death penalty "are not substantially deprived of their basic rights of citizenship, because they are not prevented from serving as jurors in other criminal cases" (internal quotation marks omitted)).

In *Lockhart v. McCree*, the Supreme Court held that "the exclusion from jury service of large groups of individuals not on the basis of their inability to serve as jurors, but on the basis of some immutable characteristic such as race, gender, or ethnic background, undeniably gave rise to an 'appearance of unfairness.'" 476 U.S. 162, 175; *see also Batson v. Kentucky,* 476 U.S. 79, 87 (1986) ("by denying a person participation in jury service on account of his [or her] race, the State unconstitutionally discriminated against the excluded juror"). McCluskey evidently contends that religious belief should be included among race, gender, or ethnic background as an immutable characteristic. In the context of jury selection, however, the immutable characteristics of race and

gender are clearly distinguishable from that of religious belief. As discussed, any religious individual who may be excluded from McCluskey's jury during death-qualification will necessarily have stated that he would be unable to apply the law to this case because his religious ideology prohibits imposing a death penalty judgment. Thus, rather than excluding jurors because they are members of a particular religion, the Court may potentially exclude jurors who are unable to apply the law. Finally, McCluskey's position is contrary to the Supreme Court's standard for death-qualification set forth in *Wainwright v. Witt*, 469 U.S. 412. Pursuant to *Witt*, a juror is not qualified for service in a capital case if his religious views would prevent or substantially impair his ability to decide punishment based solely on the facts and law presented at trial. For these reasons, McCluskey's claim that death-qualification violates the First Amendment must fail.

## CONCLUSION

Notwithstanding Defendant McCluskey's innovative though often unsupported challenges to the constitutionality of the death-qualification process and this Court's authority to conduct the procedure, this Court will adhere to existing Supreme Court authority and deny the Defendant's Motion to Preclude Death Qualification of the Jury in this matter.

**IT IS THEREFORE ORDERED** that Defendant McCluskey's *Motion to Preclude Death Qualification of Jury* [Doc. 394] is **DENIED**.

_____
UNITED STATES DISTRICT JUDGE