**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**THE UNITED STATES OF AMERICA**,

    Plaintiff,

  vs.                                                                                        No. 10-CR-2734 JCH

**JOHN CHARLES McCLUSKEY**,

    Defendant.

**DEFENDANT MCCLUSKEY'S MOTION IN LIMINE FOR A TAINT HEARING, FOR SUPPRESSION OR EXCLUSION OF EVIDENCE, AND FOR DISCOVERY**

Defendant John Charles McCluskey, by and through the undersigned appointed counsel, pursuant to the Fifth, Sixth, and Eighth Amendments, and this Court's prior rulings suppressing evidence [Doc. 588, 812], moves the Court *in limine* for a taint hearing on the issue of whether the government unlawfully or unconstitutionally obtained evidence of an alleged assault by defendant on Arizona inmate Stephenson Williams on April 21, 2010, for discovery of any undisclosed evidence in support of such allegation, and/or for an order suppressing or excluding any evidence in support of such an allegation that was illegally or unconstitutionally obtained, or is inadmissible under 18 U.S.C. § 3593(c) or constitutional evidentiary standards.

As grounds, counsel states:

1. Mr. McCluskey is presently charged under a Third Superseding Indictment with twenty counts, including, Conspiracy to Commit Carjacking Resulting in Death (Count 1), Carjacking Resulting in Death (Counts 2-3), and Murder of a Witness (Counts 4-5), Conspiracy to Interfere with Commerce (Count 6), Interference with Commerce (Counts 7-8), Using and Carrying Firearm During and in Relation to Crime of Violence (Counts 9-18), Felon in Possession of Firearms and Ammunition (Count 19), and Fugitive in Possession of Firearms and Ammunition (Count 20). [Doc. 274.] Count 19 alleges that Mr. MsCluskey has "been convicted of felony crimes punishable by imprisonment for a term exceeding one year, to wit: attempted second degree murder, discharge of a firearm at a structure, and aggravated assault in Case No. CR 2009-118185 in Maricopa County, Arizona; and robbery, criminal conspiracy, and aggravated assault in Case No. CR 2733-92, Lancaster County, Pennsylvania..." Count 20 alleges that Mr. McCluskey was "a person who was a fugitive from justice." The Third Superseding Indictment includes several special findings that authorize the government to seek a sentence of death, pursuant to 18 U.S.C. § 3591. The government filed its notice of intent to seek a sentence of death against Mr. McCluskey on January 26, 2012. [Doc. 275.] Trial is presently

scheduled to begin on July 22, 2013. [Doc. 793].

2. On August 20, 2010, the FBI interrogated Mr. McCluskey despite the fact that Mr. McCluskey asserted his right to counsel under the Fifth Amendment.  The Court suppressed the statements from the guilt and potential sentencing phase of Mr. McCluskey's trial. (Dkt. 588, 812.)  During that interrogation, Special Agent Rominger elicited the statement from Mr. McCluskey that " I carved this motherfucker up.  And they said he tried to commit suicide.  He's down in Flamingo right now." (Discovery 2062-2063).

2. On May 27, 2012, FBI Special Agent McCaskill exchanged e-mails with an Arizona Department of Correction's investigator.  The e-mails contained attachments including Mr. McCluskey's interview transcript with the FBI. (Discovery 7371).  Following receipt of these e-mails and the transcript, the Arizona Department of Corrections investigator initiated an investigation, the investigation promted by the fact that "[d]uring an interview with the FBI, Inmate McCluskey bragged about carving another inmate up at ASPC-Kingman.  It was found that the inmate McCluskey was referring to was Inmate Williams who had his throat slit on 4/21/2010.  Williams claimed that he slit his own throat because his son had recently died." (Discovery 7370.) Later, the investigator reported that Williams's family member corroborated Williams's statement that he slit his own

throat citing the death of his son. (Discovery 7371.) The investigator ended the investigation because the allegation was, "unsubstantiated, lacks evidence." (Discovery 7371.) [1]

3. On August 27, 2012, FBI Special Agent McCaskill interviewed co-defendant Daniel Renwick. (Discovery 7527.) The interview was recorded but the recording provided no relevant information with regards to the investigation involving Williams. However, during the interview, Agent McCaskill asked Renwick who Mr. McCluskey "ran with", and the following then transpired:

MR. RENWICK: You're recording all this.

AGENT McCASKILL: Yeah.

MR. RENWICK: I don't really want to talk any more.

AGENT McCASKILL: What's that?

MR. RENWICK: I don't really want to talk any more. You're going to play that to courtrooms and everything.

AGENT McCASKILL: No. No. Listen, I'll turn that off if you want to keep talking to me. I'll turn it off. But that's not going to get played in a courtroom. That's so that I don't have to take notes. Okay? But if you want to keep talking to

---

[1] The Arizona Department of Corrections investigative report was disclosed to Mr. McCluskey on June 15, 2012.

me without the recorder, I'll turn if off.

    MR. RENWICK: Yeah, I don't want that on.

    AGENT McCASKILL: All right. I'll turn it off.

(Discovery 013264-013265)

    Despite Renwick's clear statement that " I don't really want to talk any more", and consistent with his behavior during Mr. McCluskey's interrogation, McCaskill simply ignored Renwick's assertion of rights and continued to interrogate him after the tape was turned off. McCaskill's 302 report of what happened when the tape was turned off does not reveal exactly what questions McCaskill asked about the alleged assault of inmate Williams, but it does state that McCaskill "asked about McCluskey's penchant for violence." (Discovery 7528). The report goes on to state that

> Renwick provided some details about an inmate in the Kingman facility who had his throat cut by McCluskey.  Renwick stated that the incident that caused McCluskey to attack the inmate was a case where the inmate "stepped out of bounds" or "disrespected" McCluskey in some way.  Renwick also explained that the situation arouse out of a "slight of words." Renwick said that the incident might not even result in a fist fight with other inmates involved.  Renwick recalled seeing a porter mop up large pools of blood after the attack.  Renwick did not observe the attack but everyone knew that McCluskey was the person who attacked the inmate.

(Discovery 7528.) [2]

4. On December 19, 2012, counsel for the government sent defense counsel an email, which stated:

> I write to advise you that the United States has now acquired what it believes to be admissible evidence that would prove beyond a reasonable doubt that Mr. McCluskey slashed the throat of Arizona Department of Corrections inmate Stevenson J. Williams at the Hualapai unit on or about April 21, 2010. Mr. McCluskey referred to this incident (albeit without citing the victim's name) during his initial confession on the night he was captured. See Gov't Exh. 1-C-R at p. 24 (submitted as evidence in suppression hearing). In addition to disclosing his own statements, we have disclosed ADOC documents related to this incident (Bates ## 7368-7373).
> As set forth in the ADOC documents, Williams originally stated to authorities that he was assaulted but then changed his story (as is often the case in a custodial environment) and claimed that he hurt himself. We now have evidence that we believe proves definitively that the attempted suicide story was a self-protection mechanism and that the assailant was Mr. McCluskey. Our evidence demonstrates that Mr. McCluskey and an inmate named Kenneth Riggs sought and received clearance from Tracy Province (who then was in charge of the informal hierarchy of white inmates on that particular yard) to effect a "beat down" of Williams. The "beat down" was intended as retribution for Williams having convinced Casslyn Welch and/or Mr. McCluskey's mother to put money on Williams' books while he and Mr. McCluskey were housed in the county jail in Phoenix before they entered ADOC. What was intended as a "beat down" turned into a throat slashing.
> Given the proximity of the upcoming trial date, we do not intend to present this evidence either in our case-in-chief at the guilt phase or our case-in-chief at the penalty phase. Nor do we intend to

---

[2] McCaskill's 302 report and the audio of his interview with Renwick were disclosed to the defense on November 15, 2012.

move again to amend our NOI.  In the event, however, that you make claims that this evidence would tend to rebut (including but not limited to claims such as Mr. McCluskey was a model inmate while incarcerated in ADOC, that he cannot carry out violence in a confined setting, or that he is not a violent or vengeful person), we would seek to introduce this evidence to rebut such a claim.  In addition, if for some reason the trial date of March 11, 2013, slips into the future, we would take the necessary steps to amend the NOI and affirmatively present this evidence in our case-in-chief at the penalty phase.

5. On December 23, 2012, defense counsel sent an email to government counsel which stated in part that "[t]he discovery we have does not substantiate that Mr. McCluskey committed this offense. We would request that you provide to us the 'admissible evidence' you reference in your email.

6. On December 27, 2012, government counsel coyly responded that

   The purpose of my e-mail was not to "substantiate" our view that Mr. McCluskey committed the offense.  Rather, the purpose was simply to put you on notice (1) of the acquisition of evidence that in our view proves that he committed the offense and (2) of our intent not to offer such evidence except in limited circumstances set forth in my e-mail.  With respect to your request that we supply you with the "admissible evidence," please know that we remain in compliance with our constitutional, statutory, and rule-based discovery obligations.

7. On March 25, 2013, the government disclosed to the defense a CD containing approximately 100 calls that Mr. McCluskey made while incarcerated in the Arizona Department of Corrections, including, according to a cover letter, "calls that "relate to Mr. McCluskey's slashing of inmate Stevenson Williams on

April 21, 2010 at the Kingman prison". However, the cover letter also states that "[w]e received these calls for the first time in early March..." Based on this latter statement, the undersigned defense counsel do not believe that the tapes disclosed on March 25, 2012 are the mysterious "admissible evidence" referenced in government counsel's email of December 19, 2012.

8. If the "admissible evidence" referenced in government counsel's email of December 19, 2012 is in fact the anticipated testimony of Daniel Renwick, that anticipated testimony should be excluded from all phases of this case, and for any purpose, including rebuttal or impeachment, for three reasons. First, the foregoing chronology of events makes it clear that Mr. Renwick's anticipated testimony was secured as a result of the government's exploitation of Mr. McCluskey's unconstitutional interrogation. Had that unlawful interrogation not been conducted, the FBI would never have learned about the Williams incident and Renwick would never have been questioned about that incident. Any doubts about the truth of these statements should be resolved in a pretrial taint hearing, which Mr. McCluskey hereby requests. See, *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed. 2d 176 (ordering a taint hearing and discovery in aid thereof in an electronic surveillance case); United States v. Villano, 529 F.2d 1046 (10th Cir. 1976)("The initial burden to show that an unlawful surveillance occurred rested on the

defendants.... Where such an illegal search has come to light, the Government has the ultimate burden of persuasion to show that its evidence is untainted..... At the same time, the defendant is required to go forward with specific evidence demonstrating taint.")(internal quotations omitted)(citing *Alderman*); *United States v. Cohen*, 796 F.2d 20, 24 (2nd Cir. 1986)(finding that the district court had erred in refusing to suppress all of the evidence obtained in a cell search and ordering on remand that " the trial court should hold a taint hearing to consider what fruits, if any, were obtained from information seized in the warrantless search of July 5th."). Here, the primary illegality is already establish by virtue of the Court's prior rulings. And Mr. McCluskey has done the best he can, given the government's refusal to provide relevant discovery, to establish that his unlawful interrogation led directly to the information obtained from Renwick. The burden should therefore be on the government to show that the anticipated testimony of Renwick is untainted by the primary illegality. If it is not, then such evidence should be suppressed pursuant to well established principles. See e.g., *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

    9. Second, the anticipated testimony is not admissible in either phase of the case because Renwick readily admits that he "did not observe the attack" and that what he knows is apparently based on what other inmates told him, who

themselves may be relying on hearsay. Of course, such testimony is inadmissible hearsay in the first phase of the trial under Federal Rule of Evidence 802 and the Confrontation Clause. Unreliable hearsay is also inadmissible in the penalty phase of a capital trial pursuant to the Eighth Amendmnet, the constitutional rights to due process and a fair trial, and  18 U.S.C. § 3593(c). See, *United States v. Johnson*, 378 F. Supp.2d 1051 (N.D. Iowa 2005). Numerous courts have also held that the Confrontation Clause applies to the sentencing phase of a capital trial, and this right would bar Renwick's hearsay testimony as well. See, e.g., *United States v. Stitt*, 760 F. Supp.2d 570, 581 (E.D. Va. 2010); *United States v. Concepcion Sablan*, 555 F. Supp.2d 1205 (D. Colo. 2007); *United States v. Mills*, 446 F. Supp.2d 1115(C.D. Cal. 2006). See also *Rodriguez v. State*, 753 So.2d 29, 43 (Fla.2000) ("We start with the uncontroverted proposition that the Sixth Amendment right of confrontation applies to all three phases of the capital trial."); *Ball v. State*, 347 Md. 156, 699 A.2d 1170, 1190 (1997) (holding the Confrontation Clause "extends to the sentencing phase of a capital trial and applies to [live,] victim impact witnesses as well as factual witnesses"); *Commonwealth v. Green*, 525 Pa. 424, 581 A.2d 544, 564 (1990) (vacating death sentence and remanding for resentencing because defendant could not cross-examine state's rebuttal witness during mitigation). As this Court itself acknowledged in its suppression ruling, "

'[g]iven the gravity of the decision to be made at the penalty phase, the State is not relieved of the obligation to observe fundamental constitutional guarantees.' " Doc. 812, p. 10 , quoting *Estelle v. Smith*, 451 U.S. 454, 463 (1981).

10. Third, given its hearsay nature and the fact that it contrdicts Williams' own account of the incident, the substance of Renwich's anticipated testimony is substantially more prejudicial than probative and is thus inadmissible in the guilt phase under Rule 403 and in the penalty phase under 18 U.S.C. § 3593 (a), which grants greater discretion to exclude prejudicial evidence than does Rule 403. See, *United States v. Lujan*, 603 F.3d 850, 854 (10th Cir. 2010)("Section 3593(c) provides the district court with greater discretion to exclude unfairly prejudicial or confusing information than the district court has during the guilt phase. This is so because § 3593(c) requires only that the countervailing interests 'outweigh' the information's probative value, while Federal Rule of Evidence 403 permits exclusion only where the countervailing interests 'substantially outweigh[ ]' the evidence's probative value."); *United States v. Pepin*, 514 F.3d 193, 203 n. 13 ( 2nd Cir. 2008)("...[T]he test in section 3593(c) gives the court greater power to exclude prejudicial evidence than does the test in ...Rule 403."); *United States v. Cheever*, 423 F.Supp.2d 1181, 1194-1195 (D.Kan. 2006)("Defendant's burden of showing

unfair prejudice and the like is unmistakably lower under 3593(c) than under Rule 403 [or 848(j)] by virtue of the fact that Congress chose to omit the word 'substantially' from the burden established under the FDPA."); *United States v. Taveras*, 2006 WL 1875339 * 6 (E.D.N.Y.2006)(Weinstein, J.) ("The change to Title 18's FDPA favors defendant in another significant sense: it raises the bar for admission of prejudicial evidence at sentencing.").

    11. If Renwick is not the source of the "admissible evidence" alluded to by the government in its email, then Mr. McCluskey requests, pursuant to *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed. 2d 176 and *United States v. Alderisio*, 424 F.2d 20 (10th Cir. 1970), that he be given immediate access to such evidence following which he again requests that the Court conduct a taint hearing to determine whether the disclosed evidence is the fruit of the unlawful interrogation.

## CONCLUSION

    WHEREFORE, for all the reasons set forth herein, Defendant John McCluskey respectfully requests that the Court grant this motion and order: (1) a taint hearing on the issue of whether the government unlawfully or unconstitutionally obtained evidence of an alleged assault by defendant on Arizona inmate Stephenson Williams on April 21, 2010; (2) immediate disclosure of any

undisclosed evidence in support of such allegation; and (3) suppress or exclude any evidence in support of such an allegation that was illegally or unconstitutionally obtained, or is inadmissible under 18 U.S.C. § 3593(c) or constitutional evidentiary standards.

Dated: April 1, 2013

                Respectfully submitted,

                /s/ Michael N. Burt
                Michael N. Burt
                1000 Brannan Street, Suite 400
                San Francisco, CA 94103-4888
                415/522-1508

                /s/ Theresa M. Duncan
                Theresa M. Duncan
                Duncan Earnest, LLC
                600 Central Ave. SE
                Suite 204
                Albuquerque, NM 87102
                505-842-5196


                /s/ Gary C. Mitchell
                Gary C. Mitchell
                Gary C. Mitchell, P.C.
                PO Box 2460
                Ruidoso, New Mexico  88355
                575-257-3070

                Attorneys for Defendant John McCluskey

## CERTIFICATE OF CONFERENCE

I hereby certify that on April 1, 2013, I contacted government counsel to determine the government's position on this motion.  Government counsel Gregory Fouratt advised that the government is opposed to the motion.

/s/ Michael N. Burt
Michael N. Burt

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2013,  a true and accurate copy of the foregoing pleading was emailed to counsel of record by CM/ECF.

/s/ Michael N. Burt
Michael N. Burt
