IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

     v.                                             Case No.  10-CR-2734 JCH

JOHN CHARLES McCLUSKEY,

      Defendant.

## MOTION IN LIMINE REGARDING VICTIM IMPACT EVIDENCE

Pursuant to the Fifth and Eighth Amendments to the United States Constitution and 18 U.S.C. § 3593(c), defendant John Charles McCluskey respectfully moves the Court *in limine* for an order (1) excluding victim impact testimony by any witness for whom the government has failed to comply with this Court's Order requiring a description of the anticipated evidence, or, in the alternative, prescribing a procedure for the assessment of the testimony; (2) limiting the scope and nature of victim impact evidence; and (3) requiring the government to identify with specificity any documents, audio or video recordings, or physical evidence that it intends to introduce in support of the victim impact aggravating factor.  Because the government has not yet identified the specific victim impact evidence it will seek to admit at trial, Mr. McCluskey reserves the right to supplement this motion once those disclosures have been made.

## Procedural Background

Mr. McCluskey has been charged with numerous offenses related to the deaths of Linda and Gary Haas in August 2010.  The government has alleged victim impact as a non-statutory aggravating factor warranting Mr. McCluskey's death.  [Dkt. 275 at 4.]

On August 27, 2012, this Court ordered the government to provide Mr. McCluskey with a written informative outline describing how it intended to prove this aggravating factor.  [Dkt. 645 at 17.]  In response, the government filed an informative outline, in which it stated its intent to introduce testimony from eight witnesses.[1]  [Dkt. 670 at 3-4]  The government advised it intends to introduce "wedding, anniversary, and reunion announcements and programs, memorial service programs and materials, and other mementos."  [*Id*.]  With the exceptions of witnesses Vivian Haas and Linda Rook, the government has produced nothing outlining the substance of the victim impact witnesses' testimony.  Further, the government has not yet produced in discovery any of the documents or mementos described in its outline.  Rather, it has disclosed two disks containing photographs of the Haases, a video containing three gatherings of the Haas family in 1990-1992 (only one of which Gary and Linda Haas attended), and a video montage created for the 50th wedding anniversary of Gary Haas's parents, which includes multi-

---

[1] A ninth proposed witness, Cathy Byus, died on March 21, 2013.

generational photographs put to music.  Mr. McCluskey does not know whether the government intends to introduce any of this previously disclosed evidence during the trial.

## Discussion

### A. Because Victim Impact Evidence Has a High Potential of Injecting Unfairly Prejudicial Content into a Capital Sentencing Proceeding, It Must Be Approached with Caution and Strictly Limited.

By its very nature, victim impact evidence is fraught with emotional volatility and has the potential of injecting unfairly prejudicial content into the sentencing phase of a capital trial.[2]  It will be the Haas family's only opportunity

---

[2] As one Federal District Court Judge powerfully put it:

> The court finds that "information" concerning "non-statutory" aggravating factors has such an "undue tendency" to suggest decision on the "gateway" and "statutory" aggravating factors on an improper basis.
>
> More specifically, I have already presided over the "penalty phase" in the companion case against Dustin Honken. This case will likely involve "victim impact" evidence[*] that is substantially similar to the "victim impact" evidence in Honken's case, because this case involves the same alleged murders of the same victims. I can say, without hesitation, that the "victim impact" testimony presented in Honken's trial was the most forceful, emotionally powerful, and emotionally draining evidence that I have heard in any kind of proceeding in any case, civil or criminal, in my entire career as a practicing trial attorney and federal judge spanning nearly 30 years. Indeed, I cannot help but wonder if *Payne v. Tennessee,* 501 U.S. 808, 111 S. Ct. 2597, 115 L.Ed.2d 720 (1991), which held that victim impact evidence is legitimate information for a jury to hear to determine the proper punishment for capital murder, would have been decided the same way if the Supreme Court Justices in the majority had ever sat as trial court judges in a federal death penalty case and had observed first hand, rather than through review of a cold record, the unsurpassed emotional power of victim impact testimony on a jury. It has now been over four months since I heard this testimony in the *Honken* trial and the juror's sobbing during the victim impact testimony still rings in my ears. This is true even though the federal

3

to address the jury that will decide whether Mr. McCluskey will live or die. The government has stated it will ask the family to testify about their relationship with Haases, how they learned the Haases had been killed, how their lives have changed as a result of the Haases' deaths, and "the deep psychological and emotional impact the loss of the [Haases] has caused each of the witnesses." [*Id*.] These are highly emotional subject areas, and a likelihood exists that one or more of the proposed witnesses will say something that could require a mistrial, thus wasting months of jury selection and trial.

The danger inherent in victim impact testimony was one reason, among others, that the United States Supreme Court once held that the admission of victim impact testimony violated the Eighth Amendment. *See Booth v. Maryland*, 482 U.S. 496 (1987), *overruled in part by Payne v. Tennessee*, 501 U.S. 808 (1991). Although the Court later overruled its holding that victim impact evidence is inadmissible in its entirety, *see Payne*, 501 U.S. at 825-27, it did not reject all

---

> prosecutors in *Honken* used admirable restraint in terms of the scope, amount, and length of victim impact testimony. To pretend that such evidence is not potentially unfairly prejudicial on issues to which it has little or no probative value is simply not realistic, even if the court were to give a careful limiting instruction. Rather, such potent, emotional evidence is a quintessential example of information likely to cause a jury to make a determination on an unrelated issue on the improper basis of inflamed emotion and bias-sympathetic or antipathetic, depending on whether one is considering the defendant or the victims' families.

*United States v. Johnson*, 362 F.Supp.2d 1043, 1106- 1107 (N.D. Iowa 2005).

limitations on that evidence. *Payne* overruled only that portion of *Booth* excluding evidence and argument relating to the victim and the impact of the victim's death on the victim's family. It left undisturbed *Booth*'s holding that that the admission of a victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence violates the Eighth Amendment. *See Lott v. Trammell*, 705 F.3d 1167, 1214-15 (10th Cir. 2013). "Thus, it remains constitutionally improper for the family members of a victim to provide characterizations and opinions about the crime, the defendant, and the appropriate sentence during the penalty phase of a capital case." *DeRosa v. Workman*, 679 F.3d 1196, 1237 (10th Cir. 2012) (internal quotation marks omitted).

Even testimony permissible under *Payne* is subject to constitutional and statutory limits. The Fifth Amendment Due Process Clause prohibits the introduction of evidence that is so unduly prejudicial that it renders a trial fundamentally unfair. *Payne*, 501 U.S. at 825. While the Supreme Court held that the prosecution may provide a quick glimpse of the victim's life in order to show the victim's uniqueness as an individual, it noted that victim impact evidence should not offered to show that "defendants whose victims were assets to their community are more deserving of punishment than those whose victims are perceived to be less worthy." *Payne*, 501 U.S. at 824, citing *Booth*, 482 U.S. at 506 n.8.

18 U.S.C. § 3593(a) provides that permissible aggravating factors may include those "concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family." Nonetheless, the restrictions of 18 U.S.C. § 3593(c) apply to this evidence, as they do to all evidence offered in aggravation. This provision allows the Court to exclude evidence if its probative value is outweighed by the danger of creating unfair prejudice, among other things.

The dangers inherent in victim impact evidence generally are heightened in this case for several reasons. First, the government appears to intend to push the constitutional limits on acceptable victim impact evidence. For example, its amended informative outline states it intends to introduce wedding, anniversary and reunion announcements and, even more troubling, memorial service programs and materials. [Dkt. 670 at 3-4.] Several courts have excluded such evidence given their potential to cause unfair prejudice or arouse undue sympathy. *See, e.g., United States v. McVeigh*, 153 F.3d 1166, 1221 n.47 (10th Cir. 1998) (noting that district court excluded wedding photographs and home videos as victim impact evidence); *United States v. Sampson*, 335 F. Supp. 2d 166, 191 (D. Mass 2004) (excluding video made for memorial service which contained still photographs

tracking the life of the decedent on the grounds it was excessively prejudicial compared to its probative value).

Second, members of the Haas family have been outspoken regarding their support for the death penalty in this case. *See, e.g.*, Lysee Mitri, Lawyers Cite Mental Illness in Killings, KRQE.com (Mar. 7, 2013), available at http://www.krqe.com/dpp/news/crime/lawyers-cite-mental-illness-in-killings (statement of Vivian Haas); *see also* Discovery at 10536-46. During a videotaped statement she gave in 2011, Mrs. Haas commented on the three co-defendants, hypothesized about the crime, and came close to stating her opinion on the appropriate sentence, all of which would be inadmissible at trial. *See* Discovery 10513, 10516. In a written statement provided to the prosecutors in this case, members of the Haas family compared their loss to the losses suffered by the victims of the attacks on September 11, 2001, and compared Mr. McCluskey and his co-defendants to Osama Bin Laden. Discovery 10542. Such comparisons are clearly impermissible victim impact testimony.

Third, in the past year the Haas family has suffered additional losses unrelated to the deaths of Gary and Linda Haas. The Haases' brother-in-law died in May 2012, and their daughter died in late March 2013.[3] These unexpected tragedies have no doubt greatly increased the Haas family's grief, but respectfully

---

[3] Please see the sealed supplement to this motion for further discussion of the impact of these losses on the Haas family and their anticipated testimony.

are not relevant to the jury's sentencing decision in this case. In addition to being irrelevant, evidence related to these deaths would be unduly prejudicial and greatly increase the danger of the jury making its sentencing decision based on emotion rather than reason. For these reasons, the Court must approach the victim impact testimony and evidence in this case with great caution.

**B. The Government's Failure to Comply With This Court's Order Requiring Disclosure of Anticipated Victim Impact Testimony Warrants Exclusion of Witnesses or Additional Disclosure Requirements.**

This Court ordered the government to provide the defense with a written informative outline of the nature of the victim impact evidence it intended to introduce. [Dkt. 645 at 17.] The Court's Order cites to numerous cases describing the scope of information the government was required to disclose:

> Thus, the Court orders the Government to provide McCluskey with a written informative outline describing how it intends to prove victim impact. *See, e.g., United States v. Diaz*, No. CR 05-167, 2007 WL 196752, at *5 (N.D. Cal. 2007) (noting that "[t]he notices here provide defendants with no notice of the type of 'injury, harm, and loss' to the victims' families and what 'personal characteristics' the victims possessed to support this aggravating factor," and ordering the government to "supplement its notice to provide an informative outline of the factual basis on which it intends to establish this nonstatutory aggravating factor"); *United States v. Rodriguez*, 380 F. Supp. 2d 1041, 1057-58 (D.N.D. 2005) (ordering the Government to provide an outline of proposed victim impact evidence in an amended notice of intent to seek the death penalty); *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 470-75 (E.D. Pa. 2001) (ordering the Government to provide an informative outline as to certain aggravating factors only, including victim impact); *United States v. Copper*, 91 F. Supp. 2d 90, 111 (D.D.C. 2000) (ordering the government to include "more specific information concerning the extent and scope of the injuries and loss suffered by each

> victim, his or her family members, and other relevant individuals, and as to each victim's personal characteristics that the government intends to prove").

[*Id*.] Despite this Court's clear guidance, the government's informative outline merely names its proposed victim impact witnesses (information which was included in the Notice of Intent to Seek the Death Penalty—which the Court found provided insufficient notice), provides general categories of expected testimony without any information regarding the substance of that anticipated testimony, and describes general categories of physical evidence it might introduce (and which has not yet been disclosed to the defense). Further, the discovery provided to date includes information regarding the scope of harm to only two of the government's eight proposed witnesses, Vivian Haas and Linda Rook. The government's failure to provide Mr. McCluskey with notice of the type of injury, harm and loss it intends to prove with respect to the other witnesses warrants exclusion of those witnesses from the potential penalty phase.

Should this Court conclude that the government's failure to provide sufficient notice of the anticipated testimony does not warrant exclusion, Mr. McCluskey respectfully asks that, in the alternative, the Court order the government to produce additional information regarding the proposed testimony and impose limits on that testimony. In particular, Mr. McCluskey asks the Court (1) to order the government to supplement its informative outline on this

9

aggravator, (2) to order the victim impact witnesses to present their testimony to the Court, outside the presence of the jury, prior to the presentation of that testimony to the jury, and (3) limit the victim impact testimony to that approved by the Court during the hearing outside the presence of the jury. In this way, the Court will have the opportunity to evaluate the content of the victim impact testimony and avoid any inadmissible, prejudicial or inappropriate testimony from being presented to the jury, thus helping to avoid the very real possibility of a mistrial at that late stage of the trial. *See, e.g., United States v. Glover*, 43 F.Supp.2d 1217, 1236 (D. Kan. 1999) (requiring the government to submit a written statement describing the proposed testimony as to each victim impact witness prior to trial so that the court could "weigh each specific point of the proffered testimony to ensure that its probative value is not substantially out-weighed by the danger of unfair prejudice").

Mr. McCluskey also asks that the Court limit the number of victim impact witnesses to four, two on behalf of each victim. Such an order is necessary to prevent an undue focus on victim impact evidence and the introduction of cumulative evidence. Furthermore, such an order decreases the likelihood of unconstitutional and otherwise inadmissible evidence. Finally, Mr. McCluskey asks that the Court limit the victim impact witnesses to members of the Haases' family, as contemplated by 18 U.S.C. § 3593(a). *See id.* ("The factors for which

notice is provided under this subsection may include factors concerning the effect of the offense *on the victim and the victim's family*, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered *by the victim and the victim's family*, and any other relevant information.") (emphasis added); *But see United States v. Barrett*, 496 F.3d 1079, 1098 (10th Cir. 2007) (holding that victim impact testimony by friends of victim was admissible during capital trial).

### C. Victim Impact Testimony Must Be Limited to Avoid the Introduction of Constitutionally Inappropriate and Inflammatory Evidence.

To ensure that victim impact testimony stays within constitutional limits, Mr. McCluskey respectfully asks the Court to expressly prohibit witnesses from expressing any opinions about Mr. McCluskey or his character, the offense (including, but not limited to, opinions about how the Haases may have felt or acted), and the penalty that they wish to see imposed in this case.  *See DeRosa*, 679 F.3d at 1237.  Mr. McCluskey also respectfully asks that the Court prohibit the witnesses from referring to him by any name other than "the defendant" or "Mr. McCluskey."  This will avoid the use of impermissible or disparaging labels.

Mr. McCluskey also asks the Court to prohibit victim impact evidence or testimony relating to tragic or difficult circumstances any victim impact witness may have experienced apart from the impact of the deaths of Gary and Linda Haas. In particular, and without limitation, Mr. McCluskey respectfully requests that the

Court prohibit reference to the deaths of Frank Rook and Cathy Byus, including the effects those deaths have had on any witness.

Mr. McCluskey also asks the Court to prohibit the victim impact witnesses from referring to the jury or jurors as "you"; in other words, precluding the witness from addressing the jurors personally and directly.

Finally, Mr. McCluskey respectfully asks the Court to order the government to inform its witnesses regarding the limitations set forth above.  He also asks that, before each witness testifies, the Court inform the witness that it will not allow a witness to testify if the person is unable to control his or her emotions and caution the witnesses that the Court will not permit any testimony concerning the victim's family members' characterizations and opinions about the defendant, the crime, or the appropriate sentence.

    **D.**    **Victim Impact Evidence Must Be Limited to Avoid the Introduction of Constitutionally Inappropriate and Inflammatory Evidence.**

To enable Mr. McCluskey to timely raise objections to the government's proposed evidence, Mr. McCluskey respectfully asks the Court to order the government to specifically identify the physical or documentary evidence, including photographs or videotapes, that it intends to introduce as victim impact evidence no later than sixty-days before trial.  This will enable the defense to alert

the Court to specific issues related to that evidence and the Court to rule on any objections.

Mr. McCluskey also respectfully asks the Court to preclude the government from introducing:

(1) Wedding photos and photos of similar emotionally charged events on the ground that they are unfairly prejudicial. *See McVeigh*, 153 F.3d at 1221 n.47.

(2) Wedding, anniversary, and reunion announcements and programs, and memorial service programs and materials on the grounds that such materials are irrelevant to the sentencing decision and are unfairly prejudicial.

(3) Memorial videos or similar video presentations containing a biography or life history of Gary and Linda Haas. *See Sampson*, 335 F. Supp. 2d at 191.

This type of video material creates a whole new level of prejudice. As Justice Stevens has observed,

> Victim impact evidence is powerful in any form. But in each of these cases, the evidence was especially prejudicial. Although the video shown to each jury was emotionally evocative, it was not probative of the culpability or character of the offender or the circumstances of the offense. Nor was the evidence particularly probative of the impact of the crimes on the victims' family members: The pictures and video footage shown to the juries portrayed events that occurred long before the respective crimes were

13

> committed and that bore no direct relation to the effect of crime on the victims' family members.
>
> Equally troubling is the form in which the evidence was presented. As these cases demonstrate, when victim impact evidence is enhanced with music, photographs, or video footage, the risk of unfair prejudice quickly becomes overwhelming. While the video tributes at issue in these cases contained moving portrayals of the lives of the victims, their primary, if not sole, effect was to rouse jurors' sympathy for the victims and increase jurors' antipathy for the capital defendants. The videos added nothing relevant to the jury's deliberations and invited a verdict based on sentiment, rather than reasoned judgment….
>
> These videos are a far cry from the written victim impact evidence at issue in *Booth* and the brief oral testimony condoned in *Payne*. In their form, length, and scope, they vastly exceed the "quick glimpse" the Court's majority contemplated when it overruled *Booth* in 1991.

*Kelly v. California*, 555 U.S. 1020 (2008) (Stevens, J, statement respecting the denial of the petitions for writs of certiorari).

## **CONCLUSION**

For the foregoing reasons, Defendant John Charles McCluskey respectfully moves the Court for an order (1) excluding victim impact testimony by any witness for whom the government has failed to comply with this Court's Order requiring a description of the anticipated evidence, or, in the alternative, prescribing a procedure for the assessment of the testimony; (2) limiting the scope and nature of victim impact evidence; and (3) requiring the government to identify with specificity any documents, audio or video recordings, or physical evidence that it intends to introduce in support of the victim impact aggravating factor.

Dated: April 1, 2013

        Respectfully submitted,

        /s/ Michael N. Burt_____
        Michael N. Burt
        1000 Brannan Street, Suite 400
        San Francisco, CA 94103-4888
        415/522-1508

        /s/ Theresa M. Duncan_____
        Theresa M. Duncan
        Duncan Earnest, LLC
        600 Central Ave. SE
        Suite 204
        Albuquerque, NM 87102
        505-710-6586

        /s/ Gary C. Mitchell_____
        Gary C. Mitchell
        Gary C. Mitchell, P.C.
        PO Box 2460
        Ruidoso, NM 88355
        (575) 257-3070

        Attorneys for Defendant John McCluskey

## CERTIFICATE OF CONFERENCE

I certify that defense counsel conferred with counsel for the government, Gregory J. Fouratt, who stated the government opposes this motion.

                /s/ Theresa M. Duncan
                Theresa M. Duncan

**CERTIFICATE OF SERVICE**

I certify that on April 1, 2013, I filed the foregoing document electronically through the CM/ECF system, which caused all counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

/s/ Theresa M. Duncan
Theresa M. Duncan
