**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

   vs.                                                         **Cr. No. 10-2734 JCH**

**JOHN CHARLES McCLUSKEY,**

        **Defendant.**

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on Defendant's *Motion to Exclude Prison Gang and BOP Expert Testimony, and Request for Daubert Hearing* [Doc. 421]. In the motion, Defendant John Charles McCluskey ("McCluskey") asks the Court to exclude testimony by the following Government witnesses: (1) D. Scott Dodrill, an expert on the federal Bureau of Prisons ("BOP") procedures and statistics; and (2) Leslie Smith and Keland Boggs, experts on prison gangs and gang activity, including the Aryan Brotherhood. The Court has reviewed the motion, response, and reply, as well as the authorities cited therein, and it concludes that the motion should be denied as to the portion of the motion in which McCluskey argues that the testimony should be excluded because the Government failed to meet its Rule 16 disclosure obligations. However, the Court will grant the portion of the motion in which McCluskey argues that the testimony should be excluded because it is not admissible under Rule 702 and *Daubert*.

**BACKGROUND**

On September 9, 2011, the Court entered a Scheduling Order [Doc. 220] setting January 20, 2012 as the "[d]eadline for government to complete all summaries and provide all reports on all experts, with all foundational data to be disclosed by February 17, 2012." The Government did not

meet this deadline, but on January 20, 2012, the Government filed its *Notice of Intention to Offer Expert Testimony* [Doc. 261]. That document did not set forth the Government experts' summaries, reports, and foundational data as required by the Scheduling Order. Instead, the Government stated that it was providing a list of experts and the subject area of their expected testimony, and that it would provide the experts' credentials, summaries, and reports, as well as foundational information, to McCluskey at an undefined later date. With regard to the Government's three experts in the areas of prisons and gangs, the notice stated:

> 12. D. Scott Dodrill. It is anticipated the government will call Mr. Dodrill as a witness in the areas of Bureau of Prisons conditions of confinement, and including but not limited to, classification of prisoners, rules, and statistics of misconduct within BOP.
>
> 13. Leslie Smith, Chief, Counter Terrorism Unit, Federal Bureau of Prisons. It is anticipated the government will call Mr. Smith as a witness in the areas of prison gang activity, including and not limited to Aryan Brotherhood activities.
>
> 14. Keland Boggs, currently with the FBI Violent Street Gang Task Force, Phoenix. It is anticipated the government will call Mr. Boggs as a witness in the areas regarding prison gang activity, specifically inmates affiliated with the Aryan Brotherhood.

On March 30, 2012, the Government filed its *Supplemental Notice of Intent to Offer Expert Testimony* [Doc. 386]. In that document, the Government identified Dodrill, Smith, and Boggs for the first time as rebuttal witnesses (though the notice does not state whether they will testify during the guilt phase, penalty phase, or both). The Supplemental Notice gave the following additional information about the witnesses and their testimony:

> 9. The United States anticipates calling D. Scott Dodrill as a rebuttal witness. It is expected that Mr. Dodrill will testify regarding his knowledge and expertise about the Bureau of Prisons (BOP), in the areas of conditions of confinement, classification of prisoners, rules, and statistics of misconduct within BOP. Mr. Dodrill is expected to testify based on his 32 years of experience in prison

management experience with BOP. He retired in 2011 as the Assistant Director, Correctional Programs Division, Senior Executive Service Staff member, after serving at nine federal correctional institutions, two regional offices and the central office. Mr. Dodrill is also expected to testify regarding his development and writing of numerous policies within BOP, as well as his direction of training efforts in all departments. He is also expected to discuss his direction of all critical BOP inmate management and program functions, as well as inmate intelligence gathering and sharing, psychology services, drug abuse programs, security aspects, witness security, and designation and sentence computations.

10. The United States anticipates calling Leslie S. Smith, Chief, Counter Terrorism Unit, Federal Bureau of Prisons, as a rebuttal witness. It is expected Mr. Smith will testify, based on his experience and training within BOP since 1989, regarding the areas of prison gang activity including the Aryan Brotherhood prison gang, and its criminal activities. Mr. Smith is expected to testify regarding his current post with the Counter Terrorism Unit, as well as his former assignments as a Special Investigate Agent at ADX Florence, which included managing the institutions investigative and inmate intelligence operations. Mr. Smith has testified as an expert witness numerous times regarding prison gang activity, specifically inmates affiliated with the Aryan Brotherhood.

11. The United States anticipates calling Keland Boggs, Special Investigator with the Security Threat Group (STG) of the Arizona Department of Corrections (ADC) as a rebuttal witness. Mr. Boggs is expected to testify based on his experience and training with his more than twelve years experience with ADC, and his assignment with the FBI Violent Street Gang Task Force, Phoenix, regarding security threat groups. He is also expected to testify regarding the certification of security threat groups and criminal street gang members. It is expected that Mr. Boggs will testify, based on his experience, training, and prior testimony as a qualified gang expert, about ADC prison gang activity, which includes the Aryan Brotherhood, its rules and criminal activities within the prisons.

## DISCUSSION

McCluskey argues that the Court should exclude the testimony of Dodrill, Smith, and Boggs on several grounds. First, he contends that the Government has failed to describe the witnesses' opinions or the bases and reasons for those opinions as required by Rule 16(a)(1)(G).[1] Second, he argues that Dodrill, Smith, and Boggs should not be permitted to testify as both lay and expert

---

[1] Oddly, the Government ignores this argument entirely, failing to address it in its response brief.

witnesses, or that alternatively, their testimony in these capacities should be tightly controlled and the jury should receive a limiting instruction. Third, he contends that the witnesses' testimony is irrelevant, unreliable, and inadmissible under *Daubert* and Rule 702. Finally, McCluskey contends that allowing these witnesses to testify based upon their discussions with other persons not in the courtroom and not called as witnesses at trial would violate his rights under the Sixth Amendment's Confrontation Clause.

## I.     Adequacy of Expert Witness Disclosure

Under the terms of Rule 16(a)(1)(G), the Government was required to disclose expert evidence to be presented during its *case-in-chief* at trial under Rules 702, 703, or 705. The summary must "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." However, Rule 16(a)(1)(G) is explicitly applicable only to expert testimony offered in the government's case-in-chief and not to rebuttal experts. *United States v. Beilharz*, 378 Fed. Appx. 363, 365 (4th Cir. 2010); *United States v. Windham*, 489 F.2d 1389, 1392 (5th Cir. 1974) (stating that "[r]ebuttal witnesses are a recognized exception to all witness disclosure requirements."); *United States v. Frazier*, 387 F.3d 1244, 1269 (11th Cir.2004); *United States v. DiCarlantonio*, 870 F.2d 1058, 1063 (6th Cir. 1989); *United States v. Barrett*, 766 F.2d 609, 617 (1st Cir. 1985); *United States v. Angelini*, 607 F.2d 1305, 1308-09 (9th Cir. 1979). In its March 30, 2012 supplemental disclosure, the Government clarified that it intends to call Dodrill, Smith, and Boggs as rebuttal witnesses. Accordingly, Rule 16 does not require the Government to make the disclosures requested by McCluskey, provided that it does not call these witnesses in its case-in-chief.[2] Accordingly, the Court will deny the portion of McCluskey's motion requesting that these

---

[2] In the event the Government attempts to call any of these three witnesses in its case-in-chief, their testimony would be excluded for the Government's failure to meet its discovery

experts' testimony be excluded on the grounds that the Government failed to meet its Rule 16 disclosure obligations.

## II. Admissibility Under Rule 702 and *Daubert*

McCluskey argues that the testimony of Dodrill, Smith, and Boggs is inadmissible under *Daubert* and Rule 702. McCluskey contends that the testimony is unreliable, not helpful to the jury, and irrelevant. On the record before the Court, the Court agrees.

### A. Legal Standard

The admissibility of expert testimony in federal court is governed by Rule 702 and the principles announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167 (1999). Federal Rule of Evidence 702 provides that, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

obligations. As the Court has previously explained in this case, Rule 16 requires only "a written summary" including "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G). Rule 16 disclosure is designed to give the opposing party notice, permitting preparation for cross-examination and presentation of opposing experts. *See* Fed. R. Crim. P. 16 advisory committee's notes to 1993 amendment. Detailed, extensive discussion is not required in the Rule 16 summary. However, the disclosures provided by the Government fail to meet even this basic standard, as they do not provide any inkling of what the witnesses' opinions will be, what they relied upon to reach those opinions, or even how their opinions relate to the charges against McCluskey.

Rule 702 requires courts to assess the reliability of expert testimony based on scientific, technical, or "other specialized" knowledge before admitting it. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167 (1999) (extending the *Daubert* gatekeeping requirement to "technical" and "other specialized" knowledge). A district court may satisfy its so-called "gatekeeping" function by conducting a pretrial hearing, or by ruling on a Rule 702 objection at trial, "so long as the court has sufficient evidence to perform 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.' " *Goebel v. Denver & Rio Grande W. R.R. Co.,* 215 F.3d 1083, 1087 (10th Cir. 2000) (quoting *Daubert,* 509 U.S. at 597, 113 S.Ct. 2786). Although "the gatekeeper inquiry under Rule 702 is ultimately a flexible determination, . . . a district court, when faced with a party's objection, must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper." *Goebel*, 215 F.3d at 1088 (citation omitted). In this case, McCluskey has requested a pretrial *Daubert* hearing on the admissibility of the experts' testimony, while the Government opposes holding a hearing.

Finally, the proponent of the evidence—in this case, the Government—has the burden of showing that expert evidence is admissible, by a preponderance of proof. *Daubert*, 509 U.S. at 592 n.10; *United States v. Orr*, 692 F.3d 1079, 1091 (10th Cir. 2012); Fed. R. Evid. 702 advisory committee's note to 2000 amendment. The trial court "'generally must first determine whether the expert is qualified.'" *United States v. Avitia-Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012) (quoting *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc)). "If the expert is sufficiently qualified, then 'the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology.'" *Id.* (quoting *Nacchio*, 555 F.3d at 1241). Trial courts have the responsibility of ensuring that scientific testimony or evidence is both relevant

and reliable. *Daubert*, 509 U.S. at 589. "Relevant evidence 'means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2004) (quoting Fed. R. Evid. 401). The trial court acts as gatekeeper, making "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert* 509 U.S. at 592-93. The gatekeeping function requires a "'sufficiently developed record'" to allow a determination of whether the trial court "'properly applied the relevant law.'" *Avitia-Guillen*, 680 F.3d at 1258 (quoting *United States v. Nichols*, 169 F.3d 1255, 1262 (10th Cir. 1999)).

  **B.** **Application of *Daubert* and *Kumho Tire***

In this case, McCluskey does not argue that Dodrill, Smith, and Boggs are not qualified to serve as experts, or that they lack specialized knowledge in the area of BOP procedures or gangs. Instead, he argues that their testimony—the nature of which the Government has chosen not to disclose—is not reliable, helpful to the jury, or relevant to the charges against him. Doc. 421 at 14-18.

  **1.** **The Government Has Provided the Court With Virtually No Information**

The Court has had considerable difficulty assessing the helpfulness, reliability and relevance of the testimony of the BOP and gang experts because the Government has refused to give the Court any inkling of what the experts' testimony will consist of, what their opinions are, what they are based upon, and how they relate to the charges against McCluskey. The Government's descriptions of the experts' testimony, outlined above, are extremely vague. For example, with regard to Dodrill, the Government states that he will testify about various aspects of BOP operations, including

7

conditions of confinement, classification of prisoners, rules, and statistics of misconduct within BOP; his direction of all critical BOP inmate management and program functions, as well as inmate intelligence gathering and sharing; psychology services; drug abuse programs; security aspects; witness security; and designation and sentence computations. What the Government has not explained is what it expects Dodrill to say regarding these topics, what he has relied upon in reaching his conclusions, why his testimony is reliable, or how it is relevant to the case against McCluskey. While it has identified Dodrill as a rebuttal witness, the Government does not even deign to inform the Court what type of evidence or testimony it will call Dodrill to rebut. Similarly, with regard to Smith, the Government states that he will testify regarding the areas of prison gang activity including the Aryan Brotherhood prison gang, and its criminal activities. Again, the Government fails to inform the Court what it expects Smith will say on these topics, what his opinions are based upon, why his testimony is reliable, or how it is relevant and helpful to the jury. It also does not state what testimony or evidence his testimony will rebut. The Government's descriptions of Boggs' testimony are similarly unavailing.

When confronted with McCluskey's motion, the Government concedes that it does not offer the evidence to prove that McCluskey's bad character, as shown by his gang affiliation, demonstrates his propensity to commit crimes. Doc. 484 at 4. Instead, the Government opaquely hints that the witnesses will opine as to McCluskey's gang membership, which "may be relevant to guilt-phase contextual issues and to certain witnesses' state of mind." *Id*. at 1. The Government offers no explanation of the phrase, "guilt-phase contextual issues," nor an explanation of how Dodrill, Smith, or Boggs' testimony is relevant to any witness' state of mind. On this subject, the Government goes on to state that "it is possible that the Government will elicit testimony from witnesses regarding their knowledge of the Defendant's gang activity only to place respective

witnesses' testimony in context and show the witnesses' states of mind at the time the Defendant made certain incriminating statements." *Id.* at 4. Frankly, the Court has no idea what this statement means; it is virtually devoid of content, and it does nothing to explain the nature of the testimony or the purpose for which the Government will offer it. The Government then goes on to cite cases in which courts found gang evidence to be admissible to demonstrate a witness's bias, motive, and credibility. *Id.* at 4-5. Whether these are the purposes for which the Government intends to offer the testimony is anyone's guess, because the Government stops short of stating that it will offer the testimony of Dodrill, Smith, and Boggs for these purposes.

McCluskey, in turn, posits that the Government intends to offer the witnesses' testimony not only in the guilt phase of the trial, but also in support of the "future dangerousness" aggravating factor during the penalty phase. The Government confirms this in its response, where it states that "testimony is expected to be offered in the penalty-phase as rebuttal and to address the significance of Defendant's allegiance to a gang as it applies to the future dangerousness factor." *Id.* at 1. Again, the Government does not explain how the three expert witness' testimony will be relevant to the future dangerousness factor, what their opinions will be, or why their conclusions are reliable. Instead, the Government makes general arguments about the admissibility of gang expert testimony in various circumstances, but it does not relate any of those arguments to the specific testimony at issue here.

Finally, the Court notes that the Government has not attached to its written response any expert reports, statements, or affidavits by Dodrill, Smith, or Boggs explaining the nature, relevance, basis, or reliability of their testimony. The only aspect of its burden under *Daubert* and Rule 702 that the Government does attempt to address in any substantive way is the question of whether Dodrill, Smith, and Boggs are qualified to testify as experts; to that end, it provided the Court

9

specific information about the witnesses' credentials and backgrounds. Doc. 484 at 1-4. While McCluskey requests a pretrial hearing on his *Daubert* motion, the Government contends that an "evidentiary ruling should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." Doc. 484 at 6. It then requests that the Court deny the motion "without holding an evidentiary hearing." *Id.* at 10.

### 2. The Government Has Failed to Meet Its Burden Under Rule 702, *Daubert*, and *Kumho Tire*

The Court is confronted with a situation in which the proponent of expert testimony, who is faced with a *Daubert* motion challenging the admissibility of that testimony, has (1) failed in its response brief to meet its burden to demonstrate that the testimony is admissible, (2) not attempted to supplement its written response with additional materials, despite having had ample time to do so, and (3) opposed having a pretrial hearing to determine admissibility—a hearing at which the Government would have the opportunity to meet the burden of proof it failed to meet in its written papers. The Government's approach to the motion has been to postpone making any sort of showing regarding the admissibility of its experts' testimony until the time of trial. The Court declines, however, to decide the issue at trial. McCluskey has stated that the experts' testimony is likely based, at least in part, on their interviews of dozens or even hundreds of inmates who have been housed with McCluskey at various points in time. Doc. 421 at 18, 24. The Government does not dispute this assertion. McCluskey further states that he expects that his cross examination of Dodrill, Smith, and Boggs would take at least two days of trial time, perhaps more, in order for him to question them regarding the extensive record that they probably have relied upon in reaching their conclusions. Doc. 421 at 24-25. Again, the Government does not dispute his assertion. The trial in this case is expected to last up to four months, and as a result the Court considers it in the best

interest of the parties and the jurors to minimize disruptions during the course of the trial.  To recess the trial for several days in order to hold these *Daubert* hearings, thereby forcing the jurors to wait idly by in the meantime, makes little sense when the issues were ripe for consideration in advance of trial.  As a result, the Court concludes that it should resolve the issue on the written record currently before it.  Indeed, Tenth Circuit cases have interpreted *Kumho Tire's* directive that district courts must have leeway in applying the *Daubert* framework to mean that although *Daubert* hearings are the most common way to fulfil the gatekeeper function, " 'such a process is not specifically mandated.' "  *See United States v. Turner*, 285 F.3d 909, 913 (10th Cir. 2002) (quoting *Goebel*, 215 F.3d at 1087); *accord Dodge v. Cotter Corp.*, 328 F.3d 1212, 1228 (10th Cir. 2003); *United States v. Nichols*, 169 F.3d 1255, 1263 (10th Cir. 1999).

     First, the Government has not shown that its experts have specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue.  Indeed, the Government has expressly declined to reveal what the experts' testimony and opinions will be and how they will relate to a particular fact in issue in this case.  The purposefully vague offerings made by the Government are insufficient.  Second, the Government has not shown that Dodrill, Smith, and Boggs' testimony is based on sufficient facts or data.  In fact, the Government has not revealed any information regarding the basis of any of the opinions of these witnesses.  Third, the Government has not shown that the witnesses' testimony is the product of reliable principles and methods; again, this is another subject the Government has declined to address.  Fourth, the Government has not shown that the experts have reliably applied the principles and methods to the facts of the case.  On the record before it, the Court finds that the Government has failed to meet its burden under Rule 702, *Daubert*, and *Kumho Tire* to demonstrate that these experts' testimony is admissible.  Thus, their testimony will be excluded at trial.

In resolving this issue, the Court is guided by the Tenth Circuit's opinion in *United States v. Nacchio*, 555 F.3d 1234 (10th Cir. 2009). In that case, defendant Nacchio disclosed an expert witness on the eve of trial. The government filed a lengthy motion seeking to exclude testimony by the defendant's expert. As in the case currently before this Court, the motion in *Nacchio* challenged the expert's methodology and reliability under *Daubert* and Rule 702, and the party opposing the admission of the testimony requested a hearing. *Id.* at 1238. Nacchio filed a perfunctory written response to the motion in which he disclosed nothing about the principles and methods applied by his expert. *Id.* at 1238-39. By this time, the trial was underway. The trial court granted the *Daubert* motion and excluded the expert's testimony, noting its concern with the methodology, "which is absolutely undisclosed in this expert disclosure," and "[m]ost convincingly, the defendant has made no attempt to comply with Rule 702 or *Daubert* and establish that Fischel's testimony is the product of reliable principles and methods or that Fischel applied some principles and methods reliably in this case." *Id.* at 1239. The trial court refused to hear argument from Nacchio's lawyer, stating that he could have put his argument in his written response. *Id.* Nacchio moved to reconsider, asserting that the district court did not have sufficient evidence nor did it develop a sufficient record to fulfill its *Daubert* gatekeeping function and suggesting for the first time that a *Daubert* hearing would be "particularly appropriate where, as here, the court believes the expert['s] report was insufficiently detailed." *Id.* at 1240. The trial court did not alter its decision. *Id.*

After he was convicted of insider trading, Nacchio appealed the trial court's ruling. The question before the Tenth Circuit was "whether the district court employed the proper legal standard and performed its gatekeeper role in determining whether to admit or exclude expert testimony." *Id.* at 1241. The Tenth Circuit concluded that the court had properly excluded the expert's testimony on *Daubert* grounds, rejecting the idea that the court should have held a hearing despite Nacchio's

12

failure to fully respond to the motion in writing. *Id*. at 1242.  The Tenth Circuit noted that, as the proponent of the expert testimony, Nacchio bore the burden of proving its admissibility by either presenting evidence in support of his expert's methodology or requesting an evidentiary hearing. *Id*. at 1244-45.  Further, the Court dismissed the notions that Nacchio did not have notice of any obligation to proffer additional evidence or request a hearing, and that he had a right to assume that the trial court would conduct voir dire or permit the questioning of his expert before ruling on admissibility. *Id*. at 1245.  Instead, the Tenth Circuit found no abuse of discretion in the trial court's decision to proceed on the written record. *Id.* at 1245-46.  The Court also found that Nacchio had an adequate opportunity to present evidence in support of his expert's methodology or to request an evidentiary hearing in advance of presenting the expert's testimony, including "a continuous opportunity to file a written proffer of evidence, or to file a request for a hearing," but he declined to do so. *Id*. at 1249.  "If Mr. Nacchio felt that he could not adequately respond to the motion to exclude with his written response, it was incumbent upon him to request whatever additional proceedings he thought necessary to achieve his evidentiary objective." *Id*. at 1250 n. 16.  Instead, he elected to kick the proverbial can down the road.  However, "[i]n ordinary motion practice, a respondent must address any and all issues raised by a moving party's papers, or else face the very real possibility that it will be deemed to have abandoned its right to do so." *Id*. at 1251.  *See also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146–47, 118 S.Ct. 512 (1997) (finding no abuse of discretion in district court's exclusion of expert testimony when the proponent's response was nonresponsive to the critique of the opponent, even though the district court did not hold oral argument).

     *Nacchio* supports the conclusion that it is appropriate for this Court to rule on the motion based on the current written record.  McCluskey's motion [Doc. 421] put the Government on notice that he was challenging its BOP and prison gang experts' testimony under Rules 702 and *Daubert*

13

on the grounds that the opinions were not relevant or reliable. The Government filed a written response in which it failed to meet its burden under to demonstrate that the experts' testimony is admissible. In addition, the Government has failed, in the ensuing twelve months, to attempt to supplement its response or otherwise meet its burden. Finally, not only did the Government fail to request a hearing on the motion, but it actively opposed McCluskey's request for such a hearing. Instead, it advocates that the Court address these issues *ad hoc* during the course of the trial—a request that would add several days to an already lengthy trial and cause additional inconvenience to the jury and the parties. Accordingly, McCluskey's *Daubert* motion will be granted.

### III.   Other Issues

Having excluded the testimony of Dodrill, Smith, and Boggs, the Court need not reach McCluskey's arguments regarding violation of his rights under the Confrontation Clause, or regarding the witnesses' testimony as both experts and fact witnesses.

**IT IS THEREFORE ORDERED** that Defendant's *Motion to Exclude Prison Gang and BOP Expert Testimony, and Request for Daubert Hearing* [Doc. 421] is **DENIED** with regard to Defendant's request for a *Daubert* hearing, but otherwise **GRANTED** in all other respects on the grounds that the Government has failed to meet its burden to show that the testimony of its experts on the Bureau of Prisons and prison gangs is admissible.

_____
**UNITED STATES DISTRICT JUDGE**