IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

        Plaintiff,

    vs.                         Cr. No. 10-2734 JCH

JOHN CHARLES McCLUSKEY,

        Defendant.


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's *Motion to Preclude Punishment-Related Questions* . . . [Doc. 607].  In that motion, Defendant John Charles McCluskey ("McCluskey") requests certain relief relating to a written questionnaire to be sent to prospective jurors in the case, as well as other relief relating to live voir dire to be conducted with jurors in the courtroom.  In considering these issues, the Court has reviewed not only the aforementioned motion, but also McCluskey's *Supplemental Brief in Support of Defense-Proposed Questionnaire* [Doc. 649], the Government's *Response in Opposition to Defendant's Supplemental Brief in Support of Defense-Proposed Questionnaire* [Doc. 659][1], the parties' *Joint Proposed Jury Selection Procedures* [Doc. 555], and the Government's *Memorandum of Law Regarding Capital Case Jury Selection* [Doc. 603].

The arguments in the motion and the other pleadings addressing the content of the written questionnaire are now moot, as the questionnaire has been formulated and sent to prospective jurors.

---

[1] Other than this response to McCluskey's supplemental brief, it appears that the Government did not file a response to Doc. 607.

Several other issues have been addressed in this Court's *Memorandum Opinion and Order* denying McCluskey's motion to preclude death qualification of the jury. *See* Doc. 746. Accordingly, in this Memorandum Opinion and Order the Court will address only the remaining issues regarding live voir dire of prospective jurors. The Court also sets **July 8, 2013** as the deadline for the parties to file their written proposed general voir dire with the Court.

**DISCUSSION**

## I.     THE PARTIES' JOINT PROPOSED JURY SELECTION PROCEDURES [Doc. 555]

The Court will adopt, in part, the parties' joint proposed jury selection procedures. *See* Doc. 555. However, the Court makes the modifications to the procedures outlined below.

**Paragraph 1**.     The Court adopts paragraph 1 of the stipulation, except the Jury Administrator will provide the list to the parties no later than Monday, July 15, 2013.

**Paragraph 2.** The Court does not adopt paragraph 2. Instead, on the date the trial is scheduled to commence, July 22, 2013, twelve (12) jurors will be summoned per day until the requisite number of jurors are qualified. Voir dire will commence at 8:45 a.m., and end at 4:30 p.m., Monday through Friday, until an adequate number of jurors have been qualified and accepted by the parties.

**Paragraph 3.** The Court adopts paragraph 3, except as noted above only twelve (12) jurors will be summoned per day.

**Paragraph 4.** The Court adopts paragraph 4, except the Court will limit each party's questioning of each prospective juror to ten (10) minutes.

**Paragraph 5.** The Court adopts paragraph 5.

With the Court's adoption of the foregoing procedures, several issues raised by McCluskey's motion, such as whether the lawyers will be permitted to participate in voir dire and avoidance of

2

the "processing effect," are now moot.

## II.   CONTENT OF VOIR DIRE QUESTIONS

### A.   Case-specific Questions and Hypothetical Questions

McCluskey argues that he has the right to question potential jurors regarding case-specific mitigating and aggravating factors (including hypothetical questions) in order to determine their ability to be fair and impartial, as well as their ability to consider all of the evidence. *See* Doc. 607 at 10-12.  At this time, McCluskey has not provided the Court with a list of such questions.  The Government opposes the use of case-specific questions, arguing that questioning should be limited to  to jurors' basic beliefs and core values. *See* Doc. 603 at 8-14.  The Court concurs with the Government.

The Sixth Amendment guarantees every criminal defendant "the right to a ... trial[ ] by an impartial jury." U.S. Const. amend. VI.  Complementing this right are the protections afforded by the Due Process Clause, which have "long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Morgan v. Illinois*, 504 U.S. 719, 727, 112 S.Ct. 2222 (1992).  Voir dire examination serves to protect the right to an impartial jury by providing the parties a means of uncovering juror bias. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 143–44, 114 S.Ct. 1419 (1994); *Morgan*, 504 U.S. at 729–30; *Mu'Min v. Virginia*, 500 U.S. 415, 431, 111 S.Ct. 1899 (1991). Bias that emerges in response to voir dire questioning can lead to excusal of a juror for cause or may facilitate the parties' intelligent exercise of peremptory strikes. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554, 104 S.Ct. 845 (1984).

In *Morgan*, the Supreme Court held that a juror who would automatically impose the death penalty if a defendant were convicted of a capital offense is not impartial and must be removed for

cause.  504 U.S. at 729.  "Under *Morgan*, general fairness and 'follow the law' questions alone are insufficient to insure against a death-biased jury."  *United States v. McCullah*, 76 F.3d 1087, 1113 (10th Cir. 1996).  *See also United States v. McVeigh*, 153 F.3d 1166, 1206 (10th Cir. 1998), *disapproved of on other grounds*, *Hooks v. Ward*, 184 F.3d 1206, (10th Cir. 1999).  "Consequently, upon a defendant's request, a trial court is obligated to ensure that prospective jurors are asked sufficient questions to allow the court and parties to determine whether, should the defendant be convicted, the jurors have already decided to apply the death penalty, or whether they would truly weigh any mitigating and aggravating factors found at the penalty phase of the trial."  *McVeigh*, 153 F.3d at 1206.

Under a trio of Tenth Circuit precedents, the particular relief that McCluskey requests here–the right to question prospective jurors about specific mitigating factors or to inquire whether they would find specific facts aggravating or mitigating–is not required by either the Sixth Amendment or the Due Process Clause.  First, in *Sellers v. Ward*, 135 F.3d 1333, 1341 (10th Cir. 1998), the petitioner in a *habeas* case argued that the state trial court unconstitutionally limited his voir dire of the jury on the subject of the death penalty by prohibiting defense counsel from asking prospective jurors whether they would consider the youth of the defendant as a mitigating factor. In finding no violation of the petitioner's constitutional rights, the Tenth Circuit stated:

> [D]efense counsel attempted to inquire into whether prospective jurors would find specific facts mitigating. This effort is not equatable to whether a juror would refuse to consider mitigation of any kind. As noted by the district court, a juror of that mind-set would be excusable for cause, but what Petitioner was attempting to do was to ferret out information that would aid in the exercise of his peremptory challenges. So long as the voir dire is adequate to detect jurors who could not be impartial, a trial court is not *required* by the Constitution to grant such a searching inquiry.  Indeed, the breadth of questions eliciting jurors' opinions about the death penalty itself must lie within the discretion of the trial judge.

*Id*. at 1341-42 (emphasis in original) (internal citation omitted).

4

Second, in *United States v. McCullah*, 76 F.3d 1087, 1113 (10th Cir. 1996), the defendant argued that the district court erred by restricting voir dire questions regarding the jurors' ability to consider mitigating factors.  The Tenth Circuit disagreed, holding that "the district court was not required, as Mr. McCullah suggests, to allow inquiry into each juror's views as to specific mitigating factors as long as the voir dire was adequate to detect those in the venire who would *automatically* vote for the death penalty."  *Id.* at 1114 (emphasis in original).  It was sufficient that the court permitted counsel "to elicit information on jurors' views toward mitigating circumstances and toward automatic imposition of the death penalty.  *Morgan* requires no more."  *Id.*

Finally, in *United States v. McVeigh*, 153 F.3d 1166, 1205 (10th Cir. 1998), the defendant argued that the district court erred when it prevented him from ascertaining whether prospective jurors would automatically vote for the death penalty and whether they had been biased on the issue of punishment by pretrial publicity.  In its discussion, the court identified two types of *Morgan* voir dire questions.  *Id.* at 1206.  The first category, which the court labeled "general *Morgan* questions," "consists of non-context-specific questions that generally seek to determine a juror's core value system, i.e., whether the juror would automatically impose the death penalty" if the defendant were convicted.  *Id.*  The second category, dubbed "specific *Morgan* questions," "consists of context-specific questions that focus on whether the facts" of the crime had predisposed prospective jurors toward imposing the death penalty.  *Id.*  As the Court interprets the pleadings now before it, McCluskey seeks to ask prospective jurors "specific *Morgan* questions" regarding their feelings about particular aggravating and mitigating circumstances, thereby presenting hypothetical scenarios to the jurors and asking them how those hypothetical circumstances would affect their vote in the penalty phase.  However, as the court explained in *McVeigh*, "*Morgan* does not require courts to allow questions regarding the evidence expected to be presented during the guilt phase of the trial.

5

Further, . . . *Morgan* does not require a court to allow questions regarding how a juror would vote during the penalty phase if presented with specific mitigating factors." *Id*. at 1208.  The Tenth Circuit also observed that some courts have gone further, holding that such questions not only are not required by *Morgan*, but also that they are improper.  *Id.*  However, the *McVeigh* court itself stopped short of that holding.

In light of the foregoing cases, the Court concludes that the Constitution does not require that McCluskey be permitted to ask specific voir dire questions regarding particular aggravating and mitigating circumstances.  Accordingly, this portion of McCluskey's motion will be denied.

###   B.   Open-Ended Questions and Questions Probing Jurors' Understanding of the Concept of Mitigation

McCluskey argues that during voir dire, his counsel should be permitted to ask open-ended questions and to explore the jurors' understanding of mitigation.  Doc. 607 at 17-24.  However, the nature of the questions McCluskey wants to ask is unclear, and the Court will not rule on the propriety of such questions in the abstract.  Accordingly, the Court will rule as to the propriety of specific questions as they arise.

### III.   ADMONITION TO POTENTIAL JURORS

McCluskey requests that, at the commencement of voir dire, the Court inform the potential jurors that questioning on punishment issues during voir dire occurs in every potential capital case, and that the procedure must not affect the jurors' view of the presumption of innocence or the Government's burden of proof.  *See* Doc. 607 at 17.  The Court agrees that such an admonition would be appropriate and therefore instructs the parties to meet and confer in order to construct a stipulated admonition to the jury.  The admonition should be brief and to the point, and the parties should provide it to the Court at the time they submit their proposed general voir dire.  If the parties

cannot agree on a form of admonition, they may submit separate admonitions.

## IV.   IDENTITY OF PROSPECTIVE JURORS

In its *Confidentiality Order* entered September 27, 2012 [Doc. 693], the Court ruled that the identity and place of abode of each potential juror should be disclosed to McCluskey's defense team no later than February 25, 2013, which was two weeks prior to the then-prevailing trial date of March 11, 2013.  Now that the trial has been rescheduled for July 22, 2013, this information must be disclosed to McCluskey's defense team no later than **July 8, 2013**, which is two weeks prior to the commencement of trial.  All other aspects of the *Confidentiality Order* remain unchanged.

**IT IS THEREFORE ORDERED** that Defendant's *Motion to Preclude Punishment-Related Questions* . . . [Doc. 607] is **GRANTED IN PART** and **DENIED IN PART** as explained herein.

**IT IS FURTHER ORDERED** that the parties must file their proposed general voir dire (as it relates to Paragraph 3 of Doc. 555) no later than **July 8, 2013**.  The Jury Administrator must disclose the identity and place of abode of each potential juror no later than **July 8, 2013**.

_____

**UNITED STATES DISTRICT JUDGE**