**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**


**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**vs.**                                                          **Cr. No. 10-2734 JCH**

**JOHN CHARLES McCLUSKEY,**

        **Defendant.**


**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court on various motions in limine filed by the parties. The Court addresses each in turn as discussed below.

**I.  GOVERNMENT'S WITNESS LIST FOR PENALTY PHASE** [Doc. 865]

Defendant requests the Court to order the Government to provide him with a list of witnesses for the penalty phase at least sixty days prior to the July 22, 2013 jury selection. Defendant also moves the Court to order the Government to provide notice of the manner in which the evidence will be presented:  (1) by transcript, (2) by live testimony, (3) through a summary witness, or (4) through hearsay or in any other fashion.

The Government agrees to provide its witness list for the penalty phase three days before commencement of trial, citing 18 U.S.C. § 3432.  The Government opposes the motion, however, arguing that Defendant has not demonstrated a specific need to receive the witness list more than three days before trial.  Relying on *United States v. Nguyen*, 928 F. Supp. 1525, 1551 (D. Kan. 1996), the Government argues that the complexities of a capital case, without more, do not demand production of its witness list more than three days before trial.  [Doc. No. 912, pp. 2-3 (citing additional cases which do not support the Government's argument)]  The Government also suggests—without providing any evidence or factual support—that early disclosure could

lead to witnesses being unwilling to testify or could even jeopardize their safety. The Government also opposes the second part of Defendant's motion, arguing that Defendant is not entitled to notice of the manner in which the Government's evidence will be presented.

With regard to early provision of the Government's witness list, the Court notes that both parties presented similar arguments with regard to trial witnesses, and incorporated their arguments from the pleadings regarding trial witnesses. [Doc. Nos. 859, 909, 930] The Government again makes unsubstantiated and wholly speculative assertions that there may be an impact on the safety or availability of witnesses; if the Government provides notice to the Court of specific safety concerns, and is prepared to prove those concerns by a preponderance of the evidence, the Court will reconsider. *See United States v. Lujan*, 530 F. Supp. 2d 1224, 1261 (D.N.M. 2008). The Court also notes that the Government agrees to provide its penalty-phase witness list three days before trial. As the Court concluded in ordering early production of the Government's list of trial witnesses, the Court concludes that providing Defendant advance notice of the Government's penalty-phase witnesses is in the interests of due process, effective assistance of counsel, the fair and efficient conduct of proceedings, and the desire to avoid delays. [Doc. No. 979, pp. 2-3] The Court orders the Government to provide its penalty-phase witness list no later than July 3, 2013. However, the list must be filed under seal, so that it can be viewed only by the defense team, the Government, and the Court.

The second part of Defendant's motion requests the Court to order the Government to provide advance notice of the manner in which the Government's evidence will be presented—through live testimony, transcript, summary witness, or via hearsay or any other fashion. Defendant relies on two cases involving a different statute, 21 U.S.C. § 848(j) (repealed 2006) (Continuing Criminal Enterprise), which is similar to 18 U.S.C. § 3593(c) in providing a

gatekeeping role for the court.  Prior § 848(j) provided:  "Any other information relevant to such mitigating or aggravating factors may be presented by either the Government or the defendant, regardless of its admissibility under the rules governing admission of evidence at criminal trials, except that information may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  § 3953(c) is similar, except that it omits "substantially."

Defendant cites *United States v. Pretlow*, 779 F. Supp. 758 (D.N.J. 1991).  Defendant relies on a section of this 1991 case which primarily addressed the defendant's argument that § 848(j) was unconstitutional because it would undermine a defendant's Sixth Amendment right to confrontation; the district court rejected this argument, holding that § 848(j) was consistent with Supreme Court precedent.  *Id.* at 770-71.  Defendant relies on a footnote in *Pretlow*, in which the court ordered the government to provide the defendant and the court "with reasonable notice of its intent to present to the jury any information which would be considered hearsay under the Federal Rules of Evidence."  *Id.* at 771 n.7.  The purpose of this order was to ensure that the defendant had an adequate opportunity to present any objections.  The *Pretlow* court cites no authority for this order, presumably relying on its discretionary power.  *Pretlow* therefore provides no support for the argument that a defendant is entitled to such information via advance notice.  As Defendant notes, *Pretlow* was later cited in *United States v. Johnson*, 378 F. Supp. 2d 1051, 1068 (N.D. Iowa 2005), but only for the proposition that the evidentiary standard set by § 848(j) is constitutional.  *Johnson* is not relevant to Defendant's request for an order that the Government identify the manner in which evidence will be presented.

Defendant cites an unpublished district court order, attached to his motion, in *United States v. Stitt*, Cr. No. 2:98cr47 (E.D. Va. Feb. 22, 2010).  This unpublished case is not

persuasive, because it is distinguished on critical points.  First, the *Stitt* court emphasized that the circumstances were "unique," in that a resentencing hearing was to be held eleven or twelve years after the 1999 trial (after reversal on appeal).  In addition, the court ordered both sides to exchange witness lists and to identify whether those witnesses would testify live, through transcript, through a summary witness, or in any other fashion.  [Doc. 865-1, p. 11]  Defendant McCluskey asks that only the Government be required to identify the manner in which its evidence will be presented.  Second, the *Stitt* court ruled that, because of this "substantial passage of time," the Confrontation Clause would apply throughout both the eligibility and selection stages of the capital re-sentencing hearing.  [Doc. 865-1, pp. 9-10]  As Defendant notes, the district court in *Stitt* recognized that the application of the Confrontation Clause in capital sentencing proceedings has not been clearly established.  *See United States v. Stitt*, 760 F. Supp. 2d 570, 581-82 (E.D. Va. 2010) (denying motion for reconsideration on latter point). Without citing any authority, the *Stitt* court ordered discovery of the manner in which the witnesses would be presented; this order was to facilitate the court's ruling that the Confrontation Clause would apply throughout the re-sentencing proceeding.  Both of these rulings depended on the "unique circumstances" of that case; neither ruling was clearly supported by authority.

The Court does not find either of these cases persuasive.  As the parties recognize, the Tenth Circuit has observed that "'[i]t is far from clear that the Confrontation Clause applies to a capital sentencing proceeding.'"  *United States v. Barrett*, 496 F.3d 1079, 1100 (10th Cir. 2007) (quoting *United States v. Higgs*, 353 F.3d 281, 324 (4th Cir. 2003)).  Even when it is clear that the Confrontation Clause applies—at trial—the relief requested by Defendant is not required. Defendant notes, in his Reply, that he intends to ask the Court to hold that the Confrontation Clause will apply in the penalty phase.  [Doc. No. 944, p. 3]  The Court believes that Defendant

has included this statement merely to explain his motion, not to request a ruling.  But, even if it were proper for Defendant to make a motion to this effect in a Reply, the Court would decline to issue an advisory opinion.  *See United States v. Hammer*, 2011 WL 6019197, *2 (M.D. Pa. 2011) (unpublished) (declining to issue advisory opinion on whether Confrontation Clause applies at penalty phase of capital case).

Defendant has not provided persuasive authority, and the Court denies his motion to the extent that it requests an order requiring the Government to provide advance notice of the manner in which penalty-phase evidence would be presented.  The Court believes that the relief requested is not necessary to give Defendant an adequate opportunity to prepare to meet the Government's penalty-phase evidence.

## II.  VICTIM IMPACT EVIDENCE  [Doc. No. 867]

Defendant moves for an order:  (A) excluding victim impact testimony for failure to provide sufficient information to comply with the Court's order to provide an informative outline; (B) limiting the scope and nature of victim impact evidence; and (C) requiring the Government to identify with specificity any documents, audio or video recordings, or physical evidence that it intends to introduce in support of the victim impact aggravating factor.

### (A)  Sufficiency of informative outline

Contending that the Government's informative outline is insufficient, Defendant asks the Court to exclude victim impact witnesses.  In the alternative—if the Court determines that the outline is insufficient but exclusion is not warranted—Defendant asks the Court to order further supplementation of the informative outline, and to review and approve victim impact evidence prior to its presentation to the jury.

The Government's statement of victim impact evidence in the Notice of Intent was:

> "As demonstrated by the victims' personal characteristics as an individual human being and the impact of the death upon the victim and the victims' family and friends, the defendant caused injury, harm, and loss to the victim and the victims' family and friends, including at least Cathy Byus, Vivian Haas, Linda Rook, Sandra Roden Morgan, Talford Perkins, Erma Patrick, Jay Dee Patrick, and Steve Walker."

The Court concluded that this factor was "particularly nebulous" and gave Defendant "little information as to the nature of the evidence the Government intends to offer to prove it." [Doc. 645, p. 17]  The Court thus ordered the Government to provide "a written informative outline describing how it intends to prove victim impact." [Doc. 645, p. 17]

In response to this Order, the Government provided the following in its informative outline:

> "By killing the Haases, the Defendant caused injury, harm, and loss to the victims and the victims' families and friends.  The Government will present victim impact testimony from multiple family members and friends establishing the witnesses' close relationships with the victims, how they learned the victims had been killed, how their lives have been changed without the victims, and the deep psychological and emotional impact the loss of the victims has caused each of the witnesses.  The Government will prove this factor through witness testimony, photographs, and family heirlooms, such as wedding, anniversary, and reunion announcements and programs, memorial service programs and materials, and other mementos.  The Government may present testimony from Cathy Byus (daughter), Vivian Haas (mother of Gary Haas), Linda Rook (sister of Gary Haas), Erma Patrick (maternal aunt of Gary Haas), Sandra Roden Morgan (sister of Linda Haas), Talford Perkins (brother of Linda Haas), Bill Perkins (brother of Linda Haas), Steve Walker (close friend of Gary and Linda Haas), and Sheila Walker (close friend of Gary and Linda Haas)."

[Docs. 670 & 840]  Defendant argues that this informative outline is insufficient—relying not directly on language in the Court's Memorandum Opinion and Order, but instead on the level of detail required by cases cited in that Order.

The Government argues that its informative outline was sufficient, relying on another section of this Court's Order:

"Like Judge Brack, this Court emphasizes that the outline need not reveal evidentiary detail, but it should address the general nature of the [evidence] the Government will offer to prove its statutory threshold findings and aggravating factors, as discussed below."

[Doc. 645, p. 14]  The Government correctly points out that the informative outline accepted by Judge Brack in *Lujan* was similar in level of detail to the one provided in Defendant McCluskey's case.  *United States v. Lujan*, Cr. No. 05-924 RB, p. 6 n.2 (D.N.M. 2011) [Doc. No. 903] (quoting *Lujan* outline).

The Court recognizes that some of the cases cited in its Memorandum Opinion and Order required relatively extensive detail—e.g., whether the victims sought counseling, what evidence would be presented with regard to each victim separately, and what "personal characteristics" of each victim would be illustrated.  [Doc. 645, p. 17]  The Court's Memorandum Opinion and Order, however, emphasized that the informative outline "need not reveal evidentiary detail," but should address "the general nature" of the Government's victim impact evidence.  [Doc. No. 645, p. 14]  The Court recognized that Defendant did not have a constitutional right to further detail than was provided in the Notice of Intent, but concluded nevertheless that it was appropriate to order an informative outline providing more detail.  In doing so, the Court relied on its inherent authority.  [Doc. 645, pp. 12-14]  It is within the discretion of the Court to determine whether the Government has provided sufficient information.  The Court concludes that the Government's informative outline is sufficient, and denies this portion of Defendant's motion.

Since the outline is sufficient, the Court also denies Defendant's request for alternative relief, including prior review of victim impact testimony outside the presence of the jury.  The Court agrees with the approach and reasoning of Judge Brack in that the Court will not require

the victims to "repeatedly relive their loss," nor to "write out their testimony for preapproval, nor otherwise deliver scripted testimony." *Lujan*, Cr. No. 05-924 RB, p. 9 [Doc. No. 903-4].

**(B)  Scope and nature of victim impact testimony**

Defendant asks the Court to limit the number of victim impact witnesses to four, two on behalf of each victim.  The Government opposes this motion, and states that at most eight victim impact witnesses would be presented.

As the Government notes, other courts have allowed a substantial number of victim impact witnesses.  *See, e.g., United States v. Barnette*, 211 F.3d 803, 818 (4th Cir. 2000) (seven witnesses, or 22% of the penalty phase witnesses); *United States v. Bolden*, 545 F.3d 609, 626 (8th Cir. 2008) (sixteen witnesses, or 80% of the penalty phase witnesses).  In a case cited by Defendant, the court determined that three or four witnesses per victim "was not too many per se."  *United States v. Sampson*, 335 F. Supp. 2d 166, 189 (D. Mass. 2004).  In *McVeigh*, there were thirty-eight victim impact witnesses; however, the Tenth Circuit's approval of that number should be read with caution, because the "'sheer number of actual victims and the horrific things done to them necessarily allow[ed] for the introduction of a greater amount of victim impact testimony in order for the government to show the "harm" caused by the crime.'"  *Lujan*, Cr. No. 05-924 RB, p. 7 [Doc. 903-4] (quoting *United States v. McVeigh*, 153 F.3d 1166, 1216 (10th Cir. 1998), *disapproved of on other grounds and limited by Hooks v. Ward*, 184 F.3d 1206, 1227 (10th Cir. 1999)).

The issue is whether the victim impact evidence would violate due process because it would be so unduly prejudicial as to render the trial unfair.  *Payne v. Tennessee*, 501 U.S. 808, 827 (1991).  The bar for demonstrating this level of prejudice from victim impact evidence is quite high.  *Higgs v. United States*, 711 F. Supp. 2d 479, 527 (D. Md. 2010).  Whether the victim

impact evidence would violate due process must be evaluated in the context of the entire sentencing proceeding. *McVeigh*, 153 F.3d at 1218 n.45; *Barnette*, 211 F.3d at 818. The Court concludes that the proper focus is not on the number of victim impact witnesses per se, but instead on the quantity and quality of victim impact testimony; the issue is whether the evidence becomes so lengthy and cumulative that it confuses the issues or causes unfair prejudice. *Bolden*, 545 F.3d at 626. For these reasons, the Court will not now set a limit on the number of victim impact witnesses; the Court will instead evaluate the issue in context, once the Court has more information about all of the penalty-phase evidence.

Defendant asks the Court to limit the victim impact witnesses to members of the Haases' family, and to exclude testimony from the victims' good friends, Sheila and Steve Walker. As Defendant recognizes, however, the Tenth Circuit has upheld admission of victim impact testimony from friends. *Barrett*, 496 F.3d at 1099; *United States v. Fields*, 516 F.3d 923, 946-47 (10th Cir. 2008). The Tenth Circuit observed that 18 U.S.C. § 3593(a) broadly allows "'any other relevant information,'" and caselaw permits "'giving the jury a glimpse of the victim's personality and the life he led.'" *Fields*, 516 F.3d at 946 (quoting *Barrett*, 496 F.3d at 1099). Testimony from the Walkers, good friends of the victims, will be allowed. The Court denies this portion of Defendant's motion.

Defendant moves the Court to prohibit witnesses from expressing any opinions about Defendant, his character, the offense, and the penalty they wish to see imposed. The Government agrees, and states that it intends to instruct all of its witnesses not to do so. [Doc. No. 903, p. 10 n.5]

Defendant moves the Court to: prohibit witnesses from referring to Defendant except as "the defendant" or "Mr. McCluskey"; prohibit witnesses from using disparaging language about

Defendant; and prohibit witnesses from addressing jurors personally and directly.   The Government does not appear to object to these restrictions, and states that it will instruct its witnesses to demonstrate proper decorum in the courtroom.

Defendant asks that the Court caution each witness to observe the preceding limitations, and that, "before each witness testifies, the Court inform the witness that it will not allow a witness to testify if the person is unable to control his or her emotions."  [Doc. No. 867, p. 12] The Government states that it will instruct its witnesses to display appropriate decorum to the best of their abilities, but argues that victim impact testimony cannot be expected to be devoid of passion.  *McVeigh*, 153 F.3d at 1221; *Williams v. Chrans*, 945 F.2d 926, 947 (7th Cir. 1991). The Government observes that the Tenth Circuit held that "poignant and emotional" testimony was not so prejudicial as to make the proceeding fundamentally unfair.  *McVeigh*, 153 F.3d at 1221; *see United States v. Chanthadara*, 230 F.3d 1237, 1274 (10th Cir. 2000) (victim's two young children ended in tears).  "*Payne* allows the introduction of victim impact evidence in order to allow the jury to understand the consequences of the crime committed."  *McVeigh*, 153 F.3d at 1221 (citing *Payne*, 501 U.S. at 825-26).  The Government does object to Defendant's request that the Court admonish each witness before testimony.  The Court approves of Judge Brack's resolution of this issue in *Lujan*, and will follow the same procedure:  "If a witness becomes overly emotional, the Court will recess the proceedings in order to allow the witness to regain composure."  *Lujan*, Cr. No. 05-924 RB, p. 9 [Doc. No. 903-4].  The Court denies Defendant's motion that the Court admonish each witness before testimony.

### (C)  Pretrial hearing and ruling on admissibility of exhibits

Defendant moves the Court to order the Government to identify with specificity any documents, audio/video recordings, or physical evidence that it intends to introduce in support of

the victim impact aggravating factor.  The Government proposes that the Court follow the same procedure as for exhibits to be presented in the guilt-phase case-in-chief.

The Court orders the parties to mutually agree upon a time for the Government to disclose its victim impact exhibits to Defendant, suggesting that disclosure should occur by the end of July.  The Court urges counsel for both parties to stipulate to the admissibility of exhibits wherever possible.   In addition, the Court will hold a hearing, if necessary, regarding admissibility of these exhibits after the conclusion of the guilt phase of the trial. However, because it is impractical to set the hearing at this time, the Court places the burden on the Defendant, as movant, to request a such a hearing.  He should do so at or near the conclusion of the guilt phase.

Defendant also asks the Court to exclude certain categories of evidence—including wedding photos, memorial service programs, and video presentations.  The Government states that it does not now plan to present videos or video montages.  The Government asks the Court to rule on the specific evidence which will be identified, rather than ruling on categories of evidence in the abstract.  Since the Court will hold a hearing on the exhibits if there are objections, the Court will not at this time issue a ruling on admissibility of categories of evidence.  The Court denies Defendant's motion to the extent that Defendant requests such a ruling at this time.

## III.  EVIDENCE AND TESTIMONY ON FUTURE DANGEROUSNESS [Docs. 872 & 875]

Defendant makes two related motions.  First, Defendant moves for an order:  excluding acts of misconduct by other prisoners; precluding cross-examination of defense experts via anecdotal incidents; and precluding Government witnesses from offering such testimony in rebuttal.  [Doc. No. 872]  Second, Defendant moves for an order requiring the Government to

11

disclose acts of violence and escapes—from 2006 to 2013—with reference to the Bureau of Prisons (BOP) and the Arizona Department of Corrections (ADOC).  [Doc. No. 875]

### (A)  Limitation on testimony, cross-examination, and rebuttal testimony regarding prisoner misconduct

To counter the future dangerousness aggravating factor, Defendant states that he will "most likely" present an expert in "violence risk assessment in prison" to testify, if the facts warrant it, to an opinion that Defendant "is likely to make a positive adjustment to the Bureau of Prisons."  [Doc. No. 872, pp. 4-5]  Defendant anticipates that the Government may cross-examine his expert via anecdotal acts of violence by other prisoners; Defendant asserts that other cases have included cross-examination of such incidents with inaccurate information.  Defendant argues that such evidence is irrelevant and more prejudicial than probative under 18 U.S.C. § 3593(c).  Defendant requests that the Court prohibit the use of such acts in cross-examining "defense risk assessment experts" or in rebuttal; alternatively, Defendant asks the Court to limit such incidents to those occurring within the past five years.  [Doc. No. 872, pp. 9-10]  In addition, if the Court determines that such evidence is permissible, Defendant asks the Court to order the Government to disclose such evidence and any supporting documents at least thirty days prior to the witness's testimony so that defense counsel can investigate the accuracy and relevance of the incident.  [Doc. No. 872, p. 10]

The Government responds that it is entitled to present cross-examination and rebuttal evidence, if Defendant presents a "conditions-of-confinement" defense with "testimony from social science experts opining on purported low rates of violence by similarly situated prisoners and former prison executives opining on prison security features and the ability of the prison staff to prevent violent behavior."  [Doc. No. 905, p. 2]  The Government observes that Judge Brack in *Lujan* denied a defense motion almost identical to the one in this case.

The Court approves and will follow the reasoning and approach taken by Judge Brack in *Lujan*.  Information is admissible in a capital sentencing proceeding "'if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without'" that information.  *Lujan*, Cr. No. 05-924 RB, pp. 2-3 [Doc. No. 905-3] (quoting *United States v. Lujan*, 603 F.3d 850, 854 (10th Cir. 2010)).  Both "'the government and the defendant shall be permitted to rebut any information received at the hearing, and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropriateness in the case of imposing a sentence of death.'"  *Lujan*, Cr. No. 05-924 RB, p. 3 [Doc. No. 905-3] (quoting 18 U.S.C. § 3593(c)).  Judge Brack rejected the defendant's similar attempt to limit cross-examination and rebuttal evidence:

> Defendant desires to use the presentation of evidence as a single-edged sword; that is, he wants to have his expert testify about his experience in the BOP prisons in which various security measures have been successfully used with *other* inmates, but he does not want the government to be able to challenge the experts' experiences with other similar situations in which the security measures have not been so successful.  The Court will not limit cross-examination in the manner Defendant requests.

*Lujan*, Cr. No. 05-924 RB, p. 3 [Doc. No. 905-3].  Judge Brack also rejected the defendant's attempt to limit anecdotal incidents of prisoner violence or escape to the preceding five years, noting that the defendant offered no reasoned basis for this limitation—"other than it would arbitrarily exclude most of the anecdotal incidents."  *Id.*

The Court thus denies Defendant's motion requesting the Court to prohibit cross-examination and rebuttal evidence showing specific acts of violence or escape by other prisoners.  The Court also denies the motion requesting that such evidence be limited to the preceding five years.

Defendant alternatively requests the Court to order the Government to disclose specific prior incidents of escape or violence.  [Doc. No. 872, pp. 15-16]   Faced with a similar request in *Lujan*, Judge Brack ruled that the request was premature.  *Lujan*, Cr. No. 05-924 RB, pp. 3-4 [Doc. No. 905-3].   Similarly, in this case, the Court concludes that Defendant McCluskey's request is premature; the Government cannot be expected to formulate its response to defense expert testimony until it has been informed by Defendant of the defense experts and of the substance of their testimony.  *See id.*  The Government states that it intends to file a discovery request on this issue.  [Doc. No. 905, p. 10]   As in Section (B) below, the Court orders the Government to file its motion for discovery of defense expert witnesses on future dangerousness by June 25, 2013, with the Defendant's response to be filed no later than July 3, 2013.  The Government's reply, if any, is due no later than July 9, 2013.  After receiving those disclosures, the Government is ordered to disclose the requested information about any anecdotal incidents on which it intends to rely; the Government's disclosure must be made at least three days before the testimony of the defense witness is expected to be given.[1]

**(B)  Disclosure request**

Defendant moves for an order requiring the Government to disclose exculpatory evidence relating to the non-statutory aggravating factor of future dangerousness, specifically:  (1) "A list of all documented acts of violence, including but not limited to those committed against BOP employees and against other inmates, by any inmate in the BOP from 2006 to the present;" and

---

[1] In a footnote in his Reply, Defendant requests additional disclosure:  evidence on housing and sentencing arrangements for cooperating witnesses from ADOC, and any other case in which the Government arranged to house in BOP a prisoner on loan from a state prison.  [Doc. No. 946, p. 7 n.1]  These requests appear to be a response to the Government's argument that evidence on BOP conditions of confinement is moot; as discussed in Section (C) below, the Court rejects the Government's mootness argument.  Even if Defendant's motion for disclosure, contained in a footnote in a Reply, were proper, the Court would therefore deny it as contingent on an argument rejected by the Court.

(2)  "A list of all escapes by inmates from BOP facilities from 2006 to the present, including the locations where any escapes occurred."  [Doc. No. 875, p. 2]  Defendant relies on Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963).

The Government argues that Defendant's request is premature, because the Government cannot be expected to provide discovery of potential cross-examination or rebuttal evidence until Defendant has disclosed the identity of defense witnesses and the substance of their anticipated testimony.  [Doc. No. 906, pp. 7-9]  The Court agrees.  The Government states that it plans to make a pretrial discovery request, and then intends to ultimately provide discovery of some material, as in *Lujan* (including charts showing number and types of serious violent acts, and the number of violent acts committed by inmates serving life imprisonment).  [Doc. No. 906, p. 8]  As stated in Section (A) above, the Court orders that the Government make its motion for discovery of defense witnesses by June 25, 2013, with the response and reply due in accordance with the schedule set forth on the previous page.

To counter the factor of future dangerousness, Defendant states that he "will most likely rely on an expert in predicting violence risk assessment in prison, who, if the facts warrant it, testifies in support of an opinion that Mr. McCluskey is likely to make a positive adjustment to the Bureau of Prisons."  [Doc. No. 875, p. 5]  Defendant attaches to his motion an article comparing disciplinary records of federal capital inmates to records of all other BOP inmates between 1991 and 2005.  Mark D. Cunningham et al., *Assertions of "Future Dangerousness" at Federal Capital Sentencing:  Rates and Correlates of Subsequent Prison Misconduct and Violence*, 32 Law & Human Behavior 46 (2008) [Doc. No. 875-1].  Defendant "seeks to expand that database to include relevant BOP misconduct and escape [data] from 2006 to the present." [Doc. No. 875, p. 6]  Defendant asserts that the requested information will demonstrate that he

can be safely housed, managed, and controlled by BOP if sentenced to life imprisonment. Defendant asserts that this information "will play an important role in uncovering admissible evidence, will aid Defendant's expert witnesses to prepare, will corroborate Defendant's expert witnesses' testimony, and will impeach and rebut the government's anticipated witnesses' testimony on its case in chief at the capital sentencing retrial [sic]."  [Doc. No. 875, p. 7] Defendant asserts that the requested information is "material" to punishment under *Brady*. Defendant acknowledges that the Fourth Circuit denied a similar request.  *United States v. Caro*, 597 F.3d 608 (4th Cir. 2010), *aff'g* 461 F. Supp. 2d 478 (W.D. Va. 2006).

Under *Brady*, disclosure is required if the evidence is "material."  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).  "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  *Id.*  In *Caro*, the defendant sought similar information, again based on the opinions of Mark Cunningham.  *Caro*, 461 F. Supp. 2d 478, 481. The district court denied the *Brady* request because the defendant had not shown that it would be favorable:  "While the defense obviously hopes that the information requested here will support its expert's opinion, there is no indication before me that it will do so, and thus the information cannot be said to be material."  *Id.*  The Fourth Circuit affirmed, on the ground that the defendant was speculating about what the information might reveal; the mere possibility that an item might have helped the defense does not establish materiality under *Brady*.  *Caro*, 597 F.3d at 619. Judge Brack denied a similar motion, on the same reasoning.  *Lujan*, Cr. No. 05-924 RB, pp. 3-4 [Doc. No. 906-1].

Defendant also argues that the requested information is "material to preparing the defense" under Rule 16(a).  Defendant states that he is assuming that Rule 16 applies to the penalty phase, but acknowledges there is contrary authority.  [Doc. No. 875, p. 11 & n.2 (citing *United States v. Beckford*, 962 F. Supp. 748, 754 (E.D. Va. 1997))]  The Government observes that it is not clear that Rule 16 applies to the penalty phase.  Even if it does apply, the Government states that it does not intend to use in its penalty phase case-in-chief any of the information requested by Defendant.  [Doc. No. 906, p. 2]  Thus the only possible ground under Rule 16 is that the information is "material to preparing a defense."  Rule 16(a)(1)(E)(i).

Even if Rule 16 were applicable, the Court would deny Defendant's request under Rule 16.  As the district court observed in *Caro*, even if Rule 16 applies in the penalty phase, the requested information must be shown to be "material to preparing the defense"; materiality requires at least some indication that the information "'would have enabled the defendant significantly to alter the quantum of proof in his favor.'" *Caro*, 461 F. Supp. 2d at 481 (quoting *United States v. Ross*, 511 F.2d 757, 762-63 (5th Cir. 1975)).  The Fourth Circuit affirmed on this ground as well, observing that the requested information was "relevant to future dangerousness and might have allowed Cunningham to formulate scientifically more reliable opinions" about the defendant—but the defendant had "presented no facts whatsoever indicating that the information would have actually helped prove his defense." *Caro*, 597 F.3d at 621.  "No one can say, for example, whether Cunningham's more reliable opinions would have actually favored Caro or whether Cunningham would have found any government allegations unsupported." *Id.*; *see also Lujan*, Cr. No. 05-924 RB, p. 5 [Doc. No. 906-1].

Defendant makes an unsuccessful attempt to distinguish *Caro*, arguing that the article by Cunningham demonstrates that "there is no doubt that the requested information is both

17

favorable within the meaning of *Brady*, and material within the meaning of Rule 16." [Doc. No. 875, p. 12; Doc. No. 947, pp. 4-5]  As the Government observes, reference to the Cunningham article does nothing to show that updating Cunningham's research would be favorable to the defense; Defendant's speculation is insufficient.  [Doc. No. 906, pp. 5-6]  Defendant provides no demonstration that updated information would support—rather than refute—Cunningham's opinions.

The parties dispute whether the requested materials regarding BOP or ADOC are in the possession and control of the Government.  [Doc. No. 875, p. 10; Doc. No. 906, pp. 3-4; Doc. No. 947, pp. 2-3]  The Court need not resolve this dispute, because Defendant's request fails for lack of the requisite demonstration of materiality and helpfulness.

The Court concludes that Defendant fails to demonstrate that the requested information would be material under *Brady*.  And assuming arguendo that Rule 16 applies to the penalty phase, Defendant's argument also fails to show that updated information would be helpful to the defense.  The Court denies Defendant's motion for information regarding violent incidents and escapes, both regarding BOP and ADOC.

### (C)  Mootness of both of Defendant's motions

The Government argues that Defendant's requests are moot with regard to the BOP, because "if Defendant is not sentenced to death, Defendant is <u>not at all likely</u> to ever be incarcerated in a BOP facility."  [Doc. No. 906, p. 3 (emphasis added)]  The Government also cross-moves for an order precluding Defendant from introducing evidence or arguments regarding BOP's ability to safely house Defendant, and restricting Defendant's "conditions-of-confinement" defense to information about ADOC.  [Doc. No. 905, p. 2]  The Government asserts that Defendant is "on loan" to the federal government, that the State of Arizona has

primary jurisdiction over him, and that he has a remaining sentence in Arizona of fifty-four to fifty-six years.  [Doc. No. 905, pp. 3-4]  Even if Defendant is convicted and sentenced to death in this federal case, he "arguably must be returned to the State of Arizona until his state sentence is completed."  [Doc. No. 905, p. 5]  The Government asserts, however, that if Defendant is convicted and sentenced to death, it "intends to request that the State of Arizona relinquish permanent custody of Defendant to the federal government for execution of his federal death sentence."  But if Defendant is convicted and sentenced to life imprisonment, "the federal government does not contemplate making any such request to the State of Arizona"; the Government would then expect that Defendant would be required to complete his Arizona sentence before any federal imprisonment, and, given the length of the Arizona sentence and Defendant's age, it is unlikely Defendant would be returned to BOP afterward.  [Doc. No. 905, p. 5]  The Government contends that arguments about BOP's ability to safely house Defendant would be irrelevant and misleading.

Defendant replies that the Government's argument on mootness relies on "hypothetical future developments" and "speculation about what some official 'might' do in the future."  [Doc. No. 946, pp. 2-4]  Defendant points out that the Government itself has acknowledged that it has the power to request Arizona to relinquish custody of Defendant; whether the Government would exercise that power only if Defendant is convicted and receives the death penalty is uncertain and speculative. Defendant asserts that the Government has arranged, under similar circumstances, for a defendant to serve his life sentence in the BOP instead of in state custody. [Doc. No. 946, p. 6]

The Court agrees with Defendant on this point.  The Court cannot rely on the Government's suggestion that it "does not contemplate" requesting that Arizona relinquish

custody if Defendant is convicted and receives a life sentence.  The Government concedes that it has the power to request that Arizona relinquish custody, and provides no evidence that this power could not be exercised if Defendant receives a life sentence.  The Court therefore rejects the Government's contention that argument and evidence on confinement in BOP is moot.  The Court denies the Government's cross-motion for an order precluding Defendant from introducing evidence or arguments regarding BOP's ability to safely house Defendant.

**IT IS THEREFORE ORDERED** that:

(1)   *Defendant McCluskey's Motion in Limine To Require the Government To Identify:  (1) Witnesses Whose Testimony It Will Provide by Transcript; (2) Witnesses It Will Present by Live Testimony; (3) Witnesses It will Present Through a Summary Witness; and (4) Witnesses It will Present Through Hearsay or in any Other Fashion* [Doc. No. 865] is **DENIED IN PART** and **GRANTED IN PART** as explained above;

(2)   *Defendant McCluskey's Motion in Limine Regarding Victim Impact Evidence* [Doc. No. 867] is **DENIED IN PART** and **GRANTED IN PART** as explained above;

(3)   *Defendant McCluskey's Motion in Limine To Exclude Irrelevant and Prejudicial Acts of Custodial Misconduct by Others, and To Preclude Improper Cross-Examination of Defense Experts and Improper Rebuttal Testimony from Government Witnesses on the Future Dangerousness Non-Statutory Aggravator, or, in the Alternative, for Discovery* [Doc. No. 872] is **DENIED** as explained above;

(4)   *Defendant McCluskey's Motion in Limine for Exculpatory Evidence Relating to the Government's Non-Statutory Aggravating Factor of Future Dangerousness in Prison* [Doc. No. 875] is **DENIED** as explained above; and

(5)  *Government's Cross-Motion for an Order Precluding Defendant from Introducing Evidence or Arguments Regarding BOP's Ability to Safely House Defendant* [Doc. No. 905] is **DENIED** as explained above.

_____

**UNITED STATES DISTRICT JUDGE**