IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                         CR. No.  10-2734 JCH

JOHN CHARLES McCLUSKEY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendant McCluskey's Motion in Limine for a Taint Hearing, for Suppression or Exclusion of Evidence, and for Discovery* [Doc. 861]. After reviewing the motion, response, and reply, the Court concludes that Defendant's request for a hearing should be granted so that the Government will have the opportunity to prove its assertion that it inevitably would have discovered evidence linking McCluskey to the April, 2010 attack on a fellow Arizona inmate, even if McCluskey had not mentioned the incident in his suppressed August 20, 2010 statement to Agent Rominger. For the time being, the Court takes under advisement McCluskey's argument that the evidence should be suppressed as fruit of the poisonous tree. On June 27, 2013, the Court will hold a hearing on the motion as further explained herein.

## BACKGROUND

On August 20, 2010, FBI Special Agent Rominger interrogated Defendant McCluskey regarding his alleged participation in the murders of Gary and Linda Haas. The Court discussed the facts and circumstances of that interrogation and McCluskey's resulting statements in great detail in its Amended Memorandum Opinion and Order entered August 27, 2012, in which it suppressed McCluskey's statement as a result of a violation of his Fifth Amendment right to counsel. Doc. 646.

However, the Court also concluded that McCluskey's statements were voluntary. *Id.* at 20-24. During the course of his statement to Rominger, McCluskey spontaneously offered his declaration that he had "carved up" a fellow inmate in Kingman, Arizona by slashing his throat.

In May of 2012, the Government contacted the Arizona Department of Corrections ("ADOC") about the alleged assault. As a result, the ADOC conducted an investigation, in which it concluded that the inmate McCluskey was referring to was Stephenson Williams, whose throat had been slit on April 21, 2010, approximately four months prior to McCluskey's statement to Rominger. The investigation revealed that Williams initially claimed that he had slit his own throat, and there was a lack of evidence that McCluskey had been the perpetrator. However, Williams later recanted his suicide story and stated that he had been assaulted.

On August 27, 2012, FBI Special Agent McCaskill interviewed Daniel Renwick, who had been incarcerated in Kingman, Arizona with McCluskey. A tape of a portion of the interview records an exchange between Renwick and McCaskill in which Renwick says, "I really don't want to talk any more," but then agrees to continue the interview after McCaskill offers to turn off the recording device.[1] According to McCaskill's written report, Renwick "provided some details about an inmate in the Kingman facility who had his throat cut by McCluskey."

On December 19, 2012, the Government informed counsel for McCluskey that it intended to use evidence of the assault on Williams not in its case-in-chief, but rather to rebut claims that

---

[1] In his motion, McCluskey seems to suggest that McCaskill violated Renwick's constitutional rights during this interview. Doc. 861 at 4-5. The Government contends that this argument is frivolous because under *Howes v. Fields*, — U.S. —, 132 S. Ct. 1181, 1191-93 (2012) and *Maryland v. Shatzer*, 559 U.S. 98, 112-14, 130 S. Ct. 1213, 1224-25 (2010), a prisoner already in prison is not "in custody" for *Miranda* purposes). McCluskey does not reply to this argument. However, even if the issue was necessary to a determination of the issue presented in the motion (which it may not be), the briefs contain too little information for the Court to make a reasoned decision.

McCluskey was a model inmate or that he is not a violent or vengeful person.[2]

On March 25, 2013, the Government disclosed to McCluskey approximately 100 recorded telephone calls that McCluskey made while incarcerated in ADOC. The Government had recently obtained the recordings from ADOC, and it directed McCluskey's attorneys to eight specific telephone calls from McCluskey to either his co-defendant, Casslyn Welch, or to his mother, that are relevant to the assault on Williams.

## DISCUSSION

McCluskey argues that in the event that in any phase of the trial the Government offers testimony by Renwick or others concerning the assault on Williams, it should not be admitted for any purpose. The Government, in turn, suggests that it could offer "testimony from corrections personnel and lay witnesses (including those with first-hand knowledge of Defendant's involvement), recorded telephone calls . . . , and documentary evidence..." Doc. 904 at 4.

I.   **Fruit of the Poisonous Tree**

The ordinary remedy in a criminal case for violation of the Fourth Amendment is suppression of any evidence obtained during the illegal police conduct. *See Mapp v. Ohio*, 367 U.S. 643, 648 (1961). In addition, a defendant may also suppress any other evidence deemed to be "fruit

---

[2] In his Reply brief, Doc. 935 at 2, McCluskey argues that despite this statement the Government in fact does intend to use the evidence of the assault on Williams in its case-in-chief, as demonstrated by the fact that it included the incident in its supplemental Rule 404(b) notice. The Court is puzzled by this argument, as "other bad acts" evidence need not necessarily be introduced in the case-in-chief. In any event, the Court will hold the Government to its representation to McCluskey and to the Court that it will use the evidence only in rebuttal. McCluskey further argues that the Government should be forced to use the evidence in its case-in-chief, instead of reserving it for rebuttal, because it is "particularly explosive." *See id.* The Court disagrees with McCluskey's characterization of the evidence. In any event, the authorities he cites are not persuasive. *See United States v. Mitan*, 966 F.2d 1165, 1176 (7th Cir. 1992) (addressing surrebuttal evidence); *People v. Thompson*, 27 Cal. 3d 303, 330 (1980) (California state court case not binding on this Court).

of the poisonous tree," ( *i.e.,* evidence discovered as a direct result of the unlawful activity), by showing the requisite factual nexus between the illegality and the challenged evidence. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963); *United States v. Nava–Ramirez*, 210 F.3d 1128, 1131 (10th Cir.2000).

Here, McCluskey contends that Renwick's anticipated testimony regarding the battery on Williams (and presumably the testimony of any other witness) is inadmissible because it "was secured as a result of the government's exploitation of Mr. McCluskey's unconstitutional interrogation. Had that unlawful interrogation not been conducted, the FBI would never have learned about the Williams incident and Renwick would never have been questioned about that incident." Doc. 861 at 8. McCluskey therefore asks for a "pretrial taint hearing," citing various cases decided under the Fourth Amendment, including *Alderman v. United States*, 394 U.S. 165 (1969) and *United States v. Villano*, 529 F.2d 1046 (10th Cir. 1976), at which it would be the Government's burden to show that Renwick's anticipated testimony is untainted by the illegality of McCluskey's suppressed statement. If it fails to meet that burden, McCluskey asks that the evidence be suppressed as "fruit of the poisonous tree" under *Wong Sun*.

However, it is not clearly established whether or not the "fruit of the poisonous tree" doctrine applies to evidence obtained as a result of Fifth Amendment violations.[3] The exclusionary rule, originally applicable to Fourth Amendment violations, has been extended to apply to certain violations of the Fifth Amendment, although the exclusionary rule as applied under the Fifth

---

[3] Under *Miranda v. Arizona* 384 U.S. 436 (1966), law enforcement officers must advise a suspect who is subjected to custodial interrogation that he has the right to remain silent, that statements can be used against him, that he has the right to counsel, and that he has the right to have counsel appointed. 384 U.S. at 467–73. Although a suspect may waive those rights, all questioning must stop if the suspect requests an attorney at any time during the custodial interrogation. *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981).

4

Amendment "serves interests and policies that are distinct" from the Fourth Amendment. *Oregon v. Elstad*, 470 U.S. 298, 304-07 (1985); *United States v. Villalba-Alvarado*, 345 F.3d 1007, 1010 (8th Cir. 2003); *see also Burgess v. Dretke*, 350 F.3d 461, 469 (5th Cir. 2003) (stating that "'fruits' analysis does not apply as fully in the Fifth Amendment context as it does to Fourth Amendment violations"). Circuits differ as to whether the fruit of the poisonous tree doctrine, or derivative evidence rule, first articulated in *Wong Sun*, 371 U.S. 471 (1963) in the context of the Fourth Amendment applies to an *Edwards* violation in the context of the Fifth Amendment. *See Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981) (holding that an accused, having expressed his desire to consult with an attorney, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication with the police). The Fifth and Eighth Circuits have concluded that *Wong Sun* does not apply to *Edwards* violations. *See Burgess*, 350 F.3d at 468 and 469, n. 20 and *United States v. Cannon*, 981 F.2d 785, 789 (5th Cir. 1993) (both concluding that "fruit of the poisonous tree" doctrine was inapplicable to *Edwards* violations) *and Krimmel v. Hopkins*, 44 F.3d 704, 709 (8th Cir. 1995). On the other hand, the First Circuit has concluded the opposite. *United States v. Downing*, 665 F.2d 404, 409 (1st Cir. 1981) (concluding that "any evidence obtained as a result of violating [defendant's] Fifth Amendment right to have counsel present during interrogation cannot be introduced against him at trial"). The Fifth Circuit's rationale in support of its position on this issue is that the derivative evidence doctrine "applies only when [an] actual constitutional violation occurs, and not [a] violation of [the] prophylactic rule[s]." *Cannon*, 981 F.2d at 789 (citing *United States v. Tedford*, 875 F.2d 446, 451 (5th Cir. 1989)). In contrast, the First Circuit's position is that, in order to deter "impermissible police conduct," the "evidentiary fruits" of an accused statements as well as the statements themselves must be suppressed. *Downing*, 665 F.2d at 409. The parties have not cited,

nor is the Court aware of, any Tenth Circuit decision on point. Thus, the Court turns to the relevant Supreme Court cases for guidance. However, both cases cited by the parties—*Tucker* and *Patane*—involve violations of *Miranda*, and not violations of *Edwards*.

In *Michigan v. Tucker*, 417 U.S. 433 (1974), the Supreme Court held the introduction of the testimony of a witness discovered because of an un-Mirandized statement by the defendant did not violate the Fifth Amendment when the failure to administer *Miranda* warnings took place before *Miranda* was decided. *Id*. at 447. In *Tucker*, the police failed to inform the defendant that if he could not afford a lawyer, one would be appointed for him. After the defendant agreed to waive his Fifth Amendment rights, he told the police that his friend, Anderson, could confirm his alibi. Unfortunately for defendant, Anderson's statement instead tended to inculpate him for the crime. The issue before the Court was whether Anderson's statement to police, made after incomplete *Miranda* warnings, should be suppressed as fruit of the poisonous tree. The Supreme Court pointed out that in the Fourth Amendment context, the exclusionary rule had an important deterrent purpose, and that "[i]n a proper case this rationale would seem applicable to the Fifth Amendment context as well." *Id.* The goal of discouraging police from disregarding constitutional rights was not served where, as in *Tucker*, the police misconduct was not in bad faith. *Id*. ("We consider it significant to our decision in this case that the officers' failure to advise respondent of his right to appointed counsel occurred prior to the decision in *Miranda*. Although we have been urged to resolve the broad question of whether evidence derived from statements taken in violation of the *Miranda* rules must be excluded regardless of when the interrogation took place, we instead place our holding on a narrower ground.") In this case, in contrast, Agent Rominger's violation of McCluskey's well established Fifth Amendment right to counsel cannot be said to have been innocent or in good faith, thereby weighing in favor of deterrence of similar future police

6

misconduct through suppression of the evidentiary fruit of McCluskey's improperly obtained statements.

On the other hand, the *Tucker* court also placed significant weight on the voluntary nature of the statements, explaining that a second purpose of the exclusionary rule is to protect the courts from coerced statements, which are inherently untrustworthy. *Id*. at 448. In *Tucker*, the statements made by both the defendant and Anderson were voluntary, and therefore there was no reason to think they were unreliable. *Id*. at 449. Similarly, in this case the Court has already concluded that McCluskey's statement to Rominger about the throat-slashing was voluntary, and there is nothing in the record to suggest that any witness statement (of either Renwick or another witness) obtained as a result of coercion. Thus, this aspect of the *Tucker* opinion would seem to weigh against suppression of the evidence.

Finally, in concluding that Anderson's testimony should not be suppressed, the *Tucker* court stated:

> [W]e find the arguments in favor of admitting the testimony quite strong. For, when balancing the interests involved, we must weigh the strong interest under any system of justice of making available to the trier of fact all concededly relevant and trustworthy evidence which either party seeks to adduce. . . . These interests may be outweighed by the need to provide an effective sanction to a constitutional right, but they must in any event be valued.

*Id*. at 450.

In *United States v. Patane*, 542 U.S. 630 (2004), the Court held that the failure to give the suspect *Miranda* warnings did not require suppression of the *physical* fruits of the unwarned statement. In *Patane*, the defendant was arrested for violating a temporary restraining order. The police attempted to advise him of his rights under *Miranda*, but he cut them off, stating that he knew his rights. Police then questioned defendant, a previously convicted felon, about his possession of

7

a pistol. The defendant's responses led to the discovery and seizure of the weapon, as well as defendant's conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The issue before the Court was whether the physical evidence in the form of the firearm should be suppressed as the fruit of defendant's unwarned statements to police. Writing for a plurality of the Supreme Court, Justice Thomas concluded that the gun evidence should not be suppressed, stating:

> [T]he *Miranda* rule is a prophylactic employed to protect against violations of the Self–Incrimination Clause. The Self–Incrimination Clause, however, is not implicated by the admission into evidence of the physical fruit of a voluntary statement. Accordingly, there is no justification for extending the *Miranda* rule to this context. And just as the Self–Incrimination Clause primarily focuses on the criminal trial, so too does the *Miranda* rule. The *Miranda* rule is not a code of police conduct, and police do not violate the Constitution (or even the *Miranda* rule, for that matter) by mere failures to warn. For this reason, the exclusionary rule articulated in cases such as *Wong Sun* does not apply.

*Id.* at 636-37. There was no majority opinion in *Patane*, however, and the concurrence that was essential to the result relied in part on "the important probative value of reliable physical evidence" and the doubt that its exclusion could "be justified by a deterrence rationale sensitive to both law enforcement interests and a suspect's rights during an in-custody interrogation." *Patane*, 542 U.S. at 645 (concurring opinion). It is uncertain whether the concurring Justices would strike a different balance when the fruits of the unwarned statement were testimony of witnesses or documentary evidence rather than physical evidence.

However, it may be unnecessary for the Court to decide this constitutional issue. The Government has suggested in its response that, even if the "fruit of the poisonous tree" doctrine applies to *Edwards* violations, the evidence would still be admissible pursuant to the "inevitable discovery rule."

To succeed in suppressing evidence, typically a defendant must show the discovery "would

not have come to light but for the government's unconstitutional conduct." *United States v. Nava–Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000) (emphasis added). If the defendant shows "but for" causation, the Government must then prove the "evidence sought to be suppressed is not 'fruit of the poisonous tree' either by demonstrating the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct." *Id.*; *see also United States v. Torres–Castro*, 470 F.3d 992, 999 (10th Cir. 2006) (" 'But for' causality is a necessary, but not a sufficient, requirement for suppression."). "The inevitable discovery doctrine provides an exception to the exclusionary rule and permits evidence to be admitted if an independent, lawful police investigation inevitably would have discovered it." *United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005) (internal citation and punctuation omitted).

Given the uncertainty surrounding the constitutional question set forth above, on **June 27, 2013**, the Court will conduct a hearing to determine whether the Government can prove that it would have inevitably discovered McCluskey's involvement in the April 21, 2010 battery on Williams. If the Government meets that burden, then the evidence will be admissible and there is no need to decide the constitutional question. If the Government does not meet its burden, then the Court will decide the constitutional question presented in the motion.

## II. Hearsay

McCluskey also argues that Renwick's anticipated testimony is inadmissible hearsay under Rule 802, as Renwick did not personally observe the attack on Williams but rather heard about it from other inmates. He further argues that although the Federal Rules of Evidence do not apply in the penalty phase of a capital trial, *see* 18 U.S.C. § 3593(c), its admission would violate "the Eighth Amendment, the constitutional rights to due process and a fair trial, and 18 U.S.C. § 3593(c)," as

9

well as the Confrontation Clause.

The Government does not respond directly to the hearsay argument. Instead, it obliquely suggests that it will offer only non-hearsay statements from witnesses with personal knowledge, recorded telephone calls made by McCluskey, and documents. *See* Doc. 904 at 4. On the limited information currently in the record, which includes no information about the specific statements at issue, the Court cannot rule on the hearsay issue. Thus, this issue must be decided in the context of the trial, when the Court has necessary information.

As for McCluskey's statement that the admission of the evidence would violate "the Eighth Amendment, the constitutional rights to due process and a fair trial, and 18 U.S.C. § 3593(c)," the Court will not address them here. McCluskey has raised these arguments in shotgun fashion, without any supporting rationale, authority, or explanation. Because McCluskey fails to cite specific, persuasive authority, and the Court need not develop his conclusory arguments for him or address arguments unsupported by authority, the Court declines to address these points. *See Cahill v. American Family Mut. Ins. Co.*, 610 F.3d 1235, 1238-39 (10th Cir. 2010); *Arizona Pub. Serv. Co. v. United States EPA*, 562 F.3d 1116, 1130 (10th Cir. 2009).

### III.   Rule 403 and 18 U.S.C. § 3593(a)

Next, McCluskey argues that "given its hearsay nature and the fact that it contradicts Williams' own account of the incident," Renwick's anticipated testimony should be excluded in the guilt phase under Rule 403 and in the penalty phase under 18 U.S.C. § 3593(a).

Based on the record currently before it, the Court finds that the probative value of the evidence is not substantially outweighed by any prejudicial effect. *See* Fed. R. Evid. 403. This determination is made, however, with the recognition that Rule 403 is rarely an appropriate basis for pretrial exclusion, because the Rule requires a fact-bound determination and, as here, the Court

currently has very little information about the evidence that will be offered.  *See United States v. McVeigh*, 153 F.3d 1166, 1200 n.24 (10th Cir. 1998), *disapproved of on other grounds and limited by Hooks v. Ward*, 184 F.3d 1206, 1227 (10th Cir. 1999).  The Court will address this objection at trial.

**IV.    Discovery**

Finally, McCluskey argues that if Renwick is not the source of the rebuttal evidence the Government intends to offer at trial, then the Government should be required to provide that evidence to him, citing *Alderman v. United States*, 394 U.S. 165 (1969).  While the Government is correct that it is not ordinarily required to disclose its rebuttal evidence to a defendant before trial, *see* Doc. 904 at 8, this case presents a different situation.  McCluskey cannot reasonably be expected to prepare for the taint hearing unless he knows what evidence the Government will use to prove his involvement in the battery on Williams.  On the other hand, the Government represents to the court that it has already disclosed much of this evidence to McCluskey, and it identifies specific recorded phone calls in its response brief.  No later than **June 24, 2013**, the Government must disclose to counsel for McCluskey any additional evidence, not previously disclosed, that it intends to offer to prove McCluskey's involvement in the attack on Williams.

**IT IS THEREFORE ORDERED** that on June 27, 2013, the Court will conduct a hearing on *Defendant McCluskey's Motion in Limine for a Taint Hearing, for Suppression or Exclusion of Evidence, and for Discovery* [Doc. 861], and the motion is **GRANTED IN PART** to that limited extent.  The remainder of the motion remains under advisement until after the hearing.

_____
**UNITED STATES DISTRICT JUDGE**