## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

          **Plaintiff,**

**vs.**                                                 **Cr. No. 10-2734 JCH**

**JOHN CHARLES McCLUSKEY,**

          **Defendant.**

### <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on various motions in limine filed by the parties.  The Court addresses each in turn as discussed below.

**I.  Allocution** [Doc. No. 864]

Citing authority under the Due Process Clause and Federal Rule of Criminal Procedure 32(i)(4)(A)(ii), Defendant asks the Court to allow allocution without cross-examination during the penalty phase.  [Doc. No. 864]  The Government opposes the motion, arguing that there is no constitutional right to unsworn allocution and no right under Rule 32 to allocute to the sentencing jury.  [Doc. No. 911]  The Government previously filed a motion in limine requesting the Court to preclude unsworn allocution.  [Doc. No. 870, pp. 1-5]

The Supreme Court has not held that there is a constitutional right to allocution. *McGautha v. California*, 402 U.S. 183, 219 n.22 (1971); *Hill v. United States*, 368 U.S. 424, 428 (1962).  A number of circuit courts have held that a criminal defendant in a capital case has no constitutional right to allocute before the sentencing jury.  *See United States v. Hall*, 152 F.3d 381, 396 (5th Cir. 1998), *abrogated on other grounds by United States v. Martinez-Salazar*, 528

U.S. 304, 310-11 (2000); *United States v. Barnette*, 211 F.3d 803, 820 (4th Cir. 2000); *United States v. Purkey*, 428 F.3d 738, 761 (8th Cir. 2005).  The Tenth Circuit indicated agreement with these cases and cited *Barnette* with approval.  *Harjo v. Gibson*, 216 F.3d 1087, *3 (10th Cir. 2000) (unpublished) (on habeas review of state capital case).  The Tenth Circuit has also held, in non-capital cases, that "the right of allocution is not a constitutional right."  *United States v. Smith*, 705 F.3d 1268, 1274 (10th Cir. 2013); *see Scrivner v. Tansy*, 68 F.3d 1234, 1240 (10th Cir. 1995).

Defendant argues that the "Due Process Clause requires that a federal capital defendant be allowed to allocute before his sentencing jury."  [Doc. No. 864, p. 6]  The case Defendant cites in support of this proposition, however, is not a capital case and did not involve a sentencing jury:  *Boardman v. Estelle*, 957 F.2d 1523, 1525 (9th Cir. 1992).  And the Tenth Circuit cases cited by the Court, *supra*, are contrary to *Boardman*.  Defendant also cites *Ashe v. North Carolina*, 586 F.2d 334, 336 (4th Cir. 1978).  [Doc. No. 864, p. 8]  *Ashe* held that denial of a defendant's request to allocute to the state sentencing court violated due process.  But—as Defendant recognizes—the Fourth Circuit later distinguished *Ashe* in the context of a capital case, holding that there is no constitutional right to allocute to a sentencing jury.  *Barnette*, 211 F.3d at 820; *Green v. French*, 143 F.3d 865, 877, 882-84 (4th Cir. 1998) (also observing that many courts disagreed with *Ashe*), *abrogated on other grounds by Williams v. Taylor*, 529 U.S. 362 (2000).  Defendant cites *Henderson*, but the *Henderson* court did not reach the question of whether there was a constitutional right to allocute.  [Doc. No. 864, p. 8] *United States v. Henderson*, 485 F. Supp. 2d 831, 846 (S.D. Ohio 2007).  The cases cited by Defendant are therefore not persuasive.  The Court concludes that there is no constitutional right to allocute to the sentencing jury in a capital case.

2

Defendant also contends that he has a right to allocute under Federal Rule of Criminal Procedure 32. [Doc. No. 864, pp. 2-6]  Rule 32(i)(4) provides:

**(4)  Opportunity to Speak.**

  **(A)  By a Party.**  Before imposing sentence, the court must:

  (i)   provide the defendant's attorney an opportunity to speak on the defendant's behalf;

  (ii) address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence; and

  (iii)   provide an attorney for the government an opportunity to speak equivalent to that of the defendant's attorney.

The text of the rule requires the court to allow the defendant to speak before the court imposes sentence; the rule speaks only of "the court," without any reference to allocution to a jury.  The Eighth Circuit concluded that the plain language of Rule 32 does not support the argument that it requires allocution to a sentencing jury.  *Purkey*, 428 F.3d at 761.  In addition, most of Rule 32 is inapplicable under the Federal Death Penalty Act (FDPA); there is no presentence investigation, and there is no presentence report.  *See* 18 U.S.C. § 3593(c).  Rule 32(i)(1) through (3) cannot apply because these subsections concern a presentence report.  Defendant's argument is that only the first half of Rule 32(i)(4)(A)(ii) applies—although not even the second half of this subsection is applicable:  the FDPA has its own provisions, allowing the defendant to present information on "any matter relevant to the sentence" and establishing specific procedure and standards.  18 U.S.C. § 3593(c).  Defendant's argument that only one half of one subsection of Rule 32 applies is unreasonable.

In *Johnson*, the district court concluded that Rule 32 does not provide a right to allocute to the sentencing jury in a capital case, because § 3593(c) "sets forth with great specificity the

type of information that may be submitted to the jury during the penalty phase of a capital trial, and the circumstances under which it may be presented." *United States v. Johnson*, 136 F. Supp. 2d 553, 566-67 (W.D. Va. 2001); *see Hall*, 152 F.3d at 392-93. The *Johnson* court also reasoned that Rule 32 was inconsistent with the district court's gatekeeping role under § 3593(c)—excluding information when its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. *Johnson*, 136 F. Supp. 2d at 567; *see also Barnette*, 211 F.3d at 820 (Rule 32 does not require allocution to sentencing jury). Reviewing federal and state cases, the Kansas Supreme Court concluded that "most of the state and federal courts presented with allocution statute language referring to the court and a separate death penalty sentencing provision that is silent on allocution have concluded that a defendant has no statutory right to allocution in front of the death penalty jury." *State v. Stallings*, 163 P.3d 1232, 1237-38 (Kan. 2007).

The Court is persuaded by the *Johnson* court's analysis and concludes that Rule 32(i)(4)(A)(ii) does not apply in capital cases. By setting forth detailed and specific provisions for capital sentencing hearings in § 3593, Congress intended to supplant the provisions of Rule 32. As the Government argues, the FDPA provides sufficient alternative procedural protections, affording capital defendants a full-length penalty phase in which defendants may present mitigation evidence and argument. [Doc. No. 911, pp. 2-3] *See Green*, 143 F.3d at 881-83.

Defendant argues that Rule 32 has not been supplanted by the FDPA, citing *United States v. Chong*, 104 F. Supp. 2d 1232, 1233 (D. Haw. 1999). The *Chong* court observed that § 3593(c) expressly abrogated only Rule 32's provision for a presentence report; relying on the doctrine of *expressio unius est exclusio alterius*, the *Chong* court determined that Congress did not intend for the FDPA to displace any other provisions of Rule 32. This maxim is relied upon

4

when other principles of interpretation fail; the Court believes that the reasoning of the *Johnson* court provides a more reasonable and sound interpretation of the effect on Rule 32 of Congress's extensive provisions for capital sentencing in the FDPA.  Defendant also relies on *Henderson*'s statement that § 3593(c) allows the defendant to present "'<u>any information</u> relevant to a mitigating factor.'"  *Henderson*, 485 F. Supp. 2d at 846 (quoting § 3593; emphasis added).  The *Henderson* court concludes from this broad statement, considered out of context, that a capital defendant may offer an unsworn allocution statement, without being subject to cross-examination.  *Henderson* fails to properly consider two points.  First, § 3593(c) requires the district court to act as gatekeeper, excluding information if its probative value is outweighed by prejudicial effect.  Defendant provides no illumination on how the Court is to perform its gatekeeping role, if Rule 32 allows a defendant to get up and say anything.  Second, *Henderson* fails to properly consider the very different effect of unsworn and unlimited allocution on a court and a jury.  "When the district court receives a statement in allocution, it recognizes the legal effect of the fact that the statements are not sworn and the attendant potential effect of this fact upon the credibility of the defendant's statements; the same cannot be said for a jury."  *Hall*, 152 F.3d at 393.  Indeed, because of a jury's inability to appropriately weigh and assess unsworn allocution, the *Hall* court believed that allowing such allocution to a sentencing jury "would in no sense increase the accuracy and reliability of the capital-sentencing process."  *Id.*  The Court does not find Defendant's cases persuasive.

Defendant argues that, for his constitutional "right" to allocution to be meaningful, he must be allowed to allocute to the sentencing jury, before that jury decides his sentence.  [Doc. No. 864, pp. 3, 6-10 (citing *Henderson*, 485 F. Supp. 2d at 846 (allowing allocution to court after jury has decided sentence would be "an empty formality"))]  Defendant makes the same

argument with respect to his "right" of allocution under Rule 32.  [Doc. No. 864, pp. 9-10]  But Defendant assumes his conclusion; this argument only concerns the timing of allocution, if Defendant were able to demonstrate that he had a "right" to allocute.

Defendant contends that, unless he is allowed to allocute to the sentencing jury, his right to jury trial is "unconstitutionally burdened."  [Doc. No. 864, p. 10]  Defendant observes that a capital defendant who waives the right to a jury trial would be allowed to allocute (to the sentencing court) under Rule 32 before sentence is determined—while a capital defendant who exercises the right to a jury trial would not be allowed to allocute (to the sentencing jury) before sentence is determined.  The first problem with this argument is that Defendant assumes both that Rule 32 is applicable in a capital case and that he has a "due process right to allocute"; as the Court has determined, Rule 32 is supplanted by the FDPA's sentencing scheme, and allocution is not a constitutional right.  Second, even if Defendant had a right to allocute, the Tenth Circuit has observed that the criminal process "is replete with situations requiring the making of difficult judgments as to which course to follow," and that the Constitution does not "always forbid requiring him to choose" between competing rights.  *Harvey v. Shillinger*, 76 F.3d 1528, 1535 (10th Cir. 1996) (internal quotation marks omitted).  In *Harvey*, the defendant's 1987 sworn allocution statement was used against him in a 1989 trial on different charges.  *Harvey*, 76 F.3d at 1531.  Harvey contended that his right to due process was violated by forcing him to choose between his statutory right to allocution and his constitutional right to remain silent.  *Id.* at 1534-35.  The Tenth Circuit disagreed, observing that under similar circumstances the Supreme Court upheld a state trial procedure "where a defendant could exercise his constitutional right not to be compelled to be a witness against himself on the issue of guilt only at the cost of surrendering any chance to plead his case on the issue of punishment."  *Id.* (citing *Crampton v. Ohio*, 402 U.S.

183, 213 (1971), *vacated on other grounds*, 408 U.S. 941 (1972)).  The *Crampton* Court cited

many examples where it is acceptable to force a defendant to choose between competing rights.

*Crampton*, 402 U.S. at 217.  The  Court rejects Defendant's argument that due process would be

violated if Defendant is not allowed to allocute to the sentencing jury.

Defendant states that some courts have recognized discretion to allow allocution to the

sentencing jury, and asks this Court to do so.  *See, e.g.*, *United States v. Caro*, 597 F.3d 608, 635

n.24 (4th Cir. 2010) (reaffirming holding of *Barnette*, 211 F.3d at 820, that neither Rule 32 nor

Due Process Clause provides right to allocute to sentencing jury, but stating that district court

had discretion to allow allocution; holding no abuse of discretion to deny allocution in *Caro*);

*United States v. Lujan*, Cr. No. 05-924 RB, Docs. No. 730 & 782 (D.N.M. 2011) (holding no due

process right to allocute to sentencing jury and denying unfettered allocution, but allowing

allocution subject to substantive and procedural limitations).   Defendant has suggested no

substantive or procedural limitations on such allocution.  *Cf. United States v. Wilson*, 493 F.

Supp. 2d 509, 511 (E.D.N.Y. Jan. 12, 2007) (imposing five limitations on allocution); *United

States v. Wilson*, 493 F. Supp. 2d 515, 518-20 (E.D.N.Y. Jan. 19, 2007) (further discussing

limitations on allocution).

Concluding that Defendant has no right to unfettered allocution before the jury, the Court

denies Defendant's motion.

## II.   Government's Omnibus Penalty Phase Motions in Limine and Incorporated Memorandum  [Doc. No. 870]

### (A)  Motion To Exclude Unsworn Allocution by the Defendant

The Court has fully addressed this motion in the preceding section.  The Court grants the

Government's motion to preclude unsworn and unfettered allocution before the sentencing jury.

**(B)  Motion To Exclude Execution Impact Evidence**

The Government asks the Court for an order excluding "execution impact" testimony—"evidence relating to the effect that [Defendant's] execution would have on his family, friends, and loved ones."  [Doc. No. 870, p. 5]  The Government argues that "testimony that the defendant's family and friends love him, that a death verdict would have a negative impact on them, their own personal views about the death penalty, their opinion regarding the sentence that should be imposed in this case, or any general plea for sympathy or mercy are irrelevant and are not proper mitigation evidence."  [Doc. No. 870, p. 5]  Defendant responds that he does not intend to ask his witnesses to give their personal views about the death penalty, or about the sentence that should be imposed in this case; Defendant otherwise opposes the Government's motion.  [Doc. No. 918]

The Government cites *Taylor* and *Lujan* in support of its argument.  In *Taylor*, the district court observed that the term "execution impact" testimony was apparently intended to suggest a correlation with victim impact testimony.  *United States v. Taylor*, 583 F. Supp. 2d 923, 944 (E.D. Tenn. 2008).  "But while the FDPA specifically provides for victim impact evidence, 18 U.S.C. § 3593(a), there is no parallel provision allowing for execution impact evidence."  *Id.* Judge Brack observed in *Lujan* that execution impact evidence "is essentially a request for a life sentence, and as such, it is not mitigating evidence."  *Lujan*, Cr. No. 05-924 RB [Doc. No. 870-1, pp. 4, 6] (granting motion to exclude execution impact evidence); *see Taylor*, 583 F. Supp. 2d at 944.  The FDPA, 18 U.S.C. § 3592(a)(8), allows Defendant to present in mitigation:

> **(8)  Other factors.**—Other factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence.

"Because it does not reflect on the defendant's background, character, or the circumstances of the crime, execution impact evidence 'has no mitigating value.'" *Lujan* [Doc. No. 870-1, p. 4 (quoting *Jackson v. Dretke*, 450 F.3d 615, 618 (5th Cir. 2006))]. Victim impact witnesses are not allowed to express an opinion on the appropriate sentence; similarly, the defendant's witnesses should not be allowed to express an opinion. *Taylor*, 583 F. Supp. 2d at 944-45; *United States v. Umana*, 2010 WL 3023498, *15 (W.D.N.C. 2010) (unpublished). The reason to preclude opinion testimony on the appropriate sentence is that the sentencing jury's decision must be "based on reason rather than caprice or emotion." *Taylor*, 583 F. Supp. 2d at 944. "Emotionally charged opinions should not form the basis for a verdict in a capital case regardless of whether the opinions favor death or life." *Id.* In addition, victim impact testimony concerns past events about which witnesses can clearly and accurately testify; in contrast, testimony by a defense witness about the future impact of a possible future execution would require speculation and conjecture. *Id.* at 944.

Arguing that some courts have allowed execution impact evidence, Defendant cites a number of cases. Defendant cites *Williams*, without saying that the statement that execution impact evidence was allowed is contained in a footnote, within the "Procedural Background" section of *Williams*; there is no discussion or holding on this issue. *United States v. Williams*, 610 F.3d 271, 279 n.9 (5th Cir. 2010). [Doc. No. 918, p. 4] The discussion cited by Defendant in *United States v. Rodriguez*, 581 F.3d 775, 800-01 (8th Cir. 2009), concerns whether it is proper for the prosecutor to argue that the jury should ignore a mitigating factor; the case does not discuss the appropriateness of that mitigating factor, or even whether there was any objection to that factor. Defendant also cites to the district court's brief discussion of one of sixty-four habeas claims in *Johnson v. United States*, 860 F. Supp. 2d 663, 906-07 (N.D. Iowa 2012).

9

[Doc. No. 918, pp. 4-5]  The *Johnson* court did express concern about ineffective assistance of defense counsel who did not directly elicit execution impact evidence, but the court did not reach the issue because the claim was untimely.  *Id.*  The *Wilson* court did hold that § 3592(a), allowing "any mitigating factor," was broad enough to allow testimony "that the defendant's friends and family love him, that a verdict of death would have a negative impact on them, and their own personal views about the death penalty."  *United States v. Wilson*, 493 F. Supp. 2d 491, 506-07 (E.D.N.Y. 2007).  The *Wilson* court concluded that the defendant's "background" included how his family would feel if he were executed; this is not a reasonable conclusion. More important, *Wilson* allowed defense witnesses to give their personal views about the death penalty; as discussed in the preceding paragraph, the Court does not believe that this is a tenable conclusion.  The last case cited by Defendant provides some support for Defendant's argument. In *Fell*, the court concluded that § 3592(a)(8) was a "catch-all provision" broad enough to allow how the defendant's execution "would detrimentally affect persons who care about him."  *United States v. Fell*, 2005 WL 1634067, *1-2 (D. Vt. 2005) (unpublished).  The court determined that such testimony could provide indirect evidence of the defendant's background or character.  The *Fell* court did not, however, discuss the factors found persuasive by *Taylor*, *Lujan*, and *Umana*, as discussed above.  The Court does not find Defendant's cases persuasive.

The Court is persuaded by the well-reasoned analysis of *Taylor* and *Lujan*.  Defendant's family and friends may testify about Defendant's life, his background and character, and circumstances surrounding the offense.  18 U.S.C. § 3592(a)(8).  But the focus of their testimony must be on Defendant as an individual—not on the future impact on the witness, if Defendant were to receive the death penalty.

**(C)  Motion To Exclude Evidence and Arguments Relating to Residual Doubt**

The Government requests the Court to rule that it will not allow argument or instruction on "residual doubt" as a mitigating factor.  Defendant opposes, arguing that residual doubt is allowed as mitigating evidence under the Constitution and as a mitigating factor under the FDPA.  [Doc. No. 918, p. 6]

The Supreme Court has strongly suggested—though not held—that a capital defendant does not have the right to present evidence and argument on residual doubt in the penalty phase. *Oregon v. Guzek*, 546 U.S. 517, 523-24 (2006); *Lujan*, Cr. No. 05-924 RB, pp. 9-10; *United States v. Caro*, 483 F. Supp. 2d 513, 519 (W.D. Va. 2007).  A plurality opinion recognized that residual doubt is not a mitigating factor:

> Our edict that, in a capital case, the sentencer . . . [may] not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense, in no way mandates reconsideration by capital juries, in the sentencing phase, of their "residual doubts" over a defendant's guilt.  Such lingering doubts are not over any aspect of petitioner's "character," "record," or a "circumstance of the offense."  This Court's prior decisions, as we understand them, fail to recognize a constitutional right to have such doubts considered as a mitigating factor.

*Franklin v. Lynaugh*, 487 U.S. 164, 174 (1988) (internal quotation marks and citations omitted). "The *Franklin* plurality said it was 'quite doubtful'" that a capital defendant has "the right to introduce at sentencing evidence designed to cast 'residual doubt' on his guilt."  *Guzek*, 546 U.S. at 1231-32 (quoting *Franklin*, 487 U.S. at 173 n.6).  The *Guzek* Court determined that it was unnecessary to resolve whether such a right exists, because, even if it does, it could not extend far enough to allow Guzek to present new evidence to show that he was not present at the scene of the crime.  *Id.*  The *Guzek* Court reasoned that "sentencing traditionally concerns *how*, not *whether*, a defendant committed the crime," and that the parties had already litigated and

11

resolved the issue of whether the defendant committed the basic crime. *Id.* at 526. An additional factor was that Oregon law allowed the defendant to present "*all* the evidence of innocence from the original trial regardless." *Id.* at 526-27. *Guzek*, however, stopped short of holding that a defendant does not have a constitutional right to present evidence and argument concerning residual doubt—even though Justice Scalia stated that the Court should have done so. *Guzek*, 546 U.S. at 528-29 (Scalia, J., concurring). Justice Scalia observed, however: "After *Franklin,* the lower courts have unanimously denied constitutional claims like the one we consider today." *Id.* at 529. The Government cites several cases upholding refusal to give a residual doubt instruction. *United States v. Rodriguez*, 581 F.3d 775, 814-15 (8th Cir. 2009); *United States v. Jackson*, 549 F.3d 963, 981 (5th Cir. 2008); *see also Mason v. Mitchell*, 320 F.3d 604, 639-40 (6th Cir. 2003) (federal habeas review, holding no constitutional error when trial court refused residual doubt instruction). Judge Brack in *Lujan* also decided that there is no constitutional right to argument or instruction on residual doubt. *Lujan*, Cr. No. 05-924 RB, p. 10 [Doc. No. 782, filed 4/15/11] [attached as Doc. No. 870-1 in Defendant's case].

Based on these cases, the Government argues that consideration of residual doubt is not constitutionally required. Defendant argues that the question was not definitively decided by the Supreme Court, but presents no caselaw to the contrary; indeed, a case characterized by Defendant as "the seminal case on this issue" holds that there is no constitutional right to present residual doubt as a mitigating factor. *United States v. Davis*, 132 F. Supp. 2d 455, 458 (E.D. La. 2001). [Doc. No. 918, p. 7]

Citing several cases, Defendant argues that the Tenth Circuit "has recognized the validity of residual doubt as a mitigating factor in reviewing challenges to defense counsel's actions during [a] capital trial." [Doc. No. 918, p. 10 (citing *Bryan v. Mullin*, 335 F.3d 1207, 1241-42

(10th Cir. 2003) (en banc) (Henry, J., concurring in part and dissenting in part); *Sallahdin v. Gibson*, 275 F.3d 1211, 1240 n.10 (10th Cir. 2002); *Smith v. Gibson*, 197 F.3d 454, 462 (10th Cir. 1999))]  *See also Banks v. Workman*, 692 F.3d 1133, 1141 (10th Cir. 2012) (suggesting defense counsel might have made a "reasonable strategic choice" to present "a residual doubt theory").  But these Tenth Circuit cases do not address the issue of whether residual doubt is a mitigating factor under the FDPA, or whether the Constitution requires a trial court to admit residual doubt evidence in mitigation; these cases do not hold that argument or instruction on residual doubt is required.  Instead, these cases consider whether defense counsel rendered ineffective assistance and recognize, in that context, that it may be a reasonable "strategy" for defense counsel to "attempt to stir up any lingering doubt concerning the guilt of the defendant during the sentencing phase."  *Bryan*, 335 F.3d at 1241 (Henry, J., concurring in part and dissenting in part).  In addition, most of these Tenth Circuit cases were decided before *Guzek*. Defendant attempts to extrapolate from the Tenth Circuit's approval of a defense strategy to a constitutional requirement to allow instruction and argument on residual doubt; this attempt runs counter to Supreme Court authority in *Franklin* and *Guzek*.  Although the Tenth Circuit has not decided the precise issue in Defendant's case, Tenth Circuit cases have endorsed the reasoning underlying *Franklin* and *Guzek*.  *See Hopkinson v. Shillinger*, 866 F.2d 1185, 1227 (10th Cir. 1989) ("The sentencing jury's role obviously is not to reevaluate guilt or innocence, or to indulge residual doubts as surrogates for the original jury which decided that issue, or, contrary to contentions by the defense, to guarantee perfection in the proceedings themselves."); *Coleman v. Saffle*, 869 F.2d 1377, 1393 (10th Cir. 1989) (interpreting *Franklin* to reject residual doubt as mitigation).

The Court concludes that Defendant is not entitled to argument or instruction on residual doubt, under the Eighth Amendment or the Due Process Clause. The Court will also conclude that the FDPA does not allow such argument or instruction.

The FDPA provides that the jury "shall consider any mitigating factor," including "[o]ther factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence." § 3592(a). As the *Franklin* Court recognized, residual doubt is not "over any aspect of petitioner's 'character,' 'record,' or a 'circumstance of the offense.'" *Franklin*, 487 U.S. at 174; *see id.* at 188 (O'Connor, J., concurring); *Lujan*, Cr. No. 05-924 RB, pp. 10-11 [Doc. No. 870-1, pp. 10-11]. The Eighth Circuit held that the *Franklin* Court's "reasons for declining to recognize a constitutional rule apply with equal force" to the statutory argument: residual doubt is not a mitigating factor under § 3592(a). *Rodriguez*, 581 F.3d at 814-15; *see Lujan*, Cr. No. 05-924 RB, pp. 10-11. Evidence at sentencing traditionally relates to "*how*, not *whether*, the defendant committed the crime." *Guzek*, 546 U.S. at 524. As one court observed, if Congress disagreed with the *Franklin* Court's determination that residual doubt is not a mitigating factor, Congress could have included "residual doubt" in the list of mitigating factors when the FDPA was enacted. *Caro*, 483 F. Supp. 2d at 519-20. The Court concludes that residual doubt is not allowed as a mitigating factor under the FDPA.

There are several additional arguments that the Court finds persuasive. To allow residual doubt would be to increase the burden of proof in capital cases. As Justice O'Connor observed in *Franklin*, residual doubt is "a lingering uncertainty about facts, a state of mind that exists somewhere between 'beyond a reasonable doubt' and 'absolute certainty.'" *Franklin*, 487 U.S. at 188 (O'Connor, J., concurring). The "'residual doubt' claim is that the States must permit capital

sentencing bodies to demand proof of guilt to 'an absolute certainty' before imposing the death sentence"; to allow this claim would mandate "the imposition of this heightened burden of proof at capital sentencing." *Id.*; *see Rodriguez*, 581 F.3d at 814-15. The *Caro* court used this point to convincingly refute the *Davis* court's opinion—upon which Defendant heavily relies. The *Davis* court had reasoned that residual doubt must be allowed in order to correct an error in the determination of guilt, because conviction beyond a reasonable doubt "does not mean a person is in fact guilty," and capital punishment does not allow for a correction. *Davis*, 132 F. Supp. 2d at 467. The *Caro* court cogently observed that the *Davis* court's approach required a "two-stage guilt determination" with a higher standard applicable in the penalty phase than in the guilt phase. *Caro*, 483 F. Supp. 2d at 518 n.7; *see Rodriguez*, 581 F.3d at 815 (residual doubt "highlights the difficulty of ever proving anything with complete certainty"). As another court reasoned, "We are likewise doubtful that a (by-definition) unreasonable doubt regarding an issue litigated during the guilt phase of the trial can be part of 'a reasoned *moral* response to the defendant's background, character, and crime.'" *United States v. Gabrion*, ___ F.3d ___, 2013 WL 2301946, *11 (6th Cir. May 28, 2013) (on reh'g en banc). In addition, as the *Franklin* Court observed, the concept of residual doubt "is arguably inconsistent with the common practice of allowing penalty-only trials on remand of cases where a death sentence—but not the underlying conviction—is struck down on appeal." *Franklin*, 487 U.S. at 173 n.6.

The Court does not find persuasive the cases cited by Defendant. As discussed in the preceding paragraph, the *Caro* court convincingly refuted the reasoning and analysis of the *Davis* court. *Caro*, 483 F. Supp. 2d at 518 n.7. Additional cases cited by Defendant rely primarily on *Davis*, and are not persuasive for the same reasons that *Davis* is not. *United States v. Honken*, 378 F. Supp. 2d 1040, 1041 (N.D. Iowa 2004); *United States v. Bodkins*, 2005 WL

1118158, *9 (W.D. Va. 2005) (unpublished) (taking the issue under advisement); *United States v. Foster*, 2004 WL 868649, *1 (D. Md. 2004) (unpublished).  [Doc. No. 918, pp. 6-7]

The Court finds persuasive the analysis of the cases determining that residual doubt is not a mitigating factor, and thus argument and instruction are neither constitutionally required nor allowed under § 3592.  Thus the Court will grant the Government's motion to preclude argument or instruction on residual doubt.

### (D)  Motion To Preclude Reference to New Mexico's Abolition of the Death Penalty

The Government requests the Court to preclude any mention of abolition of the death penalty by the State of New Mexico.  Relying primarily on the Sixth Circuit case of *Gabrion*, Defendant opposes; as Defendant recognizes, the Sixth Circuit vacated that opinion.  [Doc. No. 918, pp. 13-15]  After the parties filed their pleadings on this issue, the Sixth Circuit issued its opinion on rehearing en banc in *Gabrion*—affirming the district court's exclusion of any evidence or argument that the State of Michigan did not have the death penalty.  *United States v. Gabrion*, 648 F.3d 307, 320-35 (6th Cir. 2011), *reh'g en banc granted and opinion vacated* (6th Cir. Nov. 17, 2011), ___ F.3d ___, 2013 WL 2301946 (6th Cir. May 28, 2013) (on reh'g en banc).

In *Gabrion*, the defendant was found guilty of first-degree murder under 18 U.S.C. § 1111, prohibiting murder within the territorial jurisdiction of the United States.  2013 WL 2301946 at *4.  The murder was committed within a National Forest, within the State of Michigan.  The defendant argued that he should have been able to argue as a mitigating factor that the State of Michigan lacked the death penalty.  *Id.* at *7.  The defendant asserted that the "simple fact that 227 feet was the difference between a life sentence and a potential death sentence may have been viewed as mitigating by one or more jurors."  *Id.* *8 (internal quotation

16

marks omitted).   First addressing the constitutional issue, the Sixth Circuit observed that "mitigation evidence encompasses both culpability and character, all to the extent relevant to the defendant's 'personal responsibility and moral guilt.'"  *Id.* (quoting *Enmund v. Florida*, 458 U.S. 782, 801 (1982)).  "In summary:  mitigation evidence is evidence relevant to 'a reasoned moral response to the defendant's background, character, and crime.'"  *Id.* (quoting *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989) (emphasis omitted), *overruled on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002)).  The *Gabrion* court concluded that Michigan's lack of a death penalty had nothing to do with the defendant's background or character, his culpability for the offense, or with any other factor the Supreme Court has characterized as mitigating.  *Id.*  The Sixth Circuit concluded that "mitigation under the Eighth Amendment is not a matter of geographic coordinates."  *Id.*  Acknowledging that the Supreme Court has stated that mitigation evidence includes evidence that "'the sentencer could reasonably find . . . warrants a sentence less than death,'" the Sixth Circuit stated that the key word was "reasonably"—which means evidence relevant to "'a reasoned moral response to the defendant's background, character, and crime.'"  *Id.* (quoting *Tennard v. Dretke*, 542 U.S. 274, 284 (2004), and *Penry*, 492 U.S. at 319).  Mitigation evidence "is not an empty concept to be filled by whatever a lawyer or court thinks might persuade a single juror in a particular case."  *Id.*  "Otherwise, for example, the Eighth Amendment would compel admission of evidence regarding the positions of the planets and moons at the time of the defendant's offense—so long as he can show that at least one juror is a firm believer in astrology."  *Id.*  The court concluded that Michigan's lack of a death penalty did not constitute mitigating evidence under the Constitution.

The *Gabrion* court also held that Michigan's lack of a death penalty was not a mitigating factor under the FDPA.  The first seven factors set forth in § 3592(a) measure the defendant's

culpability or whether the defendant's culpability warrants death; the "catchall" factor, § 3592(a)(8), for the same reasons discussed above, does not include the fact that Michigan lacks a death penalty.  *Id.*  Acknowledging that the statute's enumeration of mitigating factors is not exclusive, the *Gabrion* majority reasoned that it was not intended to include "facts having nothing to do with 'a reasoned moral response to the defendant's background, character, and crime.'"  *Id.* (quoting *Penry*, 492 U.S. at 319 (emphasis omitted)).  "Every indication in the statute is to the contrary:  all of the examples of mitigating evidence listed in § 3592(a) concern the defendant's background, culpability, or crime."  *Id.*

Refuting the dissent's point that the location of the murder was a "circumstance of the offense," the *Gabrion* majority stated that those words should not be read out of context.  The FDPA sets forth as a mitigating factor "any other circumstance of the offense <u>that mitigate[s] against imposition of the death sentence</u>."  18 U.S.C. § 3592(a)(8) (emphasis added).  The *Gabrion* Court stated that a mitigating factor must be related to the personal culpability of the defendant; "mitigation evidence does not include evidence of 'the circumstances of the crime [that] is unlikely to have any tendency to mitigate *the defendant's culpability*.'"  *Gabrion*, 2013 WL 2301946 at *9 (quoting *Tennard*, 542 U.S. at 286 (alteration and emphasis in original)).  The Court explained that the location of the murder—like the moonphase that day—was a "circumstance of the offense," but was not a mitigating factor because it "had no tendency to mitigate his culpability."  *Id.*  The Court concluded that Michigan's lack of a death penalty was not a mitigating factor under the FDPA because it was "irrelevant to a reasoned moral response to Gabrion's background, character, and crime."  *Id.* at *10.

The Fourth Circuit also held that the location of a murder did not constitute mitigation evidence.  In *Higgs*, the murders were committed in an area where Maryland had an easement

18

over federal property; the defendant sought to introduce expert testimony that, under Maryland law, he would not have been eligible for the death penalty because he was not the "triggerman." *United States v. Higgs*, 353 F.3d 281, 328 (4th Cir. 2003).  The Fourth Circuit affirmed the district court's refusal to allow the location of the murder as a mitigating factor.  "An assertion that the death penalty is improper in one jurisdiction because it is not allowed in another is, at bottom, a reflection of the debate surrounding the propriety of the death penalty, which is a matter of policy for the legislative branch." *Id.*

In *Taylor*, the district court refused to take judicial notice of the fact that France had abolished the death penalty.  *United States v. Taylor*, 583 F. Supp. 2d 923, 943-44 (E.D. Tenn. 2008).  The murder occurred in the United States; the victim was a French national.  The court held that France's abolition of the death penalty was not a mitigating factor, citing *Franklin*, 487 U.S. at 174.  "France's policy on capital punishment does not make Defendant more or less deserving of a death sentence."  583 F. Supp. 2d at 943.  "Because France's decision to not have a death penalty is a policy matter for that country, unconnected and irrelevant to a murder in this country, the Court will not take judicial notice of the fact and the jury will not be able to consider it." *Id.* at 943-44.

Defendant cites *United States v. Bin Laden*, 156 F. Supp. 2d 359 (S.D.N.Y. 2001) (conviction of capital offense for participation in 1998 bombing of American Embassy in Dar es Salaam).  In *Bin Laden*, the district court held that the defendant could present as a mitigating factor the decision of the Constitutional Court of South Africa that South African immigration officials should not have released the defendant to American authorities without obtaining agreement from the United States that he would not face the death penalty.  *Id.* at 370-71.  The court determined that a broad reading of § 3592(a) was required—in particular, by the inclusion

19

in § 3592(a)(4) as a mitigating factor that "[a]nother defendant or defendants, equally culpable in the crime, will not be punished by death."  *Id.* at 369.  Other defendants charged in connection with the same bombing were extradited from other countries, under terms not allowing them to receive the death penalty.  *Id.* at 370.  The *Bin Laden* court limited its decision to the specific facts of the case:  "The decision to permit Khalfan Mohamed to present the decision of the Constitutional Court as a mitigating factor is largely informed by the particular facts of this case."  *Id.*  The court stated that the mitigation evidence bore "a direct relationship to the personal circumstances of the defendant."  *Id.* at 370-71.  Since § 3592(a)(4) allowed comparison with the punishment of other "equally culpable defendants," and these other defendants were facing similar charges for the same bombing, the court ruled in favor of the defendant's request. *Id.*  The *Bin Laden* case is distinguished by its emphasis on the particular facts of the case, with other defendants on the same charges not eligible for the death penalty.   In contrast, in Defendant's case, any comparison to other possible defendants is attenuated.

Dissenting from the *Gabrion* opinion that was vacated, Chief Judge Batchelder presented a persuasive and extensive discussion of the breadth of mitigating factors under § 3592. *Gabrion*, 648 F.3d at 353-64 (Batchelder, C.J., concurring in part and dissenting in part).  Chief Judge Batchelder set forth a convincing refutation of the very broad view of mitigating factors taken by an often cited case, *Davis*.  The *Davis* court concluded that there was no qualification or limitation on mitigating factors and a defendant is entitled to present "'any mitigating factor . . . period.'"  *Gabrion*, 648 F.3d at 358 (quoting *Davis*, 132 F. Supp. 2d at 464). Chief Judge Batchelder discusses a number of cases holding that there are limits under the FDPA to mitigating evidence.  *Id.* at 357-63.  *See, e.g.*, *United States v. Johnson*, 223 F.3d 665, 675 (7th Cir. 2000) ("A mitigating factor is a factor arguing against sentencing *this* defendant to death; it

is not an argument against the death penalty in general.").  She presents an extensive summary of the *Taylor* court's statutory interpretation analysis.  *Gabrion*, 648 F.3d at 359-60 (discussing *Taylor*, 583 F. Supp. 2d 923, 933 (E.D. Tenn. 2008)).

The initial sentence of § 3592(a) states that the jury shall consider "any mitigating factor," including the eight listed factors.  In interpreting whether the quoted phrase allows virtually any information the defendant wishes to present, the *Taylor* court applied traditional principles of statutory interpretation—considering the language of the statute as a whole, in light of its overall structure and purpose.  *Taylor*, 583 F. Supp. 2d at 934.  First, under the canon of *ejusdem generis*, "any mitigating factor" must be similar in nature to the listed seven specific factors; although the list of seven factors is not exclusive, the description of "[o]ther factors" in § 3592(a)(8) does not allow for factors of an entirely different nature than the culpability, participation, and punishment of other defendants.  *Id.* at 935.  Second, to read "any mitigating factor" broadly would render § 3592(a)(8) superfluous; there would be no need for a "catchall" provision in (a)(8) if "any mitigating factor" were intended as a broader "catchall" provision.  Third, the use of "any" in "any mitigating factors" does not show that Congress intended to greatly expand the definition of mitigating factors over those required by the Constitution; "any mitigating factor" in (a)(8) is virtually the same as the constitutional requirement of "any relevant mitigating factor."  *Id.* (internal quotation marks omitted).  The *Taylor* court concluded that the FDPA sets limitations on mitigating evidence, and does not allow any evidence that any juror might find mitigating.

Chief Judge Batchelder concludes that the greater weight of authority is with cases like *Taylor* and against *Davis*'s broad view that there are essentially no limits to mitigating factors under the FDPA.  *Gabrion*, 648 F.3d at 362.  Such a broad view would arguably allow

presentation of tenuous, tangential, or speculative argument by a capital defendant—for example, that the Pope condemns the death penalty.  *Id.*  With respect to the particular argument at issue in *Gabrion* and Defendant's case, Chief Judge Batchelder makes another convincing argument:  presentation of state law on the death penalty "appears to be an endorsement of jury nullification of federal law."  *Id.*  To allow a defendant to point out that a state would not impose the death penalty on him would be to allow the defendant to disregard federal law in favor of the state's law.  *Id.* at 363.

Approving the reasoning and analysis of *Gabrion*, *Higgs*, and *Taylor*, the Court concludes that abolition of the death penalty by the State of New Mexico is neither mitigating evidence under the Constitution nor a mitigating factor under the FDPA.  Such evidence does not concern the culpability of Defendant and is not relevant to a "reasoned moral response."  In addition, allowing such evidence would endorse jury nullification of federal law.  The Court will grant the Government's motion to preclude any reference to the State of New Mexico's abolition of the death penalty.

### (E)   Motion To Permit Family Members of the Victims To Be Present in the Courtroom During Trial

The Government requests the Court to allow family members and friends, Sheila and Steve Walker, to be present during the guilt phase of the trial, even though they "will likely be called upon to provide victim impact testimony should this case proceed to a penalty phase." [Doc. No. 870, p. 14]  The Government states that Steve and Sheila Walker may be called to testify during the guilt phase, in addition to the penalty phase.

The Government argues that 18 U.S.C. § 3510(b) provides that a "victim" may not be excluded from the courtroom "because such victim may, during the sentencing hearing, testify as

to the effect of the offense on the victim and the victim's family or as to any other factor for which notice is required under section 3593(a)."  Defendant concedes that § 3510(b) prohibits the Court from excluding members of the Haas family from the guilt phase solely because they may testify during the penalty phase.  [Doc. No. 918, p. 16]  The Government requests the Court to allow the following family members (who will not be called to testify in the guilt phase) to be present during the guilt phase:  the Haases' siblings, Gary Haas's mother, and Gary Haas's aunt and uncle.  Defendant provides no argument or authority that these persons are not family members or that they cannot be excluded under § 3510(b).  The Court thus grants the Government's motion to allow the listed family members to be present at trial.

Defendant argues that the Court should caution these family members not to display "visible or audible reactions to the proceedings in the presence of the jury," and suggests that there may be a need to voir dire some witnesses before they testify in the penalty phase.  [Doc. No. 918, p. 16]  The Government opposes such measures, and commits to "fully instruct its witnesses regarding proper courtroom decorum."   [Doc. No. 932, p. 11]  The Court denies Defendant's request for the Court to admonish family members, or require voir dire, without any further justification provided by Defendant.  The Court accepts the Government's pledge to instruct family members in advance.

The Government states that Sheila and Steve Walker are likely to testify during the guilt phase, and concedes that they must be excluded from the courtroom until their guilt phase testimony is completed.  This concession does not go far enough.  The Government has stated that it may present victim impact testimony from Sheila and Steve Walker at the penalty phase. [Docs. No. 670 & 840]  Defendant argues that Sheila and Steve Walker should be entirely excluded from the guilt phase because they are not "victims" under § 3510(b).  The Court agrees

with Defendant on this point.  The definition of "victim" applicable under § 3510(b) is set forth in 42 U.S.C. § 10607(e)(2).[1]  *See* 18 U.S.C. § 3510(c) ("victim" includes all persons defined as victims in § 503(e)(2) of the Victims' Rights and Restitution Act of 1990); *United States v. Visinaiz*, 428 F.3d 1300, 1315 (10th Cir. 2005) (§ 503(e)(2) of Victims' Rights and Restitution Act of 1990 is codified at 42 U.S.C. § 10607(e)(2)).  The definition does not include friends:

> (e)(2)   The term "victim" means a person that has suffered direct physical, emotional, or pecuniary harm as a result of the commission of a crime, including—
>
>     . . . .
>
> (B)  in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, one of the following (in order of preference):
>
>> (i)  a spouse;
>> (ii)  a legal guardian;
>> (iii) a parent;
>> (iv)  a child;
>> (v)  a sibling;
>> (vi)  another family member; or
>> (vii)  another person designated by the court.

The Government has provided no authority that friends of the victims have the right to be present during the guilt phase even though they will testify at the penalty phase.  If the Government intends to present testimony from Sheila and Steve Walker at the penalty phase, they will be excluded from the entire guilt phase.  The Court will deny the Government's motion

---

[1] The Government asserts without explanation that the definition of "victim" in 18 U.S.C. § 3771(e) applies.  [Doc. No. 870, p. 14; Doc. No. 932, p. 12]  Even if 3771(e) were the applicable definition, "friends" are still not defined as "victims."  *See* 18 U.S.C. § 3771(e) ("Definitions. For the purposes of this chapter, the term 'crime victim' means a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia.  In the case of a crime victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardians of the crime victim or the representatives of the crime victim's estate, family members, or any other persons appointed as suitable by the court, may assume the crime victim's rights under this chapter, but in no event shall the defendant be named as such guardian or representative.").

to the extent that it asks the Court to allow Sheila and Steve Walker to be present during the guilt phase even though they are expected to testify at the penalty phase.

### (F)  Motion To Exclude Defendant's Offers To Plead Guilty

The Government asks the Court to exclude from the penalty phase evidence of Defendant's offers to plead guilty in exchange for the Government's agreement not to seek the death penalty.  Defendant argues that his plea offers "are highly relevant to show acceptance of responsibility and to rebut the aggravating factor of remorse."  [Doc. No. 918, p. 18]

The Government argues that plea negotiations are not a relevant mitigating factor, that Defendant's plea offers are "merely an attempt to avoid the death penalty," and that they do not constitute a showing of acceptance of responsibility.  The Government observes that Defendant is currently serving state sentences representing "the actuarial equivalent of a term of life imprisonment," and that Defendant's agreement to accept a life sentence would not even constitute a significant concession on his part.  [Doc. No. 870, p. 15]

As the Government observes, Judge Brack in *Lujan* precluded admission of similar plea offers, on a number of grounds.  First, *Lujan* held that the defendant's offers to plead guilty were not mitigating factors under § 3592(a).  *Lujan*, Cr. No. 05-924 RB, pp. 13-14 [Doc. No. 870-1]. Second, Judge Brack noted that the defendant had not cited any binding authority holding that a capital defendant has a constitutional right to introduce such plea offers in the penalty phase; finding no Tenth Circuit caselaw, *Lujan* observed that the Sixth Circuit has held on review of state habeas cases that exclusion of such plea offers was not an unreasonable application of federal law or contrary to clearly established federal law.  *Id.* p. 14 (citing *Wright v. Bell*, 619 F.3d 586, 598-99 (6th Cir. 2010); *Owens v. Guida*, 549 F.3d 399, 420-21 (6th Cir. 2008)).  Third, *Lujan* excluded the plea offers under § 3593(c), holding that their probative value is outweighed

by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. *Lujan*, p. 14. Judge Brack observed that admission of the plea offers could unfairly prejudice the jury against the United States; jurors "would undoubtedly question why they were spending eight to ten weeks in trial," which "would lead them to question the motives of the United States, hamper their ability to focus, and confuse the issues." *Id.* Fourth, under the circumstances of that case, the plea offers were not relevant to counter any aggravating factor; there was evidence of "callous actions and boastful statements" which a three-year later plea offer would not counter. *Id.* at 14-15. Most important, "the plea offers are simply attempts at settlement; they are not unqualified statements of remorse." *Id.* at 15. "The offers to plead guilty in exchange for a life sentence are evidence that Mr. Lujan wishes to avoid the death penalty." *Id.*

Defendant argues that *Lujan* is factually distinguishable, because in *Lujan* the defendant first offered to plead guilty three years after the offense and ten months after filing of the first notice of intent to seek the death penalty. [Doc. No. 918, p. 19] Defendant contends that the timing of his plea offer "weighs heavily in his favor," because he made his first plea offer early in the litigation. [*Id.*] The Government replies that Defendant knew that he potentially faced the death penalty at the time he made his April 2011 plea offer. [Doc. No. 932, p. 14] At any event, on the critical point Defendant's plea offers are not distinguishable from the plea offer in *Lujan*; they were made conditionally, for the purpose of obtaining a promise that the Government would not seek the death penalty.

The Court is persuaded by the reasoning and analysis of *Lujan*, and also by well-reasoned cases decided in other circuits.

In *Owens*, the Tennessee Supreme Court rejected the defendant's claim that the district court violated her right to present mitigating evidence when it excluded evidence she had been

willing to accept the state's offer of a life sentence in return for a guilty plea. *Owens*, 549 F.3d at 418. On habeas review, the Sixth Circuit again rejected the defendant's claim. The prosecution offered the two defendants a life sentence in return for a guilty plea if both defendants accepted; Owens wanted to accept, but the offer was withdrawn when it was rejected by her co-defendant. *Id.* at 419. The Sixth Circuit determined evidence that Owens would have accepted the plea offer did not constitute acceptance of responsibility for her crime:

> She did not offer to plead guilty unconditionally, which she could have done. Instead, she agreed to plead guilty only if guaranteed a life sentence in return. . . . . Thus, she was less interested in accepting responsibility and more interested in avoiding the electric chair, a motivation that is much less persuasive as a mitigating factor.

*Id.* at 420. The Sixth Circuit also decided that the plea offer did not constitute a mitigating factor; the failed negotiations were not related to the defendant's "record" or to the "circumstances of the offense," because the plea offer "says nothing about how the murder was committed." *Id.* The court held that the "circumstances of the offense" is not a "catch-all category" allowing a defendant to present any evidence; the defense does not have "'*carte blanche* to introduce any and all evidence that it wishes.'" *Id.* at 420, 419 (quoting *United States v. Purkey*, 428 F.3d 738, 756 (8th Cir. 2005)). Review of other cases led the Sixth Circuit to conclude that the state court did not unreasonably apply clearly established federal law; "every court to hear Owens's argument has rejected it." *Id.* at 422. In another habeas case two years later, the Sixth Circuit reaffirmed *Owens*. *Wright v. Bell*, 619 F.3d 586, 598-601 (6th Cir. 2010).

In *Caro*, the Fourth Circuit held that the district court did not err in excluding the defendant's offer to plead guilty in exchange for the government's promise not to seek the death penalty. *United States v. Caro*, 597 F.3d 608, 635 (4th Cir. 2010). The *Caro* court held that the plea offer "was calculated to persuade the government not to seek the death penalty," and

therefore did not express remorse or show acceptance of responsibility.  *Id.* (citing *Owens*, 549 F.3d at 420).

Defendant cites the district court opinion in *United States v. Fell*, 372 F. Supp. 2d 773 (D. Vt. 2005), *aff'd*, 531 F.3d 197 (2d Cir. 2008) (addressing admissibility of the full plea agreement, but not addressing admissibility of the offer to plead guilty per se).  The district court in *Fell* excluded the rejected draft plea agreement, which included prosecutors' statements describing the mitigating evidence; however, the court admitted evidence of Fell's offer to plead guilty in exchange for a life sentence, determining that it was relevant to the mitigating factor of acceptance of responsibility.  *Id.* at 784.  There is no reasoning or analysis in the district court's opinion; the court merely stated its conclusion.

Defendant also cites the district court opinion in *United States v. Rodriguez*, 2007 WL 466752, *44 (D.N.D. 2007), *aff'd*, 581 F.3d 775 (8th Cir. 2009) (not addressing admissibility of plea offer).  The district court opinion in *Rodriguez* merely relates that the district court had allowed evidence of the defendant's plea offer, determining that it was relevant to acceptance of responsibility.  *Id.*  The issue addressed in the opinion is whether the prosecutor violated the court's order excluding evidence of the government's response to the defendant's plea offer.  *Id.* (concluding error was harmless; it was obvious to jurors that plea offer had been rejected because there was a trial).  This opinion gives no analysis or discussion of the decision to admit evidence of the plea offer.

The Government also argues that admission of plea agreements as mitigating evidence would "undermine[] the purpose of Federal Rule of Evidence 410," and "could have a chilling effect on plea negotiations in future capital cases."  [Doc. No. 870, pp. 16-17]  *See Owens*, 549 F.3d at 422; *Wright*, 619 F.3d at 600.  Defendant responds that he is not seeking to introduce any

28

evidence of the Government's response; however, the fact that the Government refused Defendant's offers will be obvious to the jury trying the case.  Admission of the plea offers could unfairly prejudice the jury against the United States.  *See Lujan*, p. 14.  The Court concludes that the probative value of Defendant's plea offers is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.  *See* § 3593(c); *Gonzalez v. Sec'y for Dep't of Corrections*, 366 F.3d 1253, 1285 (11th Cir. 2004) (stating that the "mitigating weight of a defendant's attempt to avoid a death sentence by offering to plead guilty is so slight, if it exists at all, that even undiminished the effect would hardly register").

The Court is persuaded by the reasoning and analysis of *Owens*, *Wright*, *Caro*, and Judge Brack's opinion in *Lujan*.  In contrast, the cases cited by Defendant contain no analysis or reasoning. The Court will exclude evidence of Defendant's plea offers on three alternative grounds:  (1) the conditional plea offers do not demonstrate remorse or acceptance of responsibility, and are not mitigating factors under § 3592(a); (2) the conditional plea offers are not mitigating evidence which McCluskey would have a constitutional right to introduce; and (3) the probative value of the plea offers is outweighed by the danger of unfair prejudice under § 3593(c).  The Court will grant the Government's motion to exclude evidence of the plea offers.

## III. Defendant's Motion in Limine To Prohibit Specified Types of Prosecutorial Misconduct in Penalty-Phase Summation  [Doc. No. 891]

Defendant's motion in limine asks the Court to prohibit twenty-seven types of prosecutorial misconduct.  The Government filed a response arguing that most of Defendant's arguments are premature or moot, and asking the Court to defer ruling on most of Defendant's points unless and until the issue arises and Defendant objects.  [Doc. No. 899]

The Government "commits not to engage in any of the following improper activities: personally vouching for the credibility of its witnesses, arguing evidence outside the record, or misstating the evidence or the law."  [Doc. No. 899, pp. 6-7]  The Government affirms that it will not suggest that the jurors would bear responsibility for further acts of violence by Defendant, or assert that the jurors have a "civic duty" to return a sentence of death.  [Doc. No. 899, p. 7]  The Government pledges not to denigrate defense counsel or the defense.  [Doc No. 899, p. 7]

The Court generally agrees with the Government that Defendant's motion is premature. The Court will not rule in advance on issues that may not arise; the Court may not issue an advisory opinion. *See Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011).  No actual dispute has yet arisen on the points raised by Defendant's motion; if and when any dispute does arise, the Court will rule on an objection depending on the specific circumstances and in the context of the proceeding.

To the extent that the Government does not oppose Defendant's motion, and commits not to engage in certain improper activities, the Court will grant Defendant's motion.  Thus the Court grants Defendant's motion with respect to the following points under Section (B):  (10), (15), (18), (19), (23), and (27).  [Doc. No. 891, pp. i-ii]  With regard to (B)(23), the Court agrees with the Government that this is a reciprocal obligation; the Court orders all counsel not to denigrate opposing counsel.

**IT IS THEREFORE ORDERED** that:

(1)  *Defendant's Motion in Limine To Allow Allocution Without Cross-Examination During Penalty Phase* [Doc. No. 864] is **DENIED**;

(2)  *Government's Omnibus Penalty Phase Motions in Limine* [Doc. No. 870] are:

    (A)  **GRANTED** as to Section I, *Motion To Exclude Unsworn Allocution by Defendant*;

    (B)  **GRANTED** as to Section II, *Motion To Exclude Execution Impact Evidence*;

    (C)  **GRANTED** as to Section III, *Motion To Exclude Evidence and Arguments Relating to Residual Doubt*;

    (D)  **GRANTED** as to Section IV, *Motion To Preclude Reference to New Mexico's Abolition of the Death Penalty*;

    (E)  **DENIED IN PART** and **GRANTED IN PART** as to Section V, *Motion To Permit Family Members of the Victims To Be Present in the Courtroom During Trial*, as explained above;

    (F)  **GRANTED** as to Section VI, *Motion To Exclude Defendant's Offers To Plead Guilty*.

(3)  *Defendant's Motion in Limine To Prohibit Specified Types of Prosecutorial Misconduct in Penalty-Phase Summation* [Doc. No. 891] is **GRANTED IN PART** as explained above, and is **OTHERWISE DENIED WITHOUT PREJUDICE**.


                                      _____
                                       **UNITED STATES DISTRICT JUDGE**