**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**Cr. No. 10-2734 JH**

**vs.**

**JOHN CHARLES McCLUSKEY,**

**Defendant.**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING ADMISSIBILITY OF CO-CONSPIRATOR STATEMENTS**

This matter is before the Court on two motions by Defendant John McCluskey ("McCluskey") to exclude statements of alleged co-conspirators that the Government may offer against him during the trial phase of this case. *See* Docs. 283 and 877. On June 24 and 27, 2013, the Court held a hearing on McCluskey's motions. At the hearing, the Court admitted into evidence 144 Government Exhibits, including, *inter alia*, excerpts of the transcripts of 62 recorded telephone calls from the Kingman prison while McCluskey was incarcerated there, and 70 excerpts from interviews of various witnesses. The Court heard testimony from the Government's case agent, FBI Special Agent Marcus McCaskill. The Court also received into evidence three defense exhibits, including the audio-recording and transcript of an interview of co-defendant Casslyn Welch on June 12, 2013.

Since the hearing, the United States has informed the Court that during the trial phase it will offer under Federal Rule of Evidence 801(d)(2)(E) only four of the calls presented during the hearing, specifically Government Exhibits 50, 54, 60, and 64. Similarly, the United States has stated that it no longer plans to offer the alleged coconspirator statements in Government Exhibits 65 or 136. Consequently, the following findings of fact and conclusions of law are limited to the four

above-enumerated calls and the statements excerpted from the witness interviews set forth in

Government Exhibits 66-114, 116, 118-120, 122-129, 131-135, and 137-138.[1]

## LEGAL STANDARD

Although hearsay statements are generally not admissible at trial, *see* Fed. R. Evid. 802, a

statement that "was made by the party's coconspirator during and in furtherance of the conspiracy"

is not hearsay, and is therefore admissible as substantive evidence against the party, Fed. R. Evid.

801(d)(2)(E).  For a statement to be non-hearsay under Rule 801(d)(2)(E), the district court must

first find the following elements by a preponderance of the evidence:  (1) that a conspiracy existed;

(2) that the declarant and the defendant were both members of the conspiracy; and (3) that the

statements were made in the course of and in furtherance of the conspiracy.  *United States v.*

*Rutland*, 705 F.3d 1238, 1248 (10th Cir. 2013) (citing *United States v. Urena*, 27 F.3d 1487, 1490

(10th Cir. 1994)); *United States v. Sinclair*, 109 F.3d 1527, 1533 (10th Cir. 1997)  (statements made

to conceal criminal conduct after the conspiracy's main objective has either failed or been achieved

are not admissible)  The elements of conspiracy, in turn, are: (1) there was an agreement to violate

the law; (2) the declarant knew the essential objectives of the conspiracy; (3) the declarant

knowingly and voluntarily took part in the conspiracy; and (4) the coconspirators were

interdependent.  *United States v. Ailsworth*, 138 F.3d 843, 850–51 (10th Cir. 1998).

When making a determination under Rule 801(d)(2)(E), "[t]he court may consider both

independent evidence and the statements themselves . . ."  *Rutland*, 705 F.3d at 1248 (citing *United*

*States v. Parra*, 2 F.3d 1058, 1069 (10th Cir. 1993)). To satisfy Rule 801(d)(2)(E), the United States

---

[1] The findings of fact and conclusions of law set forth herein relate only to the admissibility of co-conspirator statements during the trial phase of this case.  In the event that a penalty phase is necessary, the Court will determine the admissibility of any such statements at that time.

need show only that there is "*some* independent evidence linking the defendant to the conspiracy." *United States v. Martinez*, 825 F.2d 1451, 1453 (10th Cir. 1987) (citing *Bourjaliy v. United States*, 483 U.S. 171, 175 (1987)) (emphasis added). "[S]uch independent evidence may be sufficient even it is not 'substantial.'" *See United States v. Owens*, 70 F.3d 1118, 1125 (10th Cir. 1995) (quoting *United States v. Rascon*, 8 F.3d 1537, 1541 (10th Cir. 1993)). Independent evidence is any "evidence other than the proffered [co-conspirator] statements themselves," and may include "an out-of-court statement by a coconspirator to a government agent during an investigation." *Owens*, 70 F.3d at 1125 (quotation and citation omitted).

With regard to the third element under Rule 801(d)(2)(E), "in furtherance" means that the statements "are intended to promote the conspiratorial objectives." *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986) (internal citations omitted); *Rutland*, 705 F.3d at 1252 (internal quotation and citation omitted). Examples of statements that the Tenth Circuit has held to be in furtherance of a conspiracy include "statements explaining events of importance to the conspiracy. . ., statements between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy. . ., statements identifying a fellow coconspirator. . ., [and] discussions of future intent that set transactions to the conspiracy in motion or that maintain the flow of information among conspiracy members." *Id.* (internal quotations and citations omitted).

The trial witness need not be a co-conspirator, so long as the declarant is a co-conspirator with the defendant against whom the statement is being offered. *See United States v. Williamson*, 53 F.3d 1500, 1519 (10th Cir. 1995) (holding that exception applies whenever the out-of-court declarant is a co-conspirator). The parties are in agreement that the conspiracy supporting the introduction of the out-of-court statement need not be the same conspiracy that is charged in the

3

indictment, so long as the statement meets the elements above and was made in furtherance of the uncharged conspiracy. *See Rutland*, 705 F.3d at 1248 n.4 ("[t]he conspiracy supporting the introduction of the out-of-court statement *need not be the same* as the conspiracy charged in the indictment, so long as the statement was in furtherance of the *uncharged* conspiracy.") (emphasis added) (citing *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999)); *accord United States v. Maliszewski*, 161 F.3d 992, 1008 (6th Cir. 1998) ("the coconspirator exception to hearsay only requires that the proponent of the testimony show by a preponderance of the evidence that *some* conspiracy existed, not necessarily the one charged.") (emphasis in original) (*quoting United States v. Bonds,* 12 F.3d 540, 573 (6th Cir. 1993)).

The "strongly preferred order of proof" in determining the admissibility of an alleged coconspirator's statement is to first hold a hearing outside the presence of the jury to determine whether the party offering the statements has established the existence of a conspiracy by a preponderance of the evidence. *United States v. Urena*, 27 F.3d 1487, 1491 (10th Cir. 1994). In addition, Rule 801(d)(2)(E) requires the trial court to make findings on the record regarding the required elements before admitting coconspirator's out-of-court statements. *See generally United States v. Perez*, 989 F.2d 1574, 1581 (10th Cir. 1993) (en banc). " 'The existence of a conspiracy and [defendant's] involvement in it are preliminary questions of fact that ... must be resolved by the [trial] court.' " *Id*. at 1582 (quoting *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)).

## FINDINGS OF FACT

In making these findings, the Court has considered the content of the alleged co-conspirator statements themselves, as well as a substantial amount of independent evidence of the existence of the conspiracies that was introduced by the United States. The Court heard testimony from Agent McCaskill, who testified credibly about the general facts of the escape, Doc. 1095 (June 24, 2013

4

Tr.) at 52-59, 62-64, 71-103), the subsequent flight (*id.* at 103-136), the carjacking and robbery and killing of the Haases (*id.* at 136-147), as well as the destruction of the trailer in which the Haases were left and the abandonment of their pickup in Albuquerque (*id.* at 147-155).[2]  Agent McCaskill also testified credibly about the identity of the participants of the various conspiracies, as well as the context and meaning of the alleged co-conspirator statements themselves.   The Court also considered the state and federal charging documents, guilty pleas, and associated factual bases involving Casslyn Welch, Tracy Province, Diana Joy Glattfelder, and Claudia Washburn (Gov't Exs. 141-149), as well as a timeline of telephone activity on the very early hours of the morning after the escape (Gov't Ex. 150).

As an initial matter, the Court finds that all of McCluskey's own statements in the exhibits introduced by the Government during the *James* hearing do not constitute hearsay at all but rather are admissions by a party-opponent.  *See* Fed. R. Evid. 801(d)(2)(A).  In most cases, whether a particular admission will be admitted into evidence will be determined at trial.  The Court, therefore, restricts its findings and conclusions only to statements by alleged co-conspirators other than McCluskey himself.

Based upon the exhibits admitted during the hearing and the testimony of Special Agent McCaskill, the Court finds the following facts by a preponderance of the evidence:

_____

[2] A substantial portion of Agent McCaskill's testimony at the hearing was devoted to an alleged conspiracy involving McCluskey, Casslyn Welch, and others to import and distribute controlled substances into the Kingman prison.  *See* June 24, 2013 Tr. at 17-71.  Since the hearing, the United States has informed the Court that it does not intend to introduce during the trial phase any coconspirator statements made in furtherance of the drug conspiracy.  Consequently, the Court makes no findings or conclusions under Rule 801(d)(2)(E) with respect to that alleged conspiracy.

Government Exhibit 50-R[3]:  This exhibit contains excerpts from the transcript of a call between McCluskey and Casslyn Welch on July 20, 2010, at 11:25:30 a.m., ten days before the escape.  At pages 4-5, the participants discuss Welch's need to acquire camouflage clothing for her "camping trip."  Pages 6-7 relate to the need to promptly repair Welch's Chevrolet Blazer, which would be used as the putative getaway vehicle.  Pages 3 and 8-9 chronicle Welch's discussion with McCluskey's mother after she returned from visiting McCluskey at the Kingman prison.  The highlighted portions of the conversation excerpted in this exhibit relate directly to, and were in furtherance of, their joint plan to break McCluskey out of prison.  Alternatively, the Court finds that any statement by Welch in the highlighted portions of this exhibit is not offered for its truth but only as context for McCluskey's own statements.

Government Exhibit 54-R:  This exhibit contains excerpts from the transcript of a call between McCluskey and Casslyn Welch on July 22, 2010, at 9:35:59 a.m., eight days before the escape.  In this call, the participants discuss Welch's activities for the week of the escape, including her need to meet with another individual to conduct reconnaissance on the prison, her awareness of certain landmarks outside the prison, her acquisition of an additional firearm, and her experience practicing firing that weapon.  The highlighted portions of the conversation excerpted in this exhibit relate directly to, and were in furtherance of, their plan to escape.  Alternatively, the Court finds that any statement by Welch in the highlighted portions is not offered for its truth but only as context for McCluskey's own statements.

Government Exhibit 60-R:  This exhibit contains excerpts from the transcript of a call

---

[3] Since the *James* hearing, the United States has further narrowed the excerpts from the four calls that it is offering for admission under Rule 801(d)(2)(E).  The United States has submitted the revised exhibits to the Court and to defense counsel as Government Exhibits 50-R, 54-R, 60-R, and 64-R.  The Court therefore uses that naming convention in these findings of fact.

6

between McCluskey and Casslyn Welch on July 26, 2010, at 3:31:22 p.m., four days before the escape.  In this call, Welch related to McCluskey the results of her reconnaissance trip earlier that day of the Kingman prison.  The highlighted portions of the conversation excerpted in this exhibit relate directly to, and were in furtherance of, the conspiracy to escape.  Alternatively, the Court finds that any statement by Welch in the highlighted portions is not offered for its truth but only as context for McCluskey's own statements.

Government Exhibit 64-R:  This exhibit contains excerpts from the transcript of a call between McCluskey and Casslyn Welch on July 30, 2010, at 1:41:28 p.m., less than seven hours before the escape.  In this call, Welch described having taken photographs of the prison, having apprised McCluskey's mother about her status, and having made other final preparations for the escape. She also discussed her the manner in which she planned to drive back to the prison later that day.  The highlighted portions of the conversation excerpted in this exhibit relate directly to, and were in furtherance of, the conspiracy to escape.  Alternatively, the Court finds that any statement by Welch in the highlighted portions is not offered for its truth but only as context for McCluskey's own statements.

Government Exhibit 66:[4]  This exhibit contains an excerpt of an interview of Province in which he describes a statement by a former Kingman prison inmate named Mark that he would assist Welch with a reconnaissance effort of the prison after he was released from prison.  This statement was in furtherance of the conspiracy to escape because such assistance would have enhanced the chances that the escape could succeed.

---

[4] The United States represented that it intends to offer this statement only if the Court reconsiders its decision to exclude evidence of the planning of the escape.  The Court did reconsider its decision and held that the planning of the escape is intrinsic to one or more of the charged crimes. *See* Doc. 1139.

Government Exhibits 67-77:  Each of these exhibits contain excerpts from an interview of Prabhjeet Bains, one of the truckers hijacked and kidnaped on the night of the escape.  In the highlighted excerpts of each of these exhibits, Bains relates statements made by one or more of the hijackers during the course of the kidnaping.  The Court finds that the statements of the hijackers (other than McCluskey himself) in the highlighted excerpts were made in furtherance of the conspiracies to escape and to hijack and kidnap the truckers.[5]  The statements by the hijackers were intended to seize control of the truck, overcome any resistance the truckers may have offered, and maintain control of the situation without significant incident.  Alternatively, the Court will defer ruling until trial on whether any of the hijackers' statements, if made by someone other than McCluskey, constitute present sense impressions under Rule 803(1), excited utterances under Rule 803(2), or statements about the declarants' then-existing state of mind under Rule 803(3).  The Court also will defer ruling until trial on any arguments that the statements were offered for reasons other than the truth of the matters they purport to assert.

Government Exhibit 78:  As highlighted in this excerpt of a January 20, 2011 interview of Casslyn Welch, her statements during the hijacking about the need for the hijackers to go to a truck stop in Flagstaff and meet McCluskey's mother to get more money were made in furtherance of the conspiracy to escape.  Alternatively, the Court will defer ruling until trial on whether these statements concerned Welch's then-existing state of mind under Rule 803(3).  The Court also will defer ruling until trial on any arguments that the statements were offered for reasons other than the

---

[5] The Court notes that escape is a continuing offense.  *See, e.g., United States v. Bailey*, 444 U.S. 394, 413 (1980); *United States v. Al-Rekabi*, 454 F.3d 1113, 1124 (10th Cir. 2006); *United States v. Brown*, 314 F.3d 1216, 1224-25 (10th Cir. 2003).  Consequently, the Court concludes that statements made in furtherance of a conspiracy to commit a continuing offense can be admissible under Rule 801(d)(2)(E).

truth of the matters they purport to assert.

Government Exhibit 79:  As highlighted in this excerpt of a January 20, 2011 interview of Casslyn Welch, her request of a third party to go to the store owned by McCluskey's mother and tell her that the hijackers were trying to get a hold of her were made in furtherance of the conspiracy to escape.  The Court will defer ruling until trial on any arguments that the statements were offered for reasons other than the truth of the matters they purport to assert.

Government Exhibit 80:  As highlighted in this excerpt of a January 20, 2011 interview of Casslyn Welch, her provision of directions to Joy Glattfelder about how to get from Prescott, Arizona, to the Flagstaff truck stop were made in furtherance of the conspiracy to escape.  The Court will defer ruling until trial on any arguments that the statements were offered for reasons other than the truth of the matters they purport to assert.

Government Exhibits 81-84:  As highlighted in these excerpts of an interview of Joy Glattfelder after the prison escape, Glattfelder's rendition of what the hijackers told her on the telephone in convincing her to come get them at the Flagstaff truck stop were made in furtherance of the conspiracy to escape.  Alternatively, the Court will defer ruling until trial on whether any of the hijackers' statements, if made by someone other than McCluskey, constitute present sense impressions under Rule 803(1), excited utterances under Rule 803(2), or statements about the declarants' then-existing state of mind under Rule 803(3).  The Court also will defer ruling until trial on any arguments that the statements were offered for reasons other than the truth of the matters they purport to assert.

Government Exhibits 85-86:  As highlighted in these excerpts of interviews of Tracy Province on August 20, 2010 and February 1, 2011, his statements concerning what he and Welch said to McCluskey in response to McCluskey's inquiry regarding whether they should kill the

truckers were made in furtherance of the conspiracies to escape and to hijack and kidnap the truckers. The Court finds that the statements by Province and Welch dissuaded McCluskey from any thought of killing the truckers, an act that would have had the effect of increasing the number of law enforcement personnel involved in the manhunt and magnified the intensity of their efforts. The statements in support of allowing the truckers to live, therefore, directly furthered the prospect of the escapees' continued flight. Consequently, the Court finds that the statements by Province and Welch were in furtherance of the conspiracy to escape. Alternatively, the Court will defer ruling until trial on whether any of Province's or Welch's statements in this regard constitute present sense impressions under Rule 803(1), excited utterances under Rule 803(2), or statements about the declarants' then-existing state of mind under Rule 803(3). The Court also will defer ruling until trial on any arguments that the statements were offered for reasons other than the truth of the matters they purport to assert.

Government Exhibit 87: As highlighted in this excerpt of an August 2010 interview of Joy Glattfelder, her statements to McCluskey, Welch, and Province that the truckers' cell phones could be tracked were made in furtherance of the conspiracy to escape because the statements were intended to frustrate law enforcement's ability to locate the fugitives. The Court also finds that the statements are not offered for their truth but only to explain why the fugitives got rid of the truckers' cell phones after getting in Glattfelder's vehicle on the night of the escape.

Government Exhibit 88: As highlighted in this excerpt of an August 2010 interview of Joy Glattfelder, her statement to Claudia Washburn that she needed to pick up cigarettes, money, and car keys were made in furtherance of the conspiracy to escape because Glattfelder intended to transfer those items to the fugitives to further their escape. The Court also finds that Glattfelder's statement is not offered for its truth but only to explain how she acquired these items.

10

Government Exhibit 89:  As highlighted in this excerpt of an August 2010 interview, Joy Glattfelder relayed to McCluskey, Welch, and Province information provided by Claudia Washburn to the effect that Washburn had provided all the money that she had and that she did not have more because she already had provided money to Welch.  The Court finds that the statements by Washburn to Glattfelder, which Glattfelder then relayed to the fugitives, were in furtherance of the conspiracy to escape.  The Court will defer ruling until trial on any arguments that the statements were offered for reasons other than the truth of the matters they purport to assert.

Government Exhibit 90:  As highlighted in this excerpt of an August 2010 interview, Joy Glattfelder relayed to McCluskey, Welch, and Province information provided by Claudia Washburn to the effect that "they've already been here."  At the hearing, Agent McCaskill testified that the reasonable inference to be drawn from this statement is that Washburn was advising the fugitives that law enforcement personnel had already visited Washburn's store looking for the fugitives.  June 24, 2013 Tr. at 129.  The Court agrees that if that is the information that Washburn intended to convey, then her statements to that effect and Glattfelder's relaying of those statements to the fugitives were in furtherance of the conspiracy to escape.  Alerting the fugitives to the progress of law enforcement's efforts to capture them would tend to facilitate the continued escape.  The Court will defer a definitive ruling on the admissibility of this statement until trial, however, when the context of the statement and its actual intent are established.

Government Exhibit 91:  As highlighted in this excerpt of an August 2010 interview of Joy Glattfelder, Welch's and Washburn's statements to her about what to do with the other keys on the key ring were made in furtherance of the conspiracy to escape.  Alternatively, the Court finds that the statements are not hearsay because they are not offered to prove their truth, but rather to explain why Glattfelder took the actions that she did with respect to the key ring.

11

Government Exhibit 92:  As highlighted in this excerpt of an August 2010 interview of Joy Glattfelder, her statement and Province's statement that the fugitives needed to "get their heads together" were made in furtherance of the conspiracy to escape because the declarants intended that the fugitives not draw any further attention to themselves which would have had the effect of frustrating the objectives of the escape.  Alternatively, the Court will defer ruling until trial on whether any of Glattfelder's or Province's statements in this regard constitute statements about the declarants' then-existing state of mind under Rule 803(3).

Government Exhibit 93:  As highlighted in this excerpt of an interview of Tracy Province on December 13, 2012, Welch's statement to him about their need to meet up with McCluskey at a Sonic restaurant was made in furtherance of the conspiracy to escape because it was intended to reunite the fugitives so that they could continue on their escape together.  Alternatively, the Court finds that Welch's statement is not hearsay because it is not offered for its truth but rather to explain to Province where they were going and why they were going there.

Government Exhibit 94:  As highlighted in this excerpt of an interview of Tracy Province on February 1, 2011, Welch's statement about seeing a license plate to steal was made in furtherance of the conspiracy to escape because it was intended to provide a mechanism to deter law enforcement's ability to trace the getaway vehicle.  Alternatively, the Court finds that Welch's statement is not hearsay because it is not offered for its truth but rather to explain why the fugitives then stole the license plate and affixed it on the getaway vehicle.

Government Exhibit 95:  As highlighted in this excerpt of an interview of Tracy Province on March 10, 2012, Welch's response to McCluskey's offer to drop her off on the side of the road so that she could turn herself in was made in furtherance of the conspiracy because it had the effect of reassuring the other conspirators of her commitment to the escape.  *See Rutland*, 703 F.3d at 1252

(including among statements in furtherance of a conspiracy those "between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them").  Alternatively, the Court finds that Welch's statement is not hearsay because it was not offered for its truth but rather to explain why she remained in the conspiracy and did not withdraw from it or abandon her coconspirators.

Government Exhibit 96:  As highlighted in this excerpt of an interview of Tracy Province on March 10, 2012, any statements that Province made during conversations with McCluskey about robbing drug dealers or engaging in "collection jobs" were in furtherance of the conspiracy to escape because the statements related to how the coconspirators could access a source of funding to continue their escape. Alternatively, the Court finds that any such statements by Province are not hearsay because they are not offered for their truth but only to provide context for the statements made by McCluskey himself during those conversations.

Government Exhibit 97:  As highlighted in this excerpt of an interview of Tracy Province on August 20, 2010, Welch's statement to Province that the fugitives were heading back to Arizona because McCluskey "knew better places to -- dope dealers and stuff that we could hit and get money and to get supplies" were in furtherance of the conspiracy to escape.  The statement was intended to explain how the coconspirators could access a source of funding to continue their escape. Alternatively, the Court finds that Welch's statement is not hearsay because it is not offered for its truth but only to explain why McCluskey had decided to head back toward Arizona.

Government Exhibits 98-103:  As highlighted in these excerpts of interviews of Casslyn Welch on January 20, 2011, August 24, 2010, and February 16, 2011, as well as of Tracy Province on February 1, 2011, March 10, 2012, and August 20, 2010, Welch's statements about the need for the coconspirators to "get off the grid" and to acquire a camper-trailer were in furtherance of the

13

conspiracy to escape.  These statements were intended to allow the coconspirators to remain hidden from law enforcement and to provide them with a vehicle and sleeping arrangement that would be less conspicuous than the Nissan Sentra in which they were driving.  Alternatively, the Court finds that Welch's statements are not hearsay because they are not offered for their truth but rather to explain why the coconspirators targeted a camper-trailer to acquire.

Government Exhibit 104:  As highlighted in this excerpt of an interview of Tracy Province on August 20, 2010, his statement that McCluskey needed to make a plan before hijacking someone, rather than acting under the "spur of the moment," was in furtherance of the conspiracy to escape. The statement was intended to encourage McCluskey not to draw any further attention to the fugitives, which would have had the effect of frustrating the objectives of the escape.

Government Exhibits 105-110:  As highlighted in these excerpts of interviews of Welch and Province, Welch's statements to McCluskey and Province about what she saw when she viewed the Haases and their pickup and trailer were in furtherance of the conspiracies to carjack and to escape. These statements were intended to inform her coconspirators about a particular vehicle they could commandeer to fulfill their desire to "get off the grid" and remain at large.  Alternatively, the Court finds that Welch's statements are not hearsay because they are not offered to prove their truth but rather to explain why her coconspirators carjacked this particular vehicle.

Government Exhibits 111-112:  As highlighted in these excerpts of interviews of Casslyn Welch on August 20 and 24, 2010, Welch's statement to her coconspirators that she had found guns in the Haases' trailer was in furtherance of the conspiracies to carjack, to rob, and to escape.  This statement was intended to inform her coconspirators that she had located guns which represented a potential threat to the fugitives if either of the Haases had accessed them.  Alternatively, the Court finds that Welch's statement qualifies as a present sense impression under Federal Rule of Evidence

14

803(1) because it is a "statement describing or explaining an event or condition, made while or immediately after [Welch] perceived it."

Government Exhibit 113:  As highlighted in this excerpt of an interview of Casslyn Welch on August 24, 2010, statements either by McCluskey or Province to Welch informing her that they had located the Haases' cell phones and a quantity of cash were in furtherance of the conspiracies to carjack, to rob, and to escape.  The statements about the cell phones were intended to inform Welch that her coconspirators had located communication devices which represented a potential threat to the fugitives if either of the Haases had accessed them.  The statements about the cash were designed to inform her that her coconspirators had acquired a source of funding to continue the escape.

Government Exhibits 114 and 118:  As highlighted in these excerpts of interviews of Casslyn Welch on August 20 and August 24, 2010, Welch's statements to her coconspirators about the pickup having OnStar, the pickup could be tracked if the OnStar service had been activated, and the need to "ditch" the pickup were in furtherance of the conspiracies to carjack, to rob, to escape, and to tamper with evidence.  These statements were intended to explain the purpose of OnStar and the threat it represented to the fugitives in terms of being tracked and apprehended.  Alternatively, the Court finds that Welch's statements are not hearsay because they are not offered for their truth but only to explain why the coconspirators contemplated the need to get rid of the pickup.  Finally, and again alternatively, the Court will defer ruling until trial on whether Welch's statements constitute present sense impressions under Rule 803(1), excited utterances under Rule 803(2), or statements about Welch's then-existing state of mind under Rule 803(3).

Government Exhibits 116, 119, and 120:  As highlighted in these excerpts of interviews of Casslyn Welch on January 20, 2011 and August 24, 2010, as well of an interview of Tracy

15

Province on August 20, 2010, Welch's statements to her coconspirators about their need to take the pickup to Albuquerque and leave it in a parking lot to get stolen were in furtherance of the conspiracies to carjack, to rob, to escape, and to tamper with evidence.  These statements were intended to explain how the coconspirators could distance themselves from an OnStar-equipped pickup that represented a potential threat to them in terms of being tracked and apprehended. Alternatively, the Court finds that Welch's statements are not hearsay because they are not offered to prove their truth but rather to explain why the fugitives chose to abandon the pickup at the location and in the manner that they did.

Government Exhibits 118, 122, 123, and 124:  As highlighted in these excerpts of interviews of Casslyn Welch on August 24, 2010 and February 16, 2011, as well as of an interview of Tracy Province on February 1, 2011, Welch's statements to her coconspirators about their need to get rid of the trailer and her suggestions about how to do so were in furtherance of the conspiracies to carjack, to rob, to escape, and to tamper with evidence.  These statements were intended to explain how the coconspirators could distance themselves from a trailer that contained two dead bodies in it, which if discovered by law enforcement would tend to incriminate the fugitives and frustrate their escape-related objectives.  Alternatively, the Court finds that Welch's statements are not hearsay because they are not offered to prove their truth but rather to explain why the fugitives chose to abandon the trailer at the location and in the manner that they did.

Government Exhibits 125-127:  As highlighted in these excerpts of interviews of Casslyn Welch on January 20, 2011 and August 24, 2010, as well as of an interview of Tracy Province on August 10, 2010, Welch's statements to her coconspirators about blood leaking out of the trailer at a gas station in Santa Rosa, New Mexico, were in furtherance of the conspiracies to carjack, to rob, to escape, and to tamper with evidence.  These statements were intended to describe a condition or

circumstance that, if observed by law enforcement or concerned citizens, represented a potential threat to the fugitives's continued escape. Alternatively, the Court finds that Welch's statements are not hearsay because they are not offered for their truth but only to explain why the coconspirators decided to get rid of the trailer. Finally, and again alternatively, the Court will defer ruling until trial on whether Welch's statements constitute present sense impressions under Rule 803(1) or excited utterances under Rule 803(2).

Government Exhibits 128-129: As highlighted in these excerpts of interviews of Casslyn Welch on August 24, 2010 and February 16, 2011, Welch's statements to her coconspirators about the need to separate the pickup from the trailer to give the police "two bones to chew on" were in furtherance of the conspiracies to carjack, to rob, to escape, and to tamper with evidence. The statements were intended to inform her coconspirators about how to interfere with law enforcement's ability to link the pickup to the trailer, and then perhaps to the fugitives, in order to facilitate the fugitives' continued escape. Alternatively, the Court finds that Welch's statements are not hearsay because they are not offered for their truth but only to explain why the coconspirators decided to get rid of the trailer and the pickup in the locations and manners in which they did.

Government Exhibits 131-132: As highlighted in these excerpts of an interview of Casslyn Welch on August 24, 2010, as well as of an interview of Tracy Province on August 10, 2010, Welch's statements to her coconspirators about seeing a dirt road where the coconspirators could abandon the trailer were in furtherance of the conspiracies to carjack, to rob, to escape, and to tamper with evidence. These statements were intended to identify a location at which the coconspirators could distance themselves from a trailer that held two dead bodies and which was leaking blood from its door, the discovery of which by law enforcement represented a potential threat to the fugitives's continued escape. Alternatively, the Court finds that Welch's statements

17

are not hearsay because they are not offered for their truth but only to explain where the coconspirators decided to get rid of the trailer.  Finally, and again alternatively, the Court will defer ruling until trial on whether Welch's statements constitute present sense impressions under Rule 803(1).

Government Exhibit 133:  As highlighted in this excerpt of an interview of Tracy Province on December 13, 2012, his statements to his coconspirators about his knowledge of OnStar and its purpose were in furtherance of the conspiracies to carjack, to rob, to escape, and to tamper with evidence for the same reasons that Welch's OnStar-related statements were.  Alternatively, the Court finds that Province's statements are not hearsay because they are not offered for their truth but only to explain why the coconspirators decided to get rid of the pickup and keep the Nissan Sentra as their means of transportation.

Government Exhibit 134:  As highlighted in this excerpt of an interview of Casslyn Welch on August 24, 2010, Province's statements to McCluskey about the need to get McCluskey cleaned up after the homicides were in furtherance of the conspiracies to carjack, to rob, to escape, and to tamper with evidence.  These statements were intended to advise a coconspirator that he had on his clothing evidence of murder and that it needed to be cleaned up so as not to implicate the fugitives in the additional crimes they had committed or to frustrate the fugitives' continued escape.  Alternatively, the Court will defer ruling until trial on whether Province's statements constitute present sense impressions under Rule 803(1) or statements about his then-existing state of mind under Rule 803(3).

Government Exhibits 135, 137, and 138:  As highlighted in these excerpts of interviews of Casslyn Welch on January 20, 2011 and May 16, 2012, Welch's statements to McCluskey about their need to stay off the grid for a few months, to continue camping, and postpone contact with

McCluskey's mother were in furtherance of the conspiracy to escape. The statements were intended to convince McCluskey of the need to maintain anonymity and not to draw attention to them, thereby maximizing the chances of remaining at large. Alternatively, the Court finds that Welch's statements are not hearsay because they are not offered for their truth but only to explain why she and McCluskey elected to camp in the location in which they were eventually recaptured.

## CONCLUSIONS OF LAW

**Existence of Predicate Conspiracies**

Based on all of the evidence introduced at the hearing, the Court finds that the Government has established by a preponderance of the evidence the existence of the following charged and uncharged conspiracies:

(a) a conspiracy to escape from and to remain escaped from prison;

(b) a conspiracy to hijack a semi-truck and kidnap its occupants a few hours after the actual escape;

(c) a conspiracy to commit carjacking, as charged in Count 1 of the Third Superseding Indictment;

(d) a conspiracy to commit robbery, as charged in Count 6 of the Third Superseding Indictment; and

(e) a conspiracy to tamper with evidence and obstruct justice following the killings of the Haases.[6]

---

[6] At the hearing, the United States also offered statements in furtherance of a conspiracy to import controlled substances into the Kingman prison between February 24, 2010, and June 19, 2010, as well as a conspiracy to rob a beauty salon in Gentry, Arkansas on or about August 11, 2010. The United States has advised that it no longer intends to introduce such statements during the trial phase, unless necessary to rebut evidence introduced or cross-examination conducted by defense counsel. In addition, the Court has held that evidence of the importation of drugs into Kingman

**McCluskey's Membership in the Conspiracies**

Based on all of the evidence introduced at the hearing, the Court finds by a preponderance of the evidence that McCluskey was a member of each of the foregoing conspiracies for the entire time in which they were in existence.

**Membership in Conspiracies by Persons Other than McCluskey**

Based on all of the evidence introduced at the hearing, the Court finds by a preponderance of the evidence that the following persons, at the time they are alleged to have made the proffered statements, were members along with McCluskey of the following conspiracies:[7]

(a) a conspiracy to escape from and to remain escaped from prison:  Casslyn Welch, Tracy Province, Diana Joy Glattfelder, Claudia Washburn, and former inmate whose first name is Mark;

(b) a conspiracy to hijack a semi-truck and kidnap its occupants a few hours after the actual escape:  Casslyn Welch and Tracy Province;

(c) a conspiracy to commit carjacking, as charged in Count 1 of the Third Superseding Indictment:  Casslyn Welch and Tracy Province;

(d) a conspiracy to commit robbery, as charged in Count 6 of the Third Superseding Indictment:  Casslyn Welch and Tracy Province;

(e) a conspiracy to tamper with evidence and obstruct justice following the killings of the Haases:  Casslyn Welch and Tracy Province.

---

prison is not admissible under Rule 404(b).  *See* Doc. 1073.  Consequently, the Court makes no findings or conclusions about the statements associated with those alleged conspiracies.

[7] The Court's finding in this regard is limited to the persons whom the United States has alleged made statements in furtherance of the conspiracy.  The Court's finding, therefore, should not be interpreted as an exhaustive list of all persons who may have participated in one or more of the  conspiracies at issue.

**Statements Made During and in Furtherance of Conspiracies**

Based on all of the evidence introduced at the hearing, the Court finds by a preponderance of the evidence that the statements made by persons other than McCluskey as set forth in the Government exhibits discussed above were made by the declarant during and in furtherance of the specified conspiracies.

<u>**CONCLUSION**</u>

For the reasons discussed herein, the Court concludes that during the trial phase of this case, the coconspirator statements discussed *supra* are admissible against McCluskey as non-hearsay under Rule 801(d)(2)(E).  The Court expresses no opinion at this time as to whether any of these coconspirator statements should be excluded under any other Federal Rule of Evidence.

_____
**UNITED STATES DISTRICT JUDGE**

21