IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                             Cr. No. 10-2734 JCH

JOHN CHARLES McCLUSKEY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendant McCluskey's Motion To Trifurcate Proceedings*. [Doc. No. 1137] The Government filed a Response opposing the motion [Doc. No. 1172], and McCluskey filed a Reply [Doc. No. 1222]. The Court has reviewed these pleadings and the relevant law. The Court concludes that the motion should be granted with regard to trifurcating the proceedings, but denied as to McCluskey's motion to include in the eligibility phase (McCluskey's "Phase II") only two of the four statutory aggravating factors alleged. The Court will order that the first part of the penalty phase—the eligibility phase—will include determination of the four threshold factors alleged under § 3591(a) and determination of all four statutory aggravating factors alleged under § 3592(c). The second part of the penalty phase—the selection phase—will include determination of non-statutory aggravating factors and mitigating factors, and the return of a finding concerning a sentence of death under § 3593(e).

## BACKGROUND

### A. McCluskey's Motion

Based on the Fifth, Sixth, and Eighth Amendments, McCluskey's motion asks the Court to trifurcate the proceedings into three phases.  "Phase I" would be the merits phase.  McCluskey asks the Court to divide the penalty phase into two parts:  (1) "Phase II: 'Gateway Eligibility Phase,' requiring determination of the gateway mental state factors and the non-prior conviction statutory aggravating factors"; and (2) "Phase III: 'Prior Conviction Statutory Aggravating Factor Eligibility and Penalty Determination of the Appropriate Penalty Phase,'  requiring determination of:  (a) the prior conviction 'statutory' aggravating factors in § 3592(c); (b) 'non-statutory' aggravating factors; (c) mitigating factors, and [(d)] the balance of all factors to 'recommend' life or death sentence."  [Doc. No. 1137, p. 1]  McCluskey argues that this form of trifurcation is necessary to prevent the jury's decisions on the factors listed in (1) above ("Gateway Eligibility Phase") from being "tainted by extremely prejudicial victim impact testimony and evidence concerning other statutory and non-statutory aggravating factors that have no relevance to the mental state gateway or non-prior conviction aggravating factors."  [Doc. No. 1137, p. 4] McCluskey argues that a unitary penalty phase would include "highly inflammatory evidence, most especially victim impact evidence and evidence of prior convictions to prove two of the four statutory aggravating factors."  [Doc. No. 1137, p. 6]

### B. Government's Position

The Government states that it originally proposed trifurcation in August 2012 and that McCluskey rejected the proposal.  [Doc. No. 1172, p. 2]   The Government now opposes trifurcation.  The Government, however, concedes that the Court has discretion to trifurcate.  [Doc. No. 1172, p. 6]

The Government observes that McCluskey's motion requests an unusual and unprecedented division, and that McCluskey cites no authority for this particular division. [Doc. No. 1172, p. 1] The Government argues that McCluskey's motion: (1) is untimely; (2) would confuse the jury; (3) would cause undue prejudice to the Government; and (4) would prolong the process by requiring duplication of arguments, witnesses, instructions, and deliberation.

## DISCUSSION

For a defendant to be found eligible to receive the death penalty, the FDPA first requires the jury to find beyond a reasonable doubt: (1) that the defendant was eighteen years of age or older at the time of the offense;[1] (2) that the defendant acted with one of the four intents listed in § 3591(a); and (3) that one of the statutory aggravating factors alleged in the NOI exists. § 3591(a)(2); § 3593. If the jury does not make these three threshold findings, the defendant is not eligible for the death penalty, and the court imposes "a sentence other than death authorized by law." § 3593(d), (e). The penalty phase ends.

If, however, the jury makes the three threshold findings enumerated above, the penalty phase continues, with the jury considering "whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death." § 3593(e). If the jury does not make those three threshold findings, there is no need for the jury to hear information or make determinations of non-statutory aggravating factors and mitigating factors; there is no need for the jury to weigh the factors and determine an appropriate sentence. If the jury does not make those three threshold findings, the jurors' job is over and the jurors can be dismissed.

---

[1] The additional gateway factor under § 3592(a)—that McCluskey was eighteen years of age or older at the time of the offenses—is grouped with the mental state gateway factors in the statute, in caselaw trifurcating the proceedings, and in McCluskey's argument. For ease of discussion in this Memorandum Opinion and Order, the Court intends to include the age factor when referring to the "gateway mental state factors" or the "mental state factors." The Court remains aware that the age restriction is one of the gateway factors which the jury must find for McCluskey to be eligible for the death penalty.

The structure of the FDPA makes a division into a two-part penalty phase logical and reasonable, with an "eligibility phase" (determination of the gateway mental state factors and statutory aggravating factors) and a "selection phase" (determination of non-statutory aggravating factors and mitigating factors, followed by weighing of factors). The Supreme Court has "distinguished between two different aspects of the capital sentencing process, the eligibility phase and the selection phase." *Buchanan v. Angelone*, 522 U.S. 269, 273 (1998); *see Tuilaepa v. California*, 512 U.S. 967, 971 (1994). The structure of the FDPA naturally divides into these two phases.

The Government's *Corrected Amended Notice of Intention To Seek the Death Penalty* [hereinafter NOI] alleges four statutory threshold factors under § 3591(a)—that McCluskey was eighteen years of age or older at the time of the offense, and three mental state "gateway" factors, under § 3591(a)(2)(A), (C), and (D). [Doc. No. 755, p. 2] The NOI alleges four statutory aggravating factors:

(1) Previous Conviction of Violent Felony Involving Firearm, § 3592(c)(2);
(2) Previous Conviction of Other Serious Offenses, § 3592(c)(4);
(3) Heinous, Cruel, or Depraved Manner of Committing Offense, § 3592(c)(6);
(4) Multiple Killings or Attempted Killings, § 3592(c)(16).

[Doc. No. 755, pp. 3-4] The NOI alleges five non-statutory aggravating factors, including Victim Impact Evidence. [Doc. No. 755, pp. 4-8]

For McCluskey to be eligible for the death penalty, the jury must find at least one of the three mental state factors alleged and at least one of the four statutory aggravating factors alleged. But McCluskey argues that these seven factors should not be determined in the same hearing. McCluskey argues that "Phase II" should include determination of the three mental state factors, the third statutory aggravating factor, and the fourth statutory aggravating factor—leaving the first and second statutory aggravating factors to "Phase III." Even though a

finding of any one of the four alleged statutory factors (together with at least one of the mental state factors) would make McCluskey eligible for the death penalty, McCluskey asks the Court to divide up the four statutory factors—putting the first two above (those alleging previous convictions) in with the non-statutory aggravating factors and the mitigating factors and the weighing process.

The Government argues that McCluskey's motion is untimely, being filed after the start of the guilt phase and after the March 30, 2012 deadline set in the Court's September 9, 2011 Scheduling Order [Doc. No. 220]. That deadline was "for all motions challenging the lawfulness of the Federal Death Penalty Act, including its facial and 'as applied' constitutionality, the sufficiency of the notice of intent to seek the death penalty, etc.; deadline for defense *Daubert* motions directed at government experts." [Doc. No. 220, p. 2] To the extent that McCluskey's motion requests trifurcation, it is not apparent that this deadline applies to such a procedural motion. Although the motion was filed after the start of the guilt phase, it was filed well in advance of the penalty phase—if a penalty phase becomes necessary. The Court concludes that denying the motion to trifurcate on grounds on untimeliness is not justified. In addition, the Court does not need a motion from a party to make a determination about how to structure the penalty phase.

To the extent that McCluskey's motion argues that the FDPA is unconstitutional, however, the Court agrees with the Government that the motion is untimely. In the absence of any justification for making a motion almost a year and a half late, the Court will not address this issue. The following arguments constitute untimely challenges to the constitutionality of the FDPA: McCluskey's assertion that the FDPA unfairly denies capital defendants trial protections available to all other defendants; the assertion that the FDPA improperly intermingles the trial of

5

guilt and sentencing, with elements of capital murder determined in a sentencing hearing not subject to the Rules of Evidence; and that, under *Ring* and *Sattazahn*, the Rules of Evidence must apply so § 3593(c) is unconstitutional. At any event, the same or similar arguments have already been decided by this Court [Doc. No. 687, pp. 9-12], or were presented and rejected in *United States v. Taylor*, 635 F. Supp. 2d 1236, 1238-40 (D.N.M. 2009). If the Court were to address these untimely arguments, the Court would follow its previous decisions and the decision in *Taylor*. The Court has considered all of McCluskey's motion, however, to the extent that it is intended to provide support for the motion to trifurcate in the particular manner advocated by McCluskey.

Both McCluskey and the Government discuss McCluskey's motives for making the trifurcation motion at this time, after rejecting the Government's August 2012 trifurcation proposal. Both parties have changed their positions with regard to trifurcation. The Court does not focus on the motives of either party in the positions they have taken at different times, but instead on considerations of fairness in the proceedings, prejudice to either party, and determination of a reasonable and practical penalty phase structure.

As both parties agree, the Court has discretion whether to trifurcate the proceedings or to hold a unitary penalty phase. *See United States v. Bolden*, 545 F.3d 609, 618-19 (8th Cir. 2008); *United States v. Fell*, 531 F.3d 197, 239-40 (2d Cir. 2008); *see also* Fed. R. Crim. P. 57(b) (when there is no controlling law, a judge may regulate practice in any manner consistent with federal law, these rules, and the local rules).

Two district courts in New Mexico reached opposite conclusions on whether to trifurcate. In *Lujan*, Judge Brack concluded that the penalty phase would be bifurcated. *United States v. Lujan*, Cr. No. 05-924 RB, Doc. No. 497 (filed 11/10/08). Judge Brack observed that the Tenth

Circuit had not yet addressed bifurcation of the penalty phase. Judge Brack concluded that the FDPA contemplates a single penalty phase proceeding but does not foreclose bifurcation. *Id.* p. 3 (citing *Bolden* and *Fell*). *Lujan* recognizes that the Eighth Circuit cautioned that a motion to trifurcate "'should not be routinely granted because it further extends and complicates what is already a long and complicated proceeding.'" *Id.* (quoting *Bolden*, 545 F.3d at 619). *Lujan* also recognizes that "'penalty phase evidence such as prior crimes may be relevant to both statutory and non-statutory aggravating factors'" and "'the risk of improper spillover will be negligible if the jury is properly instructed and is in any event outweighed by the risk of unnecessary protraction and confusion.'" *Id.* (quoting *Bolden*, 545 F.3d at 619). *Lujan* also noted that the Second Circuit cautioned courts to carefully consider trifurcation:

> Although we would not go so far as to require trifurcation, we encourage district courts ruling on motions to trifurcate to consider carefully the ramifications of presenting victim impact evidence, or any evidence that would otherwise be inadmissible in the guilt phase of a criminal trial, to a jury that has not yet made findings concerning death eligibility.

*Id.* (quoting *Fell*, 531 F.3d at 240 n.28). Judge Brack concluded that the penalty phase would be bifurcated, which would "avoid the admission of prejudicial evidence before the eligibility decision" and "delineate clearly between the applications of the Confrontation Clause in the eligibility and selection phases." *Id.*

In *Taylor*, Judge Johnson denied the defendant's motion to trifurcate. *United States v. Taylor*, 635 F. Supp. 2d 1236, 1238-43 (D.N.M. 2009). Judge Johnson rejected the defendant's constitutional arguments against the FDPA's evidentiary standards. *Id.* He held that the Constitution does not require a multi-phase sentencing hearing, and that the FDPA "by its express terms and structure, clearly contemplates a single penalty phase hearing." *Id.* at 1240-41 (noting that the FDPA refers to a "hearing" in the singular). Judge Johnson was persuaded that

7

"a unitary sentencing hearing makes common sense and is more practical," reasoning: "A divided penalty phase could potentially confuse the jury by the separation of the determination of the existence of multiple aggravating factors (statutory and non-statutory) and the requirement that the jury weigh *all* aggravators in the final stage." *Id.* at 1242. "The result may be an unfair dilution of the weight the jury would give to the statutory aggravating factors found in the earlier deliberations." Judge Johnson concluded that, with a unitary penalty phase, the FDPA still "provides the means to exclude unconstitutional and prejudicial evidence from the penalty phase." *Id.* at 1243.

In *Fell*, the Second Circuit rejected the defendant's claim that a single penalty phase violated the Fifth and Sixth Amendments by requiring "presentation of prejudicial evidence relevant to determining whether a defendant should be sentenced to death at the same time that the jury makes findings regarding the 'gateway' factors allowing his statutory eligibility for the death penalty." *Fell*, 531 F.3d at 239. The Second Circuit acknowledged that trifurcation allows a court to avoid admission of prejudicial information before the eligibility decision, and also allows the court to "delineate clearly between the applications of the Confrontation Clause in the eligibility and selection phases." *Id.* The defendant in *Fell* did not request trifurcation in trial court, and the *Fell* court held that there was no error in holding a unitary penalty phase. *Id.* at 240. The Second Circuit held that the defendant suffered no prejudice from a unitary penalty phase at any event; since there were two uncontested statutory aggravating factors, the jury was unlikely to have been swayed by the additional "death-selection" evidence (mainly victim impact and character evidence) when determining whether the defendant was "death-eligible." *Id.* at 240.

In *Bolden*, the jury found two statutory aggravating factors: pecuniary gain and conviction of two felony drug offenses. *Bolden*, 545 F.3d at 614. The jury found three non-statutory aggravating factors: obstruction of justice, other criminal conduct, and victim impact testimony. *Id.* at 624. The Eighth Circuit stated that the plain language of § 3593(b)-(e) "contemplates a single penalty phase hearing." *Bolden*, 545 F.3d at 618. The Eighth Circuit observed that a number of district courts nevertheless bifurcated the penalty phase "into an 'eligibility phase,' limited to evidence relevant to mental state and to the existence of one or more statutory aggravating factors, and, if the defendant is found eligible, a 'selection phase,' at which evidence relevant to mitigating factors and non-statutory aggravating factors such as victim impact and other crimes is received and weighed by the jury." *Bolden*, 545 F.3d at 618 (citing cases). The defendant in *Bolden* filed a pretrial motion to bifurcate, arguing that "the government's evidence of other crimes was relevant only to a non-statutory aggravating factor but would invite the jury to resolve the eligibility issues, his mental state and the alleged statutory aggravating factors, based on his bad character as evidenced by his criminal history." *Id.* On appeal, however, the defendant argued that extensive victim impact evidence "'enhanced the risk'" that the jury would find him eligible for the death penalty. *Id.* Rejecting the government's argument that bifurcation is not permitted by the FDPA, the *Bolden* court approved of the Second Circuit's statutory construction in *Fell*—that the FDPA contemplates but does not require a single penalty phase proceeding and that courts have discretion to trifurcate. *Id.* at 618-19. The Eighth Circuit stated, however, that trifurcation "should not be routinely granted because it further extends and complicates what is already a long and complicated proceeding." *Id.* at 619. "Moreover, as this case illustrates, penalty phase evidence such as prior crimes may be relevant to both statutory and non-statutory aggravating factors." *Id.* The *Bolden* court held

9

that any "risk of improper spillover will be negligible if the jury is properly instructed," observing that the trial court had given a careful limiting instruction informing the jury that it could not consider victim impact evidence when deciding the eligibility factors.[2] *Id.* The Eighth Circuit relied on the presumption that jurors follow their instructions. *Id.* *Bolden* held that the district court did not abuse its discretion in denying the motion to trifurcate. *Id.*

The Court is not persuaded that the language of the FDPA militates against trifurcation. The Court is persuaded by the approach of the Second Circuit in *Fell*:

> Fn.28. While the FDPA speaks of "a separate sentencing hearing" after which the jury makes both the eligibility decision and the selection decision, *see* 18 U.S.C. § 3593(b)-(c), the central point of that phrase is that the sentencing decision should be separated from the guilt phase—not that the sentencing phase must necessarily take place during one uninterrupted hearing.

*Fell*, 531 F.3d at 240 n.28. In addition, even if this language were interpreted to contemplate a unitary penalty phase, the caselaw supports a trial court's discretion to bifurcate the penalty phase—as both parties agree.

Nor is the Court persuaded by the Government's other arguments against trifurcation. Although the Government asserts that trifurcating the proceedings would confuse the jury, the Court disagrees. During jury selection, the jury was told that the penalty phase would be broken down into two separate phases; therefore, trifurcation is consistent with the explanations of the proceedings already given to the jury. At the beginning of jury selection, the Court explained that if there were a penalty phase, it would be divided into two separate steps. [Tr. 7/22/13, pp. 14-16][3] The Court explained that the jury would first determine whether the defendant was

---

[2] The limiting instruction read: "You may not consider the victim impact evidence in deciding the preliminary issues of whether the defendant is at least 18 years old, whether he acted with a mental state listed in Instruction No. 3, or whether any statutory aggravating circumstances in Instruction No. 4 exists beyond a reasonable doubt. If you make the findings on those three preliminary issues which are required before the death penalty can be considered, you many [sic] consider the victim impact evidence. . . . You may not, however, permit the victim impact testimony to overwhelm your ability to follow the law." *Bolden*, 545 F.3d at 619.
[3] The same instructions were repeated each day of jury selection, to each new group of jurors.

eligible for a sentence of death; the Court explained that if the jury did not find the three eligibility conditions (age of 18, at least one mental state factor, and at least one statutory aggravating factor), the defendant would not be eligible for a sentence of death and the jury's deliberations would be over.  [Tr. 7/22/13, pp. 16-18]  The Court further explained that if the jury found all three eligibility conditions, then the jury would proceed to the next stage of deliberations, considering aggravating and mitigating factors and weighing them to decide whether a sentence of death was justified.  [Tr. 7/22/13, pp. 18-20]  Before opening statements, the Court explained to the jury that if a penalty phase were necessary, the Court would instruct them in much more detail at that time.  [Tr. 8/19/13, pp. 3801-02]

The Government also contends that the jury would be confused by some witnesses testifying more than once, and would be confused about what evidence it was permitted to consider and for what purpose.  [Doc. No. 1172, pp. 12-13]  On the contrary, the Court believes that juror confusion would be more likely in a unitary penalty phase, when the jurors have heard much evidence and argument that is not relevant to the first issue they must decide—the eligibility determination.  *See United States v. Basham*, 2013 WL 2446104, *86 (D.S.C. 2013) (unpublished) (observing that six careful and detailed jury instructions adequately prevented confusion or prejudice in unitary penalty phase, guiding jury through sequential steps required and emphasizing that the first three determinations were necessary before considering non-statutory aggravating factors, mitigating factors, and weighing).  The Court again concludes that instructions to the jury will prevent such confusion.  Indeed, the Court concludes that bifurcation of the penalty phase will make it clearer to the jury what evidence is to be considered and for what purpose.

The Government is concerned that its evidence on statutory aggravating factors may be "diluted" when the jury weighs those factors in a separate, later hearing. Again, the Court concludes that its instructions to the jury, informing it to consider and weigh the previously found statutory aggravating factors, will prevent such prejudice. *See United States v. Almaraz*, 306 F.3d 1031, 1037 (10th Cir. 2002) (jurors are presumed to attend closely to, and follow, the language of instructions given in a criminal case). In addition, the Government will have the opportunity in the selection phase to address the jury and to refer to evidence on statutory aggravating factors previously found. If there were a very long gap between the eligibility phase and the selection phase, this could present more of a problem; however, the Court expects that the selection phase will immediately follow the eligibility phase, and does not anticipate any need for the parties to request or require any long delays.

The Government contends that it assumed that there would be a unitary penalty phase and would suffer undue prejudice if McCluskey's motion were granted, asserting that it will have "to re-order its presentation of evidence, re-draft direct examinations, and re-work an opening statement and closing argument that have been thoughtfully prepared and analyzed." [Doc. No. 1172, p. 3] The Government also expresses concern that jurors might think the prosecuting attorneys were incompetent or had misled jurors by stating, in voir dire and individual interviews, that there would be a single penalty phase. [Doc. No. 1172, p. 3] As set forth above, the Court explained during jury selection that the penalty phase would be divided into two separate phases. And, given the anticipated length of time for the guilt phase, the Court believes that the Government will have sufficient time to make any changes deemed necessary. The Court notes that the FDPA requires the factors relevant to eligibility to be considered separately, and prior to, other factors; therefore, the Court does not believe that the Government would be

unduly burdened to separate its evidence and arguments, since eligibility and selection factors could not be intertwined even if there were a unitary penalty phase.

The Government argues that trifurcation would impose an undue burden on the jury, the Court, the parties, the witnesses, and all others interested in this case. [Doc. No. 1172, p. 12] The Government asserts that "[m]ultiple witnesses would likely be required to testify more than once," and there would be duplication of opening statements, cases in chief, closing arguments, jury instructions, and deliberations. The Court recognizes that some of these steps may be repeated in a bifurcated penalty phase; however, since the focus will be limited in each stage, the extent of argument and evidence should also be limited in each phase. The Court does not contemplate that there will be much repetition of evidence or argument.

Although some cases suggest that trifurcation may prolong the proceeding, *see Bolden*, 545 F.3d at 619, the Court is persuaded that trifurcation will not significantly extend—and could even shorten—the proceedings. If the jury were to fail to find a mental state gateway factor and a statutory aggravating factor, the trial would be at an end—eliminating weeks of evidence on non-statutory aggravating factors and mitigating factors.

Having considered the parties' arguments and the relevant law, the Court is persuaded by the considerations in favor of trifurcation expressed in cases like *Lujan*, *Bolden*, and *Fell*. The Court will bifurcate the penalty phase—but not in the particular manner which McCluskey requests. The Court will order that, if a penalty phase becomes necessary, there will be an eligibility phase—involving determination of the mental state gateway factors and all four statutory aggravating factors alleged. If McCluskey is found eligible to receive the death penalty, a selection phase will follow—involving determination of non-statutory aggravating factors and mitigating factors, followed by weighing of factors. The Court concludes that this is

13

a reasonable and efficient division of the penalty phase, which will aid the jury by allowing separation of the determinations to be made at each stage; this separation will allow simplification of the instructions given at the two phases and minimize juror confusion. As illustrated in a recent case, the instructions necessary to correctly outline the jury's sequential steps in a unitary penalty phase are long and involved. *See Basham v. United States*, 2013 WL 2446104, *86 (D.S.C. 2013) (unpublished) (listing six separate steps).

In requesting the Court to trifurcate, McCluskey urges the Court to "follow the well reasoned opinions" in *United States v. Johnson*, 362 F. Supp. 2d 1043 (N.D. Iowa 2005), and *United States v. Davis*, 912 F. Supp. 938, 949 (E.D. La. 1996). [Doc. No. 1137, pp. 4, 20-21] McCluskey cites a number of other opinions in which the penalty phase was bifurcated. [Doc. No. 1137, pp. 4-5; Doc. No. 1172, pp. 1, 9] As the Government observes, however, none of the cases cited by McCluskey divide the penalty phase in the same way as McCluskey's motion requests. McCluskey relies heavily on the analyses of *Johnson* and *Davis*, but both courts bifurcated the penalty phase into an eligibility phase (determining gateway mental state factors and all statutory aggravating factors) and a selection phase (determining non-statutory aggravating factors and mitigating factors, followed by weighing). *See Bolden*, 545 F.3d at 618 (citing cases deciding to trifurcate as making same division). McCluskey attempts to overextend the reasoning of *Johnson* and *Davis* in his argument for his unusual trifurcation.

McCluskey argues that "evidence relevant to non-statutory aggravating factors such as victim impact testimony and evidence relevant to prior conviction statutory aggravating factors has no probative value other than extreme prejudice to gateway factors or non-prior conviction statutory aggravating factors and is thus inadmissible under 18 U.S.C. § 3593(c)." [Doc. No. 1137, p. 8] McCluskey observes that proof of prior convictions is not generally admissible at a

14

trial to prove bad character, but is generally admissible at sentencing because character and propensity are relevant to proper sentencing considerations. [Doc. No. 1137, pp. 14-15] Similarly, McCluskey observes that the effect on a victim is not generally admissible or relevant at a trial to prove the substantive offenses, and the effect of a crime on third persons is never admissible at a trial; in contrast, victim impact testimony is admissible and relevant at a capital sentencing hearing. [Doc. No. 1137, pp. 16-17] McCluskey is making a "spillover" argument like the one rejected by the Eighth Circuit. *Bolden*, 545 F.3d at 619 (holding that any "risk of improper spillover will be negligible if the jury is properly instructed").

The trifurcation adopted by the Court will prevent some of the "spillover" prejudice McCluskey suggests could occur. To the extent that McCluskey argues that information relevant to non-statutory aggravating factors could improperly influence the jury's determination of mental state and statutory aggravating factors, this potential problem will not arise; the jury will determine the mental state and statutory aggravating factors before it hears information on non-statutory factors. [Doc. No. 1137, pp. 15-18 (raising problem of possible prejudice to determination of eligibility factors from jury hearing psychiatric testimony, other information relevant to future dangerousness, victim impact testimony, and similar information relevant to non-statutory aggravating factors)]

McCluskey also argues that there could be "spillover" prejudice if the jury hears information relevant to the two "Previous Conviction" aggravating factors[4] in the same hearing in which the jury determines the mental state gateway factors and the other two statutory aggravating factors alleged.[5] The Court concludes that limiting instructions, if requested, will

---

[4] (1) Previous Conviction of Violent Felony Involving Firearm, § 3592(c)(2); and (2) Previous Conviction of Other Serious Offenses, § 3592(c)(4).

[5] (3) Heinous, Cruel, or Depraved Manner of Committing Offense, § 3592(c)(6); and (4) Multiple Killings or Attempted Killings, § 3592(c)(16).

be sufficient to prevent any "spillover" prejudice, as the Eighth Circuit held. *See Bolden*, 545 F.3d at 619; *Lujan*, Cr. No. 05-924 RB, Doc. No. 497, p. 3. As in *Bolden*, limiting instructions could be given to inform the jury, for example, that it cannot consider information presented to support "Previous Conviction of Violent Felony Involving Firearm" in deciding the gateway mental state factors. A jury is presumed to follow its instructions. *United States v. Berry*, 717 F.3d 823, 832 (10th Cir. 2013); *see United States v. Almaraz*, 306 F.3d 1031, 1037 (10th Cir. 2002) ("We presume jurors attend closely to the language of the instructions in a criminal case and follow the instructions given them."); *cf. United States v. Hardwell*, 80 F.3d 1471, 1486-87 (10th Cir. 1996) (holding that limiting instructions are sufficient to prevent prejudice to one defendant from any "spillover effect" when prior crimes are admitted against co-defendants in the same trial). The Court concludes that its method of trifurcation will not result in "spillover" prejudice, when limiting instructions (if requested) are given. The Court further observes that caselaw upholding a unitary penalty phase refutes McCluskey's arguments about "spillover" prejudice; if it is acceptable to have the jury determine all of the factors in one hearing, it is *a fortiori* acceptable to have the jury determine all of the eligibility factors in one hearing. *See Bolden*, 545 F.3d at 618-19; *Fell*, 531 F.3d at 239-40.

There are additional reasons to bifurcate the penalty phase in the manner adopted by the Court. As observed above, the structure of the FDPA makes this division logical and reasonable. In the eligibility phase, the jury determines all of the threshold factors; in the selection phase, the jury determines all of the non-statutory aggravating factors and the mitigating factors, and then weighs all of the factors. The Court concludes that McCluskey's proposed division could result in significant confusion of the jury. If the jury were to find at least one mental state gateway factor, but not to find either of the two statutory aggravating factors presented in McCluskey's

16

"Phase II," the other two statutory aggravating factors would need to be presented to the jury in "Phase III." But the jury would then need to be instructed in "Phase III" that it must find at least one of these two statutory factors before proceeding to consider any of the other information presented; this instruction and this procedure would repeat the instruction and procedure required in "Phase II." The Court concludes that this repetition would unduly confuse the jury. Under these circumstances, the jury would also need to be given in "Phase III" the long and detailed instructions for considering eligibility and selection in the same phase. *See Basham*, 2013 WL 2446104, *86. The Court also concludes that any risk of "spillover" prejudice is outweighed by the danger of juror confusion from McCluskey's illogical method of bifurcating the penalty phase.

An additional basis supporting trifurcation, as noted above, is that trifurcation allows a distinction in the extent to which the Confrontation Clause is applicable. McCluskey's motion mentions the issue of applicability of the Confrontation Clause at sentencing. [Doc. No. 1137, pp. 17-18] The Court observes that the method of trifurcation adopted by the Court has the advantage of permitting the Court to make a distinction in application of the Confrontation Clause between the eligibility and selection phases, if such an issue were to arise. *See Bolden*, 545 F.3d at 618, n. 7; *Lujan*, Cr. No. 05-924 RB, Doc. No. 497, pp. 3-4. In contrast, McCluskey's requested manner of bifurcation, by mixing two statutory aggravating factors in with non-statutory aggravating factors, muddies the potentially appropriate distinction. The Court is not expressing any opinion about applicability of the Confrontation Clause, but is merely considering this potential matter while deciding the trifurcation issue.

**CONCLUSION**

Having considered the pleadings and relevant caselaw, the Court concludes that it will bifurcate the penalty phase—but not in the particular manner which McCluskey requests. The Court will order that there will be an eligibility phase—involving determination of the mental state gateway factors and all four statutory aggravating factors alleged, followed, if necessary, by a selection phase—involving determination of non-statutory aggravating factors and mitigating factors, followed by weighing of factors. The Court concludes that this is a reasonable and efficient division of the penalty phase.

**IT IS THEREFORE ORDERED** that *Defendant McCluskey's Motion To Trifurcate Proceedings* [Doc. No. 1137] is **GRANTED** with regard to trifurcating the proceedings, but **DENIED** as to McCluskey's motion to include in the eligibility phase only two of the four statutory aggravating factors alleged. The Court orders that the eligibility phase will include determination of the four threshold factors alleged under § 3591(a) and determination of all statutory aggravating factors alleged under § 3592(c); the selection phase will include determination of non-statutory aggravating factors and any mitigating factors alleged, and the return of a finding concerning a sentence of death under § 3593(e).

_____
**UNITED STATES DISTRICT JUDGE**