IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

  vs.                                                                   Cr. No. 10-2734 JCH

JOHN CHARLES McCLUSKEY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

    This matter is before the Court on the *United States' Motion for Clarification of Court's Order Excluding LCN DNA Based on Defendant's In-Trial Withdrawal of Objection*. [Doc. 1597, filed 2-28-14] Defendant McCluskey filed a Response [Doc. 1604, filed 3-14-14], and the Government filed a Reply [Doc. 1611, filed 3-28-14].

    The Court has reviewed the pleadings, the trial transcript, and the relevant law. The Court concludes that the Government's Motion should be denied. *See United States v. Thompson*, 814 F.2d 1472, 1474 (10th Cir. 1987) (recognizing that a decision in a criminal case is interlocutory and not final until both conviction and imposition of sentence have occurred); *cf. Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1121 (10th Cir. 1979) (stating that until final judgment is entered, district court retains jurisdiction to modify or rescind any interlocutory order).

## DISCUSSION

    McCluskey filed a pretrial *Motion To Exclude DNA and Serology Test Results and Request for Daubert Hearing* [Doc. 422, filed 4-22-12; Doc. 442 (*Corrected Supplemental*

*Memorandum*), filed 5-10-12]  Before trial, the Court issued a *Memorandum Opinion and Order* denying exclusion of DNA evidence on numerous grounds raised by McCluskey, but granting exclusion of LCN (low copy number) results.  [Doc. 1045, filed 6-20-13]  Recognizing that other laboratories adopted different definitions of "low copy number" and employed different procedures, the Court stated that the issue was not whether it is possible to perform LCN testing reliably, but instead whether the test results in this particular case were reliable.  [Doc. 1045, pp. 88-91]  According to the NMDPS Laboratory's own protocol and procedures, a sample below 250 pg constitutes LCN testing that is not expected to yield the normally reliable DNA profile obtained through PCR/STR testing; the NMDPS Laboratory set its own threshold for reliability at 250 pg.  After an evidentiary hearing, the Court concluded that the Government had not carried its burden of demonstrating the reliability of results below this threshold.  [Doc. 1045, pp. 98-107]  The Court also ordered that a foundation be laid at trial with respect to any evidence of mixed samples, demonstrating that the DNA result did not constitute LCN testing with respect to any contributor for whom a DNA result would be introduced.  [Doc. 1045, p. 114]

While cross-examining the Government's DNA expert at trial, McCluskey began to ask for a DNA result on a particular sample without first laying a foundation that no LCN testing was involved.  [Tr. 9-23-13, pp. 7122-23]  The Government objected and a long bench conference followed.  [Tr. 9-23-13, pp. 7123-30]  In response to the Court's question whether it was McCluskey's current position that any of the DNA results came in, without the foundation being established, McCluskey answered:  "I think that has to be our response, given the fact that the Court allowed the other samples."  [Tr. 9-23-13, pp. 7124-25]  McCluskey explained that he wanted to demonstrate inconsistencies in the expert's testimony, asserting that the expert concluded there were only two contributors to a mixed sample when that conclusion favored the

Government by resulting in quantities great enough so that the sample did not constitute LCN testing; to attempt to show that the expert employed two different interpretation standards, McCluskey argued, he needed to be able to elicit the expert's conclusions about the contributors' identities. Based on McCluskey's position in the bench conference, the Court ruled that McCluskey would be allowed to elicit DNA results for impeachment purposes, without first establishing the foundation—in order to allow McCluskey appropriate leeway to challenge the expert's opinions on cross-examination.

The Government's Motion now asks the Court to "clarify" its pretrial *Memorandum Opinion and Order* [Doc. 1045]—either by concluding that the in-court ruling implicitly vacated the pretrial Order's exclusion of LCN results, or by concluding that LCN results were admitted as reliable evidence at trial. [Doc. 1597, p. 2] Neither conclusion is warranted. The Court observes that the Government's Motion raises an issue regarding the Court's independent gatekeeping obligation; any such argument is untimely because it was not raised five months earlier, before the Court ruled on the LCN issue at trial. Similarly, the Government waived any limiting instruction by failing to make a timely request during trial.

At trial McCluskey withdrew his objection to admission of DNA test results for the purpose of allowing him to challenge the expert's testimony. Exercising its discretion to ensure that McCluskey was given sufficient leeway to impeach the credibility and conclusions of the Government's DNA expert, the Court allowed McCluskey to forgo the foundational requirement that a sample was not LCN. This ruling was based on the specific circumstances and arguments then before the Court and had no impact on the conclusions reached in the Court's pretrial *Memorandum Opinion and Order* [Doc. 1045].

## **CONCLUSION**

The Court reaffirms its pretrial *Memorandum Opinion and Order* [Doc. 1045]. The Court's rulings at trial did not modify the conclusions set forth in that Order.

**IT IS THEREFORE ORDERED** that the *United States' Motion for Clarification of Court's Order Excluding LCN DNA Based on Defendant's In-Trial Withdrawal of Objection* [Doc. 1597] is **DENIED.**

_____
United States District Court Judge